**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| vs. | ) No. |
| | ) |
| PREMIER DESIGN & BUILD GROUP, LLC, PREMIER DESIGN & BUILD NATIONAL, LLC, and DUKE REALTY ePORT URBAN RENEWAL, LLC, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**AMERISURE INSURANCE COMPANY AND**
**AMERISURE MUTUAL INSURANCE COMPANY'S**
**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure"), by and through their attorneys of record, Emerson & Elder, P.C., and for their Complaint for Declaratory Judgment against Defendants, Premier Design & Build Group, LLC ("Premier Group"), Premier Design & Build National, LLC ("Premier National") (collectively "Premier Group" and "Premier National" shall be referred to as "Premier Design"), and Duke Realty ePort Urban Renewal, LLC ("Duke") states as follows:

**I.     NATURE OF ACTION AND RELIEF SOUGHT**

1.     This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     This is a civil action brought by Amerisure seeking a declaration that they owe no duty to defend or indemnify Premier Design under Commercial General Liability (herein "CGL") insurance policies and Umbrella Liability (herein "Umbrella") insurance policies (collectively referred to herein as "Amerisure Policies") issued by Amerisure to Premier Design

in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, Case No.: 2023L004533, filed in the Circuit Court of Cook County, Illinois, Law Division (herein "Underlying Action").

3. There is an is an actual, present and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend or indemnify Premier Design in the Underlying Action. *See* the Complaint filed in the Underlying Action attached hereto as **Exhibit "A"**. Amerisure denies it owes a duty to defend or a duty to indemnify Premier Design in the Underlying Action.

4. Duke is the plaintiff in the Underlying Action.

5. Amerisure requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that Amerisure owes no coverage obligations to Premier Design in the Underlying Action.

## II. PARTIES

6. At the time of the commencement of this action, Plaintiff Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan.

7. At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State of Michigan.

8. At the time of the commencement of this action, Defendant Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois. On information and belief, Premier Group is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois,

including the Eastern Division, at all times relevant hereto.

9.      At the time of the commencement of this action, Defendant Premier National is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois.  On information and belief, Premier National is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

10.      At the time of the commencement of this action, Defendant Duke is a New Jersey Limited Liability Company with its principal place of business in Denver, Colorado.  On information and belief, Duke is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.  Duke has been joined to this action because it is the plaintiff in the Underlying Action, and thus is an interested party to this action.

## III.   JURISDICTION AND VENUE

11.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d).

13.      Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

## IV.   BACKGROUND

### A.    The Project

14.      On information and belief, Duke is the current owner of certain parcels constituting

approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth
Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02,
1.03, and 1.05 (collectively, "the Property"). *See* Exhibit "A" at paragraph 9.

15.     On or about August 18, 2015, Bridge Perth Amboy, LLC entered into a contract
with Premier National (the "Contract") to build three warehouse buildings and at least two access
bridges (the "Project") on the Property. A true and correct copy of the Contract is attached hereto
and incorporated herein as **Exhibit "B"**. *See* Exhibit "A" at paragraph 12.

16.     On information and belief. Duke is the successor in interest to Bridge Perth Amboy
Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC, which owned the property
until on or about November 22, 2017. *See* Exhibit "A" at paragraph 10.

17.      On information and belief, on November 22, 2017, Bridge Perth Amboy Urban
Renewal, LLP assigned the Contract to Duke via an Assignment and Assumption of Service
Agreements and Intangibles, a copy of which is attached hereto as **Exhibit "C"**. *See* Exhibit "A"
at paragraph 14.

18.     On information and belief, on or about August 18, 2015, Premier National assigned
certain rights and obligations under the Contract to its affiliate, Premier Group, pursuant to a
Partial Assignment of Construction Agreement ("Premier Assignment"). On information and
belief, pursuant to the Premier Assignment, Premier Group entered into various subcontract
agreements for design and construction of the Project. *See* Exhibit "A" at paragraph 13.

19.     Pursuant to the terms of the Contract, Premier National, then Premier Group, agreed
to provide demolition, design, engineering, architectural, and construction services for the Project.
*See* Exhibit "B" at §§ 2.1-2.4.

