**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| vs. | ) ) | No. 1:23-cv-04098 |
| PREMIER DESIGN & BUILD GROUP, LLC, PREMIER DESIGN & BUILD NATIONAL, LLC, ALLIED WORLD NATIONAL ASSURANCE COMPANY, AMERICAN FAMILY HOME INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, AMERICAN CASUALTY CO. OF READING, PA, GEMINI INSURANCE COMPANY, HARLEYSVILLE PREFERRED INSURANCE COMPANY, OLD REPUBLIC GENERAL INSURANCE CORPORATION, SELECTIVE INSURANCE COMPANY OF AMERICA, and ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Sara L. Ellis<br><br>Magistrate Judge Young B. Kim |
| Defendants. | ) ) | |
| PREMIER DESIGN + BUILD GROUP, LLC, and PREMIER DESIGN + BUILD NATIONAL, LLC, | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) ) | |
| vs. | ) ) | |
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs/Counter-Defendants. | ) | |

**AMERISURE INSURANCE COMPANY AND
AMERISURE MUTUAL INSURANCE COMPANY'S
AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure"), by and through their attorneys of record, Emerson & Elder, P.C., and for their Amended Complaint for Declaratory Judgment against Defendants, Premier Design & Build Group, LLC ("Premier Group"), Premier Design & Build National, LLC ("Premier National") (collectively "Premier Group" and "Premier National" shall be referred to as "Premier Design"), and Allied World National Assurance Company ("Allied World"), American Family Home Insurance Company ("AFHIC"), Continental Insurance Company, Continental Casualty Company, and American Casualty Co. of Reading, PA (collectively "CNA"), Gemini Insurance Company ("Gemini"), Harleysville Preferred Insurance Company ("Harleysville"), Old Republic General Insurance Corporation ("Old Republic"), Selective Insurance Company of America ("Selective"), and Zurich American Insurance Company ("Zurich") (these insurers are collectively referred to as the ("Subcontractor Insurers") state as follows:

**I.      NATURE OF ACTION AND RELIEF SOUGHT**

1.      This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      This is a civil action brought by Amerisure seeking a declaration that: they owe no duty to defend or indemnify Premier Design under Commercial General Liability (herein "CGL") insurance policies and Umbrella Liability (herein "Umbrella") insurance policies (collectively referred to herein as "Amerisure Policies") issued by Amerisure to Premier Design in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, Case No.: 2023L004533, filed in the Circuit Court of Cook County, Illinois, Law Division (herein "Underlying Action"); that the

2

Subcontractor Insurers owe Premier Design a primary duty to defend in connection with the Underlying Action; that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design; and that the Subcontractor Insurers are obligated to reimburse Amerisure all amounts that Amerisure has incurred in the defense of Premier Design.

3.     There is an actual, present and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend or indemnify Premier Design in the Underlying Action, whether the Subcontractor Insurers owe Premier Design a primary and non-contributory duty to defend, that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design and that the Subcontractor Insurers owe Amerisure reimbursement of the amounts Amerisure incurred in the defense of Premier Design in the Underlying Action. *See* the Complaint filed in the Underlying Action attached hereto at **Exhibit "A"**.

4.     Amerisure requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that the Subcontractor Insurers owe Premier Design a primary and non-contributory duty to defend, and that the Subcontractor Insurers owe Amerisure reimbursement of amounts that Amerisure has incurred in the defense of Premier Design in the Underlying Action.

## II.     <u>PARTIES</u>

5.     At the time of the commencement of this action, Plaintiff Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan.

6.     At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State

of Michigan.

7.      At the time of the commencement of this action, Defendant Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois.  On information and belief, Premier Group is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

8.      At the time of the commencement of this action, Defendant Premier National is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois.  On information and belief, Premier National is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

9.      At the time of the commencement of this action, Defendant Allied World is a New Hampshire Corporation with its principal place of business in New York, New York.  On information and belief, Allied World is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

10.     At the time of the commencement of this action, Defendant AFHIC is a Florida Corporation with its principal place of business in Jacksonville, Florida.  On information and belief, AFHIC is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

11.     At the time of the commencement of this action, Defendant Continental Insurance Company is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois.

