## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE
COMPANY,

      Plaintiffs

vs.

PREMIER DESIGN + BUILD GROUP, LLC,
et al.,

      Defendants.

PREMIER DESIGN + BUILD GROUP, LLC
and PREMIER DESIGN + BUILD
NATIONAL, LLC,

      Defendants/Counter-Plaintiffs

vs.

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE
COMPANY,

      Plaintiffs/Counter-Defendants

HARLEYSVILLE PREFERRED
INSURANCE COMPANY et al.,

      Defendants/Counter-Plaintiffs

vs.

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE
COMPANY,

      Plaintiffs/Counter-Defendants, and

PREMIER DESIGN + BUILD GROUP, LLC
and PREMIER DESIGN + BUILD
NATIONAL, LLC,

No. 1:23-cv-04098

Honorable Sara L. Ellis

Magistrate Judge Young B. Kim

Defendants/Counter-Defendants

---

**PLAINTIFFS/COUNTER-DEFENDANTS AMERISURE INSURANCE COMPANY AND
AMERISURE MUTUAL INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE
DEFENSES TO DEFENDANT/COUNTER-PLAINTIFF HARLEYSVILLE
INSURANCE COMPANY'S COUNTERCLAIM**

NOW COME Plaintiffs/Counter-Defendants, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure"), by and through their attorneys of record, and for their Answer and Affirmative Defenses to the Counterclaim filed by Defendant, Harleysville Preferred Insurance Company, and Harleysville Insurance Company of New Jersey and Harleysville Insurance Company (collectively "Harleysville"), and in support thereof state the following:

1.      This is an insurance coverage dispute in which Harleysville seeks a declaration that it does not owe a duty to defend or indemnify the Premier Design companies as additional insureds to certain commercial general liability and umbrella liability insurance policies issued by Harleysville in the lawsuits captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Law Division, Illinois ("Illinois Action") and *Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al*., MID-L-001767- 23, pending in the Superior Court of New Jersey Law Division, Middlesex County ("New Jersey Action"). Both the Illinois Action and New Jersey Action arise from the same construction project ("Project"), but the Illinois Action involves two access bridges and one warehouse building while the New Jersey Action concerns three access bridges.

**ANSWER:**      Amerisure admits that this is an insurance coverage dispute and that Amerisure and Harleysville seek declarations as to policies issued by Amerisure and Harleysville in regard to an action titled *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Illinois ("the Underlying Action") and that in its Counterclaim Harleysville seeks a declaration as to an action titled *Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al*., MID-L-001767- 23, pending in the Superior Court of New Jersey, Middlesex County ("the New Jersey Action"). Amerisure also admits that the Underlying Action

2

and the New Jersey Action arise from a construction project in New Jersey. Amerisure denies that Harleysville does not owe any coverage to Premier Design + Build Group, LLC and Premier Design + Build National, LLC (collectively "Premier Design") under policies issued by Harleysville in regard to the Underlying Action and the New Jersey Action. Amerisure denies any remaining allegations.

2. Harleysville Preferred Insurance Company is an Ohio corporation with its principal place of business in Columbus, Ohio. Harleysville Insurance Company of New Jersey is a New Jersey corporation with its principal place of business in Columbus, Ohio. Finally, Harleysville Insurance Company is an Ohio corporation with its principal place of business in Columbus, Ohio. Harleysville issued certain Commercial General Liability and Umbrella Policies to its named insured GMAC Construction LLC &/or GMAC Construction Inc. ("GMAC"), as described herein.

**ANSWER:** Amerisure admits, on information and belief, that Harleysville Preferred Insurance Company is an Ohio corporation with its principal place of business in Columbus, Ohio, and that the Harleysville entities issued insurance policies to their named insured GMAC Construction LLC and/or GMAC Construction Inc. Amerisure is without sufficient information to either admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

3. Upon information and belief, Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan.

**ANSWER:** Admitted.

4. Upon information and belief, Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State of Michigan.

**ANSWER:** Admitted. Answering further, Amerisure Mutual Insurance Company has its principal place of business in Farmington Hills, Michigan.

5. Upon information and belief, Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois.

**ANSWER:** Admitted.

6. Upon information and belief, Premier National is a Delaware Limited Liability

Company with its principal place of business in Chicago, Illinois.

**ANSWER:** Admitted.

7. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

**ANSWER:** Admitted.

## THE LAWSUITS

### A. The Illinois Action

#### 1. The Complaint

8. The Complaint in the Illinois Action seeks damages arising out of the "design, engineering, and construction" of a warehouse located at 980 High Street, Perth Amboy, New Jersey ("980 High Steet Building") and two access bridges ("Access Bridges") (collectively referred to as the "Property"). (Filing No. 32-1 at ¶ 1).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 8 that are not consistent with

the allegations in the Complaint in the Underlying Action.

9. In the Illinois Action, Duke alleges that Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC ("Bridge Perth") assigned its interest in the Property to it on or about November 22, 2017. (Filing No. 32-1 at ¶ 10).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 9 that are not consistent with

the allegations in the Complaint in the Underlying Action.

10. Prior to the assignment, on August 18, 2015, Bridge Perth allegedly entered into a Contract with Premier National to construct multiple warehouse buildings and access bridges on the Property. (Filing No. 32-1 at ¶ 12).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 10 that are not consistent with

the allegations in the Complaint in the Underlying Action.

11. Premier National then allegedly assigned certain rights and obligations under the

4

contract to its affiliate, Premier Group that entered into various subcontracts for design and construction of the Project. The Complaint in the Illinois Action refers to Premier National and Premier Group collectively as "Premier." (Filing No. 32-1 at ¶ 13).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 11 that are not consistent with the allegations in the Complaint in the Underlying Action.

12. The Complaint in the Illinois Action alleges that the ground underneath the Property has numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. (Filing No. 32- 1 at ¶ 11).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 12 that are not consistent with the allegations in the Complaint in the Underlying Action.

13. The Complaint in the Illinois Action alleges that under the contract, the Premier Design companies agreed to provide demolition, design, engineering, architectural, and construction services for the Project. (Filing No. 32-1 at ¶ 15).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 13 that are not consistent with the allegations in the Complaint in the Underlying Action.

