**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | No. 1:23-CV-04098 |
| | ) | |
| Plaintiffs, | ) | Honorable Sara L. Ellis |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| PREMIER DESIGN & BUILD GROUP, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PREMIER DESIGN + BUILD GROUP, LLC, and PREMIER DESIGN + BUILD NATIONAL, LLC, | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs/Counter-Defendants. | ) | |

<u>**PLAINTIFF/CROSS-DEFENDANTS AMERISURE INSURANCE COMPANY AND AMERISURE MUTUAL INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/CROSS-PLAINTIFF'S COUNTERCLAIM/CROSS-COMPLAINT FOR DECLARATORY JUDGMENT**</u>

Plaintiff/Counter-Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively, "Amerisure"), by and through their attorneys, and for their Answers & Affirmative Defenses to Allied World National Assurance Company's ("Allied World") Counterclaim/Cross-Complaint for Declaratory Judgment, for its Counterclaim/Cross-Claim for Declaratory Judgment, state as follows:

1.      This is an insurance coverage dispute in which Allied World seeks a declaration that it does not owe a duty to defend or indemnify Premier as an additional insured, or to reimburse

defense costs incurred by Premier's insurer Amerisure, under certain commercial general liability policies issued by Allied World in the lawsuit captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC,* Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Law Division, Illinois (the "Underlying Action").

**ANSWER:** Amerisure admits that this is an insurance coverage dispute and that Amerisure and Allied World seek declarations as to policies issued by Amerisure and Allied World in regard to an action titled *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Illinois ("the Underlying Action"). Amerisure also admits that the Underlying Action arises from a construction project in New Jersey. Amerisure denies that Allied World does not owe any coverage to Premier Design + Build Group, LLC and Premier Design + Build National, LLC (collectively "Premier Design") under policies issued by Allied World in regard to the Underlying Action. Amerisure denies any remaining allegations in paragraph 1.

2. Allied World is a New Hampshire Corporation with its principal place of business in New York, New York.

**ANSWER:** Admitted, on information and belief.

3. Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan. Amerisure Insurance Company transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, Eastern Division, at all times relevant hereto.

**ANSWER:** Admitted.

4. Amerisure Mutual Insurance Company is an insurance company organized and

existing under the laws of the State of Michigan. Amerisure Mutual Insurance Company transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, Eastern Division, at all times relevant hereto.

**ANSWER:** Admitted.

5. Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois. Premier Group transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER:** Admitted, on information and belief.

6. Premier National is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois. Premier National transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER:** Admitted, on information and belief.

7. The Court has subject matter jurisdiction over this counter/cross-claim pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:** Admitted.

**The Underlying Lawsuit**

8. On May 1, 2023, Duke Realty Eport Urban Renewal LLC ("Duke") filed a complaint in the Underlying Action. A true and correct copy of the Complaint filed in the Underlying Lawsuit (the "Underlying Complaint") is attached hereto as **Exhibit A.**

**ANSWER:** Amerisure admits that Duke filed a complaint in the Underlying Action on May 1, 2023. Amerisure states that the allegations in the Complaint in the Underlying Action speak

for themselves and deny any allegations in paragraph 8 that are not consistent with the allegations in the Complaint in the Underlying Action.

9.     The Underlying Complaint seeks damages arising out of the "design, engineering, and construction" of a warehouse located at 980 High Street, Perth Amboy, New Jersey ("980 High Steet Building") and two access bridges ("Access Bridges") (collectively referred to as the "Property"). (*Id.* at ¶ 1).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 9 that are not consistent with the allegations in the Complaint in the Underlying Action.

10.     The Underlying Complaint alleges that Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC ("Bridge Perth") assigned its interest in the Property to Duke on or about November 22, 2017. (*Id.* at ¶ 10).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 10 that are not consistent with the allegations in the Complaint in the Underlying Action.

11.     The Underlying Complaint alleges that prior to that assignment, on August 18, 2015, Bridge Perth entered into a Contract with Premier National to construct multiple warehouse buildings and access bridges on the Property. (*Id.* at ¶ 12).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 11 that are not consistent with the allegations in the Complaint in the Underlying Action.

