**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | No. 1:23-cv-04098 |
| | ) | Honorable Sara L. Ellis |
| Plaintiffs, | ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| vs. | ) ) | |
| PREMIER DESIGN & BUILD GROUP, LLC; PREMIER DESIGN & BUILD NATIONAL, LLC; ALLIED WORLD NATIONAL ASSURANCE COMPANY; AMERICAN FAMILY HOME INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; AMERICAN CASUALTY CO. OF READING PA; GEMININ INSURANCE COMPANY; HARLEYSVILLE PREFERRED INSURANCE COMPANY; OLD REPUBLIC GENERAL INSURANCE COMPANY; SELECTIVE INSURANCE COMPANY OF AMERICA; AND ZURICH AMERICAN INSURANCE COMPANY | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PREMIER'S ANSWER TO OLD REPUBLIC
GENERAL INSURANCE COMPANY'S CROSSCLAIM**

Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC (collectively, "Premier"), hereby submit their answer to Old Republic General Insurance Company's ("Old Republic") Crossclaim, and state as follows:

1.      Old Republic is an insurance company that issued commercial general liability policy number A-3CG-988715-05 to Pillari Bros. Construction Corp. ("Pillari"), as the first named insured, for the effective period November 1, 2015 to November 1, 2016 (the "Old Republic Policy"). A copy of the Old Republic Policy is attached hereto as **Exhibit 1**.

**ANSWER:**      Premier admits that Old Republic is an insurance company that issued a

commercial general liability insurance policy to Pillari Bros. Construction Corp., and that an insurance policy is attached at Exhibit 1 to the Counterclaim that purports to be the insurance policy. Premier denies any allegations in paragraph 1 that are not consistent with the insurance policy.

2.      Old Republic brings this Counterclaim/Crossclaim for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Premier in the underlying lawsuits captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Illinois Law Division (the "Illinois Action") and *Duke Realty ePort Urban Renewal LLC v. Virdian Partners, LLC, et al.*, Case No. MID- L-001767-23, pending in the Superior Court of Middlesex County, New Jersey Law Division (the "New Jersey Action"). Both the Illinois Action and the New Jersey Action arise from the same construction project (the "Project"), but the Illinois Action involves two access bridges and one warehouse building while the New Jersey Action concerns three access bridges.

**ANSWER:**      Premier admits that Old Republic brings this Counterclaim/Crossclaim for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Premier in the underlying lawsuits captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Illinois Law Division (the "Illinois Action") and *Duke Realty ePort Urban Renewal LLC v. Virdian Partners, LLC, et al.*, Case No. MID-L-001767-23, pending in the Superior Court of Middlesex County, New Jersey Law Division (the "New Jersey Action"). Premier answers further that the Illinois Action and the New Jersey Action speak for themselves and Premier denies any allegations in paragraph 2 that are not consistent with the Illinois Action and the New Jersey Action.

3.      Old Republic seeks a declaration that no coverage is available under the Old Republic Policy for the claims asserted against Premier in the Illinois and New Jersey Actions.

**ANSWER:**      Admitted.

4.      There exists an actual and justiciable controversy among the parties concerning

their respective rights, duties and obligations under and pursuant to the Old Republic Policy. Old Republic contends that it has no obligation to defend or indemnify Premier in connection with the claims made against Premier in the Illinois and New Jersey Actions as set forth in more detail below.

**ANSWER:** Premier admits that an actual and justiciable controversy exists among the parties concerning their respective rights, duties and obligations under and pursuant to the Old Republic Policy. Premier denies that Old Republic does not owe Premier Design an obligation to defend and indemnify in connection with the claims made against Premier Design in the Illinois Action and the New Jersey Action.

5. Old Republic has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Old Republic Policy. A judicial declaration is necessary and appropriate at this time so that Old Republic may ascertain its rights and duties with respect to defense and indemnity under the Old Republic Policy for the claims asserted against Premier in the Illinois and New Jersey Actions.

**ANSWER:** The allegations in paragraph 5 state a legal conclusion to which no answer is required. To the extent that an answer is required, Premier denies the allegations in paragraph 5.

## THE PARTIES

6. Old Republic is, and at all relevant times has been, an insurance company organized under the laws of Delaware, with its principal place of business in Chicago, Illinois, and authorized to issue insurance policies in the State of Illinois.

**ANSWER:** Upon information and belief, admitted.

7. Amerisure Insurance Company is, and at all relevant times has been, an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan. Amerisure Insurance Company transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, Eastern Division.

**ANSWER:** Admitted.

8. Upon information and belief, Amerisure Mutual Insurance Company is, and at all relevant times has been, an insurance company organized and existing under the laws of the state of Michigan. Amerisure Mutual Insurance Company transacts business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, Eastern Division.

**ANSWER:** Admitted.

9.      Premier Group is, and at all relevant times has been, an Illinois limited liability company with its principal place of business in Chicago, Illinois.

**ANSWER:**      Admitted.

10.     Premier National is, and at all relevant times has been, a Delaware limited liability company with its principal place of business in Chicago, Illinois.

**ANSWER:**      Admitted.

11.     This Court has subject matter jurisdiction over this Counterclaim/Crossclaim pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:**      Admitted.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d).

