IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> PREMIER DESIGN & BUILD GROUP, LLC; PREMIER DESIGN & BUILD NATIONAL, LLC; ALLIED WORLD NATIONAL ASSURANCE COMPANY; AMERICAN FAMILY HOME INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; AMERICAN CASUALTY CO. OF READING PA; GEMININ INSURANCE COMPANY; HARLEYSVILLE PREFERRED INSURANCE COMPANY; OLD REPUBLIC GENERAL INSURANCE COMPANY; SELECTIVE INSURANCE COMPANY OF AMERICA; AND ZURICH AMERICAN INSURANCE COMPANY <br><br> Defendants. | No. 1:23-cv-04098 <br><br> Honorable Sara L. Ellis <br><br> Magistrate Judge Young B. Kim |

## PREMIER'S ANSWER TO ZURICH AMERICAN INSURANCE COMPANY'S COUNTERCLAIM

Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC (collectively, "Premier"), hereby submit their answer to Zurich American Insurance Company's ("Zurich") Counterclaim, and state as follows:

### PARTIES

1. Zurich American Insurance Company is an insurance carrier that is organized under New York law that maintains its principal place of business in Schaumburg, Illinois.

**ANSWER:** Premier admits, on information and belief, that Zurich American Insurance

1

Company is an insurance carrier with its principal place of business in Schaumburg, Illinois, and that Zurich is organized under New York law. Premier is without sufficient information to either admit or denies the remaining allegations of this paragraph and therefore demands strict proof thereof.

2. On information and belief, Amerisure Insurance Company is an insurance carrier that is organized under Michigan law that maintains its principal place of business in Michigan.

**ANSWER:** Admitted.

3. On information and belief, Amerisure Mutual Insurance Company is an insurance carrier that is organized under Michigan law that maintains its principal place of business in Michigan. Unless otherwise specified, Amerisure Insurance Company and Amerisure Mutual Insurance Company will be referred to collectively as "the Amerisure entities."

**ANSWER:** Admitted.

4. On information and belief, Premier Design & Build Group, LLC ("Premier Group") is a limited liability company that is organized under Illinois law that maintains its principal place of business in Chicago, Illinois.

**ANSWER:** Admitted.

5. On information and belief, Premier Design & Build National, LLC, ("Premier National") is a limited liability company that is organized under Delaware law that maintains its principal place of business in Chicago, Illinois. Unless otherwise specified, Premier Group and Premier National will be referred to collectively as "the Premier entities."

**ANSWER:** Admitted.

6. On information and belief, Allied World National Assurance Company ("Allied World"), is an insurance carrier that is organized under New Hampshire law that maintains its principal place of business in New York.

**ANSWER:** Premier admits, on information and belief, that Allied World is an insurance carrier with its principal place of business in New York, and that Allied World is organized under New Hampshire law.

7. On information and belief, American Family Home Insurance Company ("AFHIC"), is an insurance carrier that is organized under Florida law that maintains its principal place of business in Florida.

**ANSWER:** Premier admits, on information and belief, that AFHIC is an insurance carrier with its principal place of business in Florida, and that AFHIC is organized under Florida law.

8. On information and belief, The Continental Insurance Company ("Continental"), is an insurance carrier that is organized under Pennsylvania law that maintains its principal place of business in Pennsylvania.

**ANSWER:** Premier admits, on information and belief, that Continental is an insurance carrier with its principal place of business in Pennsylvania, and that Continental is organized under Pennsylvania law.

9. On information and belief, Continental Casualty Company ("CCC"), is an insurance carrier that is organized under Illinois law that maintains its principal place of business in Illinois.

**ANSWER:** Premier admits, on information and belief, that CCC is an insurance carrier with its principal place of business in Illinois, and that CCC is organized under Illinois law.

10. On information and belief, American Casualty Co. of Reading, PA ("American Casualty"), is an insurance carrier that is subject to jurisdiction in this District.

**ANSWER:** Premier admits, on information and belief, that American Casualty is an insurance carrier. The remaining allegations of Paragraph 10 contain legal conclusions to which no answer is required.

11. On information and belief, Gemini Insurance Company ("Gemini"), is an insurance carrier that is subject to jurisdiction in this District.

