# EXHIBIT B

# CONSTRUCTION AGREEMENT
## (Guaranteed Maximum Cost)

This Agreement is entered into as of August 18, 2015 by and between Bridge Perth Amboy, LLC ("Owner") and Premier Design + Build National, LLC, a Delaware limited liability company ("Contractor")

## RECITALS

      A.     This Agreement relates to the construction by Contractor of the Project (as defined in Section 1.2 hereof).

      B.     Owner and Contractor have agreed to proceed with the Work (as defined below) on the terms and conditions set forth in this Agreement.

      **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE 1 - THE WORK AND THE CONTRACT DOCUMENTS

      1.1 <u>The Work</u>.  As used herein, the term "Work" shall refer to the completed construction required by the Contract Documents as they may be amended from time to time, and includes all labor, materials and equipment necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.  "Work" includes everything specified in the Contract Documents and reasonably inferable therefrom as being necessary to produce the intended results.

      1.2 <u>The Project</u>.  As used herein the term "Project" means the total construction of the project described in attached <u>Exhibit A</u>, of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by Owner or Owner's separate contractors.

      1.3 <u>Contract Documents</u>.  As used herein the term "Contract Documents" means this Agreement and all Exhibits and addenda, now or subsequently attached hereto, the plans and drawings ("Drawings") and the specifications ("Specifications") prepared by the licensed professionals listed on <u>Exhibit I</u> (the "Architect/Engineer") (or any architect, engineer or consultant for certain elements of the Work, as applicable) and listed on <u>Exhibit B</u> attached hereto (as the same may be supplemented or modified by Change Order), Change Orders (as defined in Section 7.1), and any bonds required to be furnished by Contractor pursuant hereto. The Contract Documents are complementary and what is required by any one shall be as binding as if required by all.  However, where conflicts arise between Contract Documents, resolution shall be made as mutually agreed upon by Owner and Contractor.  The intention of the Contract Documents is to cause Contractor to provide for not more than the Guaranteed Maximum Cost (as defined in

Section 8.1) all materials, supplies, apparatus, appliances, equipment, fixtures, tools, implements, labor, supervision, accounting, transportation, utilities, storage and services as may be necessary for the proper execution of the Work. Should added labor, materials, services or other elements not shown in the Contract Documents, but necessary to complete the Work, Contractor will furnish the same without any change in the Guaranteed Maximum Cost. In the event of conflicts between Contract Documents, the following shall apply:

    a.    Documents of later date shall govern;

    b.    Dimensions shown on the Drawings govern even though they may differ from scaled dimensions;

    c.    Drawings of larger scale shall govern over those of smaller scale of the same or earlier date;

    d.    Specifications shall govern over Drawings; and

    e.    This Agreement shall govern over all other documents.

## ARTICLE 2 – CONTRACTOR'S PERFORMANCE

2.1 _Contractor's Performance of the Work - General_. Contractor agrees, for the consideration and under the terms and conditions hereinafter set forth, to provide and furnish all design services, materials, supplies, apparatus, appliances, equipment, fixtures, tools, implements, labor, supervision, accounting, transportation, utilities, storage and services required to design and construct the Project at the Project site in accordance with the Contract Documents. The Work shall be performed and completed by Contractor in a good and workmanlike manner, free of any and all liens and claims of laborers, artisans, material men, suppliers, and subcontractors.

2.2 _Contractor's Performance of the Work – Demolition_. Contractor shall furnish all of the material and perform all of the work necessary for the complete demolition of buildings as required in the Contract Documents at the Project site in accordance with all applicable federal, state and local laws, statutes, ordinances, rules and regulations.

2.3 _Contractor's Performance of the Work – Design Services_. Contractor shall furnish professional design and engineering services necessary for the design and construction of the Project, including without limitation infrastructure improvements, in accordance with the plans and outline specifications and correspondence or documents amending the same, attached as Exhibit B and made a part hereof, and in accordance with the applicable building regulations and the scope of Work as defined herein. As required, Contractor shall contract for the services of licensed professionals as listed in Exhibit I and agrees to forthwith prepare the Drawings and Specifications in accordance with Exhibit A and applicable building regulations and submit the

same for Owner's written approval. As required, Owner shall pay Contractor directly for all design costs associated with the Contractor's agreement or agreements with the licensed professionals.

All design and engineering professionals, including the Architect/Engineer, engaged to provide services for the Project that are not listed in Exhibit I shall be subject to the reasonable written approval of Owner. All design and engineering professionals, including the Architect/Engineer, engaged to provide services for the Project shall either be salaried employee(s) of Contractor or independent consultant(s) to whom all or parts of the design work is subcontracted by Contractor, to prepare the Drawings and Specifications, and any changes authorized by Owner in the Project requirements, for written approval by Owner. Final Drawings and Specifications for the Work shall set forth the requirements for construction of the Work in detail sufficient to enable trade contractors and suppliers to construct the Work. The final Drawings and Specifications shall be sufficient to secure all necessary permits and shall comply with all Applicable Laws (defined in Section 4.3). These Design Services shall include the documentation of all changes in the final Drawings and Specifications made during the course of the Work, and provision of a complete set of record drawings in reproducible format at the conclusion of the Work. All design documents, plans and specifications, including the final Drawings and Specifications, shall upon final payment become property of the Owner. Owner agrees not to use the design documents, plans and/or specifications on any other project.

2.4 <u>Contractor's Performance of the Work –Engineering Services</u>. Contractor shall provide to Owner as a part of the Drawings and Specifications for the Project, complete detailed plans, drawings, and specifications for mechanical, electrical, and plumbing elements of the Project, in accordance with any performance specifications for such elements established by Architect/Engineer (included but not limited to plans referenced in <u>Exhibit B</u>). Such detailed plans, drawings and specifications, shall be stamped or sealed by duly licensed or registered design professionals and, when approved by Owner and Architect/Engineer, shall become part of the Contract Documents. Contractor shall hire, or cause subcontractors to hire, engineers satisfactory to Owner, contracts with whom shall provide that all warranties and obligations with respect to the work of the engineer thereunder shall be for the benefit of each of Owner and Contractor and that each of Owner and Contractor shall have a direct right to enforce the engineer's obligations under such engineering contracts. Such engineering contracts shall also require the engineers to coordinate their plans, specifications and drawings directly with Architect/Engineer and each other. Contractor shall be responsible for ensuring that the aforesaid elements, as designed and built, will be compatible with the Drawings and Specifications and that each such element, both as designed and as built, shall be fit for its particular purposes and uses. Contractor shall obtain Owner's prior written consent before entering into any engineering contract or any contract with a subcontractor who shall enter into an engineering contract required under this Section 2.4, and shall impose a like obligation to obtain Owner's prior written consent upon any sub-subcontractor who is to hire an engineer and enter into an engineering contract required under this Section 2.4. Written consent, for purpose of acquiring Owner's approval of design engineers, may be sent via email, facsimile, US mail and trackable shipping. Each engineer shall certify in writing to Owner that the plans and specifications for such engineer's systems comply with Applicable Laws (as

defined in Section 4.3) and that upon completion such systems have been installed and are operating in compliance with all Applicable Laws.

2.5 <u>Contractor's Performance of the Work – Construction Schedule and Progress Reports</u>. Contractor shall prepare a detailed critical path schedule in form satisfactory to Owner (as the same may be amended in accordance with the Contract Documents, the "Construction Schedule"), a copy of which is attached hereto as <u>Exhibit H</u>. The Construction Schedule shall be based on a Critical Path Method Network technique and shall be limited to the construction time allowed by the Contract Documents. It shall include a sequential list of milestone dates of significant events particular to the Project and shall relate those events to the placement of materials and the procurement and delivery of equipment and testing and inspection. A time scale shall be established in such a way that anyone examining the schedule will know which trades should be represented on the job and what work should be in progress on any workday. The Construction Schedule shall be updated as and when required by the Contract Documents but not less often than monthly. Unless otherwise directed by Owner, each Application for Payment (as defined in Section 9.1) shall include a copy of the current Construction Schedule and a report (the "Progress Report") showing the actual achievement to date of the progress of each portion of the Work specified in the Construction Schedule. Within the progress report, the contractor shall include a cost report reflecting committed cost and uncommitted cost.

2.6 <u>Contractor's Performance of the Work – Cost Breakdown</u>. The cost breakdown (the "Cost Breakdown") for the Work, including by trade, the names of all subcontractors heretofore engaged and, as attachments, a list of all subcontracts heretofore executed relating to the Work is attached hereto as <u>Exhibit D</u>. If this Agreement is executed prior to the engagement of subcontractors and the determination of the Cost Breakdown, the Cost Breakdown shall be attached hereto upon its completion. Contractor acknowledges that notwithstanding that the items listed on <u>Exhibit D</u> may not be all inclusive or complete as of the time the parties agree upon the Guaranteed Maximum Cost, they are sufficient for determining the total Guaranteed Maximum Cost for the Work.

2.7 <u>Contractor's Performance of the Work – Shop Drawings, Product Data and Samples</u>.

    a.    "Shop Drawings" are drawings, diagrams, schedules and other data specially prepared for Work by Contractor or any Subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work. "Product Data" are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by Contractor to illustrate a material, product or system for some portion of the Work. "Samples" are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged. Contractor shall review, approve and submit, with reasonable promptness and in such sequence as to cause no delay in the Work, or in the

        Work of Owner or any separate contractor, all Shop Drawings, Product Data and Samples required by the Contract Documents.

b.      Shop Drawings, Product Data and Samples shall be reviewed and their acceptance so noted by Contractor to the Architect/Engineer by stamping all Shop Drawings and Product Data and Samples prior to their submittal with the following wording "Reviewed by [Contractor] for conformity and coordination with the Contract Documents." Owner will retain two copies of accepted submittals, one for Owner's records and one for use on the jobsite. By approving and submitting Shop Drawings, Product Data and Samples, Contractor represents that Contractor has determined and verified all materials, field measurements, and field construction criteria related thereto, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents. The Architect/Engineer shall also review and forward the submittals and their appropriate recommendation to Owner. The Architect/Engineer shall return the submittal to Contractor with appropriate comments and deliver a copy of same to Owner.

c.      Contractor shall not be relieved of responsibility for any deviation from the requirements of the Contract Documents by the Architect/Engineer's and/or Owner's approval of Shop Drawings, Product Data or Samples unless Contractor has specifically informed the Architect/Engineer and Owner in writing of such deviation at the time of submission and Owner has given written approval to the specific deviation. Contractor shall not be relieved from responsibility for errors or omissions in the Shop Drawings, Product Data or Samples by Owner's approval thereof. Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data or Samples, to revisions other than those requested by Owner on previous submittals. No portion of the Work requiring submission of a Shop Drawing, Product Data or Sample shall be commenced until the submittal has been approved by Owner, and, if required by Owner, by Architect/Engineer. All such portions of the Work shall be substantially in accordance with approved submittals.

d.      All Shop Drawings, Product Data and Samples submitted to Owner or Owner's representative become the property of Owner. Additionally, Owner shall own all copyright and other intangible rights to Shop Drawings, and Contractor agrees to execute any documents acknowledging or evidencing such ownership. Contractor agrees to maintain all Shop Drawings in confidence and to prevent their disclosure to any persons and prevent any copying thereof, except for Contractor's use on the Project.

e.    Contractor shall submit electronic shop drawings to the Architect/Engineers. Each submission shall be accompanied by a transmittal form in a format determined by the Architect/Engineer and Owner.

f.    Samples shall be identified by a permanent label giving the manufacturer's name, trade name, material type, intended application, project name, Contractor's name, and Sub-subcontractor's or supplier's name and date of submission. Manufacturer's installation directions shall be provided with each sample. Each submission shall be accompanied by a transmittal form in a format determined by Architect/Engineer and Owner. Samples will not be returned unless return is requested at time of submission.

g.    Samples shall be of adequate size to permit proper evaluation of the material by the Architect/Engineer. Where variations in color, texture, dimensions or other characteristics are to be expected, Contractor shall submit Samples showing the maximum range of variation. Materials exceeding the range of variation of the approved Samples shall not be used in the work. In order to permit coordinated selection of colors and finishes, Contractor shall deliver Samples of all items of interior finish to the Architect/Engineer in accordance with the Specifications.

h.    If both Shop Drawings and Product Data or Samples are required for the same item, the Architect/Engineer may require both to be submitted before approving either.

i.    No mechanical or electrical engineer or other consultant to the Architect/Engineer shall have authority to approve Shop Drawings, Product Data or Samples unless the Owner has notified the Contractor in writing that such authority has been delegated by the Architect/Engineer to such engineer or consultant.

j.    No acceptance or approval of any Shop Drawing, Product Data or Sample, nor any indication or request marked by the Architect/Engineer on any Shop Drawing shall constitute an authorization for any increase in the Guaranteed Maximum Cost. Any claim by Contractor for such increase must be made in accordance with Article 7 before proceeding with the work. A complete file of all submittals shall be maintained in acceptable format for use by Owner and Architect/Engineer. This file shall be turned over to Owner upon completion of the Work.

2.8 Contractor's Performance of the Work – Record Copies. Contractor shall maintain at the site for Owner one record copy of all Drawings, Specifications, addenda, Change Orders and

other modifications, in good order and marked currently to record all changes made during construction, and approved Shop Drawings, Product Data and Samples. These shall be available to Owner and shall be delivered to Owner upon completion of the Work.

2.9    Contractor's Performance of the Work – Manuals. Contractor shall prepare and deliver to Owner four copies of an operating and maintenance manual for the Project. The manual shall contain full information for each item of mechanical, electrical, or other operating equipment, copies of warranties therefore, schematic diagrams of control systems, circuit directors for each electric and communications panel board, and otherwise comply with the requirements of the Specifications.

2.10    Contractor's Performance of the Work – Supervision, Coordination, and Direction. Contractor shall supervise, coordinate and direct the Work using the Contractor's best skill and attention. Contractor shall require subcontractors to be responsible for and control their respective means, methods, techniques, sequences, and procedures. Contractor shall at all times maintain good relations, discipline and order among its employees, sub-Contractors and their employees. It shall provide competent, fully qualified personnel to perform the Work. If in Owner's opinion, any personnel of Contractor or its subcontractors is not performing work in a satisfactory manner, Contractor shall (in a reasonable manner, consistent with Applicable Laws and subject to any collective bargaining agreements) cause such personnel to discontinue performing work on the Project and promptly supply a replacement reasonably acceptable to Owner.

2.11    Contractor's Performance of the Work – Labor, Materials, and Equipment. Unless otherwise provided in the Contract Documents, Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

2.12    Contractor's Performance of the Work – Permits and Approvals. Except for any permits and approvals which under the Contract Documents are to be obtained by Owner, Contractor shall secure all permits, approvals, governmental fees, licenses, and inspections and give all applicable notices necessary for the proper execution and performance of the Work. Owner shall pay for all permits and inspection fees. Contractor shall deliver to Owner all original licenses, permits, and approvals obtained by Contractor in connection with the Work prior to the final payment or upon termination of the Contract, whichever is earlier.

2.13    Contractor's Performance of the Work – Superintendence. Contractor shall employ a competent superintendent and any necessary assistants who shall be in attendance at the Project site at all times during the performance of the Work. The superintendent shall represent Contractor and communications given to and received from the superintendent shall be binding on Contractor. In entering into this Agreement, Owner is relying on the personal expertise and reputation of the persons specified in Exhibit E attached hereto and such persons shall be employed in the positions indicated in Exhibit E unless otherwise required or approved by Owner.

2.14  Contractor's Performance of the Work - Confining Operations.  Contractor shall confine operations at the Project site to areas permitted by Applicable Laws and the Contract Documents, and shall not unreasonably encumber the Project site with materials or equipment.

2.15  Contractor's Performance of the Work - Job Site Procedures and Security. Without limitation on Contractor's obligation to comply with Applicable Laws and other provisions of the Contract Documents, Contractor shall comply and shall cause it subcontractors to agree to comply with Owner's reasonable job site, building procedures, and policies, including without limitation any applicable noise control and security procedures and policies.

2.16 Contractor's Performance of the Work - Cutting and Patching.  Contractor shall be responsible for all cutting, fitting or patching that may be required to complete the Work or to make its several parts fit together properly.  Contractor shall not damage or endanger any portion of the Work or the work of Owner or any separate contractors by cutting, patching or otherwise altering any work, or by excavation.  Contractor shall not cut or otherwise alter the work of Owner or any separate contractor except with the written consent of Owner and such separate contractor.

2.17  Contractor's Performance of the Work - Testing.  Tests, inspections, reports and approvals of the Work required by the Contract Documents or by Applicable Law shall be made at appropriate times in the progress of the Work. Contractor shall coordinate with Owner the schedule for all tests and inspections. Owner or its designated representatives may observe such procedures, regardless of whether the tests and inspections are the responsibility of Owner or Contractor.  Unless otherwise expressly provided in the Contract Documents, Contractor shall make arrangements for all such tests, inspections, reports and approvals with applicable public agencies with jurisdiction or independent testing agencies acceptable to Owner, as the case may be and Owner shall bear the costs of such tests, inspections, reports and approvals, excluding any overtime costs of Contractor or any of Contractor's employees or subcontractors.  Provided, however, that if any inspection or testing reveals a failure to comply with (a) the requirements of the Contract Documents, (b) generally accepted standards of performance of the Work, or (c) any Applicable Laws, Contractor shall bear all costs of detection and correction, including, but not limited to Architect/Engineer's additional services made necessary by such failure. If additional testing or inspecting is required due to the fault of Contractor, all costs and expenses for such testing or inspection shall be paid by Contractor.

2.18  Contractor's Performance of the Work - Clean-Up.

    a.    Contractor shall keep the Project site and surrounding area free from the accumulation of waste materials, and rubbish during performance of the Work and shall remove all waste material, rubbish, tools, equipment, machinery, and surplus materials from the Project site and surrounding area at the completion of the Work.

      b.      Upon completion of the Work, Contractor shall clean the premises and leave it in broom clean condition, as further specified in the Specifications. If Contractor fails to clean up at the completion of the Work, Owner may do so and the cost thereof shall be charged to Contractor.

2.19 <u>Contractor's Performance of the Work - Construction Meetings</u>. Contractor's representative and, if requested by Owner, representatives of subcontractors, shall attend meetings with Owner, and, as requested by Owner, any tenant and Architect/Engineer, to report on and discuss matters regarding the progress of construction. Contractor shall take notes and provide Owner with minutes of such meetings.

## ARTICLE 3 – DELEGATION OR ASSIGNMENT OF THE WORK

3.1 <u>Contractor's Right to Delegate or Assign the Work</u>. Subject to the prior written approval of the Owner, Contractor may assign or delegate ("Assign" or "Assignment") portions of the Work to a construction manager ("Construction Manager") pursuant to a written assignment agreement setting forth such portions of the Work that are being assigned to a Construction Manager. Effective upon any such Assignment, the Construction Manager shall be directly responsible to Owner for the performance of all portions of the Work so assigned; provided however that the Assignment of portions of the Work to a Construction Manager shall not relieve Contractor of its obligations under this Agreement, including without limitation any warranty, insurance, or indemnification obligations under this Agreement, and Owner retains the right to enforce all provisions of this Agreement against Contractor irrespective of any Assignment of any portion of the Work to a Construction Manager.

