# EXHIBIT 5



33 North LaSalle Street, Suite 1900     T(312) 425-2500
Chicago, IL 60602     F(312) 425-2525

April 19, 2024

Email:
nnovak@wglaw.com
ccostello@wglaw.com

**VIA EMAIL**

| | |
|---|---|
| Daniel A. Dorfman | Brett L. Warning |
| Erik R. Nelson | Donald E. Elder |
| Fox Swibel Levin & Carroll LLP | Emerson & Elder, P.C. |
| 200 W. Madison St., Suite 3000 | 53 W. Jackson Blvd., Suite 526 |
| Chicago, IL 60606 | Chicago, IL 60604 |
| ddorfman@foxswibel.com | brett@emersonelder.com |
| enelson@foxswibel.com | dee@emersonelder.com |

      Re:   *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Law Division
           Named Insured:   GMAC Construction LLC &/or GMAC Construction Inc.
           Policy Nos.:   MPA00000025695Z (Prim.)
                         CMB00000025694Z (Umb.)
           Policy Periods:   June 15, 2017 – June 15, 2018
                         June 15, 2018 – June 15, 2019
                         June 15, 2019 – June 15, 2020
                         June 15, 2020 – June 15, 2021
                         June 15, 2021 – June 15, 2022
           Claim No.:   390776-GP
           <u>Our File No.:   0208042</u>

Gentlemen:

     The undersigned represents Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company (collectively referred to as "Harleysville"). This correspondence is in response to Premier Design + Build Group, LLC ("Premier Group") or Premier Design + Build National, LLC ("Premier National") tender of their defense and indemnity as additional insureds under the above-referenced primary and umbrella policies containing commercial general liability coverage (referred to collectively herein as "Policies," "Primary Policies" or "Umbrella Policies," where appropriate) issued by Harleysville to

April 19, 2024
Page 2

its named insured, "GMAC Construction LLC &/or GMAC Construction Inc." ("GMAC") in the lawsuit captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Law Division, Illinois ("Underlying Action"). In reaching our conclusions, Harleysville reviewed the pleadings in the Underlying Action, the Policies, materials included in the tender letters and responses, publicly available information, and relevant case law.

For the reasons set forth below, Harleysville does not owe a duty to defend or indemnify Premier Group or Premier National in the Underlying Action because their liability in the Underlying Action was not "caused, in whole or in part" by GMAC's "acts or omissions" (ongoing operations) or GMAC's work (completed operations).

### I. BACKGROUND INFORMATION

#### A. Underlying Action

##### 1. Underlying Complaint

The Underlying Action seeks damages arising out of the "design, engineering, and construction" of a warehouse located at 980 High Street, Perth Amboy, New Jersey ("980 High Steet Building") and two access bridges (collectively referred to as the "Property"). Plaintiff Duke Realty ePort Urban Renewal LLC ("Duke") alleges that Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC ("Bridge Perth") assigned its interest in the Property to it on or about November 22, 2017. Prior to the assignment, on August 18, 2015, Bridge Perth entered into a Contract with Premier National to build multiple warehouse buildings and access bridges (collectively referred to as the "Project") on the Property. Premier National assigned certain rights and obligations under the contract to its affiliate, Premier Group, which entered into various subcontracts for design and construction of the Project.

Duke alleges that the ground underneath the Property has numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. Duke alleges that under the contract, Premier National agreed to provide demolition, design, engineering, architectural, and construction services for the Project. The Underlying Action alleges that Premier[1] agreed to perform site work that included: (1) mass excavation and fine grading of the site, including grading necessary to complete floor slabs, pavement areas, and green spaces; and (2) ensuring structural areas were compacted as recommended by a geotechnical engineer. The Underlying Action alleges Premier was advised that there were "deposits of loose, uncontrolled fill materials and a compressible, organic clay stratum below the fill on the Property." Further, Premier knew that the soil stratum underlying the Property had the potential to cause damaging differential settlements under new load conditions, such as buildings and access bridges, if left untreated. The Underlying Action alleges Premier's subcontractors advised Premier to treat the area beneath the proposed access bridges and buildings, including the 980 High Street Building with surcharging (applying excessive vertical load or weight in excess of that

---

[1] The Complaint largely refers to Premier Group and Premier National collectively as "Premier."

April 19, 2024
Page 3

associated with the long-term development conditions to accelerate consolidation) to prepare the soil to support the eventual development and construction of access bridges and warehouse buildings.