4

**B.** **Amerisure's Reservation of Rights Letter to Premier National**

20. On December 4, 2019, Amerisure issued a reservation of rights letter to Premier National which informed Premier National that Amerisure was investigating the claim as to the 980 High Street Building asserted by Duke and requested additional information in regards to the claim, subject to a reservation of rights to deny any coverage. A lawsuit had not been filed by Duke against Premier Design & Build at that time. A copy of the December 4, 2019 reservation of rights letter is attached hereto as **Exhibit "D"**.

**C.** **Duke's October 6, 2022 Notice to Premier Group**

21. Via correspondence from Duke to Premier Group dated October 6, 2022, Duke notified Premier Group of alleged defective construction and resulting damages associated with the 980 High Street Building and that Duke had begun remedial work on the building. A copy of the October 6, 2022 notice is attached hereto as **Exhibit "E"**.

**D.** **Amerisure's Supplemental Reservation of Rights Letter to Premier National**

22. In correspondence dated April 21, 2023 from Amerisure to Premier National, Amerisure acknowledged receipt of Duke's October 6, 2022 notice to Premier Group, and reserved all rights to deny coverage to Premier National in relation to Duke's claim. A copy of the April 21, 2023 reservation of rights letter is attached hereto as **Exhibit "F"**.

**E.** **The Underlying Action**

23. On May 1, 2023, Duke filed its Complaint against Premier Design. Duke seeks damages for the alleged defective construction by Premier Design of the 980 High Street Building and for the construction of two access bridges for the property. *See* Exhibit "A".

24. Duke alleges that Premier was involved in the design, engineering, and construction of two bridges for access to and from areas on the Property. These bridges include

the Eastern access bridge and the Western access bridge (collectively the "Access Bridges"). *See* Exhibit "A" at paragraph 21.

25. Duke alleges that Premier purportedly reviewed the design plans for the Access Bridges and oversaw the construction of the Access Bridges to ensure that they would perform as intended and to ensure that they were built in accordance with the plans and specifications. *See* Exhibit "A" at paragraph 23.

26. Duke alleges that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed, and thus not sound or fit for their purposes. *See* Exhibit "A" at paragraph 27.

27. Duke further alleges that as a result of these defects each of the Access Bridges has suffered significant damage, including but not limited to: (i) settlement of each bridge; (ii) cracks in the frame of each bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. *See* Exhibit "A" at paragraph 28.

28. Duke alleges that as a result of the alleged defects to the Access Bridges, Duke has been and will continue to be damaged. *See* Exhibit "A" at paragraph 29.

29. Duke alleges that Premier worked with Menard Group ("Menard") and GEI Consultants, Inc. ("GEI") to develop a system of rigid inclusions or controlled modulus columns ("CMC") to reinforce the soil beneath what Duke terms the 980 High Street Building Extension, to support the 980 High Street Building at the subject property, and to prevent deleterious settlement of the 980 High Street Building. *See* Exhibit "A" at paragraph 32.

30. Upon information and belief, on February 15, 2017, Bridge Perth Amboy, LLC entered into a lease agreement with Target Corporation ("Target") for Target to lease the 980 High Street Building. *See* Exhibit "A" at paragraph 33.

31.     Duke alleges that in 2019, Target sent it a letter informing Duke of cracking and potential failure of the exterior wall and foundation of the 980 High Street Building. *See* Exhibit "A" at paragraph 34.

32.     As a result of the alleged settlement, the 980 High Street Building sustained extensive damage related to separation and movement between the floor slab and the exterior walls.

33.     Duke alleges that the damage to the 980 High Street Building includes, but is not limited to: separating joints; broken pipes; gaps in flooring; doors separating from walls; settling of wall footing; and visible distress on the inside of the building. *See* Exhibit "A" at paragraph 38.

34.     Duke further alleges that the damage was caused by "excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of CMC's failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement." *See* Exhibit "A" at paragraph 39.

35.     Duke also alleges that it has taken remedial measures to abate further settlement and damage to the 980 High Street Building and to alleviate disruption to its tenant's ongoing business. *See* Exhibit "A" at paragraph 41.

36.     Duke alleges that it has expended substantial amounts of money and sustained substantial damages, and will continue to incur loss and damages as remediation of the building continues, as a result of the settlement at the 980 High Street Building. *See* Exhibit "A" at paragraphs 43 & 44.