On information and belief, Continental Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

12. At the time of the commencement of this action, Defendant Continental Casualty Company is an Illinois Corporation with its principal place of business in Chicago, Illinois. On information and belief, Continental Casualty Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

13. At the time of the commencement of this action, Defendant American Casualty Company of Reading, Pennsylvania is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois. On information and belief, American Casualty Company of Reading, Pennsylvania is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

14. At the time of the commencement of this action, Defendant Gemini is a Delaware Corporation with its principal place of business in Greenwich, Connecticut. On information and belief, Gemini is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

15. At the time of the commencement of this action, Defendant Harleysville is an Ohio Corporation with its principal place of business in Columbus, Ohio. On information and belief, Harleysville is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern

5

Division, at all times relevant hereto.

16.     At the time of the commencement of this action, Defendant Old Republic is an Illinois with its principal place of business in Chicago, Illinois.  On information and belief, Old Republic is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

17.     At the time of the commencement of this action, Defendant Selective is a New Jersey Corporation with its principal place of business in Branchville, New Jersey.  On information and belief, Selective is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

18.     At the time of the commencement of this action, Defendant Zurich is a New York Corporation with its principal place of business in Schaumburg, Illinois.  On information and belief, Zurich is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

## III.     <u>JURISDICTION AND VENUE</u>

19.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d).

21.     Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute

between the parties herein.

## IV.  BACKGROUND

### A.  The Project

22.     On information and belief, Duke Realty ePort Urban Renewal, LLC ("Duke") is the current owner of certain parcels constituting approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, "the Property").  *See* Exhibit "A" at paragraph 9.

23.     On or about August 18, 2015, Bridge Perth Amboy, LLC entered into a contract with Premier National (the "Contract") to build three warehouse buildings and at least two access bridges (the "Project") on the Property. A true and correct copy of the Contract is attached hereto and incorporated herein at **Exhibit "B"**.  *See* Exhibit "A" at paragraph 12.

24.     On information and belief. Duke is the successor in interest to Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC, which owned the property until on or about November 22, 2017.  *See* Exhibit "A" at paragraph 10.

25.      On information and belief, on November 22, 2017, Bridge Perth Amboy Urban Renewal, LLP assigned the Contract to Duke via an Assignment and Assumption of Service Agreements and Intangibles, a copy of which is attached hereto at **Exhibit "C"**.  *See* Exhibit "A" at paragraph 14.

26.     On information and belief, on or about August 18, 2015, Premier National assigned certain rights and obligations under the Contract to its affiliate, Premier Group, pursuant to a Partial Assignment of Construction Agreement ("Premier Assignment"). On information and belief, pursuant to the Premier Assignment, Premier Group entered into various subcontract

agreements for design and construction of the Project. *See* Exhibit "A" at paragraph 13.

27.     Pursuant to the terms of the Contract, Premier National, then Premier Group, agreed to provide demolition, design, engineering, architectural, and construction services for the Project. *See* Exhibit "B" at §§ 2.1-2.4.

### B.     The Subcontractor Insurers

28.     On information and belief, Allied World issued a Commercial General Liability policy ("CGL") or policies to Premier Design subcontractor Terra Systems, Inc.  Amerisure is not in possession of the Allied World policy although Amerisure has requested a copy of the Allied World policy from Allied World.  A copy of the Allied World policy will be filed upon receipt.

29.     On information and belief, AFHIC issued a CGL policy to Premier Design subcontractor Pillari Bros. Construction Corp.  Amerisure is not in possession of the AFHIC policy although Amerisure has requested a copy of the AFHIC policy from AFHIC.  A copy of the AFHIC policy will be filed upon receipt.

30.     On information and belief, CNA issued CGL policies to Premier Design subcontractor SESI Consulting Engineers.  Amerisure is not in possession of the CNA policies although Amerisure has requested copies of the CNA policies from CNA.  Copies of the CNA policies will be filed upon receipt.

31.     On information and belief, Gemini issued a CGL policy or policies to Premier Design subcontractor Terra Systems, Inc.  Amerisure is not in possession of the Gemini policy or policies although Amerisure has requested a copy/copies of the Gemini policy or policies from Gemini.  A copy/copies of the Gemini policy or policies will be filed upon receipt.

32.     On information and belief, Harleysville issued a CGL policy or policies to Premier Design subcontractor GMAC Construction, LLC.   Amerisure is not in possession of the

8

Harleysville policy or policies although Amerisure has requested a copy/copies of the Harleysville policy or policies from Harleysville. A copy/copies of the Harleysville policy or policies will be filed upon receipt.