14. The Complaint alleges that the Premier Design companies agreed to perform site work that included: (1) mass excavation and fine grading of the site, including grading necessary to complete floor slabs, pavement areas, and green spaces; and (2) ensuring structural areas were compacted as recommended by a geotechnical engineer. (Filing No. 32-1 at ¶ 17).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 14 that are not consistent with the allegations in the Complaint in the Underlying Action.

15. Further, the Complaint in the Illinois Action alleges the Premier Design companies were advised that there were "deposits of loose, uncontrolled fill materials and a compressible, organic clay stratum below the fill on the Property." (Filing No. 32-1 at ¶ 18).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 15 that are not consistent with

the allegations in the Complaint in the Underlying Action.

16.     The Complaint in the Illinois Action alleges that the Premier Design companies knew that the soil stratum underlying the Property had the potential to cause damaging differential settlements under new load conditions, such as buildings and access bridges, if left untreated. (Filing No. 32-1 at ¶ 19).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 16 that are not consistent with

the allegations in the Complaint in the Underlying Action.

17.     The Complaint in the Illinois Action alleges the Premier Design companies' subcontractors advised them to treat the area beneath the proposed Access Bridges and buildings, including the 980 High Street Building with surcharging (applying excessive vertical load or weight in excess of that associated with the long-term development conditions to accelerate consolidation) to prepare the soil to support the eventual development and construction of access bridges and warehouse buildings.  (Filing No. 32-1 at ¶ 20).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 17 that are not consistent with

the allegations in the Complaint in the Underlying Action.

18.     With respect to the Access Bridges, the Illinois Action alleges that the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses.  (Filing No. 32-1 at ¶ 26).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 18 that are not consistent with

the allegations in the Complaint in the Underlying Action.

19.     Duke claims the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed and thus not sound for their purposes. (Filing No. 32-1 at ¶ 27).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying

Action speak for themselves and deny any allegations in paragraph 19 that are not consistent with

the allegations in the Complaint in the Underlying Action.

20.     Duke asserts that the defects have caused the Access Bridges to suffer significant damages including settlement, cracks in the frame, and gaps, settlement and separation in the

concrete masonry unit blocks making up the retaining walls.  (Filing No. 32-1 at ¶ 28).

**ANSWER:**    Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 20 that are not consistent with the allegations in the Complaint in the Underlying Action.

21.    As to the 980 High Street Building, Duke claims that the Premier Design companies and/or its subcontractors surcharged the portion of the Property where the original footprint of the building was to be built.  (Filing No. 32-1 at ¶ 30).

**ANSWER:**    Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 21 that are not consistent with the allegations in the Complaint in the Underlying Action.

22.    Duke alleges that it was later decided that the footprint of the 980 High Steet Building would be increased and that the additional space would be built on portions of the Property that had not been sufficiently surcharged by the Premier Design companies or its subcontractors ("980 High Street Building Extension").  (Filing No. 32-1 at ¶ 31).

**ANSWER:**    Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 22 that are not consistent with the allegations in the Complaint in the Underlying Action.

23.    The Illinois Action alleges that the Premier Design companies worked with Menard Group and GEI Consultants, Inc. to develop a system of rigid inclusions or controlled modulus columns to reinforce the soil beneath the 980 High Street Building Extension, to support the 980 High Street Building, and to prevent deleterious settlement of the 980 High Street Building.  (Filing No. 32-1 at ¶ 32).

**ANSWER:**    Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 23 that are not consistent with the allegations in the Complaint in the Underlying Action.

24.    After the Project was completed, on February 15, 2017, Bridge Perth allegedly entered into a lease agreement with Target Corporation ("Target") and Target began to lease the 980 High Street Building. (Filing No. 32-1 at ¶ 33).

**ANSWER:**    Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 24 that are not consistent with

the allegations in the Complaint in the Underlying Action.

25.     In 2019, Target sent a letter to Duke informing it of cracking and potential failure of exterior walls and foundation at the 980 High Street Building. (Filing No. 32-1 at ¶ 34).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 25 that are not consistent with the allegations in the Complaint in the Underlying Action.

26.     Thereafter, Duke allegedly hired engineers to monitor the building and determined that the 980 High Street Building was experiencing unusual and deleterious settlement and that such settlement would continue if not properly abated. (Filing No. 32-1 at ¶ 35-36).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 26 that are not consistent with the allegations in the Complaint in the Underlying Action.

27.     The Illinois Action alleges that as a result of the settlement, the 980 High Street Building sustained extensive damage related to the separation and movement between the floor slab and exterior walls and that the damage includes separating joints, broken pipes, gaps in flooring, doors separating from walls, settling of wall footings, and visible distress on the inside of the building. (Filing No. 32-1 at ¶ 36-38).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 27 that are not consistent with the allegations in the Complaint in the Underlying Action.

28.     The Illinois Action alleges the "damage was caused by excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of [the controlled modulus columns] failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement." (Filing No. 32-1 at ¶ 39).

**ANSWER:**     Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 28 that are not consistent with the allegations in the Complaint in the Underlying Action.

29.     Duke has allegedly taken remedial measures to prevent further excessive settlement and continues to monitor to determine whether there is additional settlement, which allegedly has

8

cost Duke substantial amounts of money. (Filing No. 32-1 at ¶ 41-43).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 29 that are not consistent with the allegations in the Complaint in the Underlying Action.

30. In Count I of the Underlying Action, Duke alleges the Premier Design companies owed a duty to address soil conditions, settlement related issues and foundation related issues that would ensure the work and services at the Project would not result in damage to structures erected pursuant to the Contract. (Filing No. 32-1 at ¶ 51).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 30 that are not consistent with the allegations in the Complaint in the Underlying Action.

31. Duke claims that the Premier Design companies breached the Contract because the Premier Design companies failed to: prepare sufficient plans and specifications; provide materials sufficient for proper construction; "[p]roperly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;" "properly design the foundational support for the Access Bridges and the 980 High Street Building;" and to properly supervise construction. (Filing No. 32-1 at ¶ 53).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 31 that are not consistent with the allegations in the Complaint in the Underlying Action.

32. Duke claims that as a direct and proximate result of the Premier Design companies' breaches, Duke has suffered severe, direct and consequential damages. (Filing No. 32-1 at ¶ 58).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 32 that are not consistent with the allegations in the Complaint in the Underlying Action.