12.     The Underlying Complaint alleges that Premier National then assigned certain rights and obligations under the contract to its affiliate, Premier Group that entered into various subcontracts for design and construction of the Project. The Underlying Complaint refers to Premier National and Premier Group collectively as "Premier." (*Id.* at ¶ 13).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 12 that are not consistent with the allegations in the Complaint in the Underlying Action.

13.     The Underlying Complaint alleges that the ground underneath the Property has numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. (*Id.* at ¶ 11).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 13 that are not consistent with the allegations in the Complaint in the Underlying Action.

14.     The Underlying alleges that Premier Design agreed to provide demolition, design, engineering, architectural, and construction services for the Project. (*Id.* at ¶ 15).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 14 that are not consistent with the allegations in the Complaint in the Underlying Action.

15.     The Underlying Complaint alleges that Premier Design agreed to perform site work that included: (1) mass excavation and fine grading of the site, including grading necessary to complete floor slabs, pavement areas, and green spaces; and (2) ensuring structural areas were

compacted as recommended by a geotechnical engineer. (*Id.* at ¶ 17).

**ANSWER:**   Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 15 that are not consistent with the allegations in the Complaint in the Underlying Action.

16.   The Underlying Complaint alleges that Premier Design was advised that there were "deposits of loose, uncontrolled fill materials and a compressible, organic clay stratum below the fill on the Property." (*Id.* at ¶ 18).

**ANSWER:**   Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 16 that are not consistent with the allegations in the Complaint in the Underlying Action.

17.   The Underlying Complaint alleges that Premier Design knew that the soil stratum underlying the Property had the potential to cause damaging differential settlements under new load conditions, such as buildings and access bridges, if left untreated. (*Id.* at ¶ 19).

**ANSWER:**   Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 17 that are not consistent with the allegations in the Complaint in the Underlying Action.

18.   The Underlying Complaint alleges Premier Design's subcontractors advised it to treat the area beneath the proposed Access Bridges and buildings, including the 980 High Street Building, with surcharging (applying excessive vertical load or weight in excess of that associated with the long-term development conditions to accelerate consolidation) to prepare the soil to support the eventual development and construction of access bridges and warehouse buildings. (*Id.* at ¶ 20).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 18 that are not consistent with the allegations in the Complaint in the Underlying Action.

19. With respect to the Access Bridges, the Underlying Complaint alleges that the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses. (*Id.* at ¶ 26).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 19 that are not consistent with the allegations in the Complaint in the Underlying Action.

20. The Underlying Complaint alleges that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed and thus not sound for their purposes. (*Id.* at ¶ 27).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 20 that are not consistent with the allegations in the Complaint in the Underlying Action.

21. The Underlying Complaint alleges that the defects caused the Access Bridges to suffer significant damages including settlement, cracks in the frame, and gaps, settlement and separation in the concrete masonry unit blocks making up the retaining walls. (*Id.* at ¶ 28).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 21 that are not

consistent with the allegations in the Complaint in the Underlying Action.

22. As to the 980 High Street Building, the Underlying Complaint alleges that Premier or its subcontractors surcharged the portion of the Property where the original footprint of the building was to be built. (*Id.* at ¶ 30).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 22 that are not consistent with the allegations in the Complaint in the Underlying Action.

23. The Underlying Complaint alleges that it was later decided that the footprint of the 980 High Steet Building would be increased and that the additional space would be built on portions of the Property that had not been sufficiently surcharged by the Premier Design companies or its subcontractors ("980 High Street Building Extension"). (*Id.* at ¶ 31).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 23 that are not consistent with the allegations in the Complaint in the Underlying Action.

24. The Underlying Complaint alleges that Premier worked with Menard Group and GEI Consultants, Inc. to develop a system of rigid inclusions or controlled modulus columns to reinforce the soil beneath the 980 High Street Building Extension, to support the 980 High Street Building, and to prevent deleterious settlement of the 980 High Street Building. (*Id.* at ¶ 32).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 24 that are not consistent with the allegations in the Complaint in the Underlying Action.