**ANSWER:**      Admitted.

13.     On May 1, 2023, Duke Realty Eport Urban Renewal LLC ("Duke") filed its Complaint in the Illinois Action. A true and correct copy of the Complaint filed in the Illinois Action is attached hereto as **Exhibit 2**.

**ANSWER:**      Premier admits that Duke Realty Eport Urban Renewal, LLC filed a

Complaint in the Illinois Action, and that a copy of the Complaint is attached to Old Republic's

Counterclaim at Exhibit 2.

14.     The Illinois Action seeks damages arising out of the "design, engineering, and construction of a warehouse located at 980 High Street, Perth Amboy, New Jersey ("980 High Street Building") and two access bridges ("Access Bridges") (collectively, referred to as the "Property"). (ECF No. 32-1 at ¶ 1).

**ANSWER:**      Premier states that the allegations in the Illinois Action speak for

themselves and denies any allegations in paragraph 14 that are not consistent with the allegations

in the Illinois Action.

15.     The Illinois Action alleges that Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC ("Bridge Perth") assigned its interest in the Property to Duke on or about November 22, 2017. (ECF No. 32-1 at ¶ 10).

**ANSWER:**      Premier states that the allegations in the Illinois Action speak for

themselves and denies any allegations in paragraph 15 that are not consistent with the allegations in the Illinois Action.

16.     Prior to the assignment, on August 18, 2015, Bridge Perth allegedly entered into a Contract with Premier National to construct multiple warehouse buildings and access bridges on the Property. (ECF No. 32-1 at ¶ 12).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 16 that are not consistent with the allegations in the Illinois Action.

17.     Premier National then allegedly assigned certain rights and obligations under the contract to its affiliate, Premier Group that entered into various subcontracts for design and construction of the Project. The Complaint in the Illinois Action refers to Premier National and Premier Group collectively as "Premier." (ECF No. 32-1 at ¶ 13).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 17 that are not consistent with the allegations in the Illinois Action.

18.     The Illinois Action alleges that the ground underneath the Property has numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. (ECF No. 32-1 at ¶ 11).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 18 that are not consistent with the allegations in the Illinois Action.

19.     The Illinois Action alleges that under the contract, the Premier Design companies agreed to provide demolition, design, engineering, architectural, and construction services for the Project. (ECF No. 32-1 at ¶ 15).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 19 that are not consistent with the allegations in the Illinois Action.

20.     The Illinois Action alleges that the Premier Design companies agreed to perform site work that included: (1) mass excavation and fine grading of the site, including grading necessary to complete floor slabs, pavement areas, and green spaces; and (2) ensuring structural

areas were compacted as recommended by a geotechnical engineer.  (ECF No. 32-1 at ¶ 17).

**ANSWER:**    Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 20 that are not consistent with the allegations in the Illinois Action.

21.    The Illinois Action alleges the Premier Design companies were advised that there were "deposits of loose, uncontrolled fill materials and a compressible, organic clay stratum below the fill on the Property."  (ECF No. 32-1 at ¶ 18).

**ANSWER:**    Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 21 that are not consistent with the allegations in the Illinois Action.

22.    The Illinois Action alleges that the Premier Design companies knew that the soil stratum underlying the Property had the potential to cause damaging differential settlements under new load conditions, such as buildings and access bridges, if left untreated.  (ECF No. 32-1 at ¶ 19).

**ANSWER:**    Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 22 that are not consistent with the allegations in the Illinois Action.

23.    The Illinois Action alleges the Premier Design companies' subcontractors advised them to treat the area beneath the proposed Access Bridges and buildings, including the 980 High Street Building with surcharging (applying excessive vertical load or weight in excess of that associated with the long-term development conditions to accelerate consolidation) to prepare the soil to support the eventual development and construction of access bridges and warehouse buildings.  (ECF No. 32-1 at ¶ 20).

**ANSWER:**    Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 23 that are not consistent with the allegations in the Illinois Action.

24.    With respect to the Access Bridges, the Illinois Action alleges that the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses.  (ECF No. 32-1 at ¶ 26).

**ANSWER:**    Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 24 that are not consistent with the allegations

in the Illinois Action.

25.     Duke claims the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed and thus not sound for their purposes.  (ECF No. 32-1 at ¶ 27).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 25 that are not consistent with the allegations in the Illinois Action.

26.     Duke asserts that the defects have caused the Access Bridges to suffer significant damages including settlement, cracks in the frame, and gaps, settlement and separation in the concrete masonry unit blocks making up the retaining walls.  (ECF No. 32- 1 at ¶ 28).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 26 that are not consistent with the allegations in the Illinois Action.

27.     As to the 980 High Street Building, Duke claims that the Premier Design companies and/or its subcontractors surcharged the portion of the Property where the original footprint of the building was to be built.  (ECF No. 32-1 at ¶ 30).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 27 that are not consistent with the allegations in the Illinois Action.

28.     Duke alleges that it was later decided that the footprint of the 980 High Steet Building would be increased and that the additional space would be built on portions of the Property that had not been sufficiently surcharged by the Premier Design companies or its subcontractors ("980 High Street Building Extension").  (ECF No. 32-1 at ¶ 31).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 28 that are not consistent with the allegations in the Illinois Action.