**ANSWER:** Premier admits, on information and belief, that Gemini is an insurance carrier. The remaining allegations of Paragraph 11 contain legal conclusions to which no answer is required.

12. On information and belief, Harleysville Preferred Insurance Company ("Harleysville"), is an insurance carrier that is organized under Ohio law that maintains its principal place of business in Ohio.

**ANSWER:** Premier admits, on information and belief, that Harleysville is an insurance carrier with its principal place of business in Ohio, and that Harleysville is organized under Ohio

law.

13. On information and belief, Old Republic General Insurance Corporation ("Old Republic") is an insurance carrier that is organized under Illinois law that maintains its principal place of business in Illinois.

**ANSWER:** Premier admits, on information and belief, that Old Republic is an insurance carrier with its principal place of business in Illinois, and that Old Republic is organized under Illinois law.

14. On information and belief, Selective Insurance Company of America ("Selective"), is an insurance carrier that is organized under New Jersey law that maintains its principal place of business in New Jersey.

**ANSWER:** Premier admits, on information and belief, that Selective is an insurance carrier with its principal place of business in New Jersey, and that Selective is organized under New Jersey law.

## JURISDICTION AND VENUE

15. This Court had jurisdiction over this case at the time it was filed pursuant to 28 U.S.C. §1332(a). The Court has jurisdiction over this Counterclaim/Cross-Claim pursuant to 28 U.S.C. §1367(a).

**ANSWER:** Admitted.

16. Venue is proper under 28 U.S.C. §1391(b)(2) or, alternatively, under 28 U.S.C. §1391(b)(3).

**ANSWER:** Admitted.

17. The Premier entities have been named as defendants in an underlying lawsuit captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, that is pending in the Law Division of the Circuit Court of Cook County, Illinois, under case no.: 2023L004533. The lawsuit identified the preceding sentence will be referred to herein as the "Underlying Action." A copy of the Complaint filed in the Underlying Action (without its exhibits) has been filed in this matter as Exhibit A to the Amerisure entities' First Amended Complaint.

**ANSWER:** Premier admits that the Premier entities have been named as defendants in the Underlying Action. Premier admits that the Underlying Action speaks for itself and Amerisure

denies any allegations in Paragraph 17 that are not consistent with the Underlying Action.

18. In this Declaratory Action, the Amerisure entities contend that they issued certain Commercial General Liability policies and Commercial Umbrella policies to the Premier entities.

**ANSWER:** Admitted.

19. In this Declaratory Action, the Amerisure entities allege that, pursuant to the terms of their CGL policies, they have been defending the Premier entities in the Underlying Action.

**ANSWER:** Admitted.

20. In this Declaratory action, the Amerisure entities allege that Zurich issued certain Commercial General Liability ("CGL") policies that provide coverage to the Premier entities, as additional insureds, for purposes of the Underlying Action.

**ANSWER:** Admitted.

21. In this Declaratory action, the Amerisure entities allege that Allied World, AFHIC, CCC, American Casualty, Gemini, Harleysville, Old Republic and Selective issued certain CGL policies that provide coverage to the Premier entities, as additional insureds, for purposes of the Underlying Action.

**ANSWER:** Admitted.

22. In this Declaratory action, the Amerisure entities seek a declaration that, for purposes of any coverage that is owed to the Premier entities in the Underlying Action, the policies that the Amerisure entities issued to the Premier entities are excess to any CGL policies that extend coverage to the Premier entities as additional insureds.

**ANSWER:** Admitted.

**Count I – The Zurich Policies Are Excess to Other Policies that Provide Coverage to the Premier Entities as Additional Insureds**

23. Zurich issued the following Commercial General Liability policies (which, unless otherwise specified, will be referred to collectively as "the Zurich policies"):

No. GLO 0184640 00 (effective 10/1/15 to 10/1/16);
No. GLO 0184640 01 (effective 10/1/16 to 10/1/17);
No. GLO 0184640 02 (effective 10/1/17 to 10/1/18);
No. GLO 0184640 03 (effective 10/1/18 to 10/1/19);
No. GLO 0184640 04 (effective 10/1/19 to 10/1/20);
No. GLO 0184640 05 (effective 10/1/20 to 10/1/21); and
No. GLO 0184640 06 (effective 10/1/21 to 0/1/22)

**ANSWER:** Premier lacks sufficient information to either admit or deny the allegations in paragraph 23 and therefore demands strict proof thereof.