3.2 <u>Limitations on Assignment</u>. No Assignment of any aspect of the Work shall relieve Contractor of its warranty, insurance, or indemnification obligations under this Agreement, and the following obligations are specifically exempt from the right of Assignment:

      a.      Assembly and deliver to Owner of an operating and maintenance manual based on information provided by Construction Manager;

      b.      Assembly and delivery to Owner of all subcontractor and manufacturer warranties obtained by Construction Manager;

      c.      Informing Owner of potentially hazardous materials discovered at the project site;

      d.      Informing Owner if required Work may violate applicable laws;

      e.      Insuring compliance with building procedures and policies of Owner; and

   f.  Establishing accounting procedures for tracking costs and items to be credited to Owner and with respect to any shared savings.

3.3 <u>Work Subject to Assignment</u>.  Without limitation and at Contractor's sole discretion, Contractor may assign any and all aspects of the Work other than those set forth in Paragraph 3.2, above.

3.4 <u>No Material Alteration of Agreement Through Assignment</u>.  Contractor warrants that any Assignment Agreement (defined in Section 3.6) that Assigns portions of the Work to a Construction Manager will not materially alter the provisions of this Agreement in anyway. Contractor shall be responsible for the direction and supervision of the Construction Manager, and Owner shall have no obligation to direct, supervise or control Construction Manager.  All payments to Construction Manager shall flow through Contractor.  Owner shall endeavor to communicate with Construction Manager through Contractor.

3.5 <u>Contractor's Additional Representations Regarding Assignment</u>.  Contractor shall remain responsible for ensuring that all Work is performed by Construction Manager in accordance with the Drawings and Specifications, and all applicable laws and ordinances, and that the Work is completed in a good and workmanlike manner.

3.6 <u>Assignment Agreement</u>.  Contractor shall prepare and deliver to Owner a written assignment agreement with the Construction Manager setting forth the portions of the Work being assigned, stating Construction Manager's acceptance of such Assignment, and certifying that Construction Manager has reviewed all Contract Documents and is able to comply with all requirements therein Assigned to it by Contractor ("Assignment Agreement").  The Assignment Agreement shall further certify that Construction Manager is authorized to do business in the state where the Project is located, and that it will procure and maintain all insurance required of it by the Assignment and/or by applicable law.  The Assignment Agreement, and any amendments and modifications thereof, and the Assignment of portions of the Work effected thereby shall be subject to the written consent of the Owner.

3.7 <u>References to Construction Manager</u>.  In cases in which Contractor retains a Construction Manager to perform some or all of the Work pursuant to a written Assignment Agreement approved by Owner, references throughout this Agreement to Contractor are intended to refer to "Contractor directly or by and through its Construction Manager."  The omission of direct reference to Construction Manager in this Agreement is for ease of reference only, and is not intended to signify whether any particular provision contained in this Agreement is, has been, can be, or should be Assigned to a Construction Manager.

## ARTICLE 4 - CONTRACTOR'S WARRANTIES AND COVENANTS

4.1 <u>Warranties and Covenants for Assigned Work</u>.  Every Assignment by Contractor to a Construction Manager shall be deemed to include all warranties and covenants set forth herein; provided, however, Contractor shall remain responsible to Owner for all warranties and covenants

set forth herein whether or not they regard, touch on, or relate to work encompassed by an Assignment.

4.2  <u>Performance</u>.  Contractor recognizes the relationship of trust and confidence established between it and Owner by the Contract Documents.  In performing the Work, Contractor agrees to furnish its best skill and judgment and to cooperate with Owner, Architect/Engineer, Architect/Engineer's consultants, and Owner's construction representative in furthering the interests of Owner. Contractor further agrees to furnish at all times, or to ensure that Construction Manager furnishes at all times, efficient business administration and superintendence and an adequate supply of workmen, equipment and materials, and to perform the Work in a good and workmanlike manner, using only materials that are new and approved by Owner and, if required by Owner, Architect/Engineer, and in the most expeditious and economical manner consistent with the interests of Owner.

4.3  <u>Compliance with Drawings and Specifications and Applicable Laws</u>.  The Work shall be constructed and completed in compliance with the Drawings and Specifications and all laws, ordinances, rules, regulations and requirements of all governmental and public authorities and any Board of Fire Underwriters having jurisdiction over the Project or any aspect thereof, including, without limitation, the Federal Occupational Safety and Health Act, the Americans with Disabilities Act of 1990, and all other applicable laws, ordinances, rules, regulations and requirements relating to safety or to hazardous materials or substances, and, in addition, the written requirements of any insurance company carrying any insurance coverage required under the Contract Documents (collectively, "Applicable Laws").  Without limitation of the foregoing, Contractor shall comply with and give notices required by all Applicable Laws, including all environmental laws.  Contractor is responsible for assuring the compliance of the Drawings and Specifications with Applicable Laws, Contractor shall promptly notify Owner in writing if Contractor becomes aware during the performance of the Work that the requirements of the Contract Documents do not comply with any Applicable Laws.  If Contractor performs Work which it knows or should know is not in compliance with Applicable Laws without having given Owner such notice, Contractor shall bear full responsibility for and bear all costs attributable to such Work.

4.4  <u>Due Care and Diligence; No Substitutions</u>.  Contractor warrants that it will exercise due care and diligence in the performance of the Work and that the Work shall be fully and finally completed in accordance with the Contract Documents at a cost not to exceed the Guaranteed Maximum Cost. Wherever the Contract Documents specify use of certain materials and equipment, Contractor shall not make any substitution therefore without Owner's prior written approval.

4.5  <u>Contractor's Warranty</u>.  Contractor on behalf of itself, Construction Manager, and its subcontractors, material men, suppliers and sureties, warrants that all material and equipment incorporated into the Work will be new and free from any and all claims, liens and security interests of any third parties and that the Work will be of good quality and free from defects (whether latent or patent) for a period of 1 year from the date of substantial completion.  Contractor's express

warranty herein shall be in addition to, and not in lieu of, any other remedies Owner may have under the Contract Documents, at law, or in equity for defective or nonconforming Work. No payment made by Owner to Contractor, nor any acceptance, use or occupancy of the Project by Owner or any other person, shall constitute acceptance of any defective Work or any Work not in compliance with the Contract Documents.

4.6     Other Warranties.  Contractor shall assemble and transmit to Owner four complete copies in loose-leaf binders of all applicable warranties and operating and maintenance data for all equipment furnished under this Agreement, in sufficient detail to allow inspections, testing, operation and maintenance.  All warranties procured by Contractor from its subcontractors and material men shall be properly executed on a form approved by Owner and shall be submitted to Owner prior to the final acceptance of the Work.  Whenever possible, Contractor shall cause such warranties to be made directly to Owner, or, if the same shall be made to Contractor, Contractor, if possible, shall assign the same to Owner on request.  The parties have agreed that Owner may assign any such warranties in whole or in part, exclusively or non-exclusively, to any more assignees at any time and in its sole discretion without the consent of Contractor.  During the Correction Period (as defined below), upon written request from Owner, such warranties as may not be assignable shall be enforced by Contractor for Owner's benefit.

4.7  Guaranty of Correction.

a.     As used herein the term "Correction Period" shall mean the period from Substantial Completion (as defined in Section 6.3) to the date one year after Substantial Completion, or, for any portion of the Work which is completed after Substantial Completion, one year after Final Completion (as defined in Section 6.3).

b.     Contractor itself or through Construction Manager shall, to Owner's reasonable satisfaction, (i) re-execute or otherwise remedy any parts of the Work that fail to conform with the requirements of the Contract Documents and any defects in the Work due to faulty materials or workmanship and that become apparent during the progress of the Work or during the Correction Period, and (ii) replace, repair or restore any other parts of the Project or the furniture, fixtures, equipment or other items placed therein (whether by Owner or any other party) that are damaged or destroyed by any such parts of the Work that do not conform to the requirements of the Contract Documents or as a result of defects in the Work or the correction thereof.   Directly or through Construction Manager, Contractor shall remove from the Project site portions of the Work and materials which are not in conformance with the Contract Documents and which are not either corrected by Contractor or accepted by Owner as provided in Section 4.7(e). All such corrective work shall be performed at such times as are acceptable to Owner and so as to avoid, to the extent practicable, disruption to the activities of Owner or the occupants of the Project.  The provisions of this

Section 4.7 shall apply to Work performed by Construction Manager and/or subcontractors as well as work done directly by employees of Contractor.

c.     If Contractor fails to correct any nonconforming or defective Work within fifteen (15) days after written notice from Owner, Owner may correct such nonconforming or defective Work in accordance with the terms of this Agreement, or, in the event such Work cannot reasonably be corrected within said fifteen (15) day period, Contractor shall begin correcting such nonconforming or defective Work within fifteen (15) days and shall diligently pursue correction as soon as reasonably practicable. If Owner corrects such nonconforming or defective Work, Owner may remove the nonconforming or defective Work and store the salvable materials and equipment at Contractor's expense. If Contractor does not pay the costs of such removal and storage within ten (10) days after written notice, Owner may, upon ten (10) additional days written notice, sell such materials and equipment at auction or private sale and shall account for the proceeds thereof, after deducting costs and damages that should have been borne by Contractor under the terms hereof, including, without limitation, compensation for services and expenses made necessary thereby. If such proceeds of sale do not cover costs which the Contractor should have borne, Contractor shall pay such excess to Owner. If such proceeds are in excess of the costs, which Contractor should have borne, such excess shall be paid by Owner to Contractor.

d.     The cost to Contractor of performing any of its obligations under this Section 4.7 shall be paid for by Contractor, and Contractor shall receive no reimbursement or compensation from Owner for performing any such corrective work, and all such work shall be at no cost to Owner. Contractor's obligations under this Section 4.7, are in addition to and not in limitation of its express warranty under Article 4, or any other obligation of Contractor under the Contract Documents. Enforcement of Contractor's obligations under this Section 4.7 shall be in addition to and not in limitation of any other right or remedy of Owner under the Contract Documents or otherwise at law or in equity.

e.     Notwithstanding the foregoing provisions of this Section 4.7, Owner, may, at its option, by notice to Contractor, elect to accept nonconforming or defective Work instead of requiring its removal or correction, in which case the Guaranteed Maximum Cost shall be reduced by an amount equal to the difference between the value to Owner of the Work had it been in conformance with the Contract Documents, and the value to Owner of such nonconforming or defective Work. Such election shall be exercised only by written notice to Contractor and shall not be implied by any action or inaction of Owner.

4.8  Uncovering of Work.  If any portion of the Work should be covered contrary to the request of Owner, Architect/Engineer or any governmental agency, or contrary to requirements that are specifically expressed in the Contract Documents, or contrary to requirements for observation prior to covering that are standard practice for first-rate construction projects, such covered portion of the Work shall, if required in writing by Owner, Architect/Engineer or such governmental agency, be uncovered for its observation and shall be replaced at Contractor's expense.  If any portion of the Work has been covered as to which the preceding sentence of this Section 4.8 does not apply, Owner may request to see such Work and it shall be uncovered by Contractor. If such Work is found to be in accordance with the Contract Documents, the cost of uncovering and replacement shall, by appropriate Change Order, be charged to Owner.  If such Work is found to be not in accordance with the Contract Documents, Contractor shall pay such costs.

4.9  Advertising and Photography.  Contractor agrees not to take any photographs or videos of the Project, except for use on the Project, or to use Owner's or any tenant's name, or photographs or videos of the Project, or to refer to Owner or any tenant directly or indirectly in any promotion or advertisement, in any news release or release to any general or trade publication or other media without receiving Owner's and such tenant's prior written approval which may be withheld at the sole and complete discretion of Owner and such tenant, as applicable.  Written approval, for purpose of acquiring Owner's approval of advertising or promotional materials, may be sent via email, facsimile, US mail and trackable shipping.  Contractor shall ensure that Construction Manager and all subcontractors are made aware of and comply with the restrictions of this Section 4.9.

4.10  Additional Representations.  In addition to any other representations and warranties contained in the Contract Documents, Contractor hereby represents and warrants the following to Owner, as an inducement to Owner to enter into this Agreement, which representations and warranties shall survive the execution and delivery of this Agreement, any termination of the Contract and the final completion of the Work:

  a.  Contractor is financially solvent and able to pay its debts as they;

  b.  Contractor is able to furnish the plant, tools, materials, supplies, equipment, services and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so;

  c.  Contractor is authorized to do business in the State where the Project is Located;

  d.  Contractor's execution of this Agreement and its performance of the Contract Documents are within its duly authorized powers;

  e.  Contractor has visited the site, is familiar with the local conditions under which the Work is to be performed, has correlated its observations with the requirements of the Contract Documents; and

     f.     The Guaranteed Maximum Cost is just and reasonable compensation for all the Work including all foreseeable risks, hazards and difficulties in connection therewith.

## ARTICLE 5 – PROTECTION OF PERSONS AND PROPERTY

5.1 <u>Safety Precautions and Programs</u>. Contractor shall be responsible for initiating, maintaining and supervising all health and safety precautions and programs in connection with its operations and the Work either directly or through or in conjunction with Contract Manager. All health and safety requirements shall apply continuously and shall not be limited to normal working hours. The right or duty of Owner or Architect/Engineer to conduct inspections of the Work or construction review of Contractor's performance, and the existence of any health and safety minimum requirements in Owner's job site or building procedures and policies, is not intended to impose responsibility on Owner for the adequacy or inadequacy of the Contractor's safety measures on or near the Project site, or elsewhere on the lands of the Owner or its affiliates.

5.2    <u>Safety of Persons and Property</u>

    a.    Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

        i.    all persons at the Project site and all other persons who may be affected by the Work;

        ii.    all the Work and all materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of Contractor or any of its subcontractors or sub-subcontractors; and

        iii.    other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

    a.    All personnel at the Project site shall conduct themselves in an appropriate manner, and Contractor agrees to remove any worker deemed reasonably objectionable by Owner. Contractor shall prohibit the possession, use and being under the influence of any alcoholic beverage, illegal drug or any substance adversely affecting perception, judgment, ability or performance.

5.3    <u>General and Public Safety</u>

    a.    Contractor shall designate in writing a competent person as Contractor's "Project Safety Representative." The Project Safety Representative may be an employee of contractor or of Construction Manager. The duties of Project Safety Representative shall include responsibility for implementation of Contractor's safety program and inspecting the conditions of the Project site and any other areas affected by Contractor's

           operations on a frequent and regular basis as necessary to insure compliance with all applicable safety standards, orders, and the requirements of the Contract Documents.

b.     Contractor shall give all notices and comply with all Applicable Laws bearing on the health and safety of persons and/or property or their protection from damage, injury or loss. Contractor shall promptly comply with all reasonable and customary requests of the Owner and its agents relating to health, safety and protection of property at no additional expense to Owner.

c.     Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent facilities.

d.     Contractor shall conduct its operations in a manner which causes the least possible obstruction and inconvenience to the safe flow of pedestrian and vehicular traffic. Without limitation of the foregoing, Contractor is responsible for coordinating and obtaining approvals of the location of temporary barricades and/or detours of traffic from the Police and Fire Departments. When entering or leaving roadways carrying public traffic, Contractor's equipment, whether empty or loaded, shall in all cases yield to public traffic.

e.     Contractor shall at all times furnish and maintain, or cause Construction Manager to furnish and maintain, adequate safety devices and/or personnel including, but not necessarily limited to, barricades, lights, signs, traffic cones, warning tape, temporary roads, flagpersons, as necessary to direct pedestrian, vehicular and bicycle traffic safely through or around the area of Contractor's operations. All barricades remaining in pedestrian, bicycle or vehicular traffic areas between sunset and sunrise shall be equipped with approved and operating flashers.

5.4     Hazardous Materials

a.     The use, storage, disposal or abandonment of explosives or other hazardous or toxic materials ("Hazardous Materials") is not permitted on the lands of Owner, except as expressly authorized and permitted in the Contract Documents. Should any such materials be so authorized and permitted, Contractor shall submit detailed plans for their care, use and disposal for Owner's approval prior to commencing the Work and shall comply with all Applicable Laws, including, without limitation, the requirements of all public agencies having jurisdiction over their use.

b.  In the event that Contractor, Construction Manager, or any subcontractor becomes aware of any materials reasonably believed by Contractor to be Hazardous Materials in, under on or about the Project site, Contractor shall immediately notify Owner and stop the Work unless otherwise directed by Owner. Owner shall issue a written work order in accordance with Article 7 to confirm any work stoppage resulting from the requirements of this Section 5.4. Contractor shall not take any remedial action with regard to Hazardous Materials at the Project site or other lands of Owner, without Owner's express prior written authorization. Contractor shall not enter into any settlement agreement, consent decree or other compromise without first notifying Owner in writing of Contractors intention to do so and affording Owner ample opportunity to protect its interests.

c.  Whenever Contractor becomes aware of any of the following actions with regard to Hazardous Materials that are instituted, completed or threatened and that are applicable to the Project, Contractor shall immediately notify Owner in writing:

i.  any governmental or regulatory action;

ii.  any claim against Owner or Contractor; or

iii.  any report, complaint, notice or warning of asserted violation to any environmental agency.

5.5  <u>Contractor's Obligation to Remedy</u>. Contractor shall, at Contractor's expense (except to the extent covered by proceeds of insurance carried under Articles 15, 16 and 17), promptly remedy all damage or loss to any property caused in whole or in part by Contractor, Construction Manager, any subcontractor, any sub-subcontractor, or anyone directly or indirectly employed by any of them who or for which they may be liable or for which Contractor is responsible under Article 14, except damage or loss to the extent attributable to the acts of, its employees and agents, or by anyone for whose acts Owner may be liable.

5.6  <u>Fencing</u>. In addition to any fencing shown or specified elsewhere in the Contract Documents, Contractor shall provide, or cause Construction Manager to provide, temporary fencing and gates around any laydown or storage area provided by Owner. Such fencing shall be of the temporary chain link type nominally six feet in height with locking gates. Such fencing shall be provided with reflectors, flashers, warning signs, dangles and/or barricades, both during construction and after completion until removal, as required by Owner. The Guaranteed Maximum Cost shall be increased by the cost of such additional temporary fencing. Contractor shall inspect, maintain, and repair, if necessary, all fencing erected by it, by Construction Manager, or by any subcontractor.

5.7  <u>Minimize Disruption</u>. Contractor shall exercise maximum effort to avoid disruption of the conduct of business in the areas surrounding the Project site. This shall include, at a

minimum, using all feasible methods and strict discipline to minimize danger, noise, vibration, fumes, dust and other pollution

5.8 <u>Protection of Work During Inclement Weather or Suspension of Construction</u>. In the event of suspension of construction, or during inclement weather, or whenever Owner shall direct, Contractor shall, directly or through Construction Manager, carefully protect the Work and materials against damage or injury from the weather. If any work or materials shall have been damaged or injured by reason of failure on the part of Contractor to protect the Work, such Work or materials shall be removed and replaced at the expense of Contractor. All additional costs related to protection of the Work as directed by Owner, shall be paid by Owner.

5.9 <u>Emergencies</u>. In any emergency affecting the safety of persons or property, Contractor shall act, at its discretion, to prevent threatened damage, injury or loss. Any additional compensation or extension of time claimed by Contractor on account of emergency work shall be determined as provided in Article 7 for Changes in the Work.

5.10 <u>Jobsite and Worker Safety</u>. In addition to other safety requirements of the Contract Documents, and at a minimum, Contractor shall comply with all applicable federal, state and local regulations and requirements relating to jobsite and worker safety.