With respect to the Access Bridges, the Underlying Action alleges that the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses. Duke claims the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed and thus not sound for their purposes. Duke asserts that the defects have caused the Access Bridges to suffer significant damages including settlement, cracks in the frame, and gaps, settlement and separation in the concrete masonry unit blocks making up the retaining walls.

As to the 980 High Street Building, Duke claims that Premier and/or its subcontractors surcharged the portion of the Property where the original footprint of the building was to be built. Duke asserts that it was later decided that the footprint of the 980 High Steet Building would be increased and that the additional space would be built on portions of the Property that had not been sufficiently surcharged by Premier or its subcontractors ("980 High Street Building Extension"). The Underlying Action alleges that Premier worked with Menard Group and GEI Consultants, Inc. to develop a system of rigid inclusions or controlled modulus columns to reinforce the soil beneath the 980 High Street Building Extension, to support the 980 High Street Building, and to prevent deleterious settlement of the 980 High Street Building.

After the Project was completed, on February 15, 2017, Bridge Perth entered into a lease agreement with Target Corporation ("Target") and Target began to lease the 980 High Street Building. In 2019, Target sent a letter to Duke informing it of cracking and potential failure of exterior walls and foundation at the 980 High Street Building. Thereafter, Duke allegedly hired engineers to monitor the building and determined that the 980 High Street Building was experiencing unusual and deleterious settlement and that such settlement would continue if not properly abated. The Underlying Action alleges that as a result of the settlement, the 980 High Street Building sustained extensive damage related to the separation and movement between the floor slab and exterior walls and that the damage includes separating joints, broken pipes, gaps in flooring, doors separating from walls, settling of wall footings, and visible distress on the inside of the building. The Underlying Action alleges the "damage was caused by excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of [the controlled modulus columns] failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement." Comp. at ¶39. Duke has allegedly taken remedial measures to prevent further excessive settlement and continues to monitor to determine whether there is additional settlement, which has cost Duke substantial amounts of money.

In Count I of the Underlying Action, Duke alleges Premier owed a duty to address soil conditions, settlement related issues, foundation related issues, and that would ensure that work and services at the Project would not result in damage to structures erected pursuant to the Contract. Duke claims that Premier breached the Contract because Premier failed to: prepare sufficient plans and specifications; provide materials sufficient for proper construction; "[p]roperly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to

April 19, 2024
Page 4

ensure that soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;" "properly design the foundational support for the Access Bridges and the 980 High Street Building;" and to properly supervise construction. Contract at ¶53. Duke claims that as a direct and proximate result of Premier's breaches, Duke has suffered severe, direct and consequential damages.

In Count II of the Underlying Complaint, Duke argues Premier was negligent because it failed to exercise reasonable care in "designing, engineering, constructing, and/or supervising the construction of the Access Bridges and the 980 High Street Building." Comp. at ¶ 60.

In Count III, Duke contends Premier's actions or inactions constituted professional negligence. Duke alleges Premier agreed to provide design and engineering services to Bridge Perth. Duke continues, "[p]ursuant to these services, Premier owed a duty to exercise reasonable professional care in designing, engineering, constructing, and/or supervising the construction. . . in accordance with all approved plans, applicable specifications, reasonable commercial standards . . . and all applicable state and local building codes, regulations, and ordinances." Comp. at ¶ 66. Further, Duke alleges Premier owed a duty to exercise reasonable professional care in hiring and supervising contractors and subcontractors.

### 2. Third-Party Complaints

In response to the Underlying Action, Premier filed a series of Third-Party Complaints. In addition to the Third-Party Complaint against Harleysville's named insured, GMAC, Premier filed Third-Party Complaints against: (1) Bridge Perth and Bridge Development Partners, LLC ("Bridge Development"); (2) Pillari Bros Construction Corp.; (3) Terra Systems, Inc.; (4) Atlantic Engineering Laboratories, Inc.; and (5) DGI-Menard Inc.