37.     In its Complaint against Premier Design, Duke alleges Count I for Breach of Contract for the alleged breach by Premier Design & Build of the Contract, which includes the

following alleged failures by Premier:

a.  Prepare sufficient plans and specifications for the design, engineering, stabilization, and construction of the Access Bridges and the 980 High Street Building;

b.  Provide materials sufficient for the proper construction of the Access Bridges and the 980 High Street Building;

c.  Properly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that the soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;

d.  Properly design the foundational support for the Access Bridges and the 980 High Street Building; and

e.  Properly supervise the construction of the Access Bridges and the 980 High Street Building to ensure compliance with plans, specifications, and all applicable codes, laws, regulations, and industry standards.

See Exhibit "A" at paragraph 53.

38.     As a result of Premier Design's alleged breach of contract, Duke alleges that the 980 High Street Building and the Access Bridges are defective.  See Exhibit "A" at paragraph 55.

39.     Duke alleges that it retained experts and contractors to analyze, design, and repair the 980 High Street Building and the Access Bridges.  See Exhibit "A" at paragraphs 56 & 57.

40.     For the alleged defective construction of the 980 High Street Building and Access Bridges, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred.  See Exhibit "A" at the Wherefore clause to Count I.

41.     Duke also alleges Count II for Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that Premier Design breached its duty to exercise reasonable care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges.  See Exhibit "A" at paragraphs 60 & 61.

42.     As a result of Premier Design's alleged breach of its duty to exercise reasonable care, Duke alleges that it has been damaged.  *See* Exhibit "A" at paragraph 62.

43.     For the alleged negligence of Premier Design, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Exhibit "A" at the Wherefore clause to Count II.

44.      Duke also alleges Count III for Professional Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that pursuant to the Contract, Premier Design agreed to provide design and engineering services to Duke.  *See* Exhibit "A" at paragraph 65.

45.      Duke alleges that Premier Design breached its duty to exercise reasonable professional care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges.  *See* Exhibit "A" at paragraph 66.

46.     Duke also alleges that Premier owed a duty to exercise reasonable professional care in hiring and supervising the contractors and subcontractors working on the design, engineering, and construction of the 980 High Street Building and Access Bridges to ensure that all work was done in accordance with approved plans, applicable specifications, reasonable  commercial standards in Premier's respective professional industry for the construction of access bridges and warehouses, and all applicable state and local building codes, regulations, and ordinances.  *See* Exhibit "A" at paragraph 67.

47.     Duke alleges that Premier Design breached its duty of reasonable professional care which damaged Duke.  *See* Exhibit "A" at paragraphs 68 & 69.

48.     For Premier Design's alleged breaches of the duty of reasonable professional care, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees,

and reasonable attorneys' fees incurred. *See* Exhibit "A" at the Wherefore clause to Count III.

C. **The Amerisure Policies**

49.     Amerisure issued commercial general liability ("CGL") policies and umbrella liability policies to each Premier Design entity, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively "the Amerisure Policies").

50.     The Amerisure CGL Policies have a $1 Million Each Occurrence Policy Limit, a $2 Million General Aggregate Policy Limit, and a $2 Million Products-Completed Operations Aggregate Policy Limit.

51.     The Amerisure Umbrella Liability Policies issued to Premier Design & Group, LLC have a $10 Million Each Occurrence Policy Limit, a $10 Million General Aggregate Policy Limit, and a $10 Million Products-Completed Operations Aggregate Policy Limit.

1. **Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build Group, LLC**

52.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build Group, LLC:

- Policy no. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021; and

- Policy no. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022.

Copies of these policies are attached hereto as **Group Exhibit "G"**.

10

### 2. Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build National, LLC

53.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build National, LLC:

- Policy no. CPP 20978480102, with a policy period of July 1, 2016 to July 1, 2017;
- Policy no. CPP 20978480302, with a policy period of July 1, 2017 to July 1, 2018;
- Policy no. CPP 20978480402, with a policy period of July 1, 2018 to July 1, 2019;
- Policy no. CPP 20978480502, with a policy period of July 1, 2019 to July 1, 2020; and
- Policy no. CPP 20978480802, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "H"**.

### 3. Amerisure Insurance Company Umbrella Policies Issued to Premier Design & Build Group, LLC

54.     The Umbrella Liability Policies issued to Premier Design & Build Group, LLC by Amerisure Insurance Company include:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;
- Policy no. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;
- Policy no. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;
- Policy no. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;
- Policy no. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;
- Policy no. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;
- Policy no. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and
- Policy no. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "I"**.