33. On information and belief, Old Republic issued a CGL policy or policies to Premier Design subcontractor Pillari Bros. Construction Corp. Amerisure is not in possession of the Old Republic policy or policies although Amerisure has requested a copy/copies of the Old Republic policy or policies from Old Republic. A copy/copies of the Old Republic policy or policies will be filed upon receipt.

34. On information and belief, Selective issued a CGL policy or policies to Premier Design subcontractor GMAC Construction, LLC. Amerisure is not in possession of the Selective policy or policies although Amerisure has requested a copy/copies of the Selective policy or policies from Selective. A copy/copies of the Selective policy or policies will be filed upon receipt.

35. On information and belief, Zurich issued a +CGL policy or policies to Premier Design subcontractor DGI Menard, Inc. Amerisure is not in possession of the Zurich policy or policies although Amerisure has requested a copy/copies of the Zurich policy or policies from Zurich. A copy/copies of the Zurich policy or policies will be filed upon receipt.

**C.      Amerisure's Reservation of Rights Letter to Premier National**

36. On December 4, 2019, Amerisure issued a reservation of rights letter to Premier National which informed Premier National that Amerisure was investigating the claim as to the 980 High Street Building asserted by Duke and requested additional information in regards to the claim, subject to a reservation of rights to deny any coverage. A lawsuit had not been filed by Duke against Premier Design & Build at that time. A copy of the December 4, 2019 reservation of rights letter is attached hereto at **Exhibit "D"**.

**D.     Duke's October 6, 2022 Notice to Premier Group**

37.     Via correspondence from Duke to Premier Group dated October 6, 2022, Duke notified Premier Group of alleged defective construction and resulting damages associated with the 980 High Street Building and that Duke had begun remedial work on the building.  A copy of the October 6, 2022 notice is attached hereto at **Exhibit "E"**.

**E.     Amerisure's Supplemental Reservation of Rights Letter to Premier National**

38.     In correspondence dated April 21, 2023 from Amerisure to Premier National, Amerisure acknowledged receipt of Duke's October 6, 2022 notice to Premier Group, and reserved all rights to deny coverage to Premier National in relation to Duke's claim.  A copy of the April 21, 2023 reservation of rights letter is attached hereto at **Exhibit "F"**.

**F.     The Underlying Action**

39.     On May 1, 2023, Duke filed its Complaint against Premier Design.  Duke seeks damages for the alleged defective construction by Premier Design of the 980 High Street Building and for the construction of two access bridges for the property.  *See* Exhibit "A".

40.     Duke alleges that Premier was involved in the design, engineering, and construction of two bridges for access to and from areas on the Property.  These bridges include the Eastern access bridge and the Western access bridge (collectively the "Access Bridges").  *See* Exhibit "A" at paragraph 21.

41.     Duke alleges that Premier purportedly reviewed the design plans for the Access Bridges and oversaw the construction of the Access Bridges to ensure that they would perform as intended and to ensure that they were built in accordance with the plans and specifications.  *See* Exhibit "A" at paragraph 23.

42.     Duke alleges that the Access Bridges and their foundational elements were poorly

planned, poorly designed, poorly engineered, poorly constructed, and thus not sound or fit for their purposes. *See* Exhibit "A" at paragraph 27.

43.     Duke further alleges that as a result of these defects each of the Access Bridges has suffered significant damage, including but not limited to: (i) settlement of each bridge; (ii) cracks in the frame of each bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. *See* Exhibit "A" at paragraph 28.

44.     Duke alleges that as a result of the alleged defects to the Access Bridges, Duke has been and will continue to be damaged. *See* Exhibit "A" at paragraph 29.

45.     Duke alleges that Premier worked with Menard Group ("Menard") and GEI Consultants, Inc. ("GEI") to develop a system of rigid inclusions or controlled modulus columns ("CMC") to reinforce the soil beneath what Duke terms the 980 High Street Building Extension, to support the 980 High Street Building at the subject property, and to prevent deleterious settlement of the 980 High Street Building. *See* Exhibit "A" at paragraph 32.

46.     Upon information and belief, on February 15, 2017, Bridge Perth Amboy, LLC entered into a lease agreement with Target Corporation ("Target") for Target to lease the 980 High Street Building. *See* Exhibit "A" at paragraph 33.

47.     Duke alleges that in 2019, Target sent it a letter informing Duke of cracking and potential failure of the exterior wall and foundation of the 980 High Street Building. *See* Exhibit "A" at paragraph 34.