33. In Count II of the Underlying Complaint, Duke alleges the Premier Design companies were negligent because they failed to exercise reasonable care in "designing, engineering, constructing, and/or supervising the construction of the Access Bridges and the 980 High Street Building." (Filing No. 32-1 at ¶ 60).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 33 that are not consistent with the allegations in the Complaint in the Underlying Action.

34. In Count III, Duke alleges the Premier Design companies' actions or inactions constituted professional negligence. (Filing No. 32-1 at ¶ 64).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 34 that are not consistent with the allegations in the Complaint in the Underlying Action.

35. Duke alleges the Premier Design companies agreed to provide design and engineering services to Bridge Perth. Duke continues, "[p]ursuant to these services, Premier owed a duty to exercise reasonable professional care in designing, engineering, constructing, and/or supervising the construction. . . in accordance with all approved plans, applicable specifications, reasonable commercial standards . . . and all applicable state and local building codes, regulations, and ordinances." (Filing No. 32-1 at ¶ 66).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 35 that are not consistent with the allegations in the Complaint in the Underlying Action.

36. Further, Duke alleges the Premier Design companies owed a duty to exercise reasonable professional care in hiring and supervising contractors and subcontractors. (Filing No. 32-1 at ¶ 67).

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 36 that are not consistent with the allegations in the Complaint in the Underlying Action.

### 2. Third-Party Actions In The Illinois Action

37. In response to the Illinois Action, the Premier Design companies filed a series of Third-Party Complaints. In addition to the Third-Party Complaint against Harleysville's named insured, GMAC, the Premier Design companies filed Third-Party Complaints against: (1) Bridge Perth and Bridge Development Partners, LLC ("Bridge Development"); (2) Pillari Bros Construction Corp.; (3) Terra Systems, Inc.; (4) Atlantic Engineering Laboratories, Inc.; and (5) DGI-Menard Inc.

**ANSWER:**      Amerisure states that the allegations in the Third-Party Complaints in the Underlying Action speak for themselves and deny any allegations in paragraph 37 that are not consistent with the allegations in the Third-Party Complaints in the Underlying Action.

38.      The Third-Party Complaint in the Illinois Action against Harleysville's named insured, GMAC, alleges that on December 8, 2015, Premier Group and GMAC entered into a Subcontract. A true and correct copy of the Third-Party Complaint, without exhibits, is attached hereto as **Exhibit 1**.

**ANSWER:**      Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action at Exhibit "1" to the Counterclaim speak for themselves and deny any allegations in paragraph 38 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

39.      The Third-Party Complaint in the Illinois Action alleges that pursuant to the agreement, GMAC was hired by Premier Group to provide all labor, material, design, skill and equipment for the Building and Site Concrete at the Project and agreed to submit to jurisdiction in Cook County, Illinois. (Ex. 1 at ¶ 13).

**ANSWER:**      Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action speak for themselves and deny any allegations in paragraph 39 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

40.      The Third-Party Complaint claims that GMAC's work included concrete footing and concrete slabs which Duke alleges experienced movement and excessive settlement. (Ex. 1 at ¶ 29).

**ANSWER:**      Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action speak for themselves and deny any allegations in paragraph 40 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

41.      In Count I, the Third-Party Complaint alleges that GMAC breached its contractual obligations by: performing defective work; failing to perform all work, supervision, labor and materials in accordance with the Subcontract; and failing to defend, indemnify, and hold harmless Premier. (Ex. 1 at ¶ 32).

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action speak for themselves and deny any allegations in paragraph 41 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

42.     The Third-Party Complaint in the Illinois Action alleges that due to the breach of contract, Premier is entitled to recover from GMAC any amount of judgment entered or settlement made in favor of Duke and against the Premier Design companies along with attorneys' fees and costs that the Premier Design companies incurred as a result of defending Duke's lawsuit.  (Ex. 1 at ¶ 34).

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action speak for themselves and deny any allegations in paragraph 42 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

43.     In Count II, the Premier Design companies allege that they are entitled to legal fees and expenses from February 14, 2023 to the present due to GMAC's breach of the indemnification provision in the Subcontract.  (Ex. 1 at ¶ 36).

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action speak for themselves and deny any allegations in paragraph 43 that are not consistent with the allegations in the Third-Party Complaint against GMAC Construction, Inc. in the Underlying Action.

**B.     The New Jersey Action**

**1.     Amended Complaint**

44.     In the Amended Complaint in the New Jersey Action, Duke seeks damages against Defendants Viridian Partners, LLC, NASDI LLC, Moretrench American Corporation, Shippee Engineering, Inc., Think Pavers, Menlo Engineering Associates, Inc., SESI Consulting Engineers, Terra Contracting Services, LLC, FRM Construction Services, Jersey Essay Labs and various unknown architects, professional corporations and contractors arising out of the Defendants' alleged failure to properly design, engineer, and construct a series of Access Bridges that included concrete forms, foundational supports, retaining walls and roadway approaches located in Perth Amboy, New Jersey.  A true and correct copy of the Amended Complaint in the New Jersey Action, without exhibits, is attached hereto as **Exhibit 2**.

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action at Exhibit "2" speak for themselves and deny any allegations in paragraph 44 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

45. Because of Defendants' failures, Duke claims the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which negatively impinge upon Plaintiffs use of its Property. Specifically, Duke seeks damages for the costs associated with mitigating and repairing the damage caused by Defendants' actions. (Ex. 2 at ¶ 3). Duke claims that it is the current owner of certain parcels constituting approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, the "Property"). (Ex. 2 at 19).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 45 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

46. The Amended Complaint alleges the Property was owned by Defendant Viridian, that undertook extensive remediation to initiate redevelopment efforts at the site culminating with a plan for the construction of a warehouse campus on the Property ("Project"). (Ex. 2 at ¶ 21).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 46 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

47. As part of the Project, Viridian planned the construction of three Access Bridges to enable access to and from areas on the Property. These Access Bridges included: (i) the Northern access bridge leading to 980 High Street, Perth Amboy, New Jersey; (ii) the Eastern access bridge leading to 1000 High Street, Perth Amboy, New Jersey; and (iii) the Western access bridge leading to 1000 High Street, Perth Amboy, New Jersey. (Ex. 2 at ¶ 23).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 47 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

48. The Access Bridges were allegedly constructed prior to the construction of the warehouses on the Project. Bridge Perth allegedly purchased the Property from Viridian in or about 2015, and Duke purchased the Property from Bridge Perth in or about November 2017. (Ex. 2 at ¶ 25-26).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 48 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