25.     The Underlying Complaint alleges that on February 15, 2017, Bridge Perth allegedly entered into a lease agreement with Target Corporation ("Target") and Target began to lease the 980 High Street Building. (*Id.* at ¶ 33).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 25 that are not consistent with the allegations in the Complaint in the Underlying Action.

26.     The Underlying Complaint alleges that Target sent a letter to Duke in 2019 informing it of cracking and potential failure of exterior walls and foundation at the 980 High Street Building. (*Id.* at ¶ 34).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 26 that are not consistent with the allegations in the Complaint in the Underlying Action.

27.     The Underlying Complaint alleges that Duke then hired engineers to monitor the building and determined that the 980 High Street Building was experiencing unusual and deleterious settlement and that such settlement would continue if not properly abated. (*Id.* at ¶ 35- 36).

**ANSWER:**     Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 27 that are not consistent with the allegations in the Complaint in the Underlying Action.

28.     The Underlying Complaint alleges that as a result of the settlement, the 980 High Street Building sustained extensive damage related to the separation and movement between the floor slab and exterior walls and that the damage includes separating joints, broken pipes, gaps in

flooring, doors separating from walls, settling of wall footings, and visible distress on the inside of the building. (*Id.* at ¶ 36-38).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 28 that are not consistent with the allegations in the Complaint in the Underlying Action.

29. The Underlying Complaint alleges the "damage was caused by excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of [the controlled modulus columns] failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement." (*Id.* at ¶ 39).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 29 that are not consistent with the allegations in the Complaint in the Underlying Action.

30. The Underlying Complaint alleges that Duke has taken remedial measures to prevent further excessive settlement and continues to monitor to determine whether there is additional settlement, which allegedly has cost Duke substantial amounts of money. (*Id.* at ¶ 41- 43).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 30 that are not consistent with the allegations in the Complaint in the Underlying Action.

31. The Underlying Complaint asserts claims against Premier for breach of contract, negligence and professional negligence against Premier (*Id.* at ¶ 45– 70).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 31 that are not consistent with the allegations in the Complaint in the Underlying Action.

32. The Underlying Complaint does not assert any claims against Terra. (*See id.*).

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 32 that are not consistent with the allegations in the Complaint in the Underlying Action.

33. The Underlying Complaint does not allege that the damage to the Access Bridges, the 980 High Street Building or the 980 High Street Building Extension was caused, in whole or in part, by Terra. (*See id.*)

**ANSWER:** Amerisure admits that a document purporting to be the Complaint in the Underlying Lawsuit is attached as Exhibit A. Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 33 that are not consistent with the allegations in the Complaint in the Underlying Action.

34. On May 3, 2023, Premier filed a Third-Party Complaint in the Underlying Lawsuit against Terra Systems, Inc. ("Terra") (the "Underlying Third-Party Complaint"). A copy of the Third-Party Complaint is attached as **Exhibit B.**

**ANSWER:** Amerisure admits that a document purporting to be the Third-Party Complaint in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 34 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

35.     The Underlying Third-Party Complaint alleges that Premier and Terra entered into a subcontract agreement on or about February 18, 2016 in connection with the Project. (*Id.* at ¶ 8). The Underlying Third-Party Complaint alleges that Terra was hired to perform work that included, but was not limited to: providing all labor, material, and equipment to complete a Deep Dynamic compaction, and perform the dynamic compaction program as specified by SESI Consulting Engineers. (*Id.* at ¶ 13).

**ANSWER:**     Amerisure admits that a document purporting to be the Third-Party Complaint in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 35 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

36.     The Underlying Third-Party Complaint alleges that Terra was hired to perform work that included, but was not limited to: providing all labor, material, and equipment to complete a Deep Dynamic compaction, and perform the dynamic compaction program as specified by SESI Consulting Engineers. (*Id.* at ¶ 13).