29.     The Illinois Action alleges that the Premier Design companies worked with Menard Group and GEI Consultants, Inc. to develop a system of rigid inclusions or controlled modulus columns to reinforce the soil beneath the 980 High Street Building Extension, to support the 980 High Street Building, and to prevent deleterious settlement of the 980 High Street Building.  (ECF No. 32-1 at ¶ 32).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 29 that are not consistent with the allegations in the Illinois Action.

30. After the Project was completed, on February 15, 2017, Bridge Perth allegedly entered into a lease agreement with Target Corporation ("Target") and Target began to lease the 980 High Street Building. (ECF No. 32-1 at ¶ 33).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 30 that are not consistent with the allegations in the Illinois Action.

31. In 2019, Target sent a letter to Duke informing it of cracking and potential failure of exterior walls and foundation at the 980 High Street Building. (ECF No. 32-1 at ¶ 34).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 31 that are not consistent with the allegations in the Illinois Action.

32. Thereafter, Duke allegedly hired engineers to monitor the building and determined that the 980 High Street Building was experiencing unusual and settlement and that such settlement would continue if not properly abated. (ECF No. 32-1 at ¶ 35-36).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 32 that are not consistent with the allegations in the Illinois Action.

33. The Illinois Action alleges that as a result of the settlement, the 980 High Street Building sustained extensive damage related to the separation and movement between the floor slab and exterior walls and that the damage includes separating joints, broken pipes, gaps in flooring, doors separating from walls, settling of wall footings, and visible distress on the inside of the building. (ECF No. 32-1 at ¶ 36-38).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 33 that are not consistent with the allegations in the Illinois Action.

34.     Duke has allegedly taken remedial measures to prevent further excessive settlement and continues to monitor to determine whether there is additional settlement, which allegedly has cost Duke substantial amounts of money.  (ECF No. 32-1 at ¶ 41-43).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 34 that are not consistent with the allegations in the Illinois Action.

35.     In Count I of the Underlying Action, Duke alleges the Premier Design companies owed a duty to address soil conditions, settlement related issues and foundation related issues that would ensure the work and services at the Project would not result in damage to structures erected pursuant to the Contract.  (ECF No. 32-1 at ¶ 51).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 35 that are not consistent with the allegations in the Illinois Action.

36.     Duke claims that the Premier Design companies breached the Contract because the Premier Design companies failed to: prepare sufficient plans and specifications; provide materials sufficient for proper construction; "[p]roperly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;" "properly design the foundational support for the Access Bridges and the 980 High Street Building;" and to properly supervise construction. (ECF No. 32-1 at ¶ 53).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 36 that are not consistent with the allegations in the Illinois Action.

37.     Duke claims that as a direct and proximate result of the Premier Design companies' breaches, Duke has suffered severe, direct and consequential damages.  (ECF No. 32-1 at ¶ 58).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 37 that are not consistent with the allegations in the Illinois Action.

38.     In Count II of the Underlying Complaint, Duke alleges the Premier Design companies were negligent because they failed to exercise reasonable care in "designing, engineering, constructing, and/or supervising the construction of the Access Bridges and the 980

High Street Building." (ECF No. 32-1 at ¶ 60).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 38 that are not consistent with the allegations in the Illinois Action.

39. In Count III, Duke alleges the Premier Design companies' actions or inactions constituted professional negligence. (ECF No. 32-1 at ¶ 64).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 39 that are not consistent with the allegations in the Illinois Action.

40. Duke alleges the Premier Design companies agreed to provide design and engineering services to Bridge Perth. Duke continues, "[p]ursuant to these services, Premier owed a duty to exercise reasonable professional care in designing, engineering, constructing, and/or supervising the construction. . . in accordance with all approved plans, applicable specifications, reasonable commercial standards . . . and all applicable state and local building codes, regulations, and ordinances." (ECF No. 32-1 at ¶ 66).

**ANSWER:** Amerisure states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 40 that are not consistent with the allegations in the Illinois Action.

41. Further, Duke alleges the Premier Design companies owed a duty to exercise reasonable professional care in hiring and supervising contractors and subcontractors. (ECF No. 32-1 at ¶ 67).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 41 that are not consistent with the allegations in the Illinois Action.

42. In response to the Illinois Action, the Premier Design companies filed a series of Third-Party Complaints. In addition to the Third-Party Complaint against Old Republic's named insured, Pillari, the Premier Design companies filed Third-Party Complaints against: (1) Bridge Perth and Bridge Development Partners, LLC ("Bridge Development"); (2) GMAC Construction LLC &/or GMAC Construction Inc.; (3) Terra Systems, Inc.; (4) Atlantic Engineering Laboratories, Inc.; and (5) DGI-Menard Inc.

**ANSWER:** Admitted.

43.     The Third-Party Complaint in the Illinois Action against Old Republic's named insured, Pillari, alleges that on October 8, 2015 and November 1, 2017, Premier Group and Pillari entered into a two separate subcontracts. A true and correct copy of the Third- Party Complaint is attached hereto as **Exhibit 3**.

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 43 that are not consistent with the allegations in the Illinois Action.