24. The first Named Insured on the Zurich policies is "Ashgrove Holdings LLC." However, a company identified as "DGI-Menard, Inc." (hereinafter "DGIM") is also scheduled on the Zurich policies as a Named Insured.

**ANSWER:** Premier lacks sufficient information to either admit or deny the allegations in paragraph 24 and therefore demands strict proof thereof.

25. In the Underlying Action, the Premier entities have been sued in connection with allegedly faulty work they allegedly performed on a construction project where the Premier entities were allegedly retained as the General Contractor and Construction Manager. The construction project that is described in the Complaint filed against the Premier entities in the Underlying Action will be referred to herein as "the underlying construction project."

**ANSWER:** Admitted.

26. The Premier entities contend that Premier Group and DGIM entered into a Subcontract in connection with the underlying construction project.

**ANSWER:** Admitted.

27. The Premier entities allege that, pursuant to the terms of the alleged Subcontract between Premier Group and DGIM, DGIM agreed to designate the Premier entities as additional insureds on DGIM's CGL insurance for purposes of claims related to DGIM's performance of its work on the underlying construction project.

**ANSWER:** Admitted.

28. The Premier entities have sought coverage from Zurich for purposes of the Underlying Action based on the contention that they are additional insureds on the Zurich policies for purposes of the Underlying Action.

**ANSWER:** Admitted.

29. Zurich does not dispute that the Premier entities qualify, subject to all the terms, limitations and exclusions in the applicable additional insured endorsements and coverage forms in the Zurich policies, as additional insureds on the Zurich policies for purposes of the Underlying Action.

**ANSWER:** Premier admits that the Premier entities, via the Zurich Policies issued by

Zurich, qualify as additional insureds on the Zurich Policies for purposes of the Underlying Action.

30. Zurich denies the Amerisure entities' contention that the Zurich policies provide primary coverage for the Premier entities in the Underlying Action.

**ANSWER:** Paragraph 30 states a legal conclusion to which no response is required. To the extent that an answer is required, Premier admits that Zurich denies the Amerisure entities' contention that the Zurich policies provide primary coverage for the Premier entities in the Underlying Action.

31. The Zurich policies all include the Commercial General Liability Coverage Form (form no. CG 00 01 04 13, hereinafter referred as "the CGL coverage form"). A copy of that form is attached hereto as **Exhibit 2**.

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 31 that are not consistent with the terms and conditions of the Zurich Policies.

32. The CGL coverage form contains an "Other Insurance" provision. In all of the Zurich policies, the "Other Insurance" provision in the CGL coverage form is amended by the "Other Insurance Amendment - Primary And NonContributory" endorsement bearing form no. U- GL-1327-B CW (04/13) (referred to hereinafter as "the Other Insurance endorsement"). A copy of the Other Insurance endorsement is attached hereto as **Exhibit 3**.

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 32 that are not consistent with the terms and conditions of the Zurich Policies.

33. The Other Insurance endorsement contains the following language:

1. **The following paragraph is added to Paragraph 4.b. of the Other Insurance Condition of Section IV -----Commercial General Liability Conditions:**

    **This insurance is excess over:**
    **Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence",**

**offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.**

**ANSWER:** Amerisure states that the Zurich Policies speak for themselves and denies any allegations in paragraph 33 that are not consistent with the terms and conditions of the Zurich Policies.

34. As revised by the Other Insurance endorsement, the Other Insurance provision in the CGL coverage forms in the Zurich policies provides that, with respect to any coverage the Zurich policies provide for the Premier entities (including coverage for defense costs), the Zurich policies are excess to other policies that also provide coverage for the Premier entities as additional insureds.

**ANSWER:** Paragraph 34 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 34 are denied.

35. Accordingly, to the extent that any policies issued by Allied World, AFHIC, CCC, American Casualty, Gemini, Harleysville, Old Republic and/or Selective provide coverage to the Premier entities in the Underlying Action, the Zurich policies' coverage for the Premier entities is excess to the coverage provided to the Premier entities by those other policies.

**ANSWER:** Paragraph 35 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 35 are denied.

36. An actual controversy exists between the parties hereto regarding the priority of coverage among the CGL policies that potentially provide coverage to the Premier entities as additional insureds for purposes of the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C. §2201.