5.11 <u>Costs for Protection of Persons and Property</u>. Failure of Contractor to comply with any health and/or safety requirements of the Contract Documents shall be deemed sufficient cause for Owner to, without prior notice to Contractor, take whatever action is, in Owner's opinion, necessary to achieve compliance with such requirements. In lieu of direct reimbursement by Contractor, Owner may, at its option, deduct the costs of any such action by Owner from monies due Contractor. Owner will notify Contractor of any action taken under the provisions of this subparagraph within five (5) working days.

**ARTICLE 6 - TIME FOR PERFORMANCE**

6.1 <u>Commencement; Critical Path</u>. Within five (5) working days, or as mutually agreed upon by Owner and Contractor, after the later to occur of the issuance of all permits necessary to commence the Work and Contractor's receipt of a notice to proceed issued by Owner, Contractor shall commence performance of the Work and thereafter diligently proceed with the performance of the Work, in accordance with the Construction Schedule, to completion. Contractor shall maintain the Construction Schedule and meet all critical path dates. Subject to the provisions of Section 6.2 below, should Contractor substantially or repeatedly fail to meet any of the critical path dates, upon written notice from Owner, Contractor shall cause its employees, Construction Manager, subcontractors and other parties performing the Work, to perform and work at hours and days, in addition to the normal working hours and days, whatever overtime work is necessary to meet the Construction Schedule. Additional compensation paid to Contractor's employees, Construction Manager and subcontractors for overtime or shift work shall be included in the Cost of Work but no adjustment shall be made to the Guaranteed Maximum Cost. Subject to the provisions of Section 6.2 below, it shall be a material breach of Contractor's obligations hereunder

if at any time the progress of any category of the Work on the critical path in the Construction Schedule is two weeks or more behind the timing set forth in the Construction Schedule for such category, and upon the occurrence of such event, without limitation of any other right or remedy of Owner, Owner shall be entitled to terminate this Agreement as provided in Section 18.3 below.

6.2 <u>Delays</u>. Contractor shall carry out the Work with due diligence and dispatch in accordance with the Construction Schedule and shall achieve Substantial Completion and Final Completion (as hereinafter defined) of the Work by the dates shown on <u>Exhibit H</u> (the "Scheduled Date of Substantial Completion" and the "Scheduled Date of Final Completion," respectively); provided, however, that if Contractor is delayed in the performance of the Work by (i) the negligence or willful misconduct of Owner of any employee, agent or representative of Owner, or (ii) changes in the Work ordered by Owner, or (iii) strikes, fire, casualties which Contractor could not reasonably have avoided, national emergency, acts of God, or (iv) any other cause beyond Contractor's (or any of its subcontractors', or Construction Manager's) control and without Contractor's, Construction Manager's or any subcontractor's fault or negligence (excluding therefrom the financial inability of Contractor, its subcontractors, or Construction Manager) (any of the foregoing being herein referred to as an "excusable delay"), then the Scheduled Date of Substantial Completion and the Scheduled Date of Final Completion, and, to the extent that such delay affects the critical path of the Construction Schedule, the Construction Schedule shall be extended for a period equal to any delay in Substantial Completion of the Work directly resulting from such excusable delay, provided that within ten (10) days after the commencement of any such delay, Contractor delivers to Owner a written request for extension for such delay, and such request is approved by Owner, which approval shall not be unreasonably withheld. Contractor recognizes that there shall be no extensions for inclement weather other than "abnormal weather" (for purposes of this Paragraph only, "abnormal weather" is weather that deviates more than 25% from the average temperature or rainfall for a given region as published in the United States Climate Data or other generally acceptable publication, for a period of seven (7) or more consecutive days, which was not contemplated, predicted, or foreseen at the date the Project began). It shall be Contractor's responsibility to prove to Owner that a delay in Substantial Completion would be caused specifically by an excusable delay in a portion of the Work which was on the critical path of the Construction Schedule. Any such extension shall be evidenced by a Change Order prepared by Contractor for Owner's approval and, if approved by Owner, executed by Owner and Contractor in accordance with Article 7 below. Contractor expressly waives all rights and claims for delay that are not made by Contractor within ten (10) days after the commencement of any such delay. In case of a continuing cause of delay of a particular nature, Contractor shall be required to make only one such request with respect thereto. In no event shall Contractor be entitled to compensation or any increase in the Guaranteed Maximum Cost as a result of the causes specified in clauses (iii) or (iv) of this Section 6.2.

6.3 <u>Substantial Completion; Final Completion</u>. As used herein, the term "Substantial Completion" means that all of the following have occurred: (i) the Work shall have been substantially completed to Owner's reasonable satisfaction in accordance with the Contract Documents, except for Punch-List Work (as defined in Section 12.1 below); and (ii) a temporary or final permit allowing the legal occupancy of the Project and all other certificates, permits and/or

licenses of any governmental authority having or claiming to have jurisdiction over the Work or operation of the Project shall have been delivered to Owner; provided, however, if such a certificate is not issued solely due to causes beyond the reasonable control of Contractor (e.g., the issuance of a tenant's business license) or due to work to be performed that is not part of the Work, such certificate shall be deemed to have been issued. The date of Substantial Completion of the Work shall be determined as set forth in Article 12. All Punch-List Work shall be completed by Contractor as provided in Article 12. As used herein, the term "Final Completion" means the completion of all Work (including Punch List-Work) in accordance with the Contract Documents.

## ARTICLE 7 - CHANGES IN THE WORK

7.1 <u>Changes</u>. Owner may from time to time, by written instructions or drawings issued to Contractor, make changes in the Contract Documents, issue additional instructions, require additional Work, or direct the deletion of Work previously ordered, and the provisions of the Contract Documents shall apply to all such changes, modifications, additions and deletions with the same effect as if they were embodied in the original Contract Documents. Any such change in the Work shall be effected by a Change Order. A "Change Order" is a written instrument prepared by Contractor for Owner's approval and, if approved by Owner, signed by Owner and Contractor setting forth their agreement upon (i) a change in the Work, if any; (ii) the amount of adjustment in the Guaranteed Maximum Cost, if any; and (iii) the amount of any adjustment in the Scheduled Date of Substantial Completion, if any.

7.2 <u>Change Order Request</u>. Owner shall order a change in the Work by giving Contractor a written request for a Change Order ("Change Order Request"), in the form of AIA Document G709 or such other form as Owner may designate, setting forth in detail the nature of a proposed change in the Work. Upon receipt of a Change Order Request, Contractor shall forthwith furnish to Owner a statement setting forth in detail, with a labor and material breakdown by trades and work classifications, Contractor's proposal for the change, if any, in the Guaranteed Maximum Cost attributable to the changes set forth in such Change Order Request, a proposed adjustment, if any, of the Construction Schedule and Scheduled Date of Substantial Completion resulting from such proposed change and any proposed adjustments of time and costs related to unchanged Work resulting from such proposed change. In such case Contractor shall keep and present, in such form as Owner may prescribe, an itemized accounting together with appropriate supporting itemized accounting together with appropriate supporting data. Owner shall respond to Contractor's estimate within a reasonable period of time. If Owner approves in writing Contractor's proposal, a Change Order shall be issued in conformity with standard AIA procedures and on any of the forms specified above and, if applicable, the Guaranteed Maximum Cost and/or the Scheduled Date of Substantial Completion shall be adjusted as set forth in such Change Order. Agreement on any Change Order shall constitute a final settlement on all items covered thereby including, without limitation, the additional cost, if any, of performing unchanged Work, and any extension of time to complete the Work, subject to performance thereof and payment therefore pursuant to the terms of the Contract Documents. Contractor's role in requesting, receiving, signing and executing Change Orders may be Assigned to a designated employee or representative of Construction Manager.

7.3 <u>Cost and Fee Change Order</u>.  If, with respect to any Change Order Request, no agreement can be reached between Owner and Contractor, then Owner, nevertheless, shall have the right to cause such Change Order Request to constitute a Change Order by giving Contractor written notice thereof (such a Change Order shall be referred to as a "Cost and Fee Change Order"). The cost of such change in the Work shall then be determined on the basis of Contractor's reasonable expenditures and savings, plus, in the case of an increase in the Cost of the Work, the amount specified in Section 8.2 hereof for Contractor's Fee attributable to such Cost and Fee Change Order.  In such event, Contractor shall keep and present to Owner a detailed, itemized accounting, together with appropriate supporting data.  The amount of credit to be allowed by Contractor to Owner for any deletion or change which results in a net decrease in the Cost of the Work will be the amount of the actual net decrease in the Cost of the Work.  When both additions and credits are involved in any Cost and Fee Change Order, the allowance for Contractor's Fee shall be determined on the basis of the net increase for related work, if any, in accordance with Section 8.2.  If unit prices are stated in the Contract Documents or subsequently agreed upon, and if the quantities originally contemplated are so changed in a proposed Change Order that application of the agreed unit prices to the quantities of Work proposed will create a hardship on either Contractor or Owner, the applicable unit prices shall be equitably adjusted to prevent such hardship.

7.4 <u>Execution of Change Order</u>.  Contractor shall promptly proceed with any change ordered by Owner pursuant to a Change Order (including any Cost and Fee Change Order). Contractor shall not make any change in the Work or be entitled to any adjustment in the Guaranteed Maximum Cost or the Scheduled Date of Substantial Completion, except as provided in a Change Order signed by Owner.  In addition, Owner may, in writing, direct Contractor to proceed with a change in the Work prior to the execution of a Change Order.  Each Change Order shall reflect payment in full for a change in the Work and in no event shall Contractor be entitled to an increase in the Cost of the Work or the Contractor's Fee in payment for the cumulative effect of multiple Change Orders.

7.5 <u>Concealed and Unforeseeable Conditions</u>.  Should concealed and unforeseeable conditions be encountered in the performance of the Work below the surface of the ground or should concealed and unforeseeable conditions in an existing structure vary materially from conditions indicated by the Contract Documents and be of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract Documents, then the Guaranteed Maximum Cost shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions.  No increase in the Guaranteed Maximum Cost shall be made, however, for any conditions (whether or not indicated by the Contract Documents) ascertainable by a careful on-site inspection by Contractor.  Contractor shall not disturb any such conditions at the Project site until Contractor has given Owner notice of the discovery of such conditions, and Owner's representative has inspected the conditions and given written notice to Contractor authorizing disturbance of such conditions.

**ARTICLE 8 - COST OF THE WORK/GUARANTEED MAXIMUM COST**

8.1 Guaranteed Maximum Cost. Subject to the provisions of the Contract Documents, Owner agrees to pay Contractor for the Cost of the Work (as hereinafter defined) and to pay to Contractor the Contractor's Fee (as hereinafter defined). Contractor guarantees that, subject to additions and deductions by Change Order as provided in the Contract Documents, the maximum cost to Owner for the Cost of the Work and the Contractor's Fee shall not exceed the amount specified in Exhibit C which sum shall be called the "Guaranteed Maximum Cost." Costs which would cause the Guaranteed Maximum Cost to be exceeded shall be paid by the Contractor without reimbursement by the Owner, except as otherwise provided in Change Orders executed between the parties. Notwithstanding anything to the contrary contained in the Contract Documents, the total costs for General Conditions Work listed on Exhibit F attached hereto (the "General Conditions Costs") shall not exceed the amount specified in Exhibit C except as provided in Section 7.3 above.

8.2     Contractor's Fee.

    a.     In consideration of the performance of the Contract Documents, subject to the limitation set forth in Section 8.1, Owner agrees to pay to Contractor as compensation for its services a fee (the "Contractor's Fee") in the amount specified in Exhibit D. The Contractor's Fee shall be payable in pro rata installments in accordance with the progress payment provisions of Article 9. The balance of the Contractor's Fee shall be payable upon satisfaction of all conditions to final payment provided in Article 12. For any increase in the Cost of the Work, to the extent such increase results form Change Orders initiated by Owner that increase the scope of the work, the Contractor shall receive an additional fee of Eleven percent (11%) of such increase for Contractor's general conditions, general liability insurance, overhead, profit and Contractor's Fee.

    b.     In the event Contractor's final Cost of the Work (as defined in Section 8.3) including Contractor's Fee is less than the Guaranteed Maximum Cost, 50% of any savings realized shall be due to Owner.

8.3 Cost of the Work. "Cost of the Work" shall mean all costs necessarily incurred in the proper performance of the Work and paid by Contractor, and shall be limited to the following:

    a.     All labor costs under applicable collective bargaining agreements with respect to personnel in the direct employ of Contractor in the performance of the field Work, including standard fringe benefits such as employee group insurance coverage, employer payroll taxes, workers' compensation premiums, and other similar costs related thereto at not more than prevailing wage in the county of the Project;

    b.     Salaries and wage related standard fringe benefits at not more than prevailing wage in the county of the Project of necessary salaried employees

of Contractor stationed full-time at the field office on the Project site and the Project manager, for that pro rata share of the Project manager's time devoted to the Project, whether the Project manager is stationed in the field office or in Contractor's regular office location;

c. Costs of all insurance required under Article 15;

d. Losses, expenses and damages, including, without limitation, lost deposits, reasonably sustained or incurred in connection with the Work when not compensated to Contractor by insurance or otherwise, provided such losses have not resulted from the fault or neglect of Contractor, its subcontractors, its Construction Manager, or its suppliers or material men. Such losses shall include amounts not received due to settlement agreements made with the written approval of Owner;

e. Miscellaneous expenses such as telegrams, telephone services, express mail, and similar petty cash items related to the Work, but only those expenses incurred by the field office at the Project site and not in excess of amounts customarily incurred in projects similar to the Project;

f. Costs of all materials, supplies and equipment used in connection with or incorporated into the Work, including costs of transportation, warehousing and storage thereof;

g. Costs, including transportation and maintenance, of all materials, supplies, equipment, temporary facilities and hand tools not owned by the workers, that are employed or consumed in the performance of the Work, less the proceeds of any resale, or the salvage value, of any the same, whether sold to others or retained by Contractor. All purchases of such materials, supplies, equipment, temporary facilities and hand tools shall be recorded in a log maintained at the Project site and shall be subject to inspection by Owner and/or Architect/Engineer upon demand;

h. Rental charges at rates not greater than competitive rates received by unrelated third parties in the general area of the Project for all necessary machinery and equipment, exclusive of hand tools, used for the performance of the Work, whether rented from the Contractor or others, including installation, repair and replacement, dismantling, removal, and costs of lubrication, transportation and delivery thereof;

i. All sales, use, and gross receipts related to the Work or purchases made in connection therewith which are imposed by any governmental authority and for which Contractor is liable, but not federal or state income or franchise taxes paid or payable by Contractor;

j. Amounts paid to subcontractors in strict accordance with the terms and conditions of applicable subcontracts for the performance of the Work

where such subcontracts have been approved by Owner and are in compliance with Article 10 below;

k. Amounts paid to Construction Manager in strict accordance with the terms of any Assignment Agreement pursuant to Article 3, above;

l. Royalties and license fees paid for the use of a particular design process or product required by the Contract Documents (other than any such fees that are to be paid by Owner pursuant to the Contract Documents) and the cost of defending suits or claims for infringement of patent rights arising from such requirement by the Contract Documents;

m. Costs of removal of debris and all cleanup; and

n. Costs incurred in connection with job safety requirements for the performance of the Work, such as handrails, ramps, barricades, warning lights, and required scaffolding, and costs incurred due to an emergency affecting the safety of persons or property.

8.4    Exclusions from Cost of the Work.  The Cost of the Work shall not include any of the following:

a. Salaries or other compensation of, or mandatory contributions on behalf of, the employees of Contractor, except the personnel whose salaries are included in the Cost of the Work pursuant to Section 6.3(b);

b. Overhead or general expenses of any kind, including, without limitation, data processing and computer costs incurred by Contractor in connection with the Work (except as expressly included in the General Conditions Costs);

c. Asbestos abatement, underground tank removals and environmental work;

d. Contractor's capital expenses, including, without limitation, interest on Contractor's capital employed either in construction for or in expenditures on the Work;

e. Cost of services and related expenses of any officers or general office supervisory personnel of Contractor and of personnel in Contractor's personnel, legal, labor relations, insurance and tax departments and all other costs of doing business, costs of services and related expenses required to maintain and operate Contractor's general offices;

f. Cost of services of Contractor's purchasing, estimating and accounting departments and clerical staff at Contractor's general or established branch offices;

g. Amounts required to be paid by Contractor for federal, state or local income or franchise taxes;

h. Cost of hiring personnel who are not currently employed by Contractor, including employment fees, interviewing costs, travel expenses for prospective employees, and the like;

i. Fines, penalties, assessments and other costs in excess of the costs of compliance in the first instance related to the failure of Contractor, Construction Manager, or any subcontractor or sub-subcontractor to comply with any Applicable Laws;

j. Legal costs (except as otherwise specifically provided herein);

k. Cost of any item not specifically and expressly included in the items described in Section 8.3; and;

l. Costs in excess of the Guaranteed Maximum Cost as it may be adjusted pursuant to the provisions of the Contract Documents.

8.5 <u>Items to be Credited or Reimbursed by Contractor</u>. The following items shall be credited against the Cost of the Work or shall be reimbursed by Contractor to Owner:

a. Proceeds of any sale by Contractor of surplus materials, construction equipment, and temporary structures that have been charged to the Cost of the Work (other than as a rental charge), whether such sale is made to Owner, to Contractor, or to a third party;

b. The full amount of any deposits originally funded by or charged to Owner that have been returned to Contractor; and

c. Any rebate from insurance premiums or Worker's Compensation modifiers.

8.6 <u>Permits</u>. All applications and permits required to commence and perform the Work shall be obtained by Contractor at the direct expense of Owner and the fees for such applications and permits shall not be included in the Cost of the Work.

8.7 <u>Construction Testing Costs</u>. The costs of construction testing shall be paid by Owner unless specifically agreed to otherwise, in which case the cost of testing will be included within the Cost of the Work. Unless otherwise agreed in writing, all construction testing (including testing required as a result of defective or nonconforming Work) will be performed by or on behalf of, the Contractor.

8.8 <u>Accounting Procedures</u>. Contractor shall establish and comply with generally accepted accounting principles for all costs incurred by Contractor under this Contract. Contractor shall permit Owner and its agents to review its accounting procedures and shall make such revisions to its procedures as may reasonably be requested by Owner to verify and control costs incurred under this Contract. No change shall be made in such accounting procedures except with the prior written approval of Owner. If required by Owner, with each request for progress payments, Contractor shall submit all receipts and invoices, including payroll data, justifying the costs incurred by Contractor. In no event shall Owner be obligated to reimburse Contractor for costs in excess of

prices reasonably obtainable in the local market at the time the products or services were obtained by Contractor, including such discounts as are reasonably obtainable. Any overpayments revealed by such audits shall be promptly repaid by Contractor, and any underpayments revealed by such audits shall be promptly paid by Owner. If such audit shall reveal an overpayment in excess of five percent (5%) for the period involved, then the costs of such audit shall be borne by Contractor.

8.9 <u>Schedule of Values</u>. Unless otherwise provided elsewhere in the Contract Documents, Contractor shall submit a schedule of values ("Schedule of Values") to Owner within five (5) days after execution of this Agreement and in any event before the first Application for Payment. The Schedule of Values shall allocate the entire Cost of the Work among the various portions of the Work, and shall be prepared in such form, and supported by such data to substantiate its accuracy, as Owner may reasonably require. The Schedule of Values shall contain reasonable market cost allocations for all items of Work shown in the Construction Schedule. The Schedule of Values, when approved by Owner, shall be used as a basis for evaluating Contractors Applications for Payment.