| Third-Party Defendant | Work Performed At The Project |
|---|---|
| Bridge Perth and Bridge Development | Bridge Perth and Bridge Development did not perform work at the Project. Rather, Bridge Perth was the party to the Contract between Premier and Bridge Perth and owner of the Property when the work was performed. Premier alleges that under Article 14 of the Contract between Premier and Bridge Perth, Bridge Perth agreed to indemnify and hold harmless Premier for all claims arising out of or resulting from the performance of the work performed by its contractors or subcontractors. It claims that Bridge Perth and/or Bridge Development hired SESI Consulting Engineers to prepare a geotechnical report in 2007 that was relied upon throughout the construction of the Project and develop engineering certifications for the Access Bridges and retaining walls at the Property. Premier also alleges that Bridge Perth and/or Bridge Development hired Melick-Tully and Associates, P.C. to prepare a geotechnical review and implement a ground improvement program and Menlo Engineering Associates, Inc. to serve as a civil engineer to prepare pipeline crossing plans for the Property. Premier alleges that any |

April 19, 2024
Page 5

| | |
|---|---|
| | damages sustained by Duke is due to the negligence of Bridge Perth's contractors. |
| Pillari Bros. Construction Corp. | Hired to perform work that is set out more fully in the Scope of Work, that included, but was not limited to: providing all labor, material and equipment, layouts and surveys for all project site improvements including earthwork, site utilities, curb & gutter, retaining walls, paving, guide rail, etc. and providing mass excavation site cuts and placement and compaction of certain subbases and site fill. |
| Terra Systems, Inc. | Hired to perform work that is set out more fully in the Scope of Work, that included, but was not limited to: providing all labor, material, and equipment to complete a Deep Dynamic Compaction, and perform the dynamic compaction program as specified by SESI Consulting Engineers. |
| Atlantic Engineering Laboratories | Entered into a Material Testing Agreement with Premier Group to perform material testing and provide foundation, concrete and material inspections for the Project. Premier claims that its work included the inspection and testing of foundations and wall footings, which are alleged to have experienced movement and excessive settlement. |
| DGI-Menard ("Menard") | Menard was hired to perform work that is set out more fully in the Scope of Work, that included, without limitation, providing all labor, material, design, skill, and equipment for the Controlled Modulus Columns (CMC) Ground Improvement Scope of Work. |

      In Premier's Third-Party Complaint against our named insured, GMAC, Premier alleges that on December 8, 2015, Premier Group and GMAC entered into a Subcontract, which is attached to the Third-Party Complaint as an exhibit. Pursuant to the agreement, GMAC was hired by Premier Group to provide all labor, material, design, skill and equipment for the Building and Site Concrete at the Project and agreed to submit to jurisdiction in Cook County, Illinois. Premier claims that GMAC's work included concrete footing and concrete slabs which Duke alleges experienced movement and excessive settlement. Premier alleges that on February 1, 2023, it sent GMAC a letter tendering its defense pursuant to the Subcontract and that GMAC did not respond. In Count I, Premier alleges that GMAC breached its contractual obligations by: performing defective work; failing to perform all work, supervision, labor and materials in accordance with the Subcontract; and failing to defend, indemnify, and hold harmless Premier. Premier alleges that due to the breach of contract, Premier is entitled to recover from GMAC any amount of judgment entered or settlement made in favor of Duke and against Premier along with attorneys' fees and costs that Premier incurred as a result of defending Duke's lawsuit. In Count II, Premier alleges that it is entitled to legal fees and expenses from February 14, 2023, to present due to GMAC's breach of the indemnification provision in the Subcontract.

April 19, 2024
Page 6

### B. Subcontract, Change Orders And Guarantee

On December 8, 2015, GMAC and Premier Group entered into the Subcontract for the total sum of $8,339,000. Part A of the Subcontract states that the attached Form Insurance Certificate (Exhibit "A") and Scope of Work (Exhibit "B"), among other specified exhibits, are made a part of the Subcontract. Part C of the Subcontract provides that it is to be interpreted in accordance with the laws of Illinois, and that GMAC agrees to the jurisdiction of any state or federal court in Cook County, Illinois. The Subcontract also contains general insurance and indemnification provisions, as set forth in the attached Appendix.

Exhibit A to the Subcontract is a sample certificate of insurance stating that Premier Group and Premier National are to be "added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project." It further states that "coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis" and that the "Required Form(s)*" are "CG 20 10 10 01- Ongoing Operations AND CG 20 37 10 01." It also requires $1,000,000 each occurrence for general liability and $5,000,000 each occurrence for umbrella liability coverage. The description of operations include the 980 High Street Building, which is identified as Building C in the Subcontract and Change Orders. The Access Bridges are not included in the description of operations on Exhibit A.