**4. Amerisure Mutual Insurance Company Umbrella Policy Issued to Premier Design & Build National, LLC**

55. The Umbrella Liability Policies issued to Premier Design & Build National, LLC by Amerisure Mutual Insurance Company is the following:

- Policy no. CU 20978490002, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20978490102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20978490202, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20978490402, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20978490502, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20978490602, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20978490702, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as Group **Exhibit "J"**.

56. The CGL Coverage Part of the CGL Policies states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. But:

\*　　　\*　　　\*

**b**. This insurance applies to 'bodily injury' and 'property damage' only if:

12

\*     \*     \*

    **(2)**    The 'bodily injury' or 'property damage' occurs during the policy period; . . .

\*     \*     \*

*See* Group Exhibit "G".

57.    The CGL portion of the Amerisure CGL Policies include a Definitions section, which in part includes the following definitions:

**8.**    'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because:

    **a.**    It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement\'

if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement.

\*     \*     \*

**13.**    'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*     \*     \*

**17.**    'Property damage' means:

    **b.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or

13

floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged.  'Suit' includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*      *      *

21.    'Your product'

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)    You;

            (b)    Others trading under your name; or

            (c)    A person or organization whose business or assets you have acquired; or

        (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

        (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** 'Your work':

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

        **(2)** The providing of or failure to provide warnings or instructions.

*See G*roup Exhibit "G".

58. The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.** **Insuring Agreement**

        **a.** We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply….

                \*       \*       \*

      **c.**    This insurance applies to 'bodily injury' and 'property damage' only if:

                \*      \*      \*

      **(2)**    The 'bodily injury' or 'property damage' occurs during the policy period…

                \*      \*      \*

*See* Group Exhibits "I" and "J".

59.    The above-referenced Definitions in the CGL Policies and set forth in Paragraph 58 are included in the Umbrella Liability Policies either verbatim or in substantially similar form. The Umbrella Liability Policies also include the following Definitions:

**19.**    'Retained Limit' means the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention', whichever applies.

**20.**    'Self-insured retention' means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to 'occurrences' or offenses not covered by the 'underlying insurance'. The 'self-insured retention' does not apply to 'occurrences' or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.

                \*      \*      \*

**23.**    'Ultimate net loss' means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent.

**24.**    'Underlying insurance' means any policies of insurance listed in the Declarations under Schedule of 'underlying insurance'.

**25.**    'Underlying insurer' means any insurer who provides any policy of insurance listed in the Schedule of 'underlying insurance'.

*See* Group Exhibits "I" and "J".

60.    The Amerisure Policies include the Damage To Impaired Property Or Property Not Physically Injured exclusion, which excludes coverage to:

'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

*See* Group Exhibits "G" through "J".

61.     The Amerisure Policies include the Exclusion – Contractors – Professional

Liability endorsement[1], which states:

The following exclusion is added to Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**1.**     This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.**     Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.**     Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering of or failure to render any professional

---

[1] The Amerisure Umbrella Liability Policies include the Professional Services exclusion which is similar to the Professional Liability exclusion.

services by you or on your behalf with respect to the operations described above.

2.     Subject to Paragraph **3.** below, professional services include:

    **a.**     Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.**     Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.     Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*See* Group Exhibits "G" through "J".

62.     The Amerisure Policies also include the Exclusion – Construction Management

Errors and Omissions endorsement, which states:

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability….**

This insurance does not apply to . . . "property damage" . . . arising out of:

    **1.**     The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

    **2.**     Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved that which is described in Paragraph **1. or 2.**

This exclusion does not apply to 'bodily injury' or 'property damage' due to construction or demolition work done by you, your 'employees' or your subcontractors.

*See* Group Exhibits "G" through "J".

## COUNT I
## NO DUTY TO DEFEND OR INDEMNIFY
## UNDER COVERAGE "A" OF THE AMERISURE POLICIES

63.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 62 as if fully set forth herein.