48.     As a result of the alleged settlement, the 980 High Street Building sustained extensive damage related to separation and movement between the floor slab and the exterior walls.

49.     Duke alleges that the damage to the 980 High Street Building includes, but is not

11

limited to: separating joints; broken pipes; gaps in flooring; doors separating from walls; settling of wall footing; and visible distress on the inside of the building. *See* Exhibit "A" at paragraph 38.

50.     Duke further alleges that the damage was caused by "excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of CMC's failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement." *See* Exhibit "A" at paragraph 39.

51.     Duke also alleges that it has taken remedial measures to abate further settlement and damage to the 980 High Street Building and to alleviate disruption to its tenant's ongoing business. *See* Exhibit "A" at paragraph 41.

52.     Duke alleges that it has expended substantial amounts of money and sustained substantial damages, and will continue to incur loss and damages as remediation of the building continues, as a result of the settlement at the 980 High Street Building. *See* Exhibit "A" at paragraphs 43 & 44.

53.     In its Complaint against Premier Design, Duke alleges Count I for Breach of Contract for the alleged breach by Premier Design & Build of the Contract, which includes the following alleged failures by Premier:

  a.     Prepare sufficient plans and specifications for the design, engineering, stabilization, and construction of the Access Bridges and the 980 High Street Building;

  b.     Provide materials sufficient for the proper construction of the Access Bridges and the 980 High Street Building;

  c.     Properly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that the soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;

      d.      Properly design the foundational support for the Access Bridges and the 980 High Street Building; and

      e.      Properly supervise the construction of the Access Bridges and the 980 High Street Building to ensure compliance with plans, specifications, and all applicable codes, laws, regulations, and industry standards.

*See* Exhibit "A" at paragraph 53.

54.     As a result of Premier Design's alleged breach of contract, Duke alleges that the 980 High Street Building and the Access Bridges are defective.  *See* Exhibit "A" at paragraph 55.

55.     Duke alleges that it retained experts and contractors to analyze, design, and repair the 980 High Street Building and the Access Bridges.  *See* Exhibit "A" at paragraphs 56 & 57.

56.     For the alleged defective construction of the 980 High Street Building and Access Bridges, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred.  *See* Exhibit "A" at the Wherefore clause to Count I.

57.     Duke also alleges Count II for Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that Premier Design breached its duty to exercise reasonable care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges.  *See* Exhibit "A" at paragraphs 60 & 61.

58.     As a result of Premier Design's alleged breach of its duty to exercise reasonable care, Duke alleges that it has been damaged.  *See* Exhibit "A" at paragraph 62.

59.     For the alleged negligence of Premier Design, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Exhibit "A" at the Wherefore clause to Count II.

60.     Duke also alleges Count III for Professional Negligence, in the alternative, against

Premier Design in Duke's Complaint, alleging that pursuant to the Contract, Premier Design agreed to provide design and engineering services to Duke. *See* Exhibit "A" at paragraph 65.

61. Duke alleges that Premier Design breached its duty to exercise reasonable professional care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges. *See* Exhibit "A" at paragraph 66.

62. Duke also alleges that Premier owed a duty to exercise reasonable professional care in hiring and supervising the contractors and subcontractors working on the design, engineering, and construction of the 980 High Street Building and Access Bridges to ensure that all work was done in accordance with approved plans, applicable specifications, reasonable commercial standards in Premier's respective professional industry for the construction of access bridges and warehouses, and all applicable state and local building codes, regulations, and ordinances. *See* Exhibit "A" at paragraph 67.

63. Duke alleges that Premier Design breached its duty of reasonable professional care which damaged Duke. *See* Exhibit "A" at paragraphs 68 & 69.

64. For Premier Design's alleged breaches of the duty of reasonable professional care, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Exhibit "A" at the Wherefore clause to Count III.

**G.    The Amerisure Policies**

65. Amerisure issued commercial general liability ("CGL") policies and umbrella liability policies to each Premier Design entity, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively "the Amerisure Policies").

66. The Amerisure CGL Policies have a $1 Million Each Occurrence Policy Limit, a

$2 Million General Aggregate Policy Limit, and a $2 Million Products-Completed Operations Aggregate Policy Limit.

67.    The Amerisure Umbrella Liability Policies issued to Premier Design & Group, LLC have a $10 Million Each Occurrence Policy Limit, a $10 Million General Aggregate Policy Limit, and a $10 Million Products-Completed Operations Aggregate Policy Limit.