49. Duke claims that the Defendants purported to review the design plans for the Access Bridges as well as oversee the construction of the Access Bridges to ensure they would perform as intended and to ensure they were built in accordance with the plans and specifications. The three-lane Northern Access Bridge is a concrete arch structure with asphalt roadway above. The Northern Access Bridge allegedly spans utility pipelines running beneath it and provides vehicle access to the warehouse located at 980 High Street, which is currently occupied by Target and used as a Distribution Center. The Eastern Access Bridge and the Western Access Bridge are allegedly concrete arch structures with asphalt roadway above. The Eastern Access Bridge and the Western Access Bridge spanned a drainage creek and provided vehicle access to the warehouse located at 1000 High Street. Duke claims the Defendants entered into a contract with certain unknown design and construction contractors to work on the Access Bridges. (Ex. 2 at ¶ 39-40).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 49 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

50. Duke alleges the Property and the soil beneath it are comprised of numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. Duke claims the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses but the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly constructed, and thus not sound or fit for their purposes. (Ex. 2 at ¶ 42- 44).

**ANSWER:** Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 50 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

51. These defects have allegedly led the Northern Access Bridge to suffer significant damage, including but not limited to: (i) settlement of the Northern Access Bridge; (ii) fractures and depressions in the asphalt roadway; (iii) cracks in the frame of the Northern Access Bridge; and (iv) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls, and therefore, the Northern Access Bridge remains partially closed. The Amended Complaint alleges the Eastern Access Bridge and the Western Access Bridge have also suffered damage, including but not limited to: (i) settlement of the Eastern Access Bridge and Western Access Bridge; (ii) cracks in the frame of the Eastern Access Bridge and the Western Access Bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. (Ex. 2 at ¶ 45-47).

14

**ANSWER:**     Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 51 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

52.     Count I alleges a claim for Breach of Contract due to the insufficient design and construction of the Access Bridges. (Ex. 2 at ¶ 51).

**ANSWER:**     Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 52 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

53.     Count II alleges a claim for Negligence against certain Defendants for breach of their duty to exercise reasonable care in designing, engineering, constructing, and/or supervising the construction of the Access Bridges in accordance with all approved plans, applicable specifications, reasonable commercial standards in the industry for the construction of access bridges, and all applicable state and local building codes, regulations, and ordinances. (Ex. 2 at ¶ 57-59).

**ANSWER:**     Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 53 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

54.     Count III alleges a claim for Professional Negligence against certain Defendants for breaches of their professional duties. (Ex. 2 at ¶ 70).

**ANSWER:**     Amerisure states that the allegations in the Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 54 that are not consistent with the allegations in the Amended Complaint in the New Jersey Action.

## 2.     Third-Party Complaint Against Premier Group

55.     On October 30, 2023, Solis Engineering Services, Inc., d/b/a SESI Consulting Engineers ("SESI") filed a Third-Party Complaint against Premier Group only. SESI claims that Duke filed the Amended Complaint as against various entities, including SESI, alleging defects in three Access Bridges located on the Property in Perth Amboy, New Jersey. A true and correct copy of the Third-Party Complaint in the New Jersey Action is attached hereto as **Exhibit 3**.

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint filed by

15

Solis Engineering Services, Inc. d/b/a SESI Consulting Engineers ("SESI") at Exhibit "3" speak for themselves and deny any allegations in paragraph 55 that are not consistent with the allegations in the SESI Third-Party Complaint.

56.     SESI alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Count I seeks contribution from Premier Group and the other Third-Party Defendants. Count II seeks indemnification from Premier Group and the other Third-Party Defendants. (Ex. 3 at ¶ 11).

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint filed by SESI speak for themselves and deny any allegations in paragraph 56 that are not consistent with the allegations in the SESI Third-Party Complaint.

57.     In Premier Group's Answer, Premier admits that it was a contractor with respect to certain work for the Eastern Access and Western Access Bridges identified in Duke's Amended Complaint. (Ex. 3 at ¶ 6).

**ANSWER:**     Amerisure states that the allegations in the Third-Party Complaint filed by SESI and the Answer of Premier Design + Build Group, LLC to the Third-Party Complaint speak for themselves and deny any allegations in paragraph 57 that are not consistent with the allegations in the SESI Third-Party Complaint and in Premier Design + Build Group, LLC's Answer to the Third-Party Complaint.

## THE SUBCONTRACT, TENDER LETTERS AND DECLINATION LETTER

### 1.     The Subcontract

58.     On December 8, 2015, GMAC and Premier Group entered into the Subcontract for the total sum of $8,339,000. (Filing No. 33-22).

**ANSWER:**     Amerisure states that the Subcontract entered into by GMAC and Premier Design + Build Group, LLC speaks for itself and Amerisure denies any allegations in paragraph 58 that are not consistent with the Subcontract.

59.     Part A of the Subcontract states that the attached Form Insurance Certificate and Scope of Work Exhibits are made a part of the Subcontract. Part C of the Subcontract provides that it is to be interpreted in accordance with the laws of Illinois, and that GMAC agrees to the jurisdiction of any state or federal court in Cook County, Illinois. (Filing No. 33-22).

**ANSWER:**     Amerisure states that the Subcontract entered into by GMAC and Premier

Design + Build Group, LLC speaks for itself and Amerisure denies any allegations in paragraph

59 that are not consistent with the Subcontract.

60.     The Form Insurance Certificate section of the Subcontract is a sample certificate of insurance stating that Premier Group and Premier National are to be "added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project." It further states that "coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis" and that the "Required Form(s)*" are "CG 20 10 10 01- Ongoing Operations AND CG 20 37 10 01." It also requires $1,000,000 each occurrence for general liability and $5,000,000 each occurrence for umbrella liability coverage. The description of operations include the 980 High Street Building, which is identified as Building C in the Subcontract and Change Orders. The Access Bridges are not included in the description of operations on the Form Insurance Certificate. (Filing No. 33- 22 at p. 6-7).

**ANSWER:**     Amerisure states that the Subcontract entered into by GMAC and Premier

Design + Build Group, LLC speaks for itself and Amerisure denies any allegations in paragraph

60 that are not consistent with the Subcontract.