**ANSWER:**     Amerisure admits that a document purporting to be the Third-Party Complaint in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 36 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

37.     The Underlying Third-Party Complaint alleges that the extensive damage related to the separation movement which was allegedly caused by excessive settlement of the building and bridges on the Project included Terra's work. (*Id.* at ¶ 31).

**ANSWER:**     Amerisure admits that a document purporting to be the Third-Party Complaint

in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 37 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

38.     The Underlying Third-Party Complaint alleges that on February 14, 2023, Premier sent Terra and its insurance carrier(s) a letter tendering their defense and indemnity with respect to the allegations and claims made by Duke. (*Id.* at ¶ 28). Premier alleges this was pursuant to the Subcontract Agreement whereby Terra agreed to indemnify and hold harmless Premier from and against all claims from liability and damages caused by Terra's work. (*Id.*).

**ANSWER:**     Amerisure admits that a document purporting to be the Third-Party Complaint in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 38 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

39.     The Underlying Third-Party Complaint asserts claims against Terra for breach of contract, negligence and professional negligence. (*Id.* at ¶ 32-54). It requests that, if judgment is entered in favor of Duke and against Premier in the Underlying Complaint, then judgment be entered against Terra in the Third-Party Complaint in such amount by way of contribution as would be commensurate with the degree of fault attributable to Terra. (*Id.*).

**ANSWER:**     Amerisure admits that a document purporting to be the Third-Party Complaint in the Underlying Lawsuit is attached as Exhibit B. Amerisure states that the allegations in the Third-Party Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 39 that are not consistent with the allegations in the Third-Party Complaint in the Underlying Action.

## The Allied World Policies

40.     Allied World issued commercial general liability policy number 0310-7669 to Terra Systems, Inc. as a named insured on an annual basis for the periods of June 10, 2017 to June 10, 2018 (the "2017 Policy"), June 10, 2018 to June 2019 (the "2018 Policy"), and June 10, 2019 to June 2020 (the "2019 Policy") (collectively, the "Allied World Policies"). True and certified copies of the 2017 Policy, 2018 Policy, and 2019 Policy, are attached hereto as **Exhibits C, D,** and **E**, respectively.

**ANSWER:**     Amerisure admits that Exhibits "C", "D", and "E" to the Counterclaim contain what appear to be portions of insurance policies issued by Allied World to Terra Systems, Inc. and that the documents speak for themselves, although Amerisure lacks sufficient information to either admit or deny these documents and therefore demands strict proof thereof.  Amerisure denies any allegations in paragraph 40 that are not consistent with the documents at Exhibits "C", "D", and "E" to the Counterclaim.

41.     Each of the Allied World Policies provides general liability coverage with limits of $1,000,000 each occurrence and $2 million in the aggregate.

**ANSWER:**     Amerisure admits that Exhibits "C", "D", and "E" to the Counterclaim contain what appear to be portions of insurance policies issued by Allied World to Terra Systems, Inc. and that the documents speak for themselves, although Amerisure lacks sufficient information to either admit or deny these documents and therefore demands strict proof thereof.  Amerisure denies any allegations in paragraph 41 that are not consistent with the documents at Exhibits "C", "D", and "E" to the Counterclaim.

42.     The Allied World Policies' Commercial General Liability Coverage Part (Form CG 00 01 (04-13)) provides, in pertinent part, as follows:

*       *       *

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations . . .

*  *  *

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

 **1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result[.]

*  *  *

  **b.** This insurance applies to . . . "property damage" only if:

   **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The . . . "property damage" occurs during the policy period;

*  *  *

  **ANSWER:** Amerisure states that the Allied World to Terra Systems, Inc. policies speak for themselves and denies any allegations in paragraph 42 that are not consistent with the policies.

  43. The Allied World Policies' Commercial General Liability Coverage Part (Form CG 00 01 (04-13)) contains, in pertinent part, the following relevant definitions:

  **SECTION V – DEFINITIONS**

*  *  *

 **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*  *  *

 **17.** "Property damage" means

15

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**ANSWER:** Amerisure states that the Allied World to Terra Systems, Inc. policies speak for themselves, although Amerisure lacks sufficient information to either admit or deny these documents, and therefore demands strict proof thereof. Amerisure denies any allegations in paragraph 43 that are not consistent with the documents.