44.     The Third-Party Complaint in the Illinois Action alleges that pursuant to the agreement, Pillari was hired by Premier Group to provide all labor, material, equipment, layouts and surveys for all project site improvements including earthwork, site utilities, curb & gutter, retaining walls, paving, guide rail, etc. and providing mass excavation site cuts and placement and compaction of certain subbases and site fill. (*Id*. at ¶ 12).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 44 that are not consistent with the allegations in the Illinois Action.

45.     In Count I, the Third-Party Complaint alleges that Pillari breached its contractual obligations by: performing defective work; failing to perform all work, supervision, labor and materials in accordance with the Subcontract; and failing to defend, indemnify, and hold harmless Premier. (*Id*. at ¶ 33).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 45 that are not consistent with the allegations in the Illinois Action.

46.     The Third-Party Complaint in the Illinois Action alleges that due to the breach of contract, Premier is entitled to recover from Pillari any amount of judgment entered or settlement made in favor of Duke and against the Premier Design companies along with attorneys' fees and costs that the Premier Design companies incurred as a result of defending Duke's lawsuit. (Ex. 1 at ¶ 34).

**ANSWER:**     Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 46 that are not consistent with the allegations in the Illinois Action.

47.     In Count II, the Premier Design companies allege that they are entitled to legal fees

and expenses from February 14, 2023 to the present due to Pillari's breach of the indemnification provision in the Subcontract. (Ex. 1 at ¶ 38).

**ANSWER:** Premier states that the allegations in the Illinois Action speak for themselves and denies any allegations in paragraph 47 that are not consistent with the allegations in the Illinois Action.

48.     In the Amended Complaint in the New Jersey Action, Duke seeks damages against Defendants Viridian Partners, LLC, NASDI LLC, Moretrench American Corporation, Shippee Engineering, Inc., Think Pavers, Menlo Engineering Associates, Inc., SESI Consulting Engineers, Terra Contracting Services, LLC, FRM Construction Services, Jersey Essay Labs and various unknown architects, professional corporations and contractors arising out of the Defendants' alleged failure to properly design, engineer, and construct a series of Access Bridges that included concrete forms, foundational supports, retaining walls and roadway approaches located in Perth Amboy, New Jersey. A true and correct copy of the Amended Complaint in the New Jersey Action, without exhibits, is attached hereto as **Exhibit 4**.

**ANSWER:** Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 48 that are not consistent with the allegations in the New Jersey Action.

49.     Because of Defendants' failures, Duke claims the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which negatively impinge upon Plaintiffs use of its Property. Specifically, Duke seeks damages for the costs associated with mitigating and repairing the damage caused by Defendants' actions. (*Id*. at ¶ 3).

**ANSWER:** Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 49 that are not consistent with the allegations in the New Jersey Action.

50.     Duke claims that it is the current owner of certain parcels constituting approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, the "Property"). (*Id*. at ¶ 19).

**ANSWER:** Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 50 that are not consistent with the allegations in the New Jersey Action.

51.     The Amended Complaint alleges the Property was owned by Defendant Viridian, that undertook extensive remediation to initiate redevelopment efforts at the site culminating with

a plan for the construction of a warehouse campus on the Property ("Project"). (*Id*. at ¶ 21).

**ANSWER:** Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 51 that are not consistent with the allegations in the New Jersey Action.

52. As part of the Project, Viridian planned the construction of three Access Bridges to enable access to and from areas on the Property. These Access Bridges included: (i) the Northern access bridge leading to 980 High Street, Perth Amboy, New Jersey; (ii) the Eastern access bridge leading to 1000 High Street, Perth Amboy, New Jersey; and (iii) the Western access bridge leading to 1000 High Street, Perth Amboy, New Jersey. (*Id*. at ¶ 23).

**ANSWER:** Premier states that the allegations in the New Jersey Action speak or themselves and denies any allegations in paragraph 52 that are not consistent with the allegations in the New Jersey Action.

53. The Access Bridges were allegedly constructed prior to the construction of the warehouses on the Project. Bridge Perth allegedly purchased the Property from Viridian in or about 2015, and Duke purchased the Property from Bridge Perth in or about November 2017. (*Id*. at ¶ 25-26).

**ANSWER:** Premier states that the allegations in the New Jersey Action speakfor themselves and denies any allegations in paragraph 53 that are not consistent with the allegations in the New Jersey Action.

54. Duke claims that the Defendants purported to review the design plans for the Access Bridges as well as oversee the construction of the Access Bridges to ensure they would perform as intended and to ensure they were built in accordance with the plans and specifications. The three- lane Northern Access Bridge is a concrete arch structure with asphalt roadway above. The Northern Access Bridge allegedly spans utility pipelines running beneath it and provides vehicle access to the warehouse located at 980 High Street, which is currently occupied by Target and used as a Distribution Center. The Eastern Access Bridge and the Western Access Bridge are allegedly concrete arch structures with asphalt roadway above. The Eastern Access Bridge and the Western Access Bridge spanned a drainage creek and provided vehicle access to the warehouse located at 1000 High Street. Duke claims the Defendants entered into a contract with certain unknown design and construction contractors to work on the Access Bridges. (*Id*. at ¶ 39-40).

**ANSWER:** Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 54 that are not consistent with the allegations in the New Jersey Action.