**ANSWER:** Premier admits that an actual controversy exists between the parties. The remaining allegations of paragraph 36 are denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Zurich American Insurance Company against Premier, enter final judgment in favor of

Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

**Alternative Count II – Zurich has no Obligation as to Claims That Do Not Seek to Recover For "Property Damage" that Arises Out Of, or was Caused in Whole or Part by, the Ongoing Operations or Completed Operations of Zurich's Named Insured.**

1-36. As paragraphs 1-36 of Alternative Count II, Zurich restates and re-alleges paragraphs 1-36 of Count I.

**ANSWER:** Premier sets forth its Answers to paragraphs 1 through 36 of the Counterclaim as if set forth fully herein.

37. On information and belief, the Premier entities contend that claims for "property damage" as that term is defined the Zurich policies have been asserted against the Premier entities in the Underlying Action.

**ANSWER:** Admitted.

38. The applicable additional insured endorsements in the Zurich policies restrict coverage for an additional insured such that an additional insured can only obtain coverage for "property damage" that "arises out of" the ongoing operations or completed operations of the Named Insured, or is "caused in whole or in part" by the ongoing operations or completed operations of the Named Insured.

**ANSWER:** Paragraph 38 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 38 are denied.

39. Accordingly, the Premier entities cannot obtain coverage for any "property damage" that did not "arise out of," or was not "caused in whole or in part" by, the ongoing operations or completed operations of DGIM.

**ANSWER:** Paragraph 39 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 39 are denied.

40. In the Underlying Action, the Premier entities are being sued in connection with the alleged settlement of certain structures referred to as "Access Bridges" which were allegedly built as part of the underlying construction project.

**ANSWER:** Premier states that the Complaint in the Underlying Action speaks for itself,

and Premier denies any allegations of paragraph 40 that are not consistent with the allegations of the Complaint in the Underlying Action. Answering further, Premier affirmatively states that the Underlying Action also alleges settlement of a warehouse building referred to as the 980 High Street Building and the 980 High Street Building Extension.

41. DGIM did not perform any work on the underlying construction project related to the Access Bridges.

**ANSWER:** Premier admits DGIM's scope of work on the underlying construction project did not include work related to the Access Bridges. Answering further, Premier affirmatively states that the Underlying Action also alleges settlement of a warehouse building referred to as the 980 High Street Building and the 980 High Street Building Extension and that DGIM's scope work on the underlying construction project included work related to the 980 High Street Building and the 980 High Street Building Extension.

42. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent any claims for "property damage" related to the Access Bridges have been asserted against the Premier entities in the Underlying Action, the Premier entities cannot obtain coverage for such claims under the Zurich policies.

**ANSWER:** Denied.

43. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent any claims for "property damage" have been asserted against the Premier entities in the Underlying Action, the Premier entities cannot obtain coverage for such claims under the Zurich policies unless the alleged "property damage" "arose out of" the ongoing operations or completed operations of DGIM, or was "caused in whole or in part" by the ongoing operations or completed operations of DGIM.

**ANSWER:** Paragraph 43 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 43 are denied. Answering further, Premier states that the Zurich Policies and the Underlying Action speak for themselves and denies any allegations in paragraph 43 that are not consistent with the terms and conditions of the Zurich

Policies and/or the allegations of the Underlying Action.

44. An actual controversy exists between the parties hereto regarding the limited scope of the coverage potentially provided by the Zurich policies to the Premier entities for any "property damage" at issue in the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C. §2201.

**ANSWER:** Premier admits that an actual controversy exists between the parties hereto. The remaining allegations of Paragraph 44 are denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Zurich American Insurance Company against Premier, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

**Alternative Count III – The Terms and Conditions of the CGL Coverage Form and Professional Services Exclusions in the Zurich Policies Limit or Negate Coverage for Any "Property Damage" Claims That May Be Asserted In The Underlying Action**

1-44. As paragraphs 1-44 of Alternative Count III, Zurich restates and re-alleges paragraphs 1-44 of Count II.

**ANSWER:** Premier sets forth its Answers to paragraphs 1 through 44 of the Counterclaim as if set forth fully herein.

45. On information and belief, the Premier entities contend that claims for "property damage" as that term is defined the Zurich policies have been asserted against the Premier entities in the Underlying Action.