## ARTICLE 9 - PROGRESS PAYMENTS ON CONTRACT PRICE

9.1 <u>Application</u>. On or before the last day of each month, Contractor shall submit to Owner and Architect/Engineer and, if applicable, a copy to Owner's construction lender, an application for payment ("Application for Payment") showing in detail, as of the last day of the preceding month, the value of such completed Work based on the Schedule of Values, the progress of the Work based on the Progress Schedules and the amount of any retention, as provided herein, and of the Guaranteed Maximum Cost due and owing Contractor for such completed Work under the terms of this Agreement, including any amounts due under any Change Orders. Each Application for Payment shall be submitted on a form approved by Owner, and, if applicable, Owner's construction lender, itemize all disbursements to subcontractors and vendors on a monthly basis, show the percentage of completion of the Work as of the last day of the preceding month and include a copy of the current Construction Schedule and Progress Report referred to in Section 2.5. Absent written direction from Owner to the contrary, each Application for Payment shall be in the form of a notarized AIA Document G702, Application and Certification for Payment, and (when applicable) supported by AIA Document G703, Continuation Sheet. In addition, each Application for Payment shall include (i) Contractor's partial or final waiver, as the case may be, of lien rights against the Work, the Project, the property and improvements on which the Project is located, and any funds or interests owned or possessed by Owner covering all sums requested in such Application, and (ii) partial or final waivers, as the case may be, from all subcontractors of their lien rights against the Work, the Project, the property and improvements on which the Project is located, and any funds or interests owned or possessed by Owner covering all sums requested by Contractor and paid by Owner in the immediately preceding Application. No provision hereof, however, shall be construed to require Owner to see to the proper disposition or application of the moneys so advanced to Contractor.

9.2 <u>Costs of Unincorporated Materials</u>. If previously approved by Owner in writing and permitted by Owner's construction lender, the cost of materials and equipment not yet incorporated into the Project during the month covered by an Application for Payment but scheduled to be so

incorporated within the next thirty (30) days and already delivered and suitably stored either at the Project site, or in a bonded warehouse or other facility satisfactory to Owner may be included in the Application for Payment, provided that with respect to materials and equipment delivered and suitably stored somewhere other than at the Project site, Contractor, upon request, shall furnish Owner bills of sale or other documentation satisfactory to Owner to establish the title of Owner (or such other party as Owner may designate) to such materials and equipment and otherwise to protect Owner's interest therein. Off-site storage shall be held to a minimum and in any event shall not be in excess of that, if any, permitted by Owner's construction lender.

9.3  Payment.  No later than twenty (20) days following receipt of the Application for Payment by Owner, Owner shall pay, or cause Owner's construction lender to pay, the amount of the Application for Payment approved by Owner, Architect/Engineer and Owner's construction lender; provided, however, that if any item on the Application for Payment is disputed, Contractor shall be immediately notified of such dispute and shall submit verification of such item or a revised Application for Payment. Owner shall make payment directly to Contractor.  No Certificate for Payment, progress payment or partial or entire use or occupancy of the Work by Owner shall constitute an acceptance of the Work or waiver of Contractor's duty to replace unsatisfactory Work or material.  The first Application for Payment shall cover a period beginning on the date construction actually begins.

9.4  Retention.  Except as otherwise approved in writing by Owner and the construction lender with respect to certain subcontractors that have completed their portions of the Work, there shall be a ten percent (10%) retention on progress payments for the Work until fifty percent (50%) of the Work has been completed.  After fifty percent (50%) of the Work has been completed, if Owner determines that Contractor is performing the Work in accordance with the Construction Schedule and adhering to the terms and conditions of the Contract Documents, the retention shall be reduced to five percent (5%).

9.5  Use of Payment.  Except for the Contractor's Fee, Contractor shall use the sums advanced to it pursuant to this Article 9 only for the purpose of performance of the Work and the construction, furnishing, and equipping of the Project in accordance with the Contract Documents. Contractor shall promptly pay all bills for labor performed and material furnished by others in connection with the performance of the Work.  Contractor agrees to keep the Project free and clear of any and all liens and claims of subcontractors, material men and suppliers, subject to Owner's performance of its own payment obligations; and if any such lien shall be filed at any time during the progress of the Work, Owner may withhold the amount of such lien from payments otherwise due Contractor until such lien is discharged or until the Owner is indemnified by bond, title endorsement or other means reasonably satisfactory to Owner.

9.6  Right to Withhold Approval.  Any provision hereof to the contrary notwithstanding, Owner shall be entitled to withhold approval of any applicable part of an Application for Payment or nullify any applicable part of a previous Application for Payment and withhold that amount on account of any of the following:

a.    Default by Contractor of any of its obligations under the Contract Documents where such default has not been cured by Contractor after notice;

b.    Work that is defective or was not performed in accordance with the Contract Documents (payment will be made as to the portion of the Work which is not defective and was performed in accordance with the Contract Documents);

c.    Failure of Contractor to make payments promptly to its subcontractors or for material or labor used in the Work for which Owner has made payment to Contractor;

d.    Liens, claims or stop notices filed;

e.    Reasonable evidence that the portion of the Guaranteed Maximum Cost then remaining unpaid will not be sufficient to complete the Work in accordance with the Contract Documents, in which case additional payments will be made to Contractor hereunder only after Contractor, at its sole cost, performs a sufficient portion of the Work so that such portion of the Guaranteed Maximum Cost then remaining unpaid is reasonably determined by Owner's construction or permanent lender or by Owner to be sufficient to so complete the Work; or

f.    Failure to maintain and update "as built" or record drawings as required herein.

9.7   Payment Not Acceptance.  No approval of an Application for Payment nor any payment made hereunder shall be or shall be construed to be final acceptance or approval of that part of the Work to which such Application for Payment or payment relates, nor shall such approval or payment relieve Contractor of any of its obligations hereunder with respect to such part of the Work.

9.8   Procurement of Materials.  Any provision hereof to the contrary notwithstanding, Contractor shall act as an agent of Owner (or such other party as Owner may designate) in procuring or causing to be procured all materials to be incorporated into the Work, and Owner shall be directly liable to the vendor for the purchase price.  Contractor, directly or through its Construction Manager, shall negotiate and administer all such purchases and shall advance all payments therefore unless otherwise directed by Owner.  Contractor shall take all discounts, trade allowances, refunds, and other benefits available for Owner's account on all such materials.  In all other respects, Contractor recognizes that it is an independent contractor, and covenants and agrees that it will conduct itself in a manner consistent with such status, and that it will neither hold itself out as nor claim to be an employee or agent of the Owner by reason hereof, except as specified herein.  Contractor shall contract on behalf of and as agent of the Owner with respect to materials, it being understood and agreed that title to all materials purchased shall vest in Owner (or such other party as Owner may designate) upon the first to occur of incorporation in the construction or

upon the receipt of payment by Contractor, and Contractor shall not acquire title thereto. Where subcontracts cover the supplying of materials, Contractor shall have the authority to authorize and shall so direct the subcontractor to contract on behalf of and as the agent of the Owner (or such other party as Owner may designate) with respect to the supplying of such materials, and title to all materials so purchased shall vest in Owner (or such other party as Owner may designate) upon the first to occur of incorporation in the construction or upon the payment therefore by Owner, and neither Contractor nor Construction Manager nor any subcontractor shall acquire title thereto.

Nothing hereinabove stated with respect to purchases of materials by Contractor or a sub-subcontractor as agent for Owner shall be construed in any way to limit or modify the obligations of Contractor hereunder or constitute a waiver of Owner's right to fulfillment of all the terms hereof. Contractor shall diligently cooperate with and assist Owner in enforcing the terms and conditions contained in the above-mentioned subcontracts and purchase contracts.

## ARTICLE 10 – SUBCONTRACTORS

10.1  <u>Construction Manager Not Subcontractor</u>.  Should Contractor elect to Assign part of the Work to a Construction Manager as allowed herein, Construction Manager shall be an Assignee under this Agreement, with all the rights, obligations, duties, and responsibilities Assigned to it by Contractor pursuant to an Assignment Agreement, and stands in the shoes of Contractor for the purpose of those Assigned provisions. As such, Construction Manager is not a Subcontractor for purposes of this Article 10 or any other provision of this Agreement or the Contract Documents.

10.2  <u>Subcontracts</u>.  All portions of the Work not performed by Contractor or by Construction Manager shall be performed under written subcontracts with Contractor or Construction Manager. All subcontracts entered into by Contractor shall be in Contractor's own name. All subcontracts entered into by Construction Manager shall be in Construction Manager's own name, as Assignee for Contractor. Each such subcontract shall require the subcontractor, to the extent of the Work to be performed by the subcontractor, to be bound to Contractor or Construction Manager by the terms of the Contract Documents, to assume toward Contractor or Construction Manager all the obligations and responsibilities which Contractor assumes towards Owner by the Contract Documents, and to perform such portion of the Work in accordance with the Contract Documents. Each such subcontract shall preserve and protect the rights of Owner under the Contract Documents, with respect to the Work to be performed by the subcontractor, so that subcontracting thereof will not prejudice such rights. Each such subcontract shall incorporate the provisions of this Agreement and shall expressly provide that (i) the subcontractor waives all rights that the sub-subcontractor may have against Owner for damages caused by fire or other perils covered by the property insurance carried by Contractor, Construction Manager, or Owner, except for such rights the subcontractor may have to the proceeds of such insurance held by the Owner under Article 16, (ii) the subcontractor shall not be entitled to any markup for overhead and profit on any Work performed pursuant to a Change Order other than a Change Order initiated by Owner which increases the scope of the Work and any subcontractor's markup for overhead and profit on Work resulting from such Change Order increasing the scope of the Work shall be limited to not more than fifteen percent (15%) of the actual cost of the Additional Work, (iii) Owner and

entities and agencies designated by Owner shall have access to and the right to audit and the right to copy at Owner's cost all of the subcontractor's books, records, contracts, correspondence, instructions, drawings, receipts, vouchers, purchase orders, and memoranda relating to the Work (the subcontractor shall preserve all such records and other items for a period of at least three (3) years after Final Completion), (iv) Owner is a third party beneficiary of such subcontract, and (iv) the subcontractor recognizes the rights of the Owner under Section 10.5 and agrees, upon notice from Owner that Owner has elected to accept said assignment and to retain the subcontractor pursuant to the terms of the subcontract, to complete the unperformed obligations under the subcontract and, if requested by Owner, to execute a written agreement confirming that the subcontractor is bound to Owner under the terms of the subcontract. Contractor shall cause all first-tier subcontracts to include the provision that the requirements of this Section 10.2 shall be included in all sub-subcontracts entered into by subcontractors for any part of the Work. All subcontracts and agreements with suppliers shall be on a fixed price basis unless otherwise provided in the Contract Documents or approved in writing by Owner.

10.3 Subcontractors. All portions of the Work other than the supervision and management thereof, including any portions proposed to be performed by Contractor or Construction Manager, shall be subject to competitive bidding unless otherwise approved in writing by Owner. Prior to awarding any subcontract, Contractor shall obtain and deliver to Owner bids from proposed subcontractors or suppliers for each portion of the Work and Owner. If any sub-subcontractor or supplier is not reasonably acceptable to Owner, Contractor shall submit to Owner the next competitive bid and the Guaranteed Maximum Cost shall be increased accordingly. Contractor shall enter into subcontracts or other appropriate agreements with the approved subcontractors and suppliers in accordance with Section 10.2. Contractor shall not be permitted to substitute any person or organization for any subcontractor who has been accepted by Owner nor to permit any subcontract to be transferred or to allow the Work under any subcontract to be performed by any person or organization other than the subcontractor who has been accepted by Owner, without the prior written consent of Owner.

10.4 No Contractual Relationship. Nothing contained in the Contract Documents shall create any contractual relationship between any subcontractor and Owner, except if and only to the extent that, Owner elects to accept the assignment of the subcontract with such subcontractor pursuant to Section 10.5 below.

10.5 Assignment of Subcontracts. Contractor and Construction Manager hereby assign to Owner all of their respective interest in all subcontracts and agreements now or hereafter entered into by Contractor or Construction Manager for performance of any part of the Work. The assignment will be effective upon acceptance by Owner in writing and only as to those subcontracts which Owner designates in writing. Owner may accept said assignment at any time during the course of the Work and prior to Final Completion in the event of a suspension or termination of the Contractor's rights under the Contract Documents (after the expiration of any applicable notice and cure periods). Such assignment is part of the consideration to Owner for entering into the contract with Contractor and may not be withdrawn prior to Final Completion.

## ARTICLE 11 - TITLE TO THE WORK

Owner (or such other party as Owner may designate) shall have title to, and shall bear the risk of loss with respect to, all completed Work, all Work in the course of construction or installation, and all materials, equipment, tools and supplies for which Owner has paid Contractor under the terms of the Contract Documents, unless any such loss shall be caused by the fault or neglect of Contractor, Construction Manager, any sub-subcontractor, or any person or entity for whose actions Contractor, Construction Manager, or any subcontractor may be liable. Title to the same shall pass to Owner (or such other party as Owner may designate) upon the first to occur of incorporation in the construction or upon the receipt of payment by the Contractor and shall be free and clear, and shall be kept free and clear, of all liens and security interests in favor of creditors of or claimants against Contractor, Construction Manager, or any subcontractor, material man or supplier.

## ARTICLE 12 - ACCEPTANCE AND FINAL PAYMENT

12.1 Substantial Completion. The date of substantial completion shall be established as December 19, 2016. Within ten (10) business days after receipt by Owner and Architect/Engineer of written notice by Contractor that the Work is substantially completed, Owner and Architect/Engineer (and if required by Owner, any tenant) shall inspect the Work unless Architect/Engineer determines that the Work is not sufficiently complete to warrant such inspection, in which case a new notice shall be required under this Section XII. In the event that the Work has reached Substantial Completion and is in accordance and conformity with the Contract Documents, Architect/Engineer shall promptly thereafter issue a Certificate of Substantial Completion (which may be in the standard form prepared by the AIA), dated as of the date of such inspection of the Work, setting forth:

      a.    A statement that the Work has been performed and has reached Substantial Completion as of the date of Substantial Completion set out therein in accordance and in conformity with the Contract Documents and has been accepted by Owner and Architect/Engineer subject to completion of and correction of any Punch List Work listed on the Certificate of Substantial Completion. As used herein, the term "Punch-List Work" means minor incomplete or defective items that do not impede or interfere with the use and occupancy of the Project for its intended purpose and that can be corrected within thirty (30) days. Within thirty (30) days after the issuance of the Certificate of Substantial Completion on a date specified by Owner, Owner and Architect/Engineer (and if required by Owner, any tenant) shall conduct a second inspection of the Work to evaluate the completion of the Punch-List Work listed on the Certificate of Substantial Completion and to identify any additional items of defective or nonconforming Work and any such additional items shall be added to the list of Punch-List Work. All Punch-List Work shall be completed within thirty (30) days after issuance of the Certificate of Substantial Completion, or thirty (30) days after being

added to the list of Punch-List Work, as applicable, or such longer period as to which Owner and Contractor may agree in writing;

b. The total unpaid balance of the Cost of the Work and Contractor's Fee, if any, including retained amounts; and

c. The estimated cost of completion of the Punch-List Work.

12.2  Payment.  Upon the expiration of a period of thirty-five (35) days after the issuance of the Certificate of Substantial Completion, subject to the satisfaction of the conditions set forth in Section 12.3, Owner shall pay to Contractor such amount as is shown by the Certificate of Substantial Completion to be the unpaid balance of the Cost of the Work and the unpaid balance of the Contractor's Fee, and any other amounts otherwise due hereunder; provided, however, that Owner may withhold and retain as an offset against amounts otherwise due Contractor hereunder the amount of any damages or other amounts due to Owner from Contractor hereunder.

12.3   Conditions to Payment.  Owner's obligation to pay Contractor pursuant to Section 10.3 is subject to the following conditions:

a. Contractor shall have submitted to Owner no later than fifteen (15) days prior to payment a complete Application for Payment and a final unconditional waiver and release of mechanic's lien from each party covering all sums requested in such Application, and all other documentation required pursuant to Section 2.9;

b. Owner shall have received evidence reasonably satisfactory to Owner and its construction lender, if applicable, including appropriate title insurance endorsements that there are no liens filed relating to the Work.  If any mechanic's or material man's lien or claim has been recorded, Owner may withhold the amount thereof until the lien or claim is removed or until Owner and Owner's construction lender, if applicable, are indemnified against such lien or claim by bond, title endorsement or other means reasonably satisfactory to Owner and the construction lender; and,

c. All items of Punch-List Work shall have been completed in accordance with the Contract Documents.

12.4  Non-Waiver by Owner.  The making of final payment by Owner shall not constitute a waiver of claims arising from:

a. Contractor's obligations to complete any unfinished Punch-List Work;

b. Unsettled liens;

c. Faulty or defective Work;

d. Failure of the Work to comply with the requirements of the Contract Documents;

  e.  The terms of any guaranties or warranties contained in or required by the Contract Documents; or

  f.  Any claim for which notice was previously given.


  12.5 <u>Waiver by Contractor</u>. The acceptance of final payment by Contractor shall constitute a waiver of all claims by Contractor except those previously made by Contractor and identified by Contractor in the final Application for Payment as unsettled as of the date of the Application for Payment.

### ARTICLE 13 - OCCUPANCY BEFORE COMPLETION OF WORK

  13.1 Owner reserves the right, at its option and convenience, to occupy or allow any tenant to occupy or otherwise make use of all or any part of the Work at any time prior to Substantial Completion upon ten (10) days' notice to Contractor, provided such occupancy or use is authorized by the public authorities having jurisdiction over the Work and subject to the following conditions:

  a.  The Architect/Engineer will make an inspection of the portion of the Project to be occupied and prepare a list of items to be completed or corrected prior to Final Completion. Prior to such occupancy, Owner or Contractor shall designate in writing the responsibilities assigned to each of them for payments, retainage if any, security, maintenance, damage to the Work and insurance, and the period for correction of the Work and commencement of warranties required by the Contract Documents;

  b.  Such occupancy shall not be construed by Contractor as an acceptance by Owner of that portion of the Work which is to be occupied nor constitute a waiver of existing claims of Owner or Contractor against each other;

  c.  Contractor shall provide, in the areas occupied, utility services, heating and cooling for systems which are in operable condition at the time of occupancy. All responsibility for the operation and maintenance of equipment shall remain with Contractor while the equipment is so operated. However, Contractor may submit an itemized list of each piece of equipment so operated with the date operation commences. This list shall be the basis for the beginning of the Correction Period on the equipment being operated for the such occupancy. Owner shall pay for all utility costs which arise out of such occupancy;

  d.  Owner shall use its best efforts to prevent any such occupancy from interfering with the conduct of the Contractor's remaining Work. If any such interference occurs, the Guaranteed Maximum Cost and/or the Construction Schedule shall be equitably adjusted;

  e.  Contractor shall not be required to repair damage caused by such occupancy;

f.   There shall be no added cost to Contractor due to such occupancy;

g.   Owner shall indemnify and hold harmless Contractor, its Contract Manager and subcontractors, from and against any claims for property damage and/or bodily injury resulting from or by any tenant, including all agents, employees, licensees and invitees, entering onto or occupying the Property or making use of the Work, prior to Substantial Completion.

h.   Owner shall give Contractor notice of such intent to enter at least ten (10) days prior to the date of request entrance.