Exhibit B to the Subcontract lists the scope of work, which includes: (1) Footings (including work and material for trench foundations, excavation, bank pour interior column footings, placing footings, piers and foundations per Contract Documents, installing anchor bolts and setting plates at all steel columns, installing insulation and installing reinforcing materials); (2) Interior Flatwork; (3) Site Work; (4) Fire Pump & Tank House; and (5) Alternates (to install framed interior piers to accommodate Vapor Mitigation Passive System). Exhibit B to the Subcontract also incorporates the specifications prepared by Premier Group, which include specifications for Cast-In-Place Concrete and Precast Concrete Wall Panels.

Premier Group and GMAC entered into several change orders to the Subcontract. Per the Subcontract and Change Orders, GMAC did not perform work on the Access Bridges. It did perform work on the 980 High Street Building, as described above. For the 980 High Street Building (referred to as Building C), GMAC agreed to a Guarantee to cover any defects in the work performed and/or the material and equipment furnished that remained in effect until May 31, 2018.

### C. Tender Letters and Responses

Prior to the Underlying Action's filing on May 1, 2023, Premier Group and Premier National's attorney tendered their defense and indemnity on February 14, 2023 to GMAC and its insurer prior to Harleysville, Selective Insurance Company.[2] The correspondence asserted that Duke alleged that the Property:

---

[2] Selective Insurance Company and/or Selective Fire and Casualty issued commercial general liability and umbrella policies to GMAC which were in effect from June 15, 2015 through June 15, 2017.

April 19, 2024
Page 7

> [S]uffered extensive damage related to separation movement between the floor slab and exterior walls. . . which resulted in interior damage including broken pipes, gaps in flooring, and a door separating from the wall. . . **The cause of the damage was believed to be related to the fact that construction at the site began before surcharging was completed, and the remedial measures taken at the time of construction (including installation of thousands of Controlled Modulus Columns or "CMCs") were performed incorrectly or were insufficient** based on the continued separation movement to date.

(Emphasis added). The correspondence stated that pursuant to the Subcontract, GMAC agreed to indemnify Premier and maintain general liability insurance naming Premier Group and Premier National as an additional insured. Premier Group and Premier National stated GMAC's "work is believed to have been responsible in causing or contributing to Duke's numerous allegations of construction defect resulting in property damage." Therefore, Premier requested that GMAC defend and indemnify Premier. On March 28, 2023, Harleysville denied the contractual indemnification tender and separately sent correspondence on the same date setting forth details of its investigation and reservation rights under the Primary Policies.

Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure") are defending Premier Group and Premier National in the Underlying Action. Through correspondence dated January 16, 2024, Amerisure's counsel, Brett L. Warning of Emerson & Elder, tendered Premier Group and Premier National's defense in the Underlying Action to GMAC and requested that GMAC's insurer reimburse Amerisure for all sums that it has paid to date since Harleysville has a primary duty to defend. Through correspondence dated March 7, 2024, through its counsel Emerson & Elder, Amerisure requested that Harleysville acknowledge its primary defense obligation to Premier Design and Premier National and immediately participate in defending them in the Underlying Action.

## II. POLICIES

Harleysville Preferred Insurance Company issued policy number MPA00000025695Z containing Commercial General Liability Coverage to GMAC Construction LLC &/or GMAC Construction Inc., which were in effect from June 15, 2017 to June 15, 2018 ("2017 Primary Policy"), June 15, 2018 to June 15, 2019 ("2018 Primary Policy"), June 15, 2019 to June 15, 2020 ("2019 Primary Policy"), June 15, 2020 to June 15, 2021 ("2020 Primary Policy") and June 15, 2021 to June 15, 2022 ("2021 Primary Policy") (collectively "Primary Policies"). The Primary Policies each contain limits of $1,000,000 each occurrence, $3,000,00 general aggregate limit (other than products-completed operations) and $3,000,000 products/completed operations aggregate limit. Harleysville Insurance Company of New Jersey issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC &/or GMAC Construction Inc., which were in effect from June 15, 2017 to June 15, 2018 ("2017 Umbrella Policy") and to GMAC Construction LLC from June 15, 2018 to June 15, 2019 ("2018

Umbrella Policy"). Harleysville Insurance Company issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC, which was in effect from June 15, 2019 to June 15, 2020 ("2019 Umbrella Policy"), June 15, 2020 to June 15, 2021 ("2020 Umbrella Policy"), and June 15, 2021 to June 15, 2022 ("2021 Umbrella Policy") (collectively referred to as "Umbrella Policies"). The Umbrella Policies each contain limits of $5,000,000 each occurrence and $5,000,000 aggregate limit.