64.     The Amerisure CGL Policies provide that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages ["'property damage' to which this insurance applies"].  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." The "property damage" must be "caused by an 'occurrence' . . . [and] occur during the policy period."  Group Exhibits "G" and "H".[2]

65.     The Amerisure CGL Policies also provide that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  The "property damage" must be "caused by an 'occurrence' . . . [and] occur during the policy period."  Group Exhibits "G" and "H".[3]

66.     Insureds and their assignees and subrogees carry the burden of bringing a claim

---

[2] The Umbrella Liability Policies similarly provide that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages ["the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies"] for such . . . 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted." . . .  "However, we will have no duty to defend the insured against any 'suit' seeking . . . 'property damage' to which this insurance does not apply."  Exhibits "S" through "AG"

[3] The Umbrella Liability Policies similarly provide that "[w]e will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies." The "property damage" must be "caused by an 'occurrence' . . . [and] occur[] during the policy period." Exhibits "S" through "AG"

within the ambit of insurance coverage.

67.     The alleged defective construction and resulting damages set forth in Duke's Complaint do not qualify as "property damage" caused by an "occurrence", as is required under the Amerisure Policies.

68.     The mere repair of the work itself does not constitute "property damage" caused by an "occurrence", as those terms are defined under a CGL policy.

69.     Additionally, mere breach of contract claims (*e.g.,* failure to perform, failure to complete) do not qualify as an "occurrence" under a CGL policy.

70.     As any elements and amounts that could be awarded in connection with the alleged repairs done (or to be done) to the 980 High Street Building and the Access Bridges are beyond the coverage of the Amerisure Policies, Amerisure possesses no duty to defend or indemnify Premier Design in regards to the claims and allegations set forth in the Underlying Action.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that Amerisure has no duty to defend and no duty to indemnify Premier Design & Build Group, LLC and Premier Design & Build National, LLC in regards to the Underlying Action and the repair of the 980 High Street Building and the Access Bridges, together with costs and any other further relief this Court deems just and proper.

## COUNT II
## IN THE ALTERNATIVE, SEVERAL EXCLUSIONS
## IN THE AMERISURE POLICIES BAR ANY
## DUTY TO DEFEND OR INDEMNIFY PREMIER DESIGN

71     Amerisure incorporates the allegations set forth within Paragraphs 1 through 62 as if fully set forth herein.

72     In the alternative, if there were any "property damage" alleged in the Underlying

Action, the Damage To Impaired Property Or Property Not Physically Injured exclusion, the Professional Liability exclusion, and the Construction Management Errors and Omissions exclusion apply to bar any coverage for any "property damage" arising out of the design, engineering, supervision, and construction by Premier Design.

73. Complaint in the Underlying Action alleges that "property damage" to "impaired property" arose from defects in Premier Design's work. *See* Exhibit "A" at paragraphs 27, 39 & 53.

74. To the extent that there is any "property damage" to "impaired property" which arose out of the defects in Premier Design's work, the Damage To Impaired Property Or Property Not Physically Injured exclusion operates to bar any coverage for Premier Design.

75. The Complaint in the Underlying Action also alleges that Premier Design failed to properly design and engineer the 980 High Street Building and the Access Bridges. *See* Exhibit "A" at paragraphs 23, 27, 39, 53, 60, 65 & 67.

76. The Complaint in the Underlying Action also alleges that Premier Design failed to properly supervise the construction of the 980 High Street Building and the Access Bridges. *See* Exhibit "A" at paragraphs 60, 66 & 67.

77. The alleged failure to properly design, engineer, and supervise the construction of, the 980 High Street Building and the Access Bridges are allegations that Premier Design failed to render professional services.

78. The Professional Liability exclusion in the Amerisure CGL Policies and the Professional Services exclusion in the Amerisure Umbrella Liability Policies operate to bar any coverage to Premier Design for any alleged "property damage" arising from the failure to properly render professional services.

79.     The Construction Management Errors and Omissions exclusion in the Amerisure CGL Policies excludes any coverage for any "property damage" allegedly arising out of supervision and engineering activities undertaken by Premier Design as construction manager for the 980 High Street Building and Access Bridges.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that Amerisure has no duty to defend Premier Design in the Underlying Action or any indemnity obligation in connection with any award that may be entered against Premier Design in the Underlying Action for the repair of the 980 High Street Building and the Access Bridges, together with costs and any other further relief this Court deems just and proper.

Respectfully submitted,

Plaintiffs, Amerisure Insurance Company and
Amerisure Mutual Insurance Company

By:   /s/ *Donald E. Elder*
            Emerson & Elder, P.C.

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, IL 60604
Tel: (312) 519-8975
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com