### 1. Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build Group, LLC

68.    Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build Group, LLC:

- Policy no. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;
- Policy no. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;
- Policy no. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;
- Policy no. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;
- Policy no. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;
- Policy no. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021; and
- Policy no. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022.

Copies of these policies are attached hereto as **Group Exhibit "G"**.

### 2. Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build National, LLC

69.    Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build National, LLC:

- Policy no. CPP 20978480102, with a policy period of July 1, 2016 to July 1, 2017;
- Policy no. CPP 20978480302, with a policy period of July 1, 2017 to July 1, 2018;
- Policy no. CPP 20978480402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CPP 20978480502, with a policy period of July 1, 2019 to July 1, 2020; and

- Policy no. CPP 20978480802, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "H"**.

### 3. Amerisure Insurance Company Umbrella Policies Issued to Premier Design & Build Group, LLC

70.     The Umbrella Liability Policies issued to Premier Design & Build Group, LLC by

Amerisure Insurance Company include:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "I"**.

### 4. Amerisure Mutual Insurance Company Umbrella Policy Issued to Premier Design & Build National, LLC

71.     The Umbrella Liability Policies issued to Premier Design & Build National, LLC

by Amerisure Mutual Insurance Company is the following:

- Policy no. CU 20978490002, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20978490102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20978490202, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20978490402, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20978490502, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20978490602, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20978490702, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "J"**.

72.     The CGL Coverage Part of the CGL Policies states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.  But:

*       *       *

**b**.    This insurance applies to 'bodily injury' and 'property damage' only if:

*       *       *

**(2)**    The 'bodily injury' or 'property damage' occurs during the policy period; . . .

*       *       *

*See* Group Exhibit "G", *e.g.*, Exhibit "G-1" at  p. 154.

73.     The CGL portion of the Amerisure CGL Policies include a Definitions section,

which in part includes the following definitions:

**8.**    'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because:

     **a.**     It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or

     **b.**     You have failed to fulfill the terms of a contract or agreement\'

if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement.

    \*      \*      \*

**13.**     'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    \*      \*      \*

**17.**     'Property damage' means:

     **a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

         For the purposes of this insurance, electronic data is not tangible property.

         As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.**     'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes:

     **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

     **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*     *     *

**21.**   'Your product'

     **a.**    Means:

          **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

               **(a)**    You;

               **(b)**    Others trading under your name; or

               **(c)**    A person or organization whose business or assets you have acquired; or

          **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

     **b.**    Includes:

          **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

          **(2)**    The providing of or failure to provide warnings or instructions.

     **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**   'Your work':

     **a.**    Means:

          **(1)**    Work or operations performed by you or on your behalf; and

19

**(2)**     Materials, parts or equipment furnished in connection with such work or operations.

    **b.**     Includes:

**(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

**(2)**     The providing of or failure to provide warnings or instructions.

*See G*roup Exhibit "G", *e.g.* Exhibit "G-1" at pp. 166, 168-69.

74.     The Amerisure Policies include a Condition titled "Transfer Of Rights Of Recovery Against Others To Us" which states as follows:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them.

*See* Group Exhibit "G", *e.g.* Exhibit "G-1" at p. 166, and Group Exhibit "I", *e.g.*, Exhibit "I-1" at p. 97.

75.     The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

    **a.**     We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured

20

against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply….

\* \* \*

**c.** This insurance applies to 'bodily injury' and 'property damage' only if:

\* \* \*

**(2)** The 'bodily injury' or 'property damage' occurs during the policy period…

\* \* \*

*See* Group Exhibits "I" and "J", *e.g.* Exhibit "I-1" at p. 19.

76. The above-referenced Definitions in the CGL Policies and set forth in Paragraph 58 are included in the Umbrella Liability Policies either verbatim or in substantially similar form. The Umbrella Liability Policies also include the following Definitions:

**19.** 'Retained Limit' means the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention', whichever applies.

**20.** 'Self-insured retention' means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to 'occurrences' or offenses not covered by the 'underlying insurance'. The 'self-insured retention' does not apply to 'occurrences' or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.

\* \* \*

**23.** 'Ultimate net loss' means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent.

**24.** 'Underlying insurance' means any policies of insurance listed in the Declarations under Schedule of 'underlying insurance'.