61.     The Scope of Work section of the Subcontract provides that GMAC's scope of work is: (1) Footings (including work and material for trench foundations, excavation, bank pour interior column footings, placing footings, piers and foundations per Contract Documents, installing anchor bolts and setting plates at all steel columns, installing insulation and installing reinforcing materials); (2) Interior Flatwork; (3) Site Work; (4) Fire Pump & Tank House; and (5) Alternates (to install framed interior piers to accommodate Vapor Mitigation Passive System). The Subcontract also incorporates the specifications prepared by Premier Group, which include specifications for Cast-In-Place Concrete and Precast Concrete Wall Panels. (Filing No. 33-22 at p. 8-13).

**ANSWER:**     Amerisure states that the Subcontract entered into by GMAC and Premier

Design + Build Group, LLC speaks for itself and Amerisure denies any allegations in paragraph

61 that are not consistent with the Subcontract.

62.     Premier Group and GMAC entered into several change orders to the Subcontract. Per the Subcontract and Change Orders, GMAC did not perform work on the Access Bridges. It did perform work on the 980 High Street Building, but it did not surcharge the 980 High Street Building, nor did it install the controlled modulus columns which were remedial measures designed to prevent settlement.

**ANSWER:**     Amerisure states that the Subcontract entered into by GMAC and Premier

Design + Build Group, LLC and change orders thereto speak for themselves and Amerisure denies

any allegations in paragraph 62 that are not consistent with the Subcontract and change orders

thereto.

### 3. Tender And Declination Letters

63.     Prior to the filing of the Illinois Action on May 1, 2023, the Premier Design companies' attorney tendered their defense and indemnity on February 14, 2023 to GMAC and the carrier on risk prior to Harleysville, Selective Insurance Company.  A true and correct copy of the tender is attached hereto as **Exhibit 4.**

**ANSWER:**     Amerisure states that the February 14, 2023 correspondence at Exhibit "4"

to the Counterclaim speaks for itself and Amerisure denies any allegations in paragraph 63 that

are not consistent with the correspondence.

64.     The correspondence alleged that the Property:
[S]uffered extensive damage related to separation movement between the floor slab and exterior walls. . . which resulted in interior damage including broken pipes, gaps in flooring, and a door separating from the wall. . . **The cause of the damage was believed to be related to the fact that construction at the site began before surcharging was completed, and the remedial measures taken at the time of construction (including installation of thousands of Controlled Modulus Columns or "CMCs") were performed incorrectly or were insufficient** based on the continued separation movement to date.
(Emphasis added).

**ANSWER:**     Amerisure states that the February 14, 2023 correspondence speaks for

itself and Amerisure denies any allegations in paragraph 64 that are not consistent with the

correspondence.

65.     On March 28, 2023, Harleysville denied the contractual indemnification tender of the Illinois Action and separately sent correspondence on the same date setting forth details of its investigation and reservation rights under the Harleysville Primary Policies.  (Filing No. 33-18).

**ANSWER:**     Amerisure admits that Exhibit "P", Doc. 33-18, to the Amended Complaint

in this action contains March 28, 2023 correspondence from Nationwide on behalf of Harleysville

Preferred Insurance Company and that the correspondence speaks for itself.  Amerisure denies any

allegations in paragraph 65 that are not consistent with the March 28, 2023 correspondence at

Exhibit "P" to the Amended Complaint.

66.     Through correspondence dated January 16, 2024, Amerisure's counsel, Brett L. Warning of Emerson & Elder, tendered the Premier Design companies defense in the Illinois Action to GMAC and requested that GMAC's insurer reimburse Amerisure for all sums that it has paid to date since Harleysville has a primary duty to defend.  (Filing No. 33-13 at p. 6-9).

**ANSWER:**     Amerisure admits that Exhibit "K", Doc. 33-13, to the Amended Complaint in this action contains, amongst other documents, January 16, 2024 correspondence on behalf of Amerisure to GMAC Construction and its insurer and that the correspondence speaks for itself. Amerisure denies any allegations in paragraph 66 that are not consistent with the January 16, 2024 correspondence to GMAC Construction and its insurer at Exhibit "K" to the Amended Complaint.

67.     Through correspondence dated March 7, 2024 from its counsel Emerson & Elder, Amerisure requested that Harleysville acknowledge its primary defense obligation to the Premier Design companies and immediately participate in defending them in the Illinois Action.

**ANSWER:**     Amerisure admits that correspondence dated March 7, 2024 was sent to Harleysville Preferred Insurance Company on behalf of Amerisure and that the correspondence speaks for itself.  Amerisure denies any allegations in paragraph 67 that are not consistent with the March 7, 2024 correspondence to Harleysville Preferred Insurance Company.

68.     Through correspondence dated April 19, 2024, Harleysville denied that it owes a duty to defend or indemnify the Premier Design companies in the Illinois Action because the "property damage" alleged in the Underlying Action was not "caused, in whole or in part" by Harleysville's named insured's concrete work at the Project.  A true and correct copy of the denial letter is attached hereto as **Exhibit 5.**

**ANSWER:**     Amerisure admits that correspondence dated April 19, 2024 sent on behalf of Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey, and Harleysville Insurance Company is at Exhibit "5" to the Counterclaim and that the correspondence speaks for itself.  Amerisure denies any allegations in paragraph 68 that are not consistent with the April 19, 2024 correspondence at Exhibit "5" to the Counterclaim.

69.     Through correspondence dated May 13, 2024, Amerisure tendered Premier Group's defense in the New Jersey Action to Harleysville.  A true and correct copy of the tender correspondence is attached hereto as **Exhibit 6.**

19

**ANSWER:**    Amerisure admits that correspondence dated May 13, 2024 sent on behalf of Amerisure is at Exhibit "6" to the Counterclaim and that the correspondence speaks for itself. Amerisure denies any allegations in paragraph 69 that are not consistent with the May 13, 2024 correspondence at Exhibit "6" to the Counterclaim.

70.    Through correspondence dated May 28, 2024, Harleysville denied that it owes a duty to defend or indemnify the Premier Group in the New Jersey Action because GMAC did not perform work on the Access Bridges, and therefore, the "property damage" alleged in the New Jersey Action was not "caused, in whole or in part" by Harleysville's named insured's concrete work at the Project. A true and correct copy of the denial letter is attached hereto as **Exhibit 7.**

**ANSWER:**    Amerisure admits that correspondence dated May 28, 2024 sent on behalf of Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey, and Harleysville Insurance Company is at Exhibit "7" to the Counterclaim and that the correspondence speaks for itself. Amerisure denies any allegations in paragraph 70 that are not consistent with the May 28, 2024 correspondence at Exhibit "7" to the Counterclaim.