### The Dispute

44. Premier and its general liability carrier, Amerisure, tendered the Underlying Lawsuit to Allied World for a defense and indemnity as an additional insured under the Allied World Policies.[1]

**ANSWER:** Admitted.

45. Allied World has determined through its coverage investigation that it owes no duty to defend or indemnify Premier under the Allied World Policies in connection with the claims asserted against it in the Underlying Lawsuit.

**ANSWER:** Amerisure denies that Allied World does not owe a duty to defend and indemnify Premier Design under the Allied World Policies in connection with the claims asserted against it in the Underlying Lawsuit.

46. Allied World now brings this Counterclaim/Cross-Claim to obtain a judicial

---

[1] Premier specifically tendered the Underlying Lawsuit to Allied World under the 2017 Policy. However, for completeness, Allied World seeks a declaration of its obligations under all three consecutive commercial general liability policies issued to Terra. **ANSWER:** Amerisure admits that it tendered the Underlying Lawsuit to Allied World. As to the remaining allegations of this footnote no answer is required to the characterizations contained therein.

determination that the Allied World Policies provide no defense or indemnity to Premier in connection with the claims asserted against it in the Underlying Lawsuit, and that Allied World owes no obligation under the Allied World Policies to reimburse Amerisure in connection with the fees or costs that Amerisure has incurred in defending Premier against the allegations of the Underlying Action.

**ANSWER:** Amerisure denies that Allied World does not owe a duty to defend and indemnify Premier Design under the Allied World Policies in connection with the claims asserted against it in the Underlying Lawsuit.

## COUNT I
### No Duty to Defend Premier under the Allied World Policies

47. Allied World incorporates by reference herein paragraphs 1 through 46, as if fully set forth herein.

**ANSWER:** Amerisure sets forth its Answers to paragraphs 1 through 46 of the Counterclaim as if set forth fully herein.

48. The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies provides: "[Allied World] will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies. [Allied World] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Allied World] will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

**ANSWER:** Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 48 that are not consistent with the Allied World Policies.

49. The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies further provides that the coverage applies to "property damage" caused by an "occurrence" during the policy period.

**ANSWER:** Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 49 that are not consistent with the Allied World Policies.

50. The Allied World Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:** Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 50 that are not consistent with the Allied World Policies.

51. The Underlying Action alleges damage to the Access Bridges, the 980 High Street Building or the 980 High Street Building Extension, all of which were within Premier's scope of work.

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 51 that are not consistent with the allegations in the Complaint in the Underlying Action.

52. Faulty workmanship that causes damage to the insured's own work is not an accident, and therefore not an "occurrence."

**ANSWER:** Paragraph 52 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 52 are denied.

53. The claims against Premier in the Underlying Lawsuit do not allege an "occurrence," as required to satisfy the requirements of the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies.

**ANSWER:** Paragraph 53 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 53 are denied. Answering further, Amerisure denies any allegations in paragraph 53 that are not consistent with the Underlying Action and the language in the Insuring Agreement in the Allied World Policies. Amerisure denies the remaining allegations.

54. Accordingly, Coverage A of the Commercial General Liability Coverage Part of the

Policies does not afford coverage for the claims asserted against Premier in the Underlying Lawsuit because the Insuring Agreement is not satisfied. Allied World has no obligation to defend Premier on this ground.

**ANSWER:**    Denied.

## COUNT II
## No Duty to Indemnify Premier under the Allied World Policies

55.    Allied World incorporates by reference herein paragraphs 1 through 46, as if fully set forth herein.

**ANSWER:**    Amerisure sets forth its Answers to paragraphs 1 through 46 of the Counterclaim as if set forth fully herein.

56.    The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies provides: "[Allied World] will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies."

**ANSWER:**    Denied as phrased.  Amerisure, moreover,  denies any allegations in Paragraph 56 that are not consistent with the Allied World Policies.