55.     Duke alleges the Property and the soil beneath it are comprised of numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man- made materials) and, below that, soft, organic, silty clay. Duke claims the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses but the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly constructed, and thus not sound or fit for their purposes. (*Id*. at ¶ 42-44).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 55 that are not consistent with the allegations in the New Jersey Action.

56.     These defects have allegedly led the Northern Access Bridge to suffer significant damage, including but not limited to: (i) settlement of the Northern Access Bridge; (ii) fractures and depressions in the asphalt roadway; (iii) cracks in the frame of the Northern Access Bridge; and (iv) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls, and therefore, the Northern Access Bridge remains partially closed. The Amended Complaint alleges the Eastern Access Bridge and the Western Access Bridge have also suffered damage, including but not limited to: (i) settlement of the Eastern Access Bridge and Western Access Bridge; (ii) cracks in the frame of the Eastern Access Bridge and the Western Access Bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. (*Id*. at ¶ 45- 47).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 56 that are not consistent with the allegations in the New Jersey Action.

57.     Count I alleges a claim for Breach of Contract due to the insufficient design and construction of the Access Bridges. (*Id*. at ¶ 51).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 57 that are not consistent with the allegations in the New Jersey Action.

58.     Count II alleges a claim for Negligence against certain Defendants for breach of their duty to exercise reasonable care in designing, engineering, constructing, and/or supervising the construction of the Access Bridges in accordance with all approved plans, applicable specifications, reasonable commercial standards in the industry for the construction of access bridges, and all applicable state and local building codes, regulations, and ordinances. (*Id*. at ¶ 57-59).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 58 that are not consistent with the

allegations in the New Jersey Action.

59.     Count III alleges a claim for Professional Negligence against certain Defendants for breaches of their professional duties. (*Id*. at ¶ 70).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 59 that are not consistent with the allegations in the New Jersey Action.

60.     On October 30, 2023, Solis Engineering Services, Inc., d/b/a SESI Consulting Engineers ("SESI") filed a Third-Party Complaint against Premier Group only. SESI claims that Duke filed the Amended Complaint as against various entities, including SESI, alleging defects in three Access Bridges located on the Property in Perth Amboy, New Jersey. A true and correct copy of the Third-Party Complaint in the New Jersey Action is attached hereto as **Exhibit 5**.

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 60 that are not consistent with the allegations in the New Jersey Action.

61.     SESI alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Count I seeks contribution from Premier Group and the other Third-Party Defendants. Count II seeks indemnification from Premier Group and the other Third-Party Defendants. (*Id*. at ¶ 11).

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 61 that are not consistent with the allegations in the New Jersey Action.

62.     In Premier Group's Answer, Premier admits that it was a contractor with respect to certain work for the Eastern Access and Western Access Bridges identified in Duke's Amended Complaint.

**ANSWER:**     Premier states that the allegations in the New Jersey Action speak for themselves and denies any allegations in paragraph 62 that are not consistent with the allegations in the New Jersey Action.

63.     Old Republic issued commercial general liability policy number A-3CG- 988715-05 to Pillari Bros. Construction Corp. ("Pillari"), as the first named insured, for the effective period November 1, 2015 to November 1, 2016. The Old Republic Policy provides general liability coverage with limits of $2 million each occurrence and $4 million in the general

aggregate/products-completed operations aggregate.

**ANSWER:**     Upon information and belief, admitted.

64.     Pursuant to the "Amendment Of Insurance Agreement Prior Damage Or Injury" endorsement in the Old Republic Policy, the Insuring Agreement of Coverage A (Bodily Injury and Property Damage Liability) provides, in relevant part:

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> b.     This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2)     The "bodily injury" or "property damage" first takes place during the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place.
>
> c.     All "bodily injury" or "property damage" caused by or arising out of an  "occurrence" is deemed to first take place at the earliest of when:
>
> (1)     Any "bodily injury" or "property damage" first becomes known to anyone; or
>
> (2)     It is alleged that any "bodily injury" or "property damage" first manifests; or
>
> (3)     Notification of the alleged existence of a potential or actual claim for any "bodily injury" or "property damage" is received by the insured, its employees, agents, subsidiary, related entity, subcontractor or representatives; or
>
> (4)     The insured, its employees, agents, subsidiary, related entity or representatives knew of should have known that any "bodily injury" or "property damage" has occurred; or
>
> (5)     Any "bodily injury" or "property damage" began

> regardless of whether the "bodily injury" or "property damage" results in additional related or unrelated claims, is continuous, progressive, repeated, changing or results from exposure to substantially the same general harm.
>
> * * *

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 64 that are not consistent with the policy.

65. The "Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization" endorsement (form no. CG EN GN 0079 06 08) provides, in pertinent part:

> A. **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 65 that are not consistent with the policy.

66. The Schedule of the "Additional Insured – Owners, Lessees Or Contractors – Schedule Person Or Organization" endorsement (form no. CG EN GN 0079 06 08) identifies the following in the "Name of Person or Organization" box – "WHERE REQUIRED BY WRITTEN CONTRACT, BUT ONLY WHERE THE CG 20 10 10/01 OR ITS EQUIVALENT IS SPECIFICALLY REQUIRED."