**ANSWER:** Admitted.

46. The CGL coverage form defines the term "property damage" as follows:

**"Property damage" means:**
**a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
**b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence"**

> **that caused it.**
>
> **For the purposes of this insurance, electronic data is not tangible property.**
>
> **As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.**

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 46 that are not consistent with the terms and conditions of the Zurich Policies.

47. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable in the Underlying Action for amounts that were not paid for "property damage", the Premier entities cannot obtain coverage for such amounts under the Zurich policies.

**ANSWER:** Paragraph 47 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 47 are denied. Answering further, Premier states that the Zurich Policies and the Underlying Action speak for themselves and denies any allegations in paragraph 47 that are not consistent with the terms and conditions of the Zurich Policies and/or the allegations of the Underlying Action.

48. Even if claims for "property damage" are alleged Underlying Action, the Insuring Agreement in the Coverage A section of the CGL coverage form states that "property damage" must be caused by an "occurrence" in order for coverage to exist under the Zurich policies.

**ANSWER:** Paragraph 48 states a legal conclusion to which no response is required. To the extent that an answer is required, the allegations in paragraph 48 are denied. Answering further, Premier states that the Zurich Policies and the Underlying Action speak for themselves and denies any allegations in paragraph 48 that are not consistent with the terms and conditions of the Zurich Policies and/or the allegations of the Underlying Action.

49. The CGL coverage form defines "occurrence" as follows:

**"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 49 that are not consistent with the terms and conditions of the Zurich Policies.

50. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable in the Underlying Action for damages that were not caused by an "occurrence," the Premier entities cannot obtain coverage for such damages under the Zurich policies.

**ANSWER:** Denied.

51. The CGL coverage form contains certain exclusions that negate coverage for "property damage" in certain circumstances. The Damage to Your Product exclusion, the Damage to Your Work exclusion, the Damage To Impaired Property Or Property Not Physically Injured exclusion and the Recall Of Products, Work Or Impaired Property exclusions in the CGL coverage form contain the following language:

**This insurance does not apply to: \*\*\***

**k. Damage To Your Product**

**"Property damage" to "your product" arising out of it or any part of it.**

**l. Damage To Your Work**

**"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.**

**m. Damage To Impaired Property Or Property Not Physically Injured**

**"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
**(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**
**(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**

**This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

**n.     Recall Of Products, Work Or Impaired Property**

**Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:**
**(1)   "Your product";**
**(2)   "Your work"; or**
**(3)   "Impaired property";**
**if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.**

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 51 that are not consistent with the terms and conditions of the Zurich Policies. Answering further, Premier denies that any exclusions in the Zurich policies exclude any coverage to Premier for the Underlying Action.

52.     The CGL coverage form states that, when the terms "you" and "your" are used in the Zurich policy, those terms refer to the Named Insured, which, as applicable here, is DGIM.

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 52 that are not consistent with the terms and conditions of the Zurich Policies.

53.     The CGL coverage form defines the term "your product" as follows:

**"Your product":**

**a.     Means:**

  **(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:**

     **(a) You [DGIM];**

     **(b) Others trading under your name; or**

     **(c) A person or organization whose business or assets you have acquired; and**

  **(2) Containers (other than vehicles), materials, parts or equipment furnished**

**in connection with such goods or products.**

b. **Includes:**

**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and**

**(2) The providing of or failure to provide warnings or instructions.**

c. **Does not include vending machines or other property rented to or located for the use of others but not sold.**

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 53 that are not consistent with the terms and conditions of the Zurich Policies.

54. In the Zurich policies, the definition of the term "your work" that is contained in the CGL coverage form is revised by the "Contractors Liability Supplemental Coverages And Conditions" endorsement (form no. U-GL-1060-E CW (04/13)), a copy of which is attached hereto as **Exhibit 1**. As revised by the "Contractors Liability Supplemental Coverages And Conditions" endorsement, the CGL coverage form defines the term "your work" as follows:

**"Your work":**

a. **Means:**

**(1) Work or operations performed by you [DGIM] or on your behalf, but does not include work or operations performed by another entity who joined with you to form a partnership or joint venture not shown as a named insured in the Declarations, which terminated or ended prior to the effective date of this policy; and**

**(2) Materials, parts or equipment furnished in connection with such work or operations.**

b. **Includes:**

**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and**

**(2) The providing of or failure to provide warnings or instructions.**

**ANSWER:** Amerisure states that the Zurich Policies speak for themselves and denies any allegations in paragraph 54 that are not consistent with the terms and conditions of the Zurich Policies.