## ARTICLE 14 – INDEMNIFICATION

14.1 <u>Indemnification by Contractor</u>.  Contractor shall indemnify, defend (with counsel reasonably acceptable to Owner) and hold Owner, all subsidiary and affiliated entities of Owner, any lender with a security interest in the Project, and each of their respective members, managers, partners, agents, representatives, trustees, directors, officers, shareholders and employees, and each of them (collectively, the "Indemnified Parties" and each, individually, an "Indemnified Party") from and against:

a.   Any and all claims, demands, losses, liabilities, damage, liens, obligations, interest, injuries, penalties, fines, lawsuits or other proceedings, judgments and awards and costs and expenses (including reasonable attorneys' fees and costs and consultant fees and costs and court costs) of whatever kind or nature, known or unknown, contingent or otherwise, including the reasonable cost to the Indemnified Parties of carrying out the terms of any judgment, settlement, consent decree, stipulated judgment or other partial or complete termination of an action or proceeding that requires the Indemnified Party or Parties to take any action (collectively, collectively, "Liabilities" and, individually, a "Liability") arising or resulting from the performance of the Work, provided that any such Liability (i) is caused in whole or in part by Contractor or Contractor's agents, representatives, officers or employees, or any other person or entity directly or indirectly employed or hired by Contractor or such other person or entity in connection with the Work to be performed under the Contract Documents, and (ii) is attributable to bodily injury, sickness, disease or death or injury to or destruction of tangible personal property (other than the Work itself), including the loss of use resulting there from; and

b.   Any and all claims of lien and liens of Contractor, Construction Manager, or any subcontractor or any other person or entity directly or indirectly employed or hired by Contractor, Construction Manager, or any subcontractor or such other person or entity, brought or filed, arising out of or in any manner directly or indirectly connected with the Work to be performed under the Contract Documents.

14.2  Indemnification by Owner.  Owner shall indemnify and hold harmless Contractor and its members, shareholders, employees, and agents, from and against all claims, damages, losses and reasonable expenses, including reasonable attorneys' fees arising out of or resulting from the performance of the work performed by its contractors or subcontractors and its tenant's contractors or subcontractors.  Contractor shall notify Owner of any claim under this indemnity in such time as to avoid prejudice to Owner and Owner shall have the right to defend with counsel reasonably acceptable to Contractor.

14.3  Survival.  The provisions of this Article 14 shall survive the termination or expiration of this Agreement and shall not be limited by the amount or type of insurance obtained by Owner or Contractor.

## ARTICLE 15 - CONTRACTOR'S INSURANCE

15.1  Required Coverage.  Contractor shall provide to Owner, or if directed by Owner, Owner's insurance manager, copies of insurance policies or certificates of insurance acceptable to Owner evidencing all insurance coverages required hereunder, including the amount of deductibles, not later than seven (7) days prior to commencement of performance of the Work and thirty (30) days prior to the expiration of any policy.  The certificates shall (i) include the additional insured requirements specified in this Article 15, (iii) include copies of all applicable endorsements executed by all insurance carriers.  The insurance required hereunder shall include:

    a.    Workman's Compensation.  As required by the laws of the state in which work is to be performed including Coverage A (Statutory Policy Form) and Coverage B (Employer's Liability Coverage) with limits of not less than the following: Bodily injury by accident $500,000 each accident, and Bodily injury by disease $500,000 each employee. Coverage is to include a broad form all-states endorsement.

    b.    General Liability.  Commercial General Liability on an occurrence form (claims made coverage not acceptable), per project, including Premises and Operations, Owners and Contractors Protective, Personal Injury, Broad Form Blanket Contractual, Broad Form Property Damage, duty to defend by the insurance company, including defense costs in excess of the policy limits, Personal Injury Liability, Severability of Interest or Cross-Liability, deletion of any limitation on contractual liability for operations within 50 feet of a railroad property, and Products & Completed Operations (Contractor agrees to maintain this coverage for a minimum of five (5) years following completion of its work and to continue to name the Indemnified Parties as additional insured(s) for the entire 5 year period) coverage in the following minimum limits or limit carried, whichever is greater, or such higher limits as Owner may specify:

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |

| Products-Completed Operations Aggregate Limit | $2,000,000 |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000 |

c.  <u>Automobile</u>. Comprehensive Automobile Liability insurance covering the operation, maintenance or use of all owned, non-owned, employee and hired vehicles utilized by Contractor in connection with the Work with a Combined Bodily Injury and Property Damage single limit of not less than $1,000,000, or limit carried, whichever is greater.

d.  <u>Explosion, Collapse and Underground Hazard</u>. When the Work involves any subsurface activities, Contractor shall provide liability coverage for explosion, collapse and underground hazard (X, C and U perils). This coverage is to be included as part of the General Liability insurance in subsection (b) above.

e.  <u>Watercraft and Aircraft Liability</u>. Watercraft and Aircraft Liability coverage, if applicable, for owned and non-owned Watercraft and/or Aircraft with limits of not less than $1,000,000 per occurrence, or limit carried, whichever is greater, for Bodily Injury and Property Damage combined.

f.  <u>Umbrella Liability</u>. Umbrella Liability coverage with limits of not less than $8,000,000 per occurrence listing all policies and coverages required under items (a), (b), (c), (d) and (e) above as underlying policies. Coverage to be following form excess of the underlying, and is to drop down and apply as primary coverage if the underlying coverage is depleted. Defense costs are to be in addition to policy limits. Umbrella limits maybe reduced proportionate to general liability amounts in excess of required amounts.

g.  <u>Deductibles</u>. Any deductibles shall be subject to Owner's written approval and shall not in any event exceed $5,000. Contractor shall be solely responsible for the payment of all deductibles. In no event shall self-insured retentions be permitted.

15.2  <u>Additional Insureds</u>. All insurance policies (excepting worker's compensation and professional liability) maintained by Contractor pursuant to this Agreement shall name Owner and all other Indemnified Parties, as additional insureds. Contractor's insurance policies shall contain an endorsement stating (i) that such insurance shall be primary as to any and all claims, losses or liabilities arising directly or indirectly, from Contractor's operations and any insurance maintained by Owner shall be excess and noncontributory with the insurance provided hereunder, and (ii) that an act or omission of one of the named insureds shall not reduce or avoid coverage to the other named insureds and shall afford coverage for all claims based on acts, omissions, injury and damage, which claims occurred or arose (or the onset of which occurred or arose) in whole or in part during the policy period. (iii) and the general liability and umbrella additional insured

endorsements shall include both ongoing operations and completed operation. In no event will the additional insureds be responsible for payments of premiums or deductibles.

15.3 Notice of Cancellation. In the event the coverage evidenced by any such policy is canceled or reduced, Contractor shall procure and furnish to Owner before the effective date of such cancellation, new policies conforming to the above requirements. Should any policy expire or be canceled before the expiration of this Agreement and Contractor fails immediately to procure other insurances specified, Owner reserves the right, but shall have no obligation, to procure such insurance and to deduct the cost thereof from any sum due Contractor under this Agreement.

15.4 Carrier Insurance Types. All insurance described under this Article 15 to be carried by Contractor will be maintained by Contractor at its expense with insurance carriers licensed and approved to do business in the required venue, having a rating of not less than an "A- VII" as rated by the A.M. Best Company, or equivalent rating systems.

15.5 Damages. Nothing contained in these insurance requirements is to be construed as limiting the type, quality or quantity of insurance Contractor should maintain or the extent of Contractor's responsibility or liability for payment of damages resulting from its operations under this Agreement. The carrying of the insurance as specified herein shall not be construed to be a limitation of liability on the part of Contractor, nor shall it relieve Contractor from any liability under this Agreement or as a matter of law. Owner is not responsible for any loss or damage to property owned, rented or leased by Contractor and/or its subcontractors or employees or agents of any of them, unless the property will become part of the permanent construction.

15.6 Construction Manager's Insurance. Contractor shall require its Construction Manager to provide insurance as set forth in Section 15.1. Contractor shall require its Construction Manager to obtain and forward to Owner the appropriate certificates or other evidence of insurance. Contractor hereby agrees that it is Contractor's responsibility to require and document that Construction Manager acquires and maintains insurance of the type and amounts specified herein.

15.7 Subcontractors' Insurance. Contractor shall require its subcontractors to provide insurance as set forth in Section 15.1 provided that the general liability coverage for each such subcontractor shall be $1,000,000 per occurrence, and Umbrella Liability coverage with limits of not less than $5,000,000 per occurrence unless otherwise directed by Owner. Contractor shall require its subcontractors to be responsible for obtaining and forwarding to Owner the appropriate certificates or other evidence of insurance. Contractor hereby agrees that it is Contractor's responsibility to require and document that each subcontractor acquire and maintain insurance of the type and in the amounts specified herein.

15.8 Engineers' and Architects' Insurance. Contractor shall require Civil, and Fire Protection engineers and Architect for the Design/Build Elements to also obtain professional liability insurance covering negligence, malpractice, negligent errors and omissions in the performance by the engineer of its services hereunder, in an amount not less than $1,000,000 per claim. Coverage must be continuous thereafter until the termination of any statute of limitations applicable to claims which might arise on account of the design and construction of the Project. Contractor shall require all Civil and Fire Protection Engineers and Architect to be responsible for

obtaining and forwarding to Owner the appropriate certificates or other evidence of insurance. Providers of Engineers services shall obtain Umbrella Liability coverage with limits of not less than $1,000,000 per occurrence unless otherwise directed by Owner.

15.9   Liability for Failure to Maintain Insurance.   Contractor, its subcontractors, its Construction Manager, and those professionals named in Section 15.8, above, shall be liable for all losses and costs if they shall fail to maintain the coverage required hereunder.  Upon five (5) days prior written notice to Contractor (or immediately in the event of an emergency), Owner may secure but is not obligated to do so, such insurance in the name of Contractor, its subcontractors, its Construction Manager, or those professionals named in Section 15.8, above, and Contractor shall pay all costs of such insurance.  Contractor its subcontractor(s), its Construction Manager, and those professionals named in Section 15.8, above shall cooperate fully with Owner in obtaining such coverage.

15.10  Miscellaneous.  The coverage obtained pursuant to the provisions of this Article 15 shall include insurance against damage from design warranties, if any, given by Construction Manager and subcontractors employed by Contractor.   This obligation shall survive any termination of this Agreement. In no event shall such insurance be terminated or otherwise allowed to lapse prior to termination of this Agreement or such longer period as may be specified herein. Contractor may provide the insurance described in this Article 15 in whole or in part through a policy or policies covering other liabilities and projects of Contractor, provided, however, that any such policy or policies shall (a) allocate to the Project the full amount of insurance required hereunder, and (b) contain, permit or otherwise unconditionally authorize the waiver contained in Section 17.3, below.

15.11  Owner's Right to Modify Insurance Requirements.  Owner reserves the right from time to time to modify the insurance requirements contained in this Article 15 and by Change Order to require Contractor, its subcontractors, or its Construction Manager to obtain additional or more extensive coverages as may be required by Owner.  In such event, the Guaranteed Maximum Cost shall be increased by the incremental increased cost of obtaining such additional or more extensive coverages.  Owner shall give written notice to Contractor of any such changed insurance requirements and Contractor shall make all efforts reasonably necessary to comply with such requirements.

15.12 Wrap-Up Coverage.  Owner has the right at any time to obtain and maintain project "wrap-up" insurance at Owner's sole discretion, covering Owner, Contractor and its subcontractor(s), in substitution for any or all coverages required to be maintained by Contractor, its subcontractor(s), and Construction Manager at Owner's expense.  To the extent insurance coverages are provided under a "wrap-up" policy, Owner shall deduct from the contract sum the cost of such insurance as shown on Contractor's original budget proposal.

**ARTICLE 16 – OWNER'S INSURANCE**

16.1 <u>Liability Insurance</u>.  Owner shall be responsible for purchasing and maintaining its own liability insurance and, at its option, may purchase and maintain such insurance as will protect it against any claims which may arise from operations under this Contract.

**ARTICLE 17 – GENERAL INSURANCE PROVISIONS**

17.1 <u>Property Insurance</u>.  Contractor shall purchase and maintain until the date of Substantial Completion All Risk Builder's Risk insurance for new structures to the full insurable value thereof.  This insurance shall include the interests of the Contractor, Owner, Construction Manager, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils normally insured against in an All Risk Builder's Risk policy.  Owner's lender shall be named as First Mortgagee and Loss Payee under this Builder's Risk Policy.  Any insured loss is to be adjusted with Contractor and made payable to Contractor, as trustee for the insured as their interests may appear.  If Owner requests, in writing, that insurance for special hazards be included in the property insurance policy, Contractor shall, if possible include such insurance and the cost thereof shall be charged to Owner by Appropriate Change Order. The Builder's Risk Policy shall include a Permission to Occupy Clause.

17.2 <u>Insured Losses</u>.  Contractor and Owner waive all rights against each other for damage caused by fire or other perils to the extent covered by insurance provided under Articles XV and XVI, except such rights as they may have to the proceeds of such insurance.  If required, in writing, by any party in interest, Contractor, as trustee, shall upon the occurrence of an insured loss, give bond for the proper performance of its duties.  Contractor shall deposit in a separate account any money so received and it shall distribute it in accordance with such agreement as the parties in interest may reach.  If, after such loss, no other special agreement is made, replacement of damaged Work shall be covered by an appropriate Change Order.  Contractor, as trustee, shall have power to adjust and settle any loss with the insurers.  Priority in distribution shall be given so as to reimburse Contractor for Work for which payment had not been made by Owner as of the date of loss.

17.3 <u>Waiver of Subrogation</u>.  Owner and Contractor shall cause all General Liability policies carried by each of them to contain a provision requiring the insurance carriers to waive all rights of subrogation against Owner or Contractor, as the case may be, and against separate contractors, and any of their subcontractors, subcontractors, agents and employees.  Contractor shall require its Construction Manager, subcontractors, by appropriate agreements, written where legally required for validity, to provide similar waivers of subrogation in favor of other parties enumerated herein.  The policies shall provide such waivers of subrogation by endorsement or otherwise (except for policies for workman's compensation, equipment and watercraft/aircraft). Contractor waives all claims against Owner, its agents and their respective employees and releases each of them from any claims or rights of recovery for loss, damage or liability relating to or arising out of damage to the property of Contractor, its subcontractors, Construction Manager, suppliers and agents, and the employees of each of them.

**ARTICLE 18 - TERMINATION OF AGREEMENT**

     **18.1** <u>Termination by Contractor</u>. The Contractor may terminate this Agreement in the event that:

        a.    Owner fails to perform any of its material obligations hereunder within thirty (30) days after receipt by Owner of written notice from Contractor stating the nature of the default complained of (or within such longer time as is reasonable under the circumstances); or

        b.    An order for relief shall be entered against Owner under the United States Bankruptcy Code; or

        c.    The Work is suspended by Owner for a period of ninety (90) consecutive days or more from causes not the fault of Contractor and without the agreement of Contractor and Work is not thereafter resumed within thirty (30) days after written notice from Contractor;

    **18.2** <u>Payment on Termination by Contractor</u>.

        a.    If this Agreement shall be terminated by Contractor in the case of an event described in subparagraph c of Section 18.1, Owner shall pay Contractor for all Costs of the Work theretofore incurred, the pro rata portion of the Contractor's Fee applicable to the portion of the Work theretofore performed and any proven loss sustained by Contractor upon any materials, equipment, tools, construction equipment and machinery, and for reasonable demobilization costs (but in no event shall the total amount exceed the Guaranteed Maximum Cost).

        b.    If this Agreement shall be terminated by Contractor in the case of an event described in subparagraphs a or b of Section 18.1, Owner shall pay Contractor for all Costs of the Work theretofore incurred, the entire Contractor's Fee as set forth in the cost breakdown and any proven loss sustained by Contractor upon any materials, equipment, tools, construction equipment and machinery, and for reasonable demobilization costs (but in no event shall the total amount exceed the Guaranteed Maximum Cost).

        c.    Contractor, as a condition of receiving payment under this Section 18.2, shall execute and deliver all such papers and take all such steps, including the assignment of any of its contractual rights pertaining to the Work or to the Project, and the delivery to Owner of all Project record documents, as the Owner may reasonably require. The payment provided under this Section 18.2 shall be Contractor's sole and exclusive remedy in the event of termination by Contractor and Contractor shall be entitled to no other compensation of damages.

18.3 <u>Termination by Owner for Cause</u>.  Owner may terminate this Agreement in the event that:

a.    An order for relief shall be entered against Contractor under the United States Bankruptcy Code; or

b.    Contractor shall make a general assignment for the benefit of its creditors, or fail to pay its debts as the same become due; or

c.    A receiver shall be appointed to take charge of Contractor's property; or

d.    The progress of the performance of any material category of the Work shown in the Construction Schedule shall be at any time two weeks or more behind the timing set forth in the Construction Schedule for such category; or

e.    Contractor shall refuse or fail to supply enough properly skilled workers or proper materials to prosecute the Work as provided herein; or

f.    Contractor shall fail to make prompt payment of amounts properly due to its Construction Manager or subcontractors or for materials or labor after receiving payments from Owner; or

g.    Contractor shall disregard applicable laws or ordinances or otherwise be in default of any material obligation under the Contract Documents; or

h.    Contractor is otherwise in substantial breach of a provision of the Contract Documents; and

i.    (and only in the case of any event described in subparagraphs e., f., g., and h.), Contractor fails to cure such problem within seven (7) days after the effective date of a written notice from Owner to Contractor or in the event such problem cannot reasonably be cured within seven (7) days, Contractor fails to begin such cure as soon as reasonably practicable and to diligently pursue to cure such problem) then Owner may terminate this Agreement and take possession of the premises, materials, supplies, equipment, and tools and finish the Work by whatever method Owner may deem expedient, and, at its option, Owner may assume any or all of the subcontracts now or hereafter executed by Contractor hereunder.  If requested by Owner, Contractor shall remove any part or all of Contractor's materials, supplies, equipment, tools and construction equipment and machinery from the Project site and if Contractor fails to do so, Owner may remove and store, and within ninety (90) days sell, any of the same at Contractor's expense.  Any cost incurred by Owner in removing, storing, or selling materials, supplies, equipment or tools pursuant to this Paragraph 18.3(i) shall be charged to Contractor.  Contractor shall be solely responsible for, and shall indemnify and hold Owner harmless from, any third party claims arising

out of materials, supplies, equipment or tools left on site after termination pursuant to this Paragraph 18.3(i).

18.4  Payment on Termination by Owner for Cause.  If this Agreement shall be terminated by Owner as provided in this Section 18.4, Contractor shall not be entitled to receive any further payment except with respect to Work theretofore completed, less any sums due Owner on account of damages suffered by Owner as a result of the conduct permitting termination or of the termination itself and Contractor shall to recover and be entitled to receive such payment, if any, until the expiration of thirty-five (35) days after Final Completion and acceptance of all Work by Owner. No termination or action taken by Owner after termination shall prejudice any other rights or remedies of Owner provided by law or by the Contract Documents upon such termination, and Owner may proceed against Contractor to recover all damages suffered by Owner. Contractor shall execute and deliver all such papers and take all such steps, including, without limitation, the legal assignment of its contractual rights, as Owner may require for the purpose of fully vesting in Owner the rights and benefits of Contractor under any contracts, commitments, or agreements that Contractor has previously undertaken or incurred in connection with the Work, and executing and delivering such papers and taking such steps shall be a condition to Contractor's receiving any payments under this Section 18.4.