The Primary Policies provide Commercial General Liability Coverage on Form CG 00 01 12 07. Further, the Primary Policies contain additional insured endorsements providing ongoing operations and completed operations coverage specifically naming "Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC." The Primary Policies also contain an Exclusion – Contractors – Professional Liability endorsement on Form CG 22 79 07 98 and a Non-Pyramiding of Limits endorsement on Form CG-7105. The 2018, 2019, 2020 and 2021 Policies contain an Amendment of Insured Contract Definition endorsement on Form CG 24 26 07 04 and Definition of Occurrence Amendatory Endorsement for Construction Defects on Form CG-7430 (Ed. 1-17). Finally, the 2019, 2020 and 2021 Primary Policies also contain an Exclusion – Contractors Professional Liability endorsement on Form CG-7350 (Ed. 7 10).

The Umbrella Policies contain Commercial Liability Umbrella Coverage on Form CU 00 01 12 07. The Umbrella Policies contain a Contractor's Limitation Endorsement on Form CU-7101 and an Additional Insured – Other Insurance Amendment Endorsement on Form CU-7205 (Ed. 12-10). Finally, the 2018, 2019, 2020 and 2021 Umbrella Policies contain a Definition of Occurrence Amendatory Endorsement for Construction Defects on Form CU-7228 (Ed. 1-17).

The pertinent policy language in the Primary and Umbrella Policies are set forth in the attached Appendix for your convenience. We also recite pertinent portions of the policy language below.

### III.     ANALYSIS

The Primary Policies contain ongoing operations and completed operations additional insured endorsements that specifically named "Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC."[3] Accordingly, the additional insured endorsements in the Primary Policies name Premier Group but not Premier National as an additional insured. The additional insured endorsements state, however, that the entities that GMAC "agreed to include as an additional insured on your policy in a

---

[3] Although the enclosed Appendix sets forth different additional insured endorsements in the 2017 Primary Policy and the remaining Primary Policies due to formatting, the pertinent language in the ongoing operations and completed operations additional insured endorsements are identical. In fact, the only difference is that the completed operations additional insured endorsement in the 2018 through 2021 Primary Policies adds the phrase "Concrete construction" to the Location and Description of Completed Operations.

April 19, 2024
Page 9

written contract, written agreement or written permit between you and Premier Design + Build Group LLC" are also additional insureds. The Subcontract required GMAC to name both Premier Group and Premier National as additional insureds to their General Liability policies and provide ongoing operations and completed operations coverage. Accordingly, both Premier Group and Premier National qualify as additional insureds on the Primary Policies.

The ongoing operations additional insured endorsement provides the entities are additional insureds "only with respect to liability for … 'property damage' … caused, in whole or in part, by" "[y]our acts or omissions … [i]n the performance of your ongoing operations for the additional insured(s)." The completed operations additional insured endorsement provides the entities are additional insureds "only with respect to liability for … 'property damage' caused, in whole or in part, by 'your work' … performed for that additional insured and included in the 'products-completed operations hazard.'" "Your work" is defined in part as "[w]ork or operations by [GMAC] or on [GMAC's] behalf." Thus, both endorsements contain "caused, in whole or in part" language.

GMAC performed concrete work at the 980 High Street Building. As set forth by the Complaint in the Underlying Action and Premier Group and Premier National's pre-suit tender letter, the "property damage" was caused by insufficient surcharging and design/installation issues with respect to the controlled modulus columns. Specifically, the Complaint in the Underlying Action alleges that Premier Group and Premier National's failure to sufficiently surcharge the 980 High Street Building Extension and failure to develop a system of rigid inclusions or controlled modulus columns (also referred to as CMCs) to reinforce the soil beneath the 980 High Street Building Extension caused the deleterious settlement of the 980 High Street Building. Similarly, its pre-suit tender letter states "[t]he cause of the damage was believed to be related to the fact that construction at the site began before surcharging was completed, and the remedial measures taken at the time of construction (including installation of thousands of Controlled Modulus Columns or "CMCs") were performed incorrectly or were insufficient." The Scope of Work and Change Orders do not show that GMAC performed any surcharging work or that it installed the controlled modulus columns. Rather, GMAC performed concrete work. The Complaint in the Underlying Action does not allege that the concrete footings or other concrete work caused the deleterious settlement. Rather, the cracks and settlement of the concrete slabs and footings were allegedly caused by the insufficient surcharging and failure to reinforce the soil via controlled modulus columns, and not GMAC's concrete work.