**25**.    'Underlying insurer' means any insurer who provides any policy of insurance listed in the Schedule of 'underlying insurance'.

*See* Group Exhibits "I" and "J", *e.g.*, Exhibit "I-1" at pp. 35, 36.

### H.    Amerisure's Coverage Position Letters to Premier Design in Connection with the Underlying Action

77.    Amerisure initially denied coverage to Premier Design, but after reconsideration agreed to defend Premier Design under a reservation of rights including to assertion of an excess position as to any coverage owed to Premier Design.

78.    A determination of whether Amerisure owes Premier Design a duty to indemnify is premature and unripe until resolution of the Underlying Action, which is currently ongoing.  Amerisure reserves a determination of the duty to indemnify until the Underlying Action is resolved.

79.    Amerisure has paid more than $75,000 to date for the defense of Premier Design in the Underlying Action, which Amerisure seeks to recover.

### I.    Amerisure's Tenders to Subcontractors and Their Insurers

80.    On January 16, 2024, Amerisure sent tender letters to the following subcontractors, demanding that they defend and indemnify Premier Design pursuant to their subcontracts with Premier Design and requesting that they forward copies of the letters to their insurers:

      a.    DGI-Menard, Inc.

      b.    GMAC Construction, LLC

      c.    Pillari Bros. Construction Corp.

      d.    SESI Consulting Engineers

      e.    Terra Systems, Inc.

*See* the five tender letters referenced above at **Group Exhibit "K"**.

81.     On February 1, 2024, Amerisure sent a tender letter to Premier Design subcontractor SESI Consulting Engineers, demanding that it defend and indemnify Premier Design pursuant to its subcontract with Premier Design and requesting that it forward a copy of the letter to its insurer(s).   On February 27, 2024, CNA responded to the tender to SESI Consulting Engineers, denying any coverage.   A copy of the response is attached hereto as **Exhibit "L"**

> **J.**     **Subcontractor Insurer Responses to Tenders From Premier Design**

82.     Premier Design issued tenders for its defense and indemnity to several of its subcontractors with the following responses:

a.     Gemini, dated September 15, 2023, which issued a policy to Terra Systems, Inc. as named insured, in which Gemini agreed to provide a defense to Premier Design in the Duke Lawsuit.  A copy of the September 15, 2023 correspondence is attached hereto at **Exhibit "M"**.

b.     Selective, dated February 21, 2023, which issued a policy to GMAC Construction, LLC as named insured, in which Selective requested additional information to respond to the tender.  A copy of the February 21, 2023 correspondence is attached hereto at **Exhibit "N"**.

c.     Zurich, dated September 26, 2023, which issued policies to DGI Menard, Inc. as named insured, in which Zurich agreed to provide a defense to Premier Design in the Duke Lawsuit.  A copy of the September 26, 2023 correspondence is attached hereto at **Exhibit "O"**.

d.     Harleysville, dated March 28, 2023, which issued policies to GMAC Construction, LLC as named insured, in which Harleysville denied a duty to defend or

indemnify Premier Design as an additional insured. A copy of the March 28, 2023 correspondence is attached hereto at **Exhibit "P"**.

   e. Old Republic, dated September 1, 2023 and September 20, 2023, which issued a policy to Pillari Bros. Construction Corp. as named insured, in which Old Republic denied any additional insured coverage to Premier Design. A copy of the September 1, 2023 and September 20, 2023 correspondence is attached hereto at **Group Exhibit "Q"**.

   f. Allied World, dated September 25, 2023, which issued a policy to Terra Systems, Inc. as named insured, in which Allied World denied a duty to defend or indemnify Premier Design as an additional insured. A copy of the September 25, 2023 correspondence is attached hereto at **Exhibit "R"**.

**COUNT I**
**THE SUBCONTRACTOR INSURERS OWE PREMIER DESIGN A PRIMARY AND NON-CONTRIBUTORY DEFENSE IN THE UNDERLYING ACTION**

  83. Amerisure incorporates the allegations set forth within Paragraphs 1 through 82 as if fully set forth herein.

  84. Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage. The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed

24

by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

    a.    DGI-Menard, Inc.

    b.    GMAC Construction, LLC

    c.    Pillari Bros. Construction Corp.

    d.    SESI Consulting Engineers[1]

    e.    Terra Systems, Inc.

*See* the Subcontracts attached hereto at **Exhibit "S"**, **Exhibit "T"**, **Group Exhibit "U"**, **Exhibit "V"** and **Exhibit "W"**.