## THE POLICIES

71.    Harleysville    Preferred    Insurance    Company    issued    policy    number MPA00000025695Z containing Commercial General Liability Coverage to its named insured GMAC, which were in effect from June 15, 2017 to June 15, 2018 ("2017 Primary Policy"), June 15, 2018 to June 15, 2019 ("2018 Primary Policy"), June 15, 2019 to June 15, 2020 ("2019 Primary Policy"), June 15, 2020 to June 15, 2021 ("2020 Primary Policy") and June 15, 2021 to June 15, 2022 ("2021 Primary Policy") (collectively "Primary Policies"). Due to size, Harleysville has attached true and correct copies of pertinent portions of the Primary Policies as **Exhibits 8** through **12**, respectively. Complete copies of the Primary Policies are available upon request.

**ANSWER:**    Amerisure admits that Exhibits "8" through "12" to the Counterclaim contain what appear to be portions of insurance policies issued by Harleysville Preferred Insurance Company issued to GMAC Construction LLC and/or GMAC Construction Inc. and that the documents speak for themselves, although Amerisure lacks sufficient information to either admit or deny these documents and therefore demands strict proof thereof. Amerisure denies that Exhibits "8" through "12" include complete copies of insurance policies, and denies any

20

allegations in paragraph 71 that are not consistent with the documents at Exhibits "8" through "12" to the Counterclaim.

72. The Primary Policies each contain limits of $1,000,000 each occurrence, $3,000,00 general aggregate limit (other than products-completed operations) and $3,000,000 products/completed operations aggregate limit.

**ANSWER:** Amerisure admits that Harleysville issued policies that provide insurance coverage to Premier Design that is primary to any coverage provided by the Amerisure's policies. Amerisure lacks sufficient information to either admit or deny the allegations in paragraph 72 and therefore demands strict proof thereof.

73. Harleysville Insurance Company of New Jersey issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC &/or GMAC Construction Inc., which were in effect from June 15, 2017 to June 15, 2018 ("2017 Umbrella Policy") and to GMAC Construction LLC from June 15, 2018 to June 15, 2019 ("2018 Umbrella Policy"). Harleysville Insurance Company issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC, which was in effect from June 15, 2019 to June 15, 2020 ("2019 Umbrella Policy"), June 15, 2020 to June 15, 2021 ("2020 Umbrella Policy"), and June 15, 2021 to June 15, 2022 ("2021 Umbrella Policy") (collectively referred to as "Umbrella Policies"). True and correct copies of the Umbrella Policies are attached hereto as **Exhibits 13** through **17**, respectively.

**ANSWER:** Amerisure admits that Exhibits "13" through "17" to the Counterclaim contain what appear to be portions of insurance policies issued by Harleysville Insurance Company of New Jersey and Harleysville Insurance Company issued to GMAC Construction LLC and/or GMAC Construction Inc. and that the documents speak for themselves, although Amerisure lacks sufficient information to either admit or deny these documents and therefore demands strict proof thereof. Amerisure denies that Exhibits "13" through "17" include complete copies of insurance policies, and denies any allegations in paragraph 73 that are not consistent with the documents at Exhibits "13" through "17" to the Counterclaim.

74. The Umbrella Policies each contain limits of $5,000,000 each occurrence and $5,000,000 aggregate limit.

**ANSWER:** Amerisure admits that Harleysville issued policies that provide insurance

coverage to Premier Design that is primary to any coverage provided by the Amerisure's policies. Amerisure lacks sufficient information to either admit or deny the allegations in paragraph 74 and therefore demands strict proof thereof.

75.    The Primary Policies contain commercial general liability coverage on form CG 00 01 12 07.  The Primary Policies provide in pertinent part:

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 12 07**

**COMMERICIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1)    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of

22

judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

*    *    *

**SECTION V – DEFINITIONS**

*    *    *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*    *    *

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

23

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)**    The providing of or failure to provide warnings or instructions.

*    *    *

**<u>ANSWER:</u>**    Amerisure admits that paragraph 75 contains what appears to be portions of the Harleysville Preferred Insurance Company primary policies. Amerisure denies any allegations in paragraph 75 that are not consistent with the Harleysville Preferred Insurance Company primary policies.

76.    The 2017 Primary Policy contains the following additional insured endorsement on form CG 20 10 07 04, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location and Description of Completed Operations |
|---|---|
| Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on Your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC | All Premier Design + Build Group LLC locations as per written contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations | |

**A.**    **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury"

25

caused, in whole or in part, by:

**1.**     Your acts or omissions; or
**2.**     The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

\*          \*          \*

**B.**     With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.**     All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.**     That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**<u>ANSWER:</u>**     Amerisure admits that the 2017 primary policy issued by Harleysville Preferred Insurance Company includes at least one Additional Insured provision through which Premier Design are given primary insurance coverage.  Amerisure denies any allegations in paragraph 76 that are not consistent with the Additional Insured provision in the Harleysville Preferred Insurance Company 2017 policy referenced in paragraph 76.

\*          \*          \*

77.     The 2017 Primary Policy contains the following additional insured endorsement on form CG 20 37 07 04, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location and Description of Completed Operations |
|---|---|
| Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC | All Premier Design + Build Group LLC locations as per written contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "you work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

\*       \*       \*

     **ANSWER:**   Amerisure admits that the 2017 primary policy issued by Harleysville Preferred Insurance Company includes at least one Additional Insured provision through which Premier Design are given primary insurance coverage. Amerisure denies any allegations in paragraph 77 that are not consistent with the Additional Insured provision in the Harleysville Preferred Insurance Company 2017 policy referenced in paragraph 77.

     78.   The 2018 through 2021 Primary Policies contain the following additional insured endorsement:

  **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

CG-2010 (Ed. 7-04) Addl Insd-Owners, Lessees, or Contr-Sched Person or Org

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Name Of Additional Insured Person(s) Or Organization(s): Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as

additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC.