57.    The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies further provides that the coverage applies to "property damage" caused by an "occurrence" during the policy period.

**ANSWER:**    Denied as phrased.  Amerisure, moreover, denies any allegations in Paragraph 57 that are not consistent with the Allied World Policies.

58.    The Allied World Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:**    Denied as phrased.  Amerisure, moreover, denies any allegations in Paragraph 58 that are not consistent with the Allied World Policies.

59. The Underlying Action alleges damage to the Access Bridges, the 980 High Street Building or the 980 High Street Building Extension, all of which were within Premier's scope of work.

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 59 that are not consistent with the allegations in the Complaint in the Underlying Action.

60. Faulty workmanship that causes damage to the insured's own work is not an accident, and therefore not an "occurrence."

**ANSWER:** Paragraph 60 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 60 are denied.

61. The claims against Premier in the Underlying Lawsuit do not allege an "occurrence," as required to satisfy the requirements of the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies.

**ANSWER:** Paragraph 61 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 61 are denied. Answering further, Amerisure denies any allegations in paragraph 61 that are not consistent with the Underlying Lawsuit and the language in the Insuring Agreement in the Allied World Policies. Amerisure denies the remaining allegations.

62. Accordingly, Coverage A of the Commercial General Liability Coverage Part of the Policies does not afford coverage for the claims asserted against Premier in the Underlying Lawsuit because the Insuring Agreement is not satisfied. Allied World has no obligation to indemnify Premier on this ground.

**ANSWER:** Denied.

## COUNT II
### Amerisure Is Not Entitled To Reimbursement From Allied World

63.     Allied World incorporates by reference herein paragraphs 1 through 46, as if fully set forth herein.

**ANSWER:**     Amerisure sets forth its Answers to paragraphs 1 through 46 of the Counterclaim as if set forth fully herein.

64.     The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies provides: "[Allied World] will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies. [Allied World] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Allied World] will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

**ANSWER:**     Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 64 that are not consistent with the Allied World Policies.

65.     The Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies further provides that the coverage applies to "property damage" caused by an "occurrence" during the policy period.

**ANSWER:**     Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 65 that are not consistent with the Allied World Policies.

66.     The Allied World Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:**     Denied as phrased. Amerisure, moreover, denies any allegations in Paragraph 66 that are not consistent with the Allied World Policies.

67.     The Underlying Action alleges damage to the Access Bridges, the 980 High Street Building or the 980 High Street Building Extension, all of which were within Premier's scope of work.

**ANSWER:** Amerisure states that the allegations in the Complaint in the Underlying Action speak for themselves and deny any allegations in paragraph 67 that are not consistent with the allegations in the Complaint in the Underlying Action.

68. Faulty workmanship that causes damage to the insured's own work is not an accident, and therefore not an "occurrence."

**ANSWER:** Paragraph 68 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 68 are denied.

69. The claims against Premier in the Underlying Lawsuit do not allege an "occurrence," as required to satisfy the requirements of the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Allied World Policies.

**ANSWER:** Paragraph 69 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 69 are denied. Answering further, Amerisure denies any allegations in paragraph 69 that are not consistent with the Underlying Lawsuit and the language in the Insuring Agreement in the Allied World Policies. Amerisure denies the remaining allegations.

70. Even if Premier qualifies as an additional insured under the Allied World Policies, Coverage A of the Commercial General Liability Coverage Part of the Policies still does not afford coverage for the claims asserted against Premier in the Underlying Lawsuit because the Insuring Agreement is not satisfied.

**ANSWER:** Denied.

71. Accordingly, Amerisure is not entitled to reimbursement from Allied World for the costs and fees it has incurred in defending Premier against the allegations of the Underlying Lawsuit.

**ANSWER:** Denied.

**WHEREFORE**, Plaintiffs/Counter-Defendants, Amerisure Insurance Company and Amerisure Mutual Insurance Company, pray that this Court deny all relief sought by

Defendant/Counter-Plaintiff Allied World National Assurance Company, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Amerisure, award Amerisure its costs associated with this action, and for such other relief as the Court deems fair and just.