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 66 that are not consistent with the policy.

67. The "Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization" endorsement (form no. CG 20 10 04 13) provides, in pertinent part:

> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 67 that are not consistent with the policy.

68.     The Schedule of the "Additional Insured – Owners, Lessees Or Contractors – scheduled Person Or Organization" endorsement (form no. CG 20 10 04 13) identifies the following in the "Name Of Additional Insured Person(s) or Organization(s)" box – "WHERE REQUIRED BY WRITTEN CONTRACT."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 68 that are not consistent with the policy.

69.     The "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no. CG EN GN 0080 06 08) provides, in pertinent part:

> **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 69 that are not consistent with the policy.

70.     The Schedule of the "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no. CG EN GN 0080 06 08) identifies the following in the "Name of Person or Organization" box – "WHERE REQUIRED BY WRITTEN CONTRACT, BUT ONLY WHERE THE CG 20 37 10/01 OR ITS EQUIVALENT IS SPECIFICALLY REQUIRED."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 70 that are not consistent with the policy.

71.     The "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no. CG 20 37 04 13) provides, in pertinent part:

> A.     **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 71 that are not consistent with the policy.

72.     The Schedule of the "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no. CG 20 37 04 13) identifies the following in  the "Name Of Additional Insured Person(s) Or Organization(s)" box – "WHERE REQUIRED BY WRITTEN CONTRACT, BUT ONLY WHEN COVERAGE FOR COMPLETED OPERATIONS IS SPECIFICALLY REQUIRED BY THAT CONTRACT."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 72 that are not consistent with the policy.

73.     Coverage under the Insuring Agreement of Coverage A is subject to the following exclusions, which preclude coverage, in pertinent part, as follows:

**2.**     **Exclusions**

This insurance does not apply to:

* * *

**j.**     **Damage To Property**

"Property damage" to:

* * *

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
        * * *

Paragraph **(6)** of this exclusion does not apply to "property damage"
included in the "products-completed operations hazard."

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and  included in the "products-completed operations hazard."

This exclusion does not apply if the damages work or the work out of which  the  damage  arises  was  performed  on  your  behalf  by  a

subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been  physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of another property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**ANSWER:**  The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 73 that are not consistent with the policy.

74.  Pursuant to the "Amended Other Insurance Clause Endorsement," the Old Republic Policy contains an "Other Insurance" provision, which provides, in pertinent part:

**4.  Other Insurance**

If other insurance is available to any insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

(1)  This insurance is excess over:

\* \* \*

(b)  Any of the other insurance, whether primary, excess, contingent or on any other basis that was issued to cover liability for damages arising out of any act, omission, premises or operations, or the "products and completed- operations hazard":

> > (i) On which the insured or any other person or entity qualifying as an insured under Section II – WHO IS AN INSURED, also qualifies as an additional insured of a policy issued to another person or entity; or
> >
> > (ii) On which any additional insured of this policy, also qualifies as an additional insured of a policy described in paragraph (i) immediately above.
>
> (c) Any other insurance, whether primary, excess, contingent or on any other basis available to any person or entity qualifying as an additional insured of this policy, unless our Named Insured has agreed, in a written contract, that the insurance under this policy for the additional insured will be primary to any policy issued to the additional insured as a Named Insured. The contract must be signed and executed prior to the date of loss.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend or participate in the defense of any insured against any "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to that insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

> (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**
As to our Named Insured, if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of

insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any

Allegations in paragraph 74 that are not consistent with the policy.

75.     The Old Republic Policy contains an "Changes Additional Insured Primary Wording Schedule," which provides:

The insurance provided by this endorsement is primary insurance and we will not seek contribution from any other insurance of a like kind available to the person or organization shown in the schedule above unless the other insurance is provided by a contractor other than the person or organization shown in the schedule above for the same operation and job location. If so, we will share with that other insurance by the method described in paragraph 4.c. of Section IV – Commercial General Liability Conditions.

**ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 75 that are not consistent with the policy.

76.     Section V Definitions of the Old Republic Policy contains the following applicable definitions:

**8.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**16.**     "Products-completed operations hazard":

**a.**     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**     Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with

respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.
\* \* \*

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

> **ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 76 that are not consistent with the policy.

77. Pursuant to the "Amendment Of Occurrence Definition Products-Completed Operations Hazard Only" endorsement, "occurrence" is defined as:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> For claims or "suits" seeking damages that are within the "Products-Completed Operations Hazard", an "Occurrence" shall also include a defect in "your work", where the defect is neither expected nor intended from the standpoint of any insured.

> **ANSWER:** The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 77 that are not consistent with the policy.

78. Premier and its general liability carrier, Amerisure, tendered the Illinois and New Jersey Actions to Old Republic for a defense and indemnity as an additional insured under the Old Republic Policy.

5135897 v1 -

**ANSWER:**    Admitted.

79.    Old Republic has determined through its coverage investigation that it owes no duty to defend or indemnify Premier under the Old Republic Policy in connection with the claims asserted against Premier in the Illinois and New Jersey Actions.

**ANSWER:**    Premier denies that Old Republic does not owe Premier a duty to defend or indemnify under the Old Republic Policy in connection with the claims asserted against Premier in the Illinois and New Jersey Actions.