55. The CGL coverage form defines the term "impaired property" as follows:

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You [DGIM] have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**ANSWER:** Premier states that the Zurich Policies speak for themselves and denies any allegations in paragraph 55 that are not consistent with the terms and conditions of the Zurich Policies.

56. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Damage to Your Product, Damage to Your Work, Damage To Impaired Property Or Property Not Physically Injured and Recall Of Products, Work Or Impaired Property exclusions, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

**ANSWER:** Denied.

57. The CGL coverage form contains a Contractual Liability exclusion that includes the following language:

> This insurance does not apply to: ***
>
> b. Contractual Liability
>
> "[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. ***

**ANSWER:** Amerisure states that the Zurich Policies speak for themselves and denies any allegations in paragraph 57 that are not consistent with the terms and conditions of the Zurich Policies.

58. Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Contractual Liability exclusion, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

**ANSWER:** Denied.

59. The Zurich policies include the endorsement entitled "EXCLUSION -- ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" (form no. CG 22 43 04 13, copy attached hereto as **Exhibit 4**), which contains the following language:

> **This insurance does not apply to \*\*\* "property damage" \*\*\* arising out of the rendering of or failure to render any professional services by you [DGIM] or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity. Professional services include:**
>
> **1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and**
>
> **2. Supervisory, inspection, architectural or engineering activities.**
>
> **This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the \*\*\* "property damage" \*\*\* involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.**

**ANSWER:** Amerisure states that the Zurich Policies speak for themselves and denies any allegations in paragraph 59 that are not consistent with the terms and conditions of the Zurich Policies.

60. The Zurich policies also include the endorsement entitled "EXCLUSION -- CONTRACTORS --- PROFESSIONAL LIABILITY" (form no. CG 22 79 04 13, copy attached hereto as **Exhibit 5**), which contains the following language:

> **1. This insurance does not apply to \*\*\* "property damage" \*\*\* arising out of the rendering of or failure to render any professional services by you [Menard] or on your behalf, but only with respect to either or both of the following operations:**
>
> **a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and**
>
> **b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.**
>
> **This exclusion applies even if the claims against any insured allege negligence**

**or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence"**
**which caused the \*\*\* "property damage" \*\*\* involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.**

    **2. Subject to Paragraph 3. below, professional services include:**

        **a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and**

        **b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.**

    **3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.**

    **ANSWER:** Amerisure states that the Zurich Policies speak for themselves and denies any allegations in paragraph 60 that are not consistent with the terms and conditions of the Zurich Policies.

    61. The endorsement entitled "EXCLUSION --- ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" and the endorsement entitle "EXCLUSION – CONTRACTORS --- PROFESSIONAL LIABILITY" will be referred to collectively as "the Professional Liability exclusion endorsements". Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Professional Liability exclusion endorsements, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

    **ANSWER:** Premier denies that the Exclusion – Engineers, Architects or Surveyors Professional Liability and the Exclusion – Contractors – Professional Liability endorsements in the Zurich policies exclude any coverage for the Premier entities in the Underlying Action. No answer is required for other characterizations in paragraph 61.

    62. An actual controversy exists between the parties hereto regarding the extent to which certain provisions in the Zurich policies, including but not limited to the provisions identified in this Alternative Count III, limit or negate coverage for any amounts that are sought from the Premier entities in the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C.

§2201.

**ANSWER:** Amerisure admits that an actual controversy exists between the parties hereto. The remaining allegations of Paragraph 62 are denied.

**WHEREFORE**, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiff Zurich American Insurance Company against Premier, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

Dated: November 18, 2024

Respectfully submitted,

PREMIER DESIGN + BUILD GROUP, LLC
PREMIER DESIGN + BUILD NATIONAL, LLC

/s/ *Erik R. Nelson*
One of its Attorneys

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18 , 2024, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

/s/ *Erik R. Nelson*

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com