18.5  Termination by Owner for Convenience.  Owner may, at its option, terminate this Agreement, in whole, or from time to time in part, at any time by giving written notice to Contractor. Upon such termination, Contractor agrees to waive any claims for damages, including loss of anticipated profits, on account thereof, and, as the sole right and remedy of Contractor, Owner shall pay Contractor in accordance with Section 18.2. Upon receipt of notice of termination pursuant to this Section 18.5, Contractor shall, unless otherwise directed in the notice, (i) discontinue the Work to the extent specified in the notice; (ii) place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the Work as is not discontinued; (iii) promptly cancel, on the most favorable terms reasonably possible, all subcontracts to the extent they relate to the performance of the discontinued portion of the Work; and (iv) thereafter do only such Work as may be necessary to preserve and protect Work already in progress and to protect materials, plants, and equipment on the Project site or in transit thereto. Upon such termination, the obligations of Contractor shall continue as to portions of the Work already performed and, subject to Contractor's obligations under this Section 18.5, as to bona fide obligations assumed by the Contractor prior to the date of termination.

18.6  Suspension by Owner for Convenience.  Owner may, at any time and from time to time, without cause, order Contractor, in writing, to suspend, delay, or interrupt the Work in whole or in part for such period of time, up to ninety (90) days, as Owner may determine, with such period of suspension to be computed from the date of delivery of the written order.  Such order shall be specifically identified as a "Suspension Order" under this Section 18.6.  The Work may be stopped for such further period as the parties may agree.  Upon receipt of a Suspension Order, Contractor shall, at the Owner's expense, comply with its terms and take all reasonable steps to minimize costs allocable to the Work covered by the Suspension Order during the period of Work

stoppage. Within ninety (90) days after the issuance of the Suspension Order, or such extension to that period as is agreed upon by Contractor and Owner, Owner shall either cancel the Suspension Order or delete the Work covered by such Suspension Order by issuing a Change Order. If the Suspension Order is canceled or expires, Contractor shall continue with the Work. A Change Order will be issued to cover any adjustments in the Guaranteed Maximum Cost or the Scheduled Date of Substantial Completion necessarily caused by such suspension. The provisions of this Section 18.6 shall not apply if a Suspension Order is not issued by Owner. A Suspension Order shall not be required to stop the Work as permitted or required under any other provision of the Contract Documents.

## ARTICLE 19 - INSPECTION AND AUDIT

19.1 Prior Inspection by Contractor. Contractor represents that it has inspected the Project site and has satisfied itself as to the condition thereof and that the Guaranteed Maximum Cost is just and reasonable compensation for all the Work, including all foreseen or foreseeable risks, hazards, and difficulties in connection therewith.

19.2 Owner and Architect/Engineer Access. At all times Owner and Architect/Engineer shall have access to the Work for inspection thereof, but shall not be obligated to conduct any such inspection. Contractor shall provide proper and safe facilities for such access and inspection. If any of the Work is required to be inspected or approved by any public authority, Contractor shall cause such inspection to be performed or approval to be obtained.

19.3 Lender's Access. Contractor understands and acknowledges that any permanent or construction lenders for the Project may require periodic inspection and certification by an independent design professional or other representative designated and engaged by such lender, and certification by the Board of Fire Underwriters. Consequently, Contractor agrees to make the Work, wherever it is in progress, available at all reasonable times for inspection by any lender's design professional or other representative and shall coordinate with Owner's representative to make the Work available at appropriate times for inspection by representatives of the Board of Fire Underwriters.

19.4 No Deemed Waiver or Approval. No inspection performed or not performed by Owner hereunder shall be a waiver of any of Contractor's obligations hereunder or be construed as an approval or acceptance of the Work or any part thereof.

19.5 Records. Contractor shall check all materials and labor going into the Work and shall keep such full and detailed accounts as may be necessary to determine the Cost of the Work.

19.6 Right to Audit Owner shall have access to and the right to audit all Contractor's books, records, correspondence, instructions, drawings, receipts, vouchers and memoranda relating to the Work. Contractor shall preserve all such records for a period of five (5) years after the final payment hereunder. Any such audit shall be at Owner's expense unless such audit discloses that Contractor overstated the Cost of the Work by more than five percent (5%) in which event Contractor shall reimburse Owner for the cost of such audit.

## ARTICLE 20 - SURVEY AND PROJECT RECORD DOCUMENTS

20.1 <u>Final Documents</u>. Concurrently with the final Application for Payment, Contractor shall furnish Owner with final drawings showing the exact locations of all structures and water, sewer, gas and electric lines and mains and of all easements for such utilities then existing. At that time Contractor shall also furnish Owner with two complete sets of as-built Project Record Documents covering all the Work.

20.2 <u>Owner's Property</u>. All the Contract Documents, all permits, licenses and applications obtained in connection with the Work, and all manuals, drawings, specifications, warranties, computations, sketches, test data, survey results, models, photographs, renderings, plans, shop and proposal drawings and other materials related to the Work and prepared by Contractor or any other person are the property of Owner. Upon Owner's request, and at Owner's expense, copies of any and all such documents shall be delivered to Owner. As a condition to final payment, originals of all such permits, licenses and applications and copies of any or all such other materials in Contractor's possession shall be delivered to Owner upon final acceptance of the Work by Owner, or upon termination of the Contract due to Contractor's default (and Contractor shall see that all such materials are obtained from subcontractors, material men and suppliers and delivered to Owner). Such materials shall not be used by Contractor or any other person in any way connected with any other work.

## ARTICLE 21 - CONSTRUCTION BY SEPARATE OWNERS

Owner may perform work on the Project site, including work which has been deleted from the Contract by Change Order, with Owner's own forces or with separate contractors. Contractor shall cooperate fully with Owner's forces and separate contractors at the Project site and coordinate the scheduling and performance of the Work with the scheduling and performance of the work to be performed by Owner's forces and separate contractors. Contractor shall afford Owner's forces and separate contractors reasonable opportunity to bring in and store materials and equipment on the Project site. Owner shall provide in each of its separate contracts that each such contractor shall have all the obligations of Contractor under this Article 21 and elsewhere in the Contract Documents with respect to separate work, including without limitation, caulking, patching and filling of work, protection of the Work and Owner's property and that of separate work, including without limitation damages with respect thereto, and cooperation with other contractors.

## ARTICLE 22 - CONSTRUCTION LOAN PROVISIONS

22.1 <u>Loan Conditions</u>. If it is a condition to the closing of the construction financing for the Project that only union labor be employed on the Project, Contractor agrees that only labor employed under valid union contracts will be employed on the Project and the Project site.

22.2 <u>Cooperation and Compliance</u>. Contractor agrees to cooperate with Owner in complying with the usual and customary payment and other procedures of a construction lender and provide all documents, reports, and other information reasonably requested by the construction lender or any escrow or title insurer of Owner.

22.3 <u>Proof of Financing</u>. Owner shall provide to Contractor reasonably satisfactory evidence indicating that firm financing is available to pay for all costs of the project of which the improvements contemplated hereunder are a part (with all pre-construction and pre-disbursement contingencies satisfied), said financing to provide payment to Contractor under and according to the terms of this Agreement. Further, Owner agrees to refrain from taking any action which might directly or indirectly void or constitute a default under any loan agreements in connection with the project and agrees that all agreements made in connection with such financing are deemed made for the benefit of Contractor. Owner shall be responsible for all costs arising out of delays in securing financing.

## ARTICLE 23 - GENERAL PROVISIONS

23.1 <u>Assignment</u>. Except for an Assignment of portions of the Work to a Construction Manager pursuant to an Assignment Agreement as provided in Article 3, Contractor shall not assign this Agreement, nor shall Contractor assign any monies due or to become due to Contractor hereunder, without the prior written consent of Owner, which consent may be withheld at the absolute discretion of Owner. Any purported assignment or delegation other than an Assignment to a Construction Manager pursuant to an Assignment Agreement without the required consent shall be null and void and of no force or effect. Except as otherwise expressly provided herein, Owner shall not assign this Agreement without the prior written consent of Contractor, which consent shall not be unreasonably withheld, delayed or conditioned; provided, however, that Owner shall have the right to assign this Agreement without Contractor's consent to an affiliate of Owner or the end user of the Project.

23.2 <u>Notices</u>. All notices required or permitted hereunder shall be in writing and shall be personally delivered or sent by certified or registered United States mail, postage prepaid, return receipt requested, and addressed to the parties at the addresses specified on the signature page to this Agreement. Either party may change its address from time to time by written notice to the other party given as provided herein. Such notices shall be effective upon personal delivery to the addressee or upon the date of receipt as indicated on the return receipt, if sent by registered or certified U.S. mail.

23.3 <u>Complete Agreement</u>. This Agreement, including Exhibits hereto, and the other Contract Documents represent the full and complete understanding of the parties and supersede any previous agreements, representations or understandings, oral or written, with respect to the subject matter hereof. The Contract Documents may be modified or altered only by a Change Order issued pursuant to Article 7 or other written instrument signed by the parties.

23.4 <u>Successors</u>. This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Owner and the successors and assigns of Contractor.

23.5 <u>Venue and Governing Law</u>. The parties agree that any dispute between them or requiring litigation whether or not arising under this Agreement shall only be commenced and determined within Cook County, Illinois, as constituting the parties' sole and exclusive choice of venue. This Agreement shall be governed by and construed under the laws of the State of Illinois,

without regard to conflict of laws principles. The venue and governing law provisions in this Section 23.5 are mandatory and not merely permissive.

23.6 <u>Bonds</u>. If required by Owner, at Owner's option and expense, Contractor, as part of the Cost of the Work, shall provide Owner with payment and performance bonds in forms satisfactory to Owner and Owner's construction lender and in amounts equal to the value of the Work remaining to be done under the Contract Documents, from a surety acceptable to Owner and Owner's construction lender.

23.7 <u>Attorneys' Fees</u>. In any proceeding brought by one party hereto against the other to enforce or interpret the terms of the Contract Documents, or to resolve any dispute concerning the performance or conduct of services provided or to be provided under the Contract Documents, the party prevailing in such proceeding shall be entitled to an award of the reasonable fees and disbursements of its attorneys in addition to such other relief as the court may grant. The prevailing party shall be determined by the court or arbitrator, as applicable, based upon an assessment as to which party's major arguments or positions taken in the proceedings could fairly be said to have prevailed over the other party's major arguments or positions on major disputed issues in the court's or arbitrator's decision.

23.8 <u>No Waiver</u>. No failure to exercise, and no delay in exercising, any right, power or remedy hereunder shall impair any right, power or remedy that any party hereto may have, nor shall such failure or delay be construed to be a waiver of any of such rights, powers or remedies, or an acquiescence in any breach or default hereunder, nor shall any waiver of any breach or default of any party hereto be deemed a waiver of any default or breach subsequently occurring.

23.9 <u>Severability of Provisions</u>. In case any one or more of the provisions contained herein should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

23.10 <u>Owner's Right to Complete</u>. In the event of a default by Owner under its General Contract with Owner, at the election of Owner, in its sole discretion, the unperformed part of the Contract Documents will be performed by Contractor for the benefit and at the expense of Owner, should Owner so elect provided that Owner assumes the obligations of Owner then and thereafter existing hereunder.

23.11 <u>Representatives</u>. Owner's representative shall be designated by Owner in writing to Contractor and shall have full authority to execute any and all instruments requiring Owner's signature and to act on behalf of Owner with respect to all matters arising out of this Agreement. Contractor's representative shall be designated in writing to Owner and shall have full authority to execute any and all instruments requiring Contractor's signature and to act on behalf of Contractor with respect to all matters arising out of this Agreement. Contractor's representative shall be the person specified on <u>Exhibit E</u> unless and until Contractor notifies Owner in writing that some other person shall be Contractor's representative and Owner approves such person.

23.12 <u>Equal Opportunity</u>.

a. <u>No Discrimination</u>. During the performance of the Contract Documents, Contractor shall not discriminate against any employee or applicant for employment because of sex, race, creed, color, national origin, age, ancestry, religion, marital status or handicap. Contractor shall take affirmative action to ensure that applicants are employed and treated during employment without regard to their sex, race, creed, color, national origin, age, ancestry, religion, marital status or handicap. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay, or other forms of compensation; and selection for training, including apprenticeship. Contractor shall post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this Section 23.12.

b. <u>Job Solicitations</u>. Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of Contractor, state that all qualified applicants shall receive consideration for employment without regard to sex, race, creed, color, national origin, age, ancestry, religion, marital status or handicap.

c. <u>Notice to Unions</u>. Contractor shall send to each labor union or representative of workers with which Contractor has a collective bargaining agreement, or other contract or understanding, a notice advising the labor union workers' representative of Contractor's commitments under this Section 23.12. Contractor shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d. <u>Selection of Subcontractors</u>. Contractor shall not discriminate in the selection of subcontractors or suppliers because of sex, race, creed, color, national origin, age, ancestry, religion, marital status or handicap.

e. <u>Compliance with Applicable Laws</u>. Contractor shall be solely responsible for complying with all local, state, or federal regulations, laws, guidelines, or policies regarding non-discrimination and affirmative action which are applicable to the Work.

23.13 <u>Owner's Additional Costs</u>. Unless otherwise agreed in writing, Owner, at its own expense, shall furnish all surveys, civil and soil engineering tests, and rights-of-way and easements for permanent structures or permanent changes in existing facilities.

23.14 <u>Headings</u>. Captions and headings used in this Agreement are for the purpose of convenience only and shall not be construed to limit or extend the meaning of any part of this Agreement.

23.15  <u>Dispute Resolution</u>. For purposes of this Section 23.15, "Disputes" shall mean all unresolved claims, counterclaims, disputes, controversies, and other matters in question between Contractor and Owner arising out of or relating to the Contract Documents or the breach thereof.

    a.    <u>Performance of Parties to Continue</u>.  Unless otherwise agreed in writing during the period in which any Dispute is outstanding each of Contractor and Owner shall continue to perform its services and carry out its other responsibilities in accordance with the Contract Documents.

    b.    Mediation. Owner and Contractor shall submit all Disputes to mediation prior to either party initiating arbitration or exercising any other remedy available under this Agreement, unless delay in initiating or prosecuting a proceeding in an arbitration or other judicial forum would prejudice Owner or Contractor. Unless the parties mutually agree otherwise, such mediation shall be conducted in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect.

        i.    Upon either party's decision to submit a Dispute to mediation, such party shall serve written notice on the other party and shall propose the identity of a mediator.

        ii.    Upon receipt of such notice, the non-initiating party shall respond in writing to the initiating party within ten (10) business days by either accepting the initiating party's proposed mediator or by proposing an alternate mediator.

        iii.    In the event that only one party proposes a mediator within such 10-day period, the mediator that has been proposed shall be selected.

        iv.    In the event that Owner and Contractor both propose mediators within such 10-day period, and the parties cannot agree as to the identity of the mediator within a further 10-day period, the mediator shall be appointed in accordance with the Construction Industry Mediation Rules of the American Arbitration Association.

        v.    If any Dispute has not been resolved within forty-five (45) days after submission thereof to mediation, either party may initiate arbitration for the resolution of such Dispute. Owner and Contractor each hereby consents to the exclusive jurisdiction and venue, for purposes of resolution of any Dispute of the Circuit Court of Cook County, Illinois and the United States District Court in the Northern District of Illinois.

    b.    <u>Arbitration</u>.  Upon mutual written agreement of the parties, disputes may be resolved in Chicago, Illinois by arbitration through the Judicial Arbitration and Mediation Service ("JAMS") or other alternative dispute resolution agency mutually acceptable to the parties, before a retired judge or justice

of the Illinois courts. Such arbitration shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.

c. The initiating party shall file a demand for arbitration with the other party to the Contract Documents and with the American Arbitration Association. In no event shall such demand for arbitration be made after the date when institution of legal or equitable proceedings based on such Dispute would be barred by the applicable statute of limitations.

d. Owner and Contractor each hereby stipulate to any consolidation or joinder with respect to any arbitration proceeding involving or arising out of the Project. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to other Project agreements shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

e. The party filing a notice of demand for arbitration must assert in the demand all Disputes then known to that party on which arbitration is permitted to be demanded.

f. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

g. In the event of any arbitration hereunder or any action or proceeding to enforce any arbitration award hereunder, the prevailing party, as determined by the arbitrator or arbitrators or court, shall be entitled to recover from the other party all costs and expenses, including court costs, arbitration fees and reasonable attorney's fees, incurred by the prevailing party in connection with such arbitration, action or proceeding.

h. The parties mutually promise and agree that, in disputes which they have agreed to arbitrate, they shall, before the hearing, make discovery and disclosure of all matters relevant to the subject matter of such dispute, to the extent and in the manner provided by the Illinois Code of Civil Procedure. All questions that may arise with respect to the fulfillment of or the failure to fulfill this obligation shall be referred to an arbitrator who is an attorney for his or her determination, which shall be final and binding. This obligation shall be specifically enforceable.

//

//

//

//

//

IN WITNESS WHEREOF, Owner and Contractor have executed this Agreement as of the date first written above.

| OWNER: | CONTRACTOR: |
|---|---|
| Bridge Perth Amboy, LLC | Premier Design + Build National, LLC, a Delaware limited liability company |
| By: _____ | By: _____ |
| Name: _John Purcell_ | Name: Alec R. Zocher |
| Title: _Authorized Rep_ | Title: Manager |
| Date: _9/4/15_ | Date: September 4, 2015 |
| **OWNER'S ADDRESS FOR NOTICES & BILLING:** | **CONTRACTOR'S ADDRESS FOR NOTICES:** |
| Bridge Perth Amboy, LLC | Premier Design + Build National, LLC |
| 350 West Hubbard Street, Suite 450 | Attn: Brian Paul |
| Chicago, IL 60654 | 1000 West Irving Park Road, Suite 200 |
| And to: | Itasca, IL 60143 |
| Bridge Development Partners, LLC | |
| New Jersey Division | |
| One Gatehall Drive, Suite 201 | |
| Parsippany, NJ 07054 | |

**EXHIBIT "A"**

**PROJECT DESCRIPTION**

Mass grading, site improvements and building construction for the development of the property located at Block 425, Lot 1.02, Block 426, Lot 3.04 and Block 428, Lots 1.01, 1.02, 1.03 & 1.05.

**EXHIBIT "B"**

**LIST OF DRAWINGS AND SPECIFICATIONS**

- Project document log, as prepared by PREMIER Design + Build Group, LLC, dated August 18, 2015 (attached hereto)

- General Building Specifications, as prepared by PREMIER Design + Build Group, LLC, dated July 7, 2015 (attached hereto).