Amerisure directed Harleysville to Premier Group and Premier National's Third-Party Complaint as evidence that their liability for the "property damage" at the Project was "caused, in whole or in part" by GMAC's acts or omissions or [GMAC's] work. As the party claiming to be an additional insured, Premier Group and Premier National cannot use their own Third-Party Complaint to bolster their claim that they are additional insureds to the Policies. If you have evidence other than the Third-Party Complaint, including expert reports, showing Premier Group or Premier National's liability was "caused, in whole or in part" by GMAC's acts or omissions or [GMAC's] work, please forward it to the undersigned for further consideration.

April 19, 2024
Page 10

Harleysville also reserves its right to reject the tenders based on the following provisions in the Policies:

- The Primary and Umbrella Policies cover "property damage" only if the "property damage" is caused by an "occurrence." An "occurrence" is defined in pertinent part as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined in part as a "physical injury to tangible property, including all resulting loss of use of that property." Harleysville reserves its right to deny coverage to the extent that the "property damage" was not caused by an "occurrence" and for those damages sought in the Underlying Action that were not because of "property damage."

- The Primary and Umbrella Policies cover "property damage" that occurred during the respective policy periods. Harleysville reserves its right to deny coverage for those Policies that are not triggered. Further, to the extent that "property damage" was known, Harleysville reserves its right to deny coverage for "property damage" that occurred or continued to occur during the 2020 and 2021 Primary and Umbrella Policies.

- Because the Underlying Action alleges design and engineering issues, Harleysville reserves its right to rely upon the Professional Liability/Professional Services Exclusions contained in the Primary and Umbrella Policies.

- Harleysville reserves its right to rely upon the business risk exclusions in the Primary Policies including but not limited to: (1) Exclusion b. Contractual Liability; (2) Exclusion j.(5) and (6) Damage To Property; (3) Exclusion k. Damage To Your Product; (4) Exclusion l. Damage To Your Work; (5) Exclusion m. Damage to Impaired Property Not Physically Impaired; and (6) Exclusion n. Recall of Products, Work Or Impaired Property.

- Harleysville reserves its right to rely upon the business risk exclusions in the Umbrella Policies including but not limited to: (1) Exclusion b. Contractual Liability; (2) Exclusion m.(5) and (6) Damage To Property; (3) Exclusion n. Damage To Your Product; (4) Exclusion o. Damage To Your Work; (5) Exclusion p. Damage To Impaired Property Or Property Not Physically Injured; (6) Exclusion q. Recall Of Products, Work Or Impaired Property; and (7) the Contractor's Limitation Endorsement.

- Harleysville reserves its right to rely upon the Non-Pyramiding Of Limits Endorsement in the Primary Policies to limit coverage afforded under the Primary Policies.

- Harleysville reserves the right to deny that Premier Group or Premier National qualify as an additional insured under the Umbrella Policies because the Subcontract only required that Premier Group and Premier National be "added as Additional Insured on the General Liability … policies." It did not require that they be added as additional insureds to the Umbrella Policies.

April 19, 2024
Page 11

- Harleysville reserves the right to seek an allocation between covered and uncovered damages.

In light of the foregoing, **Harleysville respectfully denies it has a duty to defend or to indemnify Premier Group or Premier National as additional insureds under the Policies for the Underlying Action.** If you believe Harleysville's denial is in error, please provide us with a written response setting forth your reasons, as well as any additional information or documentation you may have in support of your assertions.

Further, under Illinois law, when an insurer has determined that it does not owe a duty to its insured under its policies, it should protect its interests by filing a declaratory judgment action for a judicial determination of its obligations. If, however, you agree with this coverage analysis and wish to avoid further litigation costs in the form of a declaratory judgment action, Harleysville respectfully asks Premier Group and Premier National to withdraw their tender within **10 days** of the date of this letter.

In the meantime, Harleysville hereby reserves any and all rights, claims or defenses which it may have under the Policies. Nothing said herein, or left unsaid, shall be deemed to be a waiver hereof.

                Very truly yours,

                Colleen M. Costello

                Neal R. Novak

Enclosures
cc: Cassandra Neal