85. The Amerisure CGL Policies include the Other Insurance Condition which states in part:

    **(1)**    This insurance is excess over:

    *    *    *

        **(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

 *See* Group Exhibits "G" and "H", *e.g.*, "G-1" at p. 165.[2]

---

[1] The Subcontract that SESI Consulting Engineers entered into refers to Exhibit "A" in the "Insurance" section although Exhibit "A" is not attached to the SESI Consulting Engineers Subcontract in our possession. Upon information and belief Exhibit "A" to the SESI Consulting Engineers Subcontract is identical to Exhibit "A" to the other Subcontracts that Premier Design Group entered into with other Subcontractors.

[2] The Amerisure Umbrella Policies include a similar Other Insurance Condition which states in pertinent part:

86.     By operation of the Subcontracts and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Action.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that the Subcontractor Insurers, specifically Allied World, AFHIC, CNA, Gemini, Harleysville, National Casualty, Old Republic, Selective, and Zurich, owe Premier Design a primary and non-contributory duty to defend in the Underlying Action as additional insureds under their policies issued to Premier Design Subcontractors, together with costs and any other further relief this Court deems just and proper.

## <u>COUNT II</u>
## <u>THE SUBCONTRACTOR INSURERS OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE HAS INCURRED IN THE DEFENSE OF PREMIER DESIGN IN THE UNDERLYING ACTION</u>

87.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 82 as if fully set forth herein.

88.     Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional

---

This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*See, e.g.* Exhibit "I-1" at p. 31.

insured coverage.  The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:  a. Form Insurance Certificate (Exhibit "A"). . . ."  Exhibit "A" states in part:  "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

     a.     DGI-Menard, Inc.

     b.     GMAC Construction, LLC

     c.     Pillari Bros. Construction Corp.

     d.     SESI Consulting Engineers[3]

     e.     Terra Systems, Inc.

*See* the Subcontracts attached hereto at **Exhibit "S"**, **Exhibit "T"**, **Exhibit "U"**, **Exhibit "V"** and **Exhibit "W"**.

     89.     The Amerisure Policies include the Other Insurance Condition which states in part:

     **(1)**     This insurance is excess over:

     *     *     *

          **(b)**     Any other primary insurance available to you covering liability for damages arising out of the premises or

---

[3] The Subcontract that SESI Consulting Engineers entered into refers to Exhibit "A" in the "Insurance" section although Exhibit "A" is not attached to the SESI Consulting Engineers Subcontract in our possession.  Upon information and belief Exhibit "A" to the SESI Consulting Engineers Subcontract is identical to Exhibit "A" to the other Subcontracts that Premier Design Group entered into with other Subcontractors.

27

> operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibits "G" and "H", *e.g.*, "G-1" at p. 165.[4]
.

90.     By operation of the Subcontracts and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Action.

91.     Amerisure has provided a defense to Premier Design in the Underlying Action that should have been provided by the Subcontractor Insurers.

92.     Amerisure is entitled, as subrogee of Premier Design, to reimbursement of the amounts it has incurred in the defense of Premier Design in the Underlying Action from the Subcontractor Insurers which each owes a primary duty to defend Premier Design in the Underlying Action.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that the Subcontractor Insurers, specifically Allied World, AFHIC, CNA, Gemini, Harleysville, National Casualty, Old Republic, Selective, and Zurich, owe Premier Design a primary and non-

---

[4] The Amerisure Umbrella Policies include a similar Other Insurance Condition which states in pertinent part:

> This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

> When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*See, e.g.*, Exhibit "I-1" at p. 31.

contributory duty to defend in the Underlying Action as additional insureds under their policies issued to Premier Design Subcontractors; the Subcontractors have breached their primary and non-contributory duties to defend Premier Design in the Underlying Action; that Amerisure, as subrogee and excess insurer of Premier Design, is entitled to all attorneys' fees incurred in the defense of Premier Design in the Underlying Action as a result of the Subcontractor Insurers' breach of their duty to defend Premier Design; together with costs and any other further relief this Court deems just and proper.

Respectfully submitted,

Plaintiffs, Amerisure Insurance Company and
Amerisure Mutual Insurance Company

By: __/s/ *Donald E. Elder*_____
      Emerson & Elder, P.C.

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, IL 60604
Tel: (312) 519-8975
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com