Location(s) Of Covered Operations: All Premier Design + Build Group LLC locations as per written contract.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   1.  Your acts or omissions; or
   2.  The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B.  With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   1.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   2.  That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*　　*　　*

**ANSWER:**  Amerisure admits that the 2018 through 2021 primary policies issued by Harleysville Preferred Insurance Company include at least one Additional Insured provision through which Premier Design are given primary insurance coverage.  Amerisure denies any allegations in paragraph 78 that are not consistent with the Additional Insured provision in the

28

Harleysville Preferred Insurance Company 2018 through 2021 policies referenced in paragraph 78.

79.     The 2018 through 2021 Primary Policies contain the following additional insured endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

CG-2037 (Ed. 7-04) Addl Insured - Owners, Lessees or Contractors - Completed Operations

This endorsement modifies insurance provided under the following:

COMMERCIAL   GENERAL   LIABILITY   COVERAGE   PART

SCHEDULE

Name Of Additional Insured Person(s) Or Organization(s):Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC.

Location And Description Of Completed Operations: All Premier Design + Build Group LLC locations as per written contract; Concrete construction.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

All other terms and conditions of this Policy remain unchanged.

*     *     *

**ANSWER:**     Amerisure admits that the 2018 through 2021 primary policies issued by Harleysville Preferred Insurance Company include at least one Additional Insured provision through which Premier Design are given primary insurance coverage.  Amerisure denies any allegations in paragraph 79 that are not consistent with the Additional Insured provision in the

Harleysville Preferred Insurance Company 2018 through 2021 policies referenced in paragraph 79.

80.     The Umbrella Policies contain the following form CU 00 01 12 07, which provides in pertinent part:

## COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

       **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

            **(1)**     The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

      **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.**    This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

\*     \*     \*

## SECTION II – WHO IS AN INSURED

\*     \*     \*

**3.**    Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

    Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

\*     \*     \*

## SECTION V – DEFINITIONS

\*     \*     \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*     \*     \*

**18.**    "Property damage" means:

  **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

31

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

With respect to the ownership, maintenance or use of "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

For the purposes of this insurance, with respect to other than the ownership, maintenance or use of "covered autos", electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

                    \*\*\*

**24**.    "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

    **ANSWER:**    Amerisure admits that paragraph 80 includes allegations that appear to be portions of umbrella policies issued to GMAC Construction LLC and/or GMAC Construction Inc. and denies any allegations in paragraph 80 that are no consistent with the language in the umbrella policies.

### COUNT I
#### (No Duty To Defend The Premier Design Defendants As Additional Insureds Under The Primary Policies)

    81.    Harleysville incorporates by reference Paragraphs 1 to 81 as if fully set forth herein.

    **ANSWER:**    Amerisure set forth its Answers to paragraphs 1 through 81 of the Counterclaim as if set forth fully herein.

    82.    The ongoing operations additional insured endorsement in the Primary Policies provides that Premier Group and other organizations that GMAC agreed to name as additional insureds to the Primary Policies are additional insureds "only with respect to liability for … 'property damage' … caused, in whole or in part, by" "[y]our acts or omissions … [i]n the performance of your ongoing operations for the additional insured(s)." In addition to Premier Group, GMAC agreed to name Premier National as an additional insured to the Primary Policies.

**ANSWER:** Amerisure denies any allegations in paragraph 82 that are not consistent with the language in the additional insured endorsements in the Harleysville Preferred Insurance Company primary policies. Amerisure denies the remaining allegations.

83. The completed operations additional insured endorsement in the Primary Policies provides the entities are additional insureds "only with respect to liability for … 'property damage' caused, in whole or in part, by 'your work' … performed for that additional insured and included in the 'products-completed operations hazard.'" "Your work" is defined in part as "[w]ork or operations by [GMAC] or on [GMAC's] behalf."

**ANSWER:** Amerisure denies any allegations in paragraph 83 that are not consistent with the language in the additional insured endorsements in the Harleysville Preferred Insurance Company primary policies. Amerisure denies the remaining allegations.

84. Both the ongoing operations additional insured endorsement and the completed operations additional insured endorsement require the "property damage" to have been "caused, in whole or in part," by GMAC's acts or omissions or GMAC's work performed for the Premier Design defendants.

**ANSWER:** Amerisure denies any allegations in paragraph 84 that are not consistent with the language in the additional insured endorsements in the Harleysville Preferred Insurance Company primary policies. Amerisure denies the remaining allegations.

85. The Complaint in the Illinois Action and the pre-suit tender letter in the Illinois Action do not allege that the "property damage" was caused by GMAC's acts or omissions or GMAC's work, which was concrete work.

**ANSWER:** Denied.

86. Rather, the Complaint in the Illinois Action alleges that the Premier Design companies failure to sufficiently surcharge the 980 High Street Building Extension and failure to develop a system of rigid inclusions or controlled modulus columns (also referred to as CMCs) to reinforce the soil beneath the 980 High Street Building Extension caused the deleterious settlement of the 980 High Street Building. Similarly, the pre-suit tender letter states "[t]he cause of the damage was believed to be related to the fact that construction at the site began before surcharging was completed, and the remedial measures taken at the time of construction (including installation of thousands of Controlled Modulus Columns or "CMCs") were performed incorrectly or were insufficient."

**ANSWER:** Amerisure denies any allegations in paragraph 86 that are not consistent with the allegations in Complaint in the Underlying Action and in the referenced pre-suit tender letter.

87. The Premier Design companies cannot rely on the self-serving allegations in their Third-Party Complaint in the Illinois Action against GMAC to trigger a duty to defend under the Primary Policies.

**ANSWER:** Paragraph 87 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 87 are denied.

88. The Complaint in the New Jersey Action does not allege the "property damage" was caused by GMAC's acts or omissions or GMAC's work, which was concrete work.

**ANSWER:** Denied.

89. The Complaint in the New Jersey Action seeks damages arising from poor design and workmanship on the Access Bridges, which GMAC did not perform work on.

**ANSWER:** Amerisure states that the allegations in the Complaint and Amended Complaint in the New Jersey Action speak for themselves and deny any allegations in paragraph 89 that are not consistent with the allegations in the Complaint and Amended Complaint in the New Jersey Action.

90. Therefore, the "property damage" in the Illinois Action and the New Jersey Action was not "caused, in whole or in part" by GMAC's acts or omissions or GMAC's work performed for the Premier Design companies.