## AFFIRMATIVE DEFENSES

Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure"), by and through undersigned counsel, set forth the following Affirmative Defenses to Defendants/Counter-Plaintiff Allied World National Assurance Company's ("Allied World") Counterclaim:

Pleading strictly in the alternative and on the express understanding that Amerisure has denied and continues to deny those matters denied in the Answer to Allied World's Counterclaim, Amerisure states as follows by way of Affirmative Defenses. Moreover, by setting forth these Affirmative Defenses, Amerisure does not suggest or agree that it has a burden of proof as to any of those defenses.

### First Affirmative Defense

The insurance policies issued by Allied World to Terra Systems, Inc. ("Terra") provide insurance coverage to Premier Design + Build Group, LLC and Premier Design + Build National, LLC ("Premier Design") for allegations and any liability against them in the Underlying Action and that coverage is primary to the policies that Amerisure issued to Premier Design.

### Second Affirmative Defense

Allied World's Counterclaim quotes only portions of the Allied World Policies without quoting additional language that is pertinent to the issues in this case. The entire language needs to be considered.

### Third Affirmative Defense

Allied Worlds' Counterclaim quotes only portions of the complaint in the Underlying Action without quoting additional language that is pertinent to the issues in this case. The entire language needs to be considered.

### Fourth Affirmative Defense

Based on the Other Insurance Condition in the Amerisure Policies, to the extent that any coverage is provided by Amerisure to Premier Design + Build Group, LLC and/or Premier Design + Build National, LLC in the Underlying Action, which Amerisure denies, such coverage is excess of the insurance policies of insurers of subcontractors of Premier Design + Build Group, LLC and/or Premier Design + Build National, LLC. The coverage of the subcontractors' insurers is primary and Amerisure's coverage would be excess and not apply unless and until the insurance policies of the subcontractors' insurers are exhausted.

### Fifth Affirmative Defense

The subcontract entered into between Premier Design + Build Group, LLC and Terra for the project at issue in the Counterclaim requires, at paragraph 8, that Terra's insurer is to provide additional insured coverage to Premier Design + Build Group, LLC and other parties as required by Premier Design + Build Group, LLC for the project on a primary and non-contributory basis.

### Sixth Affirmative Defense

The allegations in the Underlying Action trigger a duty to defend Premier Design by Allied World.

### Seventh Affirmative Defense

All requirements for any claims for subrogation and/or contribution against Allied World have been satisfied as to the Underlying Action.

### Eighth Affirmative Defense

If the exhibits to the Counterclaim that purport to include language in the Allied World

Policies issued to Terra are accurate, the allegations in the Underlying Action satisfy the language in the Allied World Policies issued to Terra that an additional insured is insured with respect to liability for "property damage" caused, in whole or in part, by "your work" at the project, and thus Premier Design qualify as additional insureds under the Allied World Policies as to allegations against Premier Design.

## Ninth Affirmative Defense

Amerisure reserves the right to amend or supplement this Answer with additional defenses should additional information become available that would justify an additional response or responses.

Respectfully submitted,

/s/ *Donald E. Elder*

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, IL 60604
Tel: (312) 519-8975
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2024, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

/s/ *Donald E. Elder*

Donald E. Elder (IL ARDC #6255889)
Emerson & Elder, P.C.
53 West Jackson Boulevard, Suite 526
Chicago, Illinois 60604
Telephone: (312) 520-2502
Facsimile: (312) 265-1603
E-mail: dee@emersonelder.com
*Attorney for Plaintiffs/Counter-Defendants*
*Amerisure Insurance Company and*
*Amerisure Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2024, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

/s/ *Donald E. Elder*

Donald E. Elder (IL ARDC #6255889)
Emerson & Elder, P.C.
53 West Jackson Boulevard, Suite 526
Chicago, Illinois 60604
Telephone: (312) 520-2502
Facsimile: (312) 265-1603
E-mail: dee@emersonelder.com
*Attorney for Plaintiffs/Counter-Defendants Amerisure*
*Insurance Company and Amerisure Mutual Insurance*
*Company*