## COUNT I
### (No Duty To Defend Or Indemnify The Premier Defendants As Additional Insureds Under The Old Republic Policy)

80.    Old Republic incorporates by reference herein Paragraphs 1 through 79 as if fully set forth herein.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 79 as if set forth fully herein.

81.    Premier is only entitled to coverage as an additional insured under the "Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization" endorsement (form no. CG EN GN 0079 06 08) for liability arising out of Pillari's ongoing operations performed for Premier.

**ANSWER:**    The allegations of Paragraph 81 contain legal conclusions to which no answer is required.  To the extent an answer is required, Premier denies the allegations of paragraph 81.

82.    Premier is only entitled to coverage as an additional insured under the "Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization" endorsement (form no. CG 20 10 04 13) to the extent any "property damage" alleged in the Underlying Lawsuit is caused, in whole or in part, by the acts or omissions of Pillari or those acting on behalf of Pillari in the performance of Pillari's ongoing operations.

**ANSWER:**    The allegations of Paragraph 82 contain legal conclusions to which no answer is required.  To the extent an answer is required, Premier denies the allegations of paragraph 82.

83.    Premier is only entitled to coverage as an additional insured under the "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no.

CGEN GN 0080 06 08) for liability arising out of Pillari's "work" performed for Premier and included in the "products-completed operations hazard."

**ANSWER:** The allegations of Paragraph 83 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 83.

84.     Premier is only entitled to coverage as an additional insured under the "Additional Insured – Owners, Lessees Or Contractors – Completed Operations" endorsement (form no. CG 20 37 04 13) for liability for "property damage" caused, in whole or in part, by Pillari's "work" performed for Premier and included in the "products-completed operations hazard."

**ANSWER:** The allegations of Paragraph 84 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 84.

85.     The Illinois Action does not allege that the "property damage" arose out of or was caused, in whole or in part by, Pillari's acts or omissions (or those acting on behalf of Pillari) or Pillari's work.

**ANSWER:** Denied.

86.     The New Jersey Action does not allege that the "property damage" arose out of or was caused, in whole or in part by, Pillari's acts or omissions (or those acting on behalf of Pillari) or Pillari's work.

**ANSWER:** Denied.

87.     Accordingly, Old Republic does not owe a duty to defend or indemnify Premier as additional insureds under the Old Republic Policy in either the Illinois Action or New Jersey Action.

**ANSWER:** Denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Old Republic General Insurance Corporation, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and

just.

## COUNT II
### (No Duty To Defend Or Indemnify The Premier Defendants As Additional Insureds As The Insuring Agreement Of The Old Republic Policy Is Not Satisfied)

88.    Old Republic incorporates by reference herein Paragraphs 1 through 87 as if fully set forth herein.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 87 as if set forth fully

herein.

89.    Pursuant to the "Amendment Of Insurance Agreement Prior Damage Or Injury" endorsement, the Insuring Agreement of Coverage A of the Commercial General Liability Part of the Old Republic Policy provides: "[Old Republic] will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' … caused by an 'occurrence' … during the policy period."

**ANSWER:**    The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 89 that are not consistent with the policy.

90.    The Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured."

**ANSWER:**    Denied as phrased.

91.    The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." For claims or "suits" seeking damages that are within the "Products-Completed Operations Hazard", an "occurrence" shall also include a defect in "your work", where the defect is neither expected nor intended from the standpoint of any insured.

**ANSWER:**    The allegations of Paragraph 91 contain legal conclusions to which no

answer is required. To the extent an answer is required, Premier denies the allegations of paragraph

91.

92.    There is no coverage available under the Old Republic Policy to the extent the damage alleged in the Illinois Action and New Jersey Action does not qualify as "property damage" caused by an "occurrence" as those terms are defined in the Old Republic Policy.

**ANSWER:**    The allegations of Paragraph 92 contain legal conclusions to which no

answer is required. To the extent an answer is required, Premier denies the allegations of paragraph

92.

93.     Pursuant to the "Amendment Of Insurance Agreement Prior Damage Or Injury" endorsement, the Insuring Agreement of Coverage A of the Commercial General Liability Part of the Old Republic Policy provides: "[Old Republic] will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' … caused by an 'occurrence'… during the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place."

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations

in paragraph 93 that are not consistent with the policy.

94.     Under the Old Republic Policy, "property damage" caused by or arising out of an "occurrence" is deemed to first take place at the earliest of when: (1) any "property damage" first becomes known to anyone; (2) it is alleged that any "property damage" first manifests; (3) notification of the alleged existence of a potential or actual claim for any "property damage" is received by the insured, its employees, agents, subsidiary, related entity, subcontractor or representative; (4) the insured, its employees, agents, subsidiary, related entity or representatives knew or should have known that any "property damage" has occurred; or (5) any "property damage" began.

**ANSWER:**     The allegations of Paragraph 94 contain legal conclusions to which no

answer is required.  To the extent an answer is required, Premier denies the allegations of paragraph

94.

95.     The Old Republic Policy was in effect from November 1, 2015 to November 1, 2016.

**ANSWER:**     Upon information and belief, admitted.

96.     The Illinois Action and New Jersey Action do not allege "property damage" that occurred during the policy period (November 1, 2015 to November 1, 2016).