**PROJECT DOCUMENT LOG**

PROJECT: Bridgepoint E-Port
Building A – 1000 High Street, Perth Amboy, NJ
LOCATION: Building B – 960 High Street, Perth Amboy, NJ
Building C – 980 High Street, Perth Amboy, NJ
PROJECT NUMBER: 1526
DATE: Tuesday, August 18, 2015

| Drawing No. | Description | Date of Issue | Rev. No. 1 | Rev. No. 2 | Rev. No. 3 | Rev. No. 4 | Rev. No. 4 |
|---|---|---|---|---|---|---|---|
| **CIVIL** | **MENLO ENGINEERING ASSOCIATES, INC.** | | | | | | |
| Sheet 1 of 50 / CV-1 | Cover Sheet | 06/27/12 | 07/24/13 | | | | |
| Sheet 2 of 50 / EC-1 | Existing Conditions Plan | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 3 of 50 / OP-1 | Overall Plan | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 4 of 50 / SUB-1 | Subdivision Plan | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 5 of 50 / GE-1 | Geometry Plan 1 | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 6 of 50 / GE-2 | Geometry Plan 2 | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 7 of 50 / GE-3 | Geometry Plan 3 | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 8 of 50 / GE-4 | Geometry Plan 4 | 06/27/12 | 07/20/12 | 08/21/12 | 07/24/13 | | |
| Sheet 9 of 50 / GD-1 | Grading and Drainage Plan 1 | 07/20/12 | 08/21/12 | 04/24/13 | 05/17/13 | 07/24/13 | |
| Sheet 10 of 50 / GD-2 | Grading and Drainage Plan 2 | 07/20/12 | 08/21/12 | 05/17/13 | 07/24/13 | | |
| Sheet 11 of 50 / GD-3 | Grading and Drainage Plan 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 12 of 50 / GD-4 | Grading and Drainage Plan 4 | 07/20/12 | 08/21/12 | 05/17/13 | 07/24/13 | | |
| Sheet 13 of 50 / UT-1 | Utility Plan 1 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 14 of 50 / UT-2 | Utility Plan 2 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 15 of 50 / UT-3 | Utility Plan 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 16 of 50 / UT-4 | Utility Plan 4 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 17 of 50 / LT-1 | Lighting Plan 1 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 18 of 50 / LT-2 | Lighting Plan 2 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 19 of 50 / LT-3 | Lighting Plan 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 20 of 50 / LT-4 | Lighting Plan 4 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 21 of 50 / LA-1 | Landscaping Plan 1 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 22 of 50 / LA-2 | Landscaping Plan 2 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 23 of 50 / LA-3 | Landscaping Plan 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 24 of 50 / LA-4 | Landscaping Plan 4 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 25 of 50 / LA-5 | Landscaping Plan 5 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 26 of 50 / SE-1 | Soil Erosion & Sediment Control Plan 1 | 07/20/12 | 08/21/12 | 10/01/12 | 07/24/13 | | |
| Sheet 27 of 50 / SE-2 | Soil Erosion & Sediment Control Plan 2 | 07/20/12 | 08/21/12 | 10/01/12 | 07/24/13 | | |
| Sheet 28 of 50 / SE-3 | Soil Erosion & Sediment Control Plan 3 | 07/20/12 | 08/21/12 | 10/01/12 | 07/24/13 | | |
| Sheet 29 of 50 / SE-4 | Soil Erosion & Sediment Control Plan 4 | 07/20/12 | 08/21/12 | 10/01/12 | 12/18/12 | 07/24/13 | |
| Sheet 30 of 50 / UP-1 | Utility Profiles 1 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 31 of 50 / UP-2 | Utility Profiles 2 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 32 of 50 / UP-3 | Utility Profiles 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 33 of 50 / UP-4 | Utility Profiles 4 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 34 of 50 / UP-5 | Utility Profiles 5 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 35 of 50 / UP-6 | Utility Profiles 6 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 36 of 50 / UP-7 | Utility Profiles 7 | 07/20/12 | 08/21/12 | 12/18/12 | 07/24/13 | | |
| Sheet 37 of 50 / DE-1 | Detail Sheet 1 | 07/20/12 | 08/21/12 | 10/01/12 | 01/28/13 | 07/24/13 | |
| Sheet 38 of 50 / DE-2 | Detail Sheet 2 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 39 of 50 / DE-3 | Detail Sheet 3 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 40 of 50 / DE-4 | Detail Sheet 4 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 41 of 50 / DE-5 | Detail Sheet 5 | 07/20/12 | 08/21/12 | 07/24/13 | | | |
| Sheet 42 of 50 / PSD-1 | Pump Station Details 1 | 07/20/07 | 08/21/12 | 07/24/13 | | | |
| Sheet 43 of 50 / PLP-1 | Water Main Plan & Profile Plan 1 | 07/20/12 | 08/21/12 | 02/28/13 | 04/05/13 | 04/18/13 | 07/24/13 |
| Sheet 44 of 50 / PLP-2 | Water Main Plan & Profile Plan 2 | 07/20/12 | 08/21/12 | 02/28/13 | 04/05/13 | 04/18/13 | 07/24/13 |
| Sheet 45 of 50 / PLP-3 | Water Main Plan & Profile Plan 3 | 07/20/12 | 08/21/12 | 02/28/13 | 04/05/13 | 04/18/13 | 07/24/13 |
| Sheet 46 of 50 / NPP-1 | NJDEP Permitting Plan | 08/21/12 | 04/02/12 | 07/24/13 | | | |
| Sheet 47 of 50 / SEC-1 | Soil Erosion & Sediment Control Plan - Crane's Creek Cross Sections | 10/01/12 | 07/24/13 | | | | |
| Sheet 48 of 50 / PHA-1 | Phasing Plan 1 | 07/24/13 | 04/23/14 | 10/16/14 | | | |
| Sheet 49 of 50 / PHA-2 | Phasing Plan 2 | 07/24/13 | 04/23/14 | 10/16/14 | | | |
| Sheet 50 of 50 / PHA-3 | Phasing Plan 3 | 07/24/13 | 04/23/14 | 10/16/14 | | | |

**Additional Documentation**

| Issuer | Description | Original Issue Date | Rev. No. 1 | Rev. No. 2 | Rev. No. 2 | Rev. No. 2 | Rev. No. 2 |
|---|---|---|---|---|---|---|---|
| Menlo Engineering Associates | Engineer's Report - Sanitary Sewer Service & Pump Station Specifications | 08/28/12 | 07/29/14 | 08/12/14 | 08/22/14 | 09/02/14 | |
| Menlo Engineering Associates | Engineer's Report - Potable Water Service | 08/28/12 | | | | | |
| Menlo Engineering Associates | Operation and Maintenance Manual | 07/20/12 | | | | | |



# BRIDGE
### DEVELOPMENT
### PARTNERS, LLC

## BRIDGE POINT EPORT
## DISTRIBUTION CENTER – BUILDINGS A, B, C
## 960-1000 HIGH STREET
## PERTH AMBOY, NJ



## GENERAL BUILDING SPECIFICATIONS
### JULY 7, 2015



www.pdbgroup.com
info@pdbgroup.com

GENERAL BUILDING SPECIFICATIONS – BRIDGE POINT ePORT
2

## GENERAL PROJECT DESCRIPTION

| | |
|---|---|
| **PROJECT TITLE:** | Bridge Point ePort |
| **LOCATION:** | 960, 980, 1000 HIGH STREET<br>PERTH AMBOY, NJ |
| **BUILDING TYPE:** | Tilt-Up or Precast Industrial Distribution Facilities |
| **SIZE:** | BUILDING A:  354,302 SF<br>BUILDING B:  220,245 SF<br>BUILDING C:  718,219 SF |
| **BUILDING CLEAR HEIGHT:** | 36'-0" |
| **EXTERIOR TRUCK DOCKS:** | Building A:  69 ea<br>Building B:  34 ea<br>Building C:  172 ea |
| **DRIVE-IN DOORS:** | Building A:  2 ea<br>Building B:  2 ea<br>Building C:  4 ea |
| **CAR PARKING STALLS:** | Building A:  218<br>Building B:  112 ea<br>Building C:  377 ea |
| **TRAILER PARKING STALLS:** | Building A:  117 ea<br>Building B:  112 ea<br>Building C:  275 ea |
| **SITE AREA:** | 102.71 Acres |
| **EXTERIOR WALL MATERIAL:** | Tilt-up (or precast) Concrete Wall Panels and Glass |
| **BRIEF PROJECT DESCRIPTION:** | Three multi-tenant speculative warehouse buildings totaling 1,292,766 sf located on an approximately 102.71 acre parcel fronting High Street in Perth Amoy, NJ. |

**APPLICABLE PROJECT DOCUMENTS:**

Civil Drawings by Menlo Engineering Associates, Inc. dated 7/24/13.
Interim Grading Plan by Menlo Engineering Associates, Inc. dated 12/26/12.
Phasing Plan by Menlo Engineering Associates, Inc. dated 10/16/14.



## DIVISION 1 – GENERAL CONDITIONS AND GENERAL REQUIREMENTS

### 1-001   LAYOUT
Surveying, for the purpose of performing the Work, shall be provided.  Upon completion of the project, surveying of the site work shall be conducted for the production of the as-built documents.

### 1-005   FIELD SUPERVISION
Full-time supervision shall be provided to oversee on-site work until substantial project completion.  The on-site supervisor shall be experienced and familiar with the specified materials and systems and shall be responsible for adequately planning and executing the fieldwork. This shall include scheduling and coordinating subcontractors on the job site, maintaining on-site records required by governmental authorities, and monitoring the completed work for compliance with the contract drawings and specifications.  The on-site supervisor shall be present for required inspections.

### 1-099   PROJECT MANAGEMENT
PREMIER Design + Build Group, LLC shall designate a Project Manager to be responsible for the work of this project including the following:  issuing notices and communication affecting the project on a timely basis; interfacing the project with the design team, local and state building and regulatory authorities; managing the work of his own forces and selected subcontractors; and coordinating and implementing any changes in the work into the design and construction of the project.  The Project Manager shall have full authority to make decisions for and represent PREMIER Design + Build Group, LLC's interest in matters related to costs, schedule and execution of the work.

### 1-012   TEMPORARY JOBSITE TRAILER AND UTILITIES
A jobsite trailer shall be located at the jobsite.  Temporary utilities/services for the trailer shall be furnished by the Contractor as necessary.

### 1-046   PERMITS, LICENSING AND FEES
The proper authorities shall be given notices as required by law relative to the construction work for this project.  Contractor's licenses required for construction shall be applied for and paid for by PREMIER Design + Build Group, LLC.  PDBG shall assist Architect as necessary to apply for the required Building Permits, and Site Permits. Owner shall be responsible for paying for all Building Permits and Building Permit components, Engineering Fees, Impact Fees, Water Tap, Sanitary Tap fees, etc.

### 1-048   INSURANCE
THE FOLLOWING INSURANCE COVERAGE SHALL BE MAINTAINED FOR THE PROJECT:

| INSURANCE TYPE | LIMIT |
| --- | --- |
| Workmen's Compensation | As required by law |
| Auto Liability | $1,000,000 |
| General Liability | $2,000,000 |
| Umbrella | $15,000,000. |
| Builders' Risk (for above ground work) | Value of Above ground work |

### 1-049   PERMANENT UTILITY SERVICES
New telephone, electric and water services shall be provided for by the utility companies.  Participation by Ownership shall be required for execution of the service agreement documents and payment of any service or excess utility charges, if applicable.  Sleeving for telephone and electrical primaries shall be by PREMIER Design + Build Group, LLC.

### 1-052   CLEAN UP
The premises shall be kept free from excessive accumulations of waste materials and/or rubbish, which shall be removed from the building and construction site, as necessary.  At the completion of the project, debris, tools, scaffolding and surplus materials shall be removed.  Warehouse shall be left in a "broom-clean" condition.



### 1-058   QUALITY ASSURANCE

A Quality Assurance program shall be implemented for this project.  This program shall focus on establishing guidelines necessary to insure that the final finished project meets or exceeds the required performance and quality standards identified for the facility.  This program shall include requirements for Client Project Status Meetings, Job Site Construction Meetings, Daily Field Reporting, Material and Design Submittal Requirements and Code Analysis, Material Testing and Special Inspections for facets of work requiring them.

### 1-070   SAFETY PROGRAM

A written safety program has been established by PREMIER Design + Build Group, LLC to protect and minimize exposure to injury for individuals working on or near this project.  Required OSHA safety signage shall be appropriately posted and hard-hat use shall be required on the job site.

### 1-082   PROJECT DRAWINGS AND CLOSEOUT DOCUMENTATION

The Owner shall contract with licensed design professionals to generate Civil and Landscaping drawings and corresponding specifications. PREMIER Design + Build Group, LLC shall contract with licensed design professionals to generate Architectural and Structural drawings, and Mechanical, Electrical, Plumbing, Fire Protection and Fire Alarm drawings shall be prepared on a design/build basis by subcontractors. These drawings shall be used to both obtain a permit and complete construction.

At the completion of the project, two (2) complete sets of red-lined drawings shall be provided to the Architect for their use in creating record drawings.  In addition, two (2) complete sets of operations manuals and the name, address and phone number of each subcontractor and vendor shall also be provided.

### 1-099   GUARANTEES

Materials and equipment incorporated into this project shall be new.  Premier Design + Build Group, LLC shall guarantee work to be free from defects of workmanship and materials for one (1) year.  A roofing manufacturer's standard twenty (20) year warranty shall be provided to the Owner at the completion of the project.

## DIVISION 2 – SITE WORK

### 2-200   GRADING & EARTHWORK

Work will be performed that is necessary to mass excavate, and fine grade the site, based upon the assumption that the site has suitable, compactable material. Mass grading work shall include, but shall not be limited to, clearing and grubbing if necessary, filling, constructing the building pads, cutting the parking lots, truck docks and green areas to design elevations utilizing onsite material and balancing to to prevent haul-off/exporting.  Fine grading shall consist of final preparation of the mass graded site to complete the floor slabs, pavement areas, green spaces, etc. to their final design grades.

Seller to provide site in condition to match Interim Grading Plan and Phasing Plan.

Approximately 6" of suitable organic topsoil shall be provided for green spaces.

Earthwork within the construction areas shall be observed, tested and approved by an independent soils engineer provided by Ownership.  Any structural fill areas shall be compacted as recommended by the Geotechnical Engineer.  Cut areas below pavement and slab on-grade shall pass a proof-roll witnessed and approved by the onsite Geotechnical Engineer's representative.

Granular material, consisting of crushed concrete or locally sourced aggregate, shall be placed below exterior pavements in thicknesses as detailed in the following asphalt and concrete sections.



### 2-500   BITUMINOUS PAVING AND STRIPING

Work necessary to furnish and install bituminous driveways and parking areas as shown on the scope drawing shall be provided (except 12" aggregate base below geotextile in pavement).   Aggregate base courses shall consist of crushed concrete 4" thick.

Bituminous mats shall be installed in two (2) lifts and in accordance with the recommendations of the independent testing agency. Bituminous pavement shall be striped to indicate parking stalls, median lines, traffic control features and handicapped parking locations.

### 2-700   EXTERIOR UNDERGROUND UTILITIES

Exterior Underground Utilities shall be installed by seller in accordance with Interim Grading Plan and Phasing Plan.

#### WATER MAIN SYSTEM

Water service and main shall be provided as shown on the scope drawing.   The fire water service line shall be buried to the depth from finished grade required by code and tested to the appropriate pressure.

A 2" water service separated inside pump room shall be provided for domestic water needs.

#### SANITARY SEWER SYSTEM

A 6" sanitary sewer service shall be provided from the building at each future office location to the site sanitary system indicated on the scope drawings.

#### STORM SEWER SYSTEM

The on-site storm sewer system shall connect to the onsite basins in the areas identified on the plan. There are no provisions for underground detention.   The storm sewer system will consist of code approved RCP and HDPE pipe, with catch basins as required by code.  Catch basins shall have heavy-duty grates.

### 2-900   LANDSCAPING/ IRRIGATION

Landscape trees, shrubs, and seed are included per the Civil Drawings.

---

## DIVISION 3 – CONCRETE

---

### 3-005   FOUNDATIONS

#### GENERAL CHARACTERISTICS OF FOUNDATION SYSTEM:

| | |
|---|---|
| COMPRESSIVE CONCRETE STRENGTH: | 3,000 PSI |
| PERIMETER FOUNDATION TYPE: | BANK POUR TRENCH FOUNDATION |
| PERIMETER FOUNDATION WIDTH: | 24" WIDTH OR AS DESIGNED |
| PERIMETER FOUNDATION DEPTH: | 30" DEEP OR AS DESIGNED |
| PERIMETER FOUNDATION REINFORCEMENT: | AS DESIGNED |
| INTERIOR FOUNDATION TYPE: | BANK POUR ISOLATED FOUNDATION |
| INTERIOR FOUNDATION SIZE: | PER DESIGN |
| INTERIOR FOUNDATION DEPTH | AS DESIGNED |
| INTERIOR FOUNDATION REINFORCEMENT: | AS DESIGNED |



GENERAL BUILDING SPECIFICATIONS – BRIDGE POINT ePORT      6

### 3-007   INTERIOR CONCRETE
**GENERAL CHARACTERISTICS OF INTERIOR WAREHOUSE SLABS:**

| | |
|---|---|
| COMPRESSIVE CONCRETE STRENGTH: | 4,000 PSI |
| CONCRETE THICKNESS: | 8" |
| STONE BASE: | 4" ¾" RECYCLED CRUSHED CONCRETE |
| REINFORCEMENT: | UNREINFORCED |
| FINISHING METHOD: | LASER SCREED |
| FINISH: | HARD TROWEL |
| CONSTRUCTION JOINTS: | DOWELED |
| CONTROL JOINTS: | NOT TO EXCEED 15' O.C. (USING "SOFF CUT" METHOD) |
| FLOOR FLATNESS/FLOOR LEVELNESS: | 35 FF / 25 FL |
| GUIDELINES: | ACI and ASTM criteria |

### 3-008   EXTERIOR FLATWORK
**GENERAL CHARACTERISTICS OF TRUCK DOCK SLABS:**

| | |
|---|---|
| COMPRESSIVE CONCRETE STRENGTH: | 4,000 PSI |
| CONCRETE THICKNESS: | 8" |
| STONE BASE: | 4" ¾" RECYCLED CRUSHED CONCRETE |
| REINFORCEMENT: | UNREINFORCED |
| PLACEMENT METHOD: | LASER SCREED |
| AIR ENTRAINMENT: | YES |
| FINISH: | BROOM |

**GENERAL CHARACTERISTICS OF SIDEWALKS AND MISCELLANEOUS SLABS:**

| | |
|---|---|
| COMPRESSIVE CONCRETE STRENGTH: | 4,000 PSI |
| THICKNESS: | 4" |
| REINFORCEMENT: | UNREINFORCED |
| FINISH: | BROOM CALIFORNIA FINISH |

### 3-009   EXTERIOR CURBS
**GENERAL CHARACTERISTICS OF EXTERIOR CURBWORK:**

| | |
|---|---|
| COMPRESSIVE CONCRETE STRENGTH: | 4,000 PSI |
| TYPE: | AS SPECIFIED ON PLANS |
| REINFORCEMENT: | AS DESIGNED |

## DIVISION 4 – PRECAST/TILT UP CONCRETE WALL PANEL AND MASONRY

### 4-400   TILT-UP OR PRECAST CONCRETE WALL PANELS
The exterior building material shall consist of load bearing cast-on-site, un-insulated, concrete wall panels (or precast, depending on timing, weather constraints and availability). The structural design of the wall panels will be provided by a Structural Engineer. The interior side of the walls in the warehouse shall be exposed float finish concrete. Leave-outs for openings and clear heights shall be accommodated for as required to meet the intent of the Architect's design. Fire pump and electrical rooms shall be constructed out of concrete panels or masonry block wall and rated as required by code.