**ANSWER:** Denied.

91. Accordingly, Harleysville does not owe a duty to defend or indemnify the Premier Design companies as additional insureds under the Primary Policies in either the Illinois Action or the New Jersey Action.

**ANSWER:** Denied.

**WHEREFORE**, Plaintiffs/Counter-Defendants, Amerisure Insurance Company and Amerisure Mutual Insurance Company, pray that this Court deny all relief sought by Defendants/Counter-Plaintiffs Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company, dismiss the Counterclaim with

prejudice and deny the relief requested therein, enter final judgment in favor of Amerisure, award Amerisure its costs associated with this action, and for such other relief as the Court deems fair and just.

## AFFIRMATIVE DEFENSES

Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure"), by and through undersigned counsel, set forth the following Affirmative Defenses to Defendants/Counter-Plaintiffs Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company (collectively "Harleysville") Counterclaim:

Pleading strictly in the alternative and on the express understanding that Amerisure has denied and continues to deny those matters denied in the Answer to Harleysville's Counterclaim, Amerisure states as follows by way of Affirmative Defenses. Moreover, by setting forth these Affirmative Defenses, Amerisure does not suggest or agree that it has a burden of proof as to any of those defenses.

### First Affirmative Defense

The insurance policies issued by Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company to GMAC Construction LLC and/or GMAC Construction Inc. provide insurance coverage to Premier Design + Build Group, LLC and Premier Design + Build National, LLC for allegations and any liability against them in the Underlying Action, the New Jersey Action and that coverage is primary to the policies that Amerisure issued to Premier Design + Build Group, LLC and Premier Design + Build National, LLC.

### Second Affirmative Defense

35

Harleysville's Counterclaim quotes only portions of the Harleysville policies without quoting additional language that is pertinent to the issues in this case. The entire language needs to be considered.

### Third Affirmative Defense

Harleysville's Counterclaim quotes only portions of the complaints in the Underlying Action and New Jersey Action without quoting additional language that is pertinent to the issues in this case. The entire language needs to be considered.

### Fourth Affirmative Defense

Based on the Other Insurance Condition in the Amerisure policies, to the extent that any coverage is provided by Amerisure to Premier Design + Build Group, LLC and/or Premier Design + Build National, LLC in the Underlying Action and the New Jersey Action, which Amerisure denies, such coverage is excess of the insurance policies of subcontractors of Premier Design + Build Group, LLC and/or Premier Design + Build National, LLC. The coverage of the other subcontractors' insurers is primary and Amerisure's coverage would be excess and not apply unless and until the insurance policies of the other subcontractors are exhausted.

### Fifth Affirmative Defense

The December 8, 2015 subcontract entered into between Premier Design + Build Group, LLC and GMAC Construction for the project at issue in the Counterclaim requires, at paragraph 8, that GMAC Construction's insurer to provide additional insured coverage to Premier Design + Build Group, LLC and other parties as required by Premier Design + Build Group, LLC for the project on a primary and non-contributory basis.

### Sixth Affirmative Defense

The allegations in the Underlying Action trigger a duty to defend Premier Design by Harleysville Preferred Insurance Company, and if its coverage is exhausted, by Harleysville Insurance Company of New Jersey and Harleysville Insurance Company.

## Seventh Affirmative Defense

The allegations in the New Jersey Action trigger a duty to defend Premier Design + Build Group, LLC by Harleysville Preferred Insurance Company, and if its coverage is exhausted, by Harleysville Insurance Company of New Jersey and Harleysville Insurance Company.

## Eighth Affirmative Defense

The allegations in the Underlying Action trigger a duty to indemnify Premier Design by Harleysville Preferred Insurance Company, and if its coverage is exhausted, by Harleysville Insurance Company of New Jersey and Harleysville Insurance Company, for any judgment against Premier Design or either one of them, or a settlement of Premier Design or either one of them in the Underlying Action.

## Ninth Affirmative Defense

The allegations in the New Jersey Action trigger a duty to indemnify Premier Design + Build Group, LLC by Harleysville Preferred Insurance Company, and if its coverage is exhausted, by Harleysville Insurance Company of New Jersey and Harleysville Insurance Company, for any judgment against Premier Design or either one of them, or a settlement of Premier Design or either one of them in the New Jersey Action.

## Tenth Affirmative Defense

All requirements for any claims for subrogation and/or contribution against Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company have been satisfied as to the Underlying Action.

## Eleventh Affirmative Defense

All requirements for any claims for subrogation and/or contribution against Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company have been satisfied as to the New Jersey Action.

### Twelfth Affirmative Defense

If the exhibits to the Counterclaim that purport to include language in the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company policies issued to GMAC Construction LLC and/or GMAC Construction Inc. are accurate, the allegations in the Underlying Action satisfy the language in the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey, and Harleysville Insurance Company policies issued to GMAC Construction LLC and/or GMAC Construction Inc. that an additional insured is insured with respect to liability for "property damage" caused, in whole or in part, by "your work" at the project, and thus Premier Design qualify as additional insureds under the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company policies as to allegations against Premier Design.

### Thirteenth Affirmative Defense

If the exhibits to the Counterclaim that purport to include language in the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company policies issued to GMAC Construction LLC and/or GMAC Construction Inc. are accurate, the allegations in the New Jersey Action satisfy the language in the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey, and Harleysville Insurance Company policies issued to GMAC Construction LLC and/or GMAC Construction Inc. that an additional insured is insured with respect to liability for "property damage" caused, in whole or in part, by "your work" at the project, and thus Premier Design + Build Group, LLC

qualifies as an additional insured under the Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company policies as to allegations against Premier Design + Build Group, LLC.

### **Fourteenth Affirmative Defense**

Amerisure reserves the right to amend or supplement this Answer with additional defenses should additional information become available that would justify an additional response or responses.

Respectfully submitted,

*/s/ Donald E. Elder*

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, IL 60604
Tel: (312) 519-8975
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 1, 2024, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

*/s/ Donald E. Elder*

Donald E. Elder (IL ARDC #6255889)
Emerson & Elder, P.C.
53 West Jackson Boulevard, Suite 526
Chicago, Illinois 60604

Telephone:  (312) 520-2502
Facsimile:  (312) 265-1603
E-mail: dee@emersonelder.com
*Attorney for Plaintiffs/Counter-Defendants*
*Amerisure Insurance Company and*
*Amerisure Mutual Insurance Company*