**ANSWER:**     Denied.

97.     Accordingly, Old Republic does not owe a duty to defend or indemnify Premier as additional insureds under the Old Republic Policy in either the Illinois Action or New Jersey Action.

**ANSWER:**    Denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Old Republic General Insurance Corporation, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

<u>**COUNT III**</u>
**(No Duty To Defend Or Indemnify The Premier Defendants As Additional Insureds As Various Exclusions Of The Old Republic Policy Apply To Preclude Coverage)**

98.    Old Republic incorporates by reference herein Paragraphs 1 through 97 as if fully set forth herein.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 97 as if set forth fully herein.

99.    To the extent the Premier Defendants qualify as additional insureds and the Insuring Agreement of Coverage A in the Old Republic Policy is satisfied, which Old Republic does not concede, the Old Republic Policy contains the following exclusions that apply to preclude coverage for the Premier Defendants:

2.    **Exclusions**

This insurance does not apply to:

* * *

**j.    Damage To Property**

"Property damage" to:

* * *

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage"

` included in the "products-completed operations hazard."

### k.     Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l.     Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damages work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m.     Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of another property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**ANSWER:**     The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 99 that are not consistent with the policy.

100.     Accordingly, Old Republic does not owe a duty to defend or indemnify Premier as additional insureds under the Old Republic Policy in either the Illinois Action or New Jersey Action.

**ANSWER:** Denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Old Republic General Insurance Corporation, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

## COUNT IV
### (In The Alternative – No Duty To Reimburse Amerisure For Costs Or Fees Incurred Prior To The Filing Of The Illinois And New Jersey Actions)

101.    Old Republic incorporates by reference herein Paragraphs 1 through 100 as if fully set forth herein.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 100 as if set forth fully herein.

102.    To the extent the Premier Defendants qualify as additional insureds and the Insuring Agreement of Coverage A in the Old Republic Policy is satisfied, which Old Republic does not concede, pursuant to the "Amendment Of Insurance Agreement Prior Damage Or Injury" endorsement, the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part of the Old Republic Policy provides Old Republic has the right and duty to defend an insured against a "suit" seeking covered damages.

**ANSWER:**    The allegations of Paragraph 102 contain legal conclusions to which no answer is required.  To the extent an answer is required, Premier denies the allegations of paragraph 102.

103.    The Old Republic Policy defines "suit" to mean "a civil proceeding in which damages because of … 'property damage' … to which this insurance applies are alleged" and includes "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent" or "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

**ANSWER:**    The Old Republic Policy speaks for itself and Premier denies any allegations in paragraph 103 that are not consistent with the policy.

104.    To the extent Old Republic is found to have a duty to defend Premier under the Old Republic Policy, Old Republic has no obligation to reimburse for any costs or fees incurred prior to the initiation of the Illinois Action and New Jersey Action.

**ANSWER:**    Denied.

**WHEREFORE**, Plaintiffs/Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Old Republic General Insurance Corporation, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

## COUNT V
### (In The Alternative – The Old Republic Policy Is Excess Of All Other Applicable Insurance Under Which The Premier Defendants Qualify As Additional Insureds)

105.    Old Republic incorporates by reference herein Paragraphs 1 through 104 as if fully set forth herein.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 104 as if set forth fully herein.

106.    Pursuant to the "Amended Other Insurance Clause Endorsement," the Old Republic Policy contains an "Other Insurance" provision, which provides, in pertinent part, that the Old Republic Policy is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that was issued to cover liability for damages arising out of any act, omission, premises or operations in the "products and completed-operations hazard" (i) on which the insured or any other person or entity qualifying as an insured under Section II – Who Is An Insured also qualifies as an additional insured of a policy issued to another person or entity; or (ii) on which any additional insured of this policy, also qualifies as an additional insured of a policy described in paragraph (i).

**ANSWER:**    The allegations of Paragraph 106 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 106.

107.    To the extent the Premier Defendants qualify as additional insureds and the Insuring Agreement of Coverage A in the Old Republic Policy is satisfied, which Old Republic does not concede, and there is other insurance available to Premier for the Illinois Action and New Jersey Action as an additional insured, the Old Republic Policy is excess to all such insurance.

**ANSWER:**    Denied.

108.    In the alternative, to the extent the Premier Defendants qualify as additional insureds and the Insuring Agreement of Coverage A in the Old Republic Policy is satisfied, which Old

Republic does not concede, but the Old Republic Policy is not excess to all such insurance, the duty to defend Premier as an additional insured is shared with other applicable insurance policies, and any covered defense costs must be allocated among all applicable policies.

**ANSWER:** The allegations of Paragraph 108 contain legal conclusions to which no answer is required. To the extent an answer is required, Amerisure deny the allegations of paragraph 108.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Old Republic General Insurance Corporation, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

Dated: November 18, 2024

Respectfully submitted,

PREMIER DESIGN + BUILD GROUP, LLC
PREMIER DESIGN + BUILD NATIONAL, LLC

/s/ *Erik R. Nelson*
One of its Attorneys

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com

33

5135897 v1 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18 , 2024, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

*/s/ Erik R. Nelson*

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com

5135897 v1 -

5135897 v1 -