## DIVISION 5 – METALS

### 5-060  STRUCTURAL STEEL

The general construction shall utilize beams or joist girders, tube columns, wide-flange columns, bar joists, and wide-rib metal decking.  The typical interior bay size width shall be approximately 55'-0" x 44'-6" as determined by Owner, with the end bays adjusted accordingly to meet the length and width of the proposed building.  An intended clear-height of 36'-0" A.F.F. shall be measured to the underside of the lowest structural member from the floor slab.

The roof framing structure, including joists, beams and columns shall be shop prime painted gray. The metal roof deck shall be shop prime painted white.

### 5-999  MISCELLANEOUS METALS

THE FOLLOWING MISCELLANEOUS METALS SHALL BE PROVIDED:

- Bollards:
    - 6" diameter x ¼" thick concrete filled bollards at drive-in doors on the outside of the building
    - 6" diameter x ¼" thick concrete filled bollards at the exterior stair corners and drive-in-door ramps to provide collision protection.

- Z-Track guards for overhead doors and drive-in-door interiors

- Roof Access ladder

- Steel stairs with railings, as detailed.

## DIVISION 6 – CARPENTRY

### 6-100  CARPENTRY

Miscellaneous carpentry, including but not limited to installation of hollow metal frames, doors and hardware, and provide wood blocking for the roofing system.

## DIVISION 7 – THERMAL AND MOISTURE PROTECTION

### 7-200  ROOFING SYSTEM

The roof shall be a single ply 60-mil fully adhered TPO roofing system with a single layer of mechanically fastened polyisocyanurate insulation (totaling 3"). Roof edge fascias will be prefinished clad metal (standard color).  Other flashings will be galvanized metal.

A manufacturer's standard twenty (20) year warranty shall be provided for the roofing system.

### 7-900  CAULKING AND JOINT SEALANTS

The tilt-up concrete wall panel joints shall be caulked with a paintable sealant. Backer-rods shall be installed to allow for a proper joint thickness and finish.

Glass and glazing systems shall be caulked per the manufacturer's requirements.

## DIVISION 8 – DOORS AND WINDOWS

### 8-100  HOLLOW METAL DOORS, FRAMES AND HARDWARE

Warehouse hollow metal doors shall be 3'-0" x 7'-0", 18-gauge hollow metal face. The fire pump and electrical room hollow metal doors shall be 4'-0" x 7'-0", 18-gauge hollow metal face. Frames shall be



16-gauge hollow metal with rubber insert silencers. Grilles or louvers shall be provided in the doors to provide ventilation as required by code.

Door hardware will be lever handle design as manufactured by Schlage, Sargent, Ruswin, Falcon, or equal. A complete keying system allowing doors within a given area to be keyed alike and tied into the building master and grand master system will be furnished. Closers and panic bars shall be provided as required by code.

### 8-400   OVERHEAD DOORS
Overhead doors shall be 26 ga. steel face with polyurethane core. The truck dock doors shall be manual, rope-pull, lift type, and the drive-in doors will be powered (final electrical connection part of TI Improvements). Exterior doors are to be insulated and weather-stripped.

### 8-500   GLASS AND GLAZING
A $180,000 allowance shall be provided for the glass and glazing for the facility shall consist for tinted glass panels within anodized aluminum framing systems.

## DIVISION 9 -- FINISHES

### 9-500   PAINTING
Exterior precast wall panels will be stained to match a color scheme to be generated utilizing a Modur "F" (or equal) product.
THE FOLLOWING METALS SHALL BE PAINTED WITH OIL-BASE PAINT:
- Hollow metal doors
- Hollow metal door frames
- Pipe bollards
- Roof ladder
- Dock leveler frames

### 9-800   FLOOR SEALER
- Interior concrete warehouse floor slabs shall be sealed with two coats of Lapidolith.

## DIVISION 10 — SPECIALTIES

### 10-600 MONUMENT SIGN
Costs for the monument sign are not included at this time.

## DIVISION 11 — EQUIPMENT

### 11-100 DOCK EQUIPMENT
6' x 8', 35,000 lb. mechanical dock levelers (as manufactured by Kelley, Serco, Fairborn, or equal), with oversized rubber faced bumpers shall be provided. Each dock openings will have a dock seal with 40oz vinyl base fabric and 40-oz vinyl wear pleats.

## DIVISION 12 — FURNISHINGS AND MISCELLANEOUS
*None included or anticipated to be required for this project*

## DIVISION 13 — SPECIALTIES CONSTRUCTION
*None included or anticipated to be required for this project*

## DIVISION 14 — CONVEYING SYSTEMS
*None included or anticipated to be required for this project*



## DIVISION 15 – MECHANICAL

### 15-100 FIRE PROTECTION SYSTEM

#### GENERAL CHARACTERISTICS OF *FIRE SPRINKLER SYSTEM*:

| | |
|---|---|
| SYSTEM TYPE: | ESFR (EARLY SUPPRESSION FAST RESPONSE) |
| FIRE/JOCKEY PUMPS: | INCLUDED (SIZE AS REQUIRED) |
| HOSE VALVES: | TO BE INCLUDED UNDER TENANT IMPROVEMENT WORK, IF REQUIRED. |
| HEAD TYPE: | K-22 |
| OTHER FEATURES: | FIRE DEPARTMENT CONNECTION |
| | BACKFLOW PREVENTER |
| | FLOW ALARM BELLS |
| | OTHER REQUIRED COMPONENTS FOR CODE-COMPLIANT SYSTEM |

### 15-200 PLUMBING

#### STORM

The roof drainage shall be accommodated via interior perimeter drain and downspout system located along the dock walls. Downspouts shall be located between dock positions and shall discharge into underground exterior storm piping.

#### SANITARY

A gravity-fed interior sanitary system shall be stubbed into the building from the exterior sanitary line. Future sanitary needs shall be serviced via extending the underground sanitary stubs underground, or via overhead lift-station, and shall be paid for by the Tenant Improvement Allowance.

#### WATER

A 2"water line will be extended in the joists from the domestic water service meter in the pump room to the office bays to accommodate the future office area domestic water needs. Valves with "T's" shall be located adjacent to each future tenant on the 2" water line in the roof joists.

A convenience hose bib shall also be installed in the fire pump room.

### 15-300 HEATING AND VENTILATION

Each building shall be heated only utilizing positive-pressure 80/20 units designed to provide +60 degrees Fahrenheit at 0 degrees Fahrenheit outside air temperature (Building A – 3 units; Building B – 2 units and Building C – 6 units) Gas lines shall be provided tied into 1 meter and manifold for each building. Gas service will be designed to accommodate a multi-tenant building.

The incoming gas service is anticipated to be available where shown and to adequate pressure. A supplementary heating unit (electric wall heater) shall be provided for the electrical/fire pump room

## DIVISION 16 – ELECTRICAL

### 16-100 ELECTRICAL SYSTEM

#### MAIN POWER DISTRIBUTION

A 277/480 volt, 3-phase, 4-wire electrical service shall be provided for each building. (Building A 800Amp, Building B 400Amp, Building C 1200Amp) The electrical services shall be set up in the electrical room of each facility. Provisions shall be made to allow for a multi-tenant configuration and metering. A house service and meter shall be installed to accommodate the empty shell and site's electrical needs.

#### POWER TO BUILDING EQUIPMENT AND OUTLETS

The initial house service will have all the initial building components connected to it (interior lighting, exterior lighting, overhead door motors, etc.).



The necessary service, power and connection for the fire pump service shall be provided.

### INTERIOR LIGHTING
T-5 motion sensor controlled lights shall be installed to provide "stumble lighting" at each future office entrance area.

Combination exit and emergency lights shall be provided above each exit door only as required by code for a vacant shell condition.

### 16-400 FIRE ALARM
A fully addressable fire alarm panel and control system shall be furnished and installed for a base building empty shell condition. Pull stations and horn strobes within tenant spaces shall be installed as part of the Tenant Improvements. The base building system shall be designed to accommodate multi-tenant scenarios.

### 16-520 SITE LIGHTING AND CONDUITS
Parking lot lighting shall be provided for the parking lots and trailer areas by 400-watt wall mounted shoe box fixtures mounted to the precast/tilt-up panels to accommodate code required lighting levels.

## EXCLUSIONS/CLARIFICATIONS

### THE FOLLOWING ARE EXCLUDED FROM THIS PROPOSAL:

1. Due Diligence including: Topographic survey, Phase I Environmental Survey, Environmental testing, Geotechnical Investigation, etc.
2. Building Demolition, environmental remediation, asbestos abatement or wetland mitigation costs.
3. Regrading and installation of rip-rap within the Crane's creek bed and banks. Slurry wall installation has eliminated this requirement (Sheet #47 of Civil Engineering plans)
4. 12" granular or stone below the geotextile fabric in Pavement Section on Sheet #38 of Civil Engineering Plans.
5. Civil/Landscape Design
6. Off-site improvements
7. Movement of surcharge piles, Unsuitable soils, undercuts, dewatering, DDC, CMC, surcharge, ground improvement etc. (by Seller or carried separately under Owner budget).
8. Factory Mutual Insurance Requirements
9. Permit Fees, Impact fees, Bonds, Letters of Credit, Utility Fees or Excess Utility Charges
10. Additional emergency lights, fire alarm, battery lights, etc. to accommodate warehouse finish out with open plan or racking
11. Tenant improvements
12. Winter Conditions including but not limited to:
    a. Winter heat
    b. Temporary enclosures
    c. Winter concrete service and admixtures
    d. Frost cutting or removal
13. Storm water lift stations and sanitary sewer lift stations.
14. Special exhaust systems, and smoke removal system, explosion venting, and or alcohol foam suppression systems. Fire Suppression to accommodate expanded plastic, and/or Water Tanks.
15. Anything in conflict with this general building specification.



**EXHIBIT "C"**

**GUARANTEED MAXIMUM COST = $** 48,224,220

| | | |
|---|---|---|
| GUARANTEED MAXIMUM COST OF WORK | $ | 43,354,225 |
| CONTRACTOR'S FEE | $ | 2,514,059 |
| CONTRACTOR'S GENERAL CONDITIONS AND INSURANCE | $ | 2,355,936 |
| TOTAL GUARANTEED MAXIMUM COST, FEE & GENERAL CONDITIONS | $ | 48,224,220 |

**EXHIBIT "D"**

**INITIAL COST BREAKDOWN**



**PREMIER** DESIGN + BUILD GROUP

**BRIDGE** DEVELOPMENT PARTNERS LLC

# ePort Logistics – PERTH AMBOY, NJ
## BUDGET BREAKDOWN
### July 31, 2015

Menlo Engineering 440 Rev. #3, dated July 24, 2013

| | BUILDING A 354,250 SF 36' Clear BUDGET | $/SF | BUILDING B 228,720 SF 36' Clear BUDGET | $/SF | BUILDING C 738,200 SF 36' Clear BUDGET | $/SF | INFRASTRUCTURE 1,292,673 SF TOTAL BUILDING AREA BUDGET | $/SF |
|---|---|---|---|---|---|---|---|---|
| **SITE WORK** | | | | | | | | |
| EARTHWORK (MASS AND FINE GRADING) | $553,950 | $1.56 | $369,000 | $1.68 | $1,085,346 | $1.51 | $75,000 | $0.06 |
| SITE UTILITIES (WATER/SANITARY/STORM SEWER) | $818,675 | $2.31 | $632,180 | $2.87 | $1,289,793 | $1.80 | $150,000 | $0.12 |
| ASPHALT/STONE AND STRIPING | $751,470 | $2.12 | $614,872 | $2.79 | $1,930,621 | $2.69 | $308,150 | $0.24 |
| EXTERIOR CONCRETE | $712,433 | $2.01 | $433,491 | $1.97 | $1,582,104 | $2.20 | $54,720 | $0.04 |
| RETAINING WALL | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 | $175,000 | $0.14 |
| BOX CULVERT/CREEK CROSSINGS | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 | $700,000 | $0.54 |
| LANDSCAPING ALLOWANCE | $165,000 | $0.47 | $100,000 | $0.45 | $340,000 | $0.47 | $100,000 | $0.08 |
| | $3,001,528 | $8.47 | $2,149,543 | $9.76 | $6,227,864 | $8.67 | $1,562,870 | $1.21 |
| **BASE BUILDING** | | | | | | | | |
| CONCRETE FOOTINGS, FOUNDATIONS AND SLABS | $1,549,468 | $4.37 | $981,885 | $4.46 | $3,165,631 | $4.41 | $0 | $0.00 |
| PRECAST/TILTWALL AND CAULKING | $1,802,850 | $5.09 | $1,264,920 | $5.74 | $2,379,900 | $3.31 | $0 | $0.00 |
| FIRE PUMP/ELECTRIC ROOMS | $35,000 | $0.10 | $35,000 | $0.16 | $35,000 | $0.05 | $0 | $0.00 |
| STRUCTURAL STEEL, JOISTS, DECK, MISC. METAL | $1,957,587 | $5.53 | $1,232,251 | $5.60 | $3,967,268 | $5.52 | $0 | $0.00 |
| ROUGH CARPENTRY/DOORS/HARDWARE | $58,852 | $0.17 | $56,230 | $0.26 | $88,630 | $0.12 | $0 | $0.00 |
| ROOFING AND INSULATION (3" WITH FULLY ADHERED TPO) | $1,193,238 | $3.37 | $775,020 | $3.52 | $2,418,470 | $3.37 | $0 | $0.00 |
| OVERHEAD DOORS (Dock doors and 2 DID) | $92,865 | $0.26 | $50,865 | $0.23 | $216,465 | $0.30 | $0 | $0.00 |
| GLASS & GLAZING ALLOWANCE (ENTRANCE ELEVATIONS TBD) | $60,000 | $0.17 | $60,000 | $0.27 | $60,000 | $0.08 | $0 | $0.00 |
| PAINTING | $82,500 | $0.23 | $56,000 | $0.25 | $110,000 | $0.15 | $0 | $0.00 |
| FLOOR SEALER | $46,053 | $0.13 | $28,629 | $0.13 | $93,366 | $0.13 | $0 | $0.00 |
| DOCK EQUIPMENT (6' X 8' MECHANICAL LEVELERS) | $247,020 | $0.70 | $121,720 | $0.55 | $615,760 | $0.86 | $0 | $0.00 |
| INTERIOR PLUMBING | $165,100 | $0.47 | $91,900 | $0.42 | $186,550 | $0.26 | $0 | $0.00 |
| FIRE PROTECTION AND FIRE PUMP | $548,450 | $1.55 | $360,808 | $1.64 | $1,057,980 | $1.47 | $0 | $0.00 |
| HVAC (HEATING ONLY VIA POSITIVE PRESSURE UNITS) | $168,875 | $0.48 | $108,478 | $0.49 | $265,000 | $0.37 | $0 | $0.00 |
| ELECTRICAL AND FIRE ALARM | $510,699 | $1.44 | $380,030 | $1.73 | $991,677 | $1.38 | $120,000 | $0.09 |
| | $8,517,957 | $24.05 | $5,603,738 | $15.82 | $15,651,697 | $21.79 | $120,000 | $0.09 |
| **SITE/BUILDING BUDGET SUBTOTAL:** | $11,519,485 | $32.52 | $7,753,279 | $35.21 | $21,879,561 | $30.46 | $1,682,870 | $1.30 |
| GENERAL CONDITIONS (SUPERVISION/PRINTS/MEP DESIGN) | $518,377 | $1.46 | $348,898 | $1.58 | $984,580 | $1.37 | $75,729 | $0.06 |
| SWPP REPORTING AND COMPLIANCE | $5,000 | $0.01 | $5,000 | $0.02 | $5,000 | $0.01 | $5,000 | $0.00 |
| CONSTRUCTION SURVEYING AND LAYOUT | $30,000 | $0.08 | $25,000 | $0.11 | $50,000 | $0.07 | $17,500 | $0.01 |
| ARCHITECTURAL/STRUCTURAL/CIVIL DESIGN | $111,915 | $0.32 | $82,110 | $0.37 | $182,505 | $0.25 | $0 | $0.00 |
| PERMITS (NOT INCLUDED) | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 |
| MATERIAL TESTING/IBC SPECIAL INSPECTIONS (BY OWNER) | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 | $0 | $0.00 |
| INSURANCE GENERAL LIABILITY | $115,195 | $0.33 | $77,533 | $0.35 | $218,796 | $0.30 | $16,829 | $0.01 |
| OVERHEAD/FEE/PROJECT MANAGEMENT | $676,498 | $1.91 | $456,050 | $2.07 | $1,282,624 | $1.79 | $98,885 | $0.08 |
| **SITE/BUILDING BUDGET SUB-TOTALS:** | $12,976,470 | $36.63 | $8,747,869 | $39.72 | $24,603,066 | $34.26 | $1,896,814 | $1.47 |

**COMBINED INFRASTRUCTURE/SITE/BUILDING BUDGET TOTAL:** $48,224,220 | $37.31

**EXCLUSIONS**
PERMITS, BONDS OR TAP FEES
UNSUITABLE SOILS OR UNDERCUTS
ENVIRONMENTAL TESTING OR REMEDIATION
UTILITY RELOCATES
IMPORTING OR EXPORTING OF MATERIALS FROM SITE (CLAY/CONTAMINATED/ETC)
(ALLOWANCE OF TOPSOIL IMPORT INCLUDED. CONFIRM WITH DUE DILIGENCE)
CONSTRUCTION CONTINGENCIES
OFFSITE IMPROVEMENTS (UTILITY EXTENSIONS/ROW ROAD IMPROVEMENTS/ETC.)

**EXHIBIT "E"**

**CONTRACTOR'S PROJECT PERSONNEL**

a) Alec Zocher – Executive Vice President, Member

b) Julie Piszczek – Project Manager

c) Ron Nelsen – Director of Field Operations

d) Tom Johnson – Field Superintendent

**EXHIBIT "F"**

**GENERAL CONDITIONS WORK**

DESCRIPTION

OSHA & SAFETY

POSTAGE, UPS & MESSENGER

TRAILER ELECTRIC AND TELEPHONE

MATERIAL HANDLING

TRAILER SUPPLIES

SITE MAINTENANCE

PROJECT MANAGEMENT

SUPERVISION

LABORERS

DEWATERING/DUMPING DUMPSTERS

TEMPORARY TOILETS

TEMPORARY UTILITIES

TRAILER RENTAL

OFFICE EQUIPMENT RENTAL

BARRICADES

BLUEPRINTS & REIMBURSABLES

TOOL EXPENSE

VEHICLE EXPENSES

EQUIPMENT AND TOOL RENTAL

EQUIPMENT AND TOOL REPAIRS

EQUIPMENT AND TOOL PURCHASE

TELEPHONE

MATERIAL PURCHASES

BOTTLED WATER

JOBSITE SECURITY CLEAN UP

LEGAL & CLOSING

FIELD ENGINEERING

PROJECT SIGNS

TRAVEL AND LODGING COSTS

CONSTRUCTION MANAGER FEE

**EXHIBIT "G"**

**ALLOWANCES**

Glass & Glazing Allowance   $180,000

EXHIBIT "H"

SCHEDULE



EXHIBIT "I"

DESIGN CONTRACTS