# EXHIBIT 7



33 North LaSalle Street, Suite 1900  T(312) 425-2500
Chicago, IL 60602  F(312) 425-2525

May 28, 2024

Email:
nnovak@wglaw.com
ccostello@wglaw.com

**VIA EMAIL**

Brett L. Warning
Donald E. Elder
Emerson & Elder, P.C.
53 W. Jackson Blvd., Suite 526
Chicago, IL 60604
brett@emersonelder.com
dee@emersonelder.com

      Re:    ***Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al.*, MID-L-001767-23, pending in the Superior Court of New Jersey Law Division, Middlesex County**

| | |
|---|---|
| Named Insured: | GMAC Construction LLC &/or GMAC Construction Inc. |
| Policy Nos.: | MPA00000025695Z (Prim.) |
| | CMB00000025694Z (Umb.) |
| Policy Periods: | June 15, 2017 – June 15, 2018 |
| | June 15, 2018 – June 15, 2019 |
| | June 15, 2019 – June 15, 2020 |
| | June 15, 2020 – June 15, 2021 |
| | June 15, 2021 – June 15, 2022 |
| Claim No.: | 390776-GP |
| **Our File No.:** | 0208042 |

Gentlemen:

     The undersigned represents Harleysville Preferred Insurance Company, Harleysville Insurance Company of New Jersey and Harleysville Insurance Company (collectively referred to as "Harleysville"). This correspondence is in response to Amerisure Insurance Company's and Amerisure Mutual Insurance Company's ("Amerisure") tender of Premier Design + Build Group, LLC's ("Premier Group") defense and indemnity as additional insureds under the above-referenced primary and umbrella policies containing commercial general liability coverage (referred to collectively herein as "Policies," "Primary Policies" or "Umbrella Policies," where appropriate)

May 28, 2024
Page 2

issued by Harleysville to its named insured, GMAC Construction LLC &/or GMAC Construction Inc. ("GMAC") in the lawsuit captioned *Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al.*, MID-L-001767-23, pending in the Superior Court of New Jersey Law Division, Middlesex County ("New Jersey Action").[1] In reaching our conclusions, Harleysville reviewed the pleadings in the New Jersey Action, the Policies, materials included in the tender letters and responses, publicly available information, and relevant case law.

For the reasons set forth below, Harleysville does not owe a duty to defend or indemnify Premier Group in the New Jersey Action because its liability was not "caused, in whole or in part" by GMAC's "acts or omissions" (ongoing operations) or GMAC's work (completed operations). Specifically, GMAC did not perform any work on the Access Bridges, which are the subject of the New Jersey Action.

## I. BACKGROUND INFORMATION

### A. New Jersey Action

#### 1. Amended Complaint

In the Amended Complaint in the New Jersey Action, Duke Realty ePort Urban Renewal LLC, ("Duke") seeks damages against Defendants Viridian Partners, LLC, NASDI LLC, Moretrench American Corporation, Shippee Engineering, Inc., Think Pavers, Menlo Engineering Associates, Inc., SESI Consulting Engineers, Terra Contracting Services, LLC, FRM Construction Services, Jersey Essay Labs and various unknown architects, professional corporations and contractors arising out of the Defendants' alleged failure to properly design, engineer, and construct a series of access bridges that included concrete forms, foundational supports, retaining walls and roadway approaches located in Perth Amboy, New Jersey (the "Access Bridges"). Because of Defendants' failures, Duke claims the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which negatively impinge upon Plaintiffs use of its Property. Specifically, Duke seeks damages for the costs associated with mitigating and repairing the damage caused by Defendants' actions.

Duke claims that it is the current owner of certain parcels constituting approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, the "Property"). The Amended Complaint alleges the Property was owned by Defendant Viridian, that undertook extensive remediation to initiate redevelopment efforts at the site culminating with a plan for the construction of a warehouse campus on the Property ("Project"). As

---

[1] The New Jersey Action involves the same construction project in Perth Amboy, New Jersey as a lawsuit pending in Illinois captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Law Division, Illinois ("Illinois Action"). While the lawsuits involve the same construction project, the New Jersey Action concerns the access bridges while the Illinois Action involves a warehouse located at 980 High Street, Perth Amboy, New Jersey and certain access bridges.

May 28, 2024
Page 3

part of the Project, Viridian planned the construction of three bridges to enable access to and from areas on the Property. These bridges included: (i) the Northern access bridge leading to 980 High Street, Perth Amboy, New Jersey; (ii) the Eastern access bridge leading to 1000 High Street, Perth Amboy, New Jersey; and (iii) the Western access bridge leading to 1000 High Street, Perth Amboy, New Jersey (collectively the "Access Bridges"). The Access Bridges were allegedly constructed prior to the construction of the warehouses on the Project. Bridge Perth Amboy, LLC ("Bridge") allegedly purchased the Property from Viridian in or about 2015, and Duke purchased the Property from Bridge in or about November 2017. Duke purchased the Property from Bridge in or about November 2017.

  Duke claims that the Defendants purported to review the design plans for the Access Bridges as well as oversee the construction of the Access Bridges to ensure they would perform as intended and to ensure they were built in accordance with the plans and specifications. The three-lane Northern Access Bridge is a concrete arch structure with asphalt roadway above. The Northern Access Bridge allegedly spans utility pipelines running beneath it and provides vehicle access to the warehouse located at 980 High Street, which is currently occupied by Target and used as a Distribution Center. The Eastern Access Bridge and the Western Access Bridge are allegedly concrete arch structures with asphalt roadway above. The Eastern Access Bridge and the Western Access Bridge spanned a drainage creek and provided vehicle access to the warehouse located at 1000 High Street. Duke claims the Defendants entered into a contract with certain unknown design and construction contractors to work on the Access Bridges.

  Duke alleges the Property and the soil beneath it are comprised of numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. Duke claims the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses but the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly constructed, and thus not sound or fit for their purposes. These defects have allegedly led the Northern Access Bridge to suffer significant damage, including but not limited to: (i) settlement of the Northern Access Bridge; (ii) fractures and depressions in the asphalt roadway; (iii) cracks in the frame of the Northern Access Bridge; and (iv) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls, and therefore, the Northern Access Bridge remains partially closed. The Amended Complaint alleges the Eastern Access Bridge and the Western Access Bridge have also suffered damage, including but not limited to: (i) settlement of the Eastern Access Bridge and Western Access Bridge; (ii) cracks in the frame of the Eastern Access Bridge and the Western Access Bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls.

  Count I alleges a claim for Breach of Contract due to the insufficient design and construction of the Access Bridges. Count II alleges a claim for Negligence against certain Defendants for breach of their duty to exercise reasonable care in designing, engineering, constructing, and/or supervising the construction of the Access Bridges in accordance with all approved plans, applicable specifications, reasonable commercial standards in the industry for the construction of access bridges, and all applicable state and local building codes, regulations, and ordinances. Count III alleges a claim for Professional Negligence against certain Defendants for breaches of their professional duties.

May 28, 2024
Page 4

### 2. Third-Party Complaint

On October 30, 2023, Solis Engineering Services, Inc., d/b/a SESI Consulting Engineers ("SESI") filed a Third-Party Complaint against Premier Group. SESI claims that Duke filed the Amended Complaint as against various entities, including SESI, alleging defects in three Access Bridges located on the Property in Perth Amboy, New Jersey. SESI alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Count I seeks contribution from Premier Group and the other Third-Party Defendants. Count II seeks indemnification from Premier Group and the other Third-Party Defendants.

### 3. Premier Group's Answer

In Premier Group's Answer, Premier admits that it was a contractor with respect to certain work for the Eastern Access and Western Access Bridges identified in Duke's Amended Complaint.

### B. Subcontract, Change Orders And Guarantee

On December 8, 2015, GMAC and Premier Group entered into the Subcontract for the total sum of $8,339,000. Part A of the Subcontract states that the attached Form Insurance Certificate (Exhibit "A") and Scope of Work (Exhibit "B"), among other specified exhibits, are made a part of the Subcontract. Part C of the Subcontract provides that it is to be interpreted in accordance with the laws of Illinois, and that GMAC agrees to the jurisdiction of any state or federal court in Cook County, Illinois. The Subcontract also contains general insurance and indemnification provisions, as set forth in the attached Appendix.

Exhibit A to the Subcontract is a sample certificate of insurance stating that Premier Group is to be "added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project." It further states that "coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis" and that the "Required Form(s)*" are "CG 20 10 10 01- Ongoing Operations AND CG 20 37 10 01." It also requires $1,000,000 each occurrence for general liability and $5,000,000 each occurrence for umbrella liability coverage. The description of operations include Buildings A, B and C. **Importantly, the Access Bridges are not included in the description of operations on Exhibit A.**

Exhibit B to the Subcontract lists the scope of work for Buildings A, B and C, which includes: (1) Footings (including work and material for trench foundations, excavation, bank pour interior column footings, placing footings, piers and foundations per Contract Documents, installing anchor bolts and setting plates at all steel columns, installing insulation and installing reinforcing materials); (2) Interior Flatwork; (3) Site Work; (4) Fire Pump & Tank House; and (5) Alternates (to install framed interior piers to accommodate Vapor Mitigation Passive System). Exhibit B to the Subcontract also incorporates the specifications prepared by Premier Group, which include specifications for Cast-In-Place Concrete and Precast Concrete Wall Panels. **Again, work on the Access Bridges is not listed in the Scope of Work.**

May 28, 2024
Page 5

Premier Group and GMAC entered into several change orders to the Subcontract. **Per the Subcontract and Change Orders, GMAC did not perform work on the Access Bridges.**

### C. Tender Letter

Through correspondence dated May 13, 2024, Amerisure tendered Premier Group's defense in the New Jersey Action to Harleysville, noting that in the Subcontract, GMAC agreed to provide footings, interior flatwork, certain site work and a fire pump and tank house at the Project. Further, Amerisure stated that pursuant to the Subcontract, GMAC agreed to defend, protect and hold Premier Group harmless from all claims and losses and to provide additional insured general liability insurance coverage to Premier Group on a primary and non-contributory basis.

### II. POLICIES

Harleysville Preferred Insurance Company issued policy number MPA00000025695Z containing Commercial General Liability Coverage to GMAC Construction LLC &/or GMAC Construction Inc., which were in effect from June 15, 2017 to June 15, 2018 ("2017 Primary Policy"), June 15, 2018 to June 15, 2019 ("2018 Primary Policy"), June 15, 2019 to June 15, 2020 ("2019 Primary Policy"), June 15, 2020 to June 15, 2021 ("2020 Primary Policy") and June 15, 2021 to June 15, 2022 ("2021 Primary Policy") (collectively "Primary Policies"). The Primary Policies each contain limits of $1,000,000 each occurrence, $3,000,00 general aggregate limit (other than products-completed operations) and $3,000,000 products/completed operations aggregate limit. Harleysville Insurance Company of New Jersey issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC &/or GMAC Construction Inc., which were in effect from June 15, 2017 to June 15, 2018 ("2017 Umbrella Policy") and to GMAC Construction LLC from June 15, 2018 to June 15, 2019 ("2018 Umbrella Policy"). Harleysville Insurance Company issued policies bearing policy number CMB00000025694Z containing commercial umbrella coverage to GMAC Construction LLC, which was in effect from June 15, 2019 to June 15, 2020 ("2019 Umbrella Policy"), June 15, 2020 to June 15, 2021 ("2020 Umbrella Policy"), and June 15, 2021 to June 15, 2022 ("2021 Umbrella Policy") (collectively referred to as "Umbrella Policies"). The Umbrella Policies each contain limits of $5,000,000 each occurrence and $5,000,000 aggregate limit.

The Primary Policies provide Commercial General Liability Coverage on Form CG 00 01 12 07. Further, the Primary Policies contain additional insured endorsements providing ongoing operations and completed operations coverage specifically naming "Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC." The Primary Policies also contain an Exclusion – Contractors – Professional Liability endorsement on Form CG 22 79 07 98 and a Non-Pyramiding of Limits endorsement on Form CG-7105. The 2018, 2019, 2020 and 2021 Policies contain an Amendment of Insured Contract Definition endorsement on Form CG 24 26 07 04 and Definition of Occurrence Amendatory Endorsement for Construction Defects on Form CG-7430 (Ed. 1-17). Finally, the 2019,

May 28, 2024
Page 6

2020 and 2021 Primary Policies also contain an Exclusion – Contractors Professional Liability endorsement on Form CG-7350 (Ed. 7 10).

The Umbrella Policies contain Commercial Liability Umbrella Coverage on Form CU 00 01 12 07. The Umbrella Policies contain a Contractor's Limitation Endorsement on Form CU-7101 and an Additional Insured – Other Insurance Amendment Endorsement on Form CU-7205 (Ed. 12-10). Finally, the 2018, 2019, 2020 and 2021 Umbrella Policies contain a Definition of Occurrence Amendatory Endorsement for Construction Defects on Form CU-7228 (Ed. 1-17).

The pertinent policy language in the Primary and Umbrella Policies are set forth in the attached Appendix for your convenience. We also recite pertinent portions of the policy language below.

### III. ANALYSIS

The Primary Policies contain ongoing operations and completed operations additional insured endorsements that specifically name "Premier Design + Build Group LLC and any other persons or organizations whom you agreed to include as an additional insured on your policy in a written contract, written agreement or written permit between you and Premier Design + Build Group LLC."[2] Accordingly, the additional insured endorsements in the Primary Policies name Premier Group as an additional insured.

The ongoing operations additional insured endorsement provides Premier Group is an additional insured "only with respect to liability for … 'property damage' … caused, in whole or in part, by" "[y]our acts or omissions … [i]n the performance of your ongoing operations for the additional insured(s)." The completed operations additional insured endorsement provides Premier Group is an additional insured "only with respect to liability for … 'property damage' caused, in whole or in part, by 'your work' … performed for that additional insured and included in the 'products-completed operations hazard.'" "Your work" is defined in part as "[w]ork or operations by [GMAC] or on [GMAC's] behalf." Thus, both endorsements contain "caused, in whole or in part" language.

The New Jersey Action seeks damages arising out of the Defendants' alleged failure to properly design, engineer, and construct the Access Bridges. Because of Defendants' alleged failures, Duke claims the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which negatively impinge upon Plaintiffs use of its Property. As discussed above, GMAC did not work on the Access Bridges, but rather performed work on Buildings A, B and C in the Project, which are not at issue in the New Jersey Action. Accordingly, there is no duty

---

[2] Although the enclosed Appendix sets forth different additional insured endorsements in the 2017 Primary Policy and the remaining Primary Policies due to formatting, the pertinent language in the ongoing operations and completed operations additional insured endorsements is identical. In fact, the only difference is that the completed operations additional insured endorsement in the 2018 through 2021 Primary Policies adds the phrase "Concrete construction" to the Location and Description of Completed Operations.

May 28, 2024
Page 7

to defend Premier Group in the New Jersey Action because the "property damage" at the Project was not "caused, in whole or in part" by GMAC's acts or omissions or [GMAC's] work.

Harleysville also reserves its right to reject the tenders based on the following provisions in the Policies:

- The Primary and Umbrella Policies cover "property damage" only if the "property damage" is caused by an "occurrence." An "occurrence" is defined in pertinent part as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined in part as a "physical injury to tangible property, including all resulting loss of use of that property." Harleysville reserves its right to deny coverage to the extent that the "property damage" was not caused by an "occurrence" and for those damages sought in the New Jersey Action that were not because of "property damage."

- The Primary and Umbrella Policies cover "property damage" that occurred during the respective policy periods. Harleysville reserves its right to deny coverage for those Policies that are not triggered. Further, to the extent that "property damage" was known, Harleysville reserves its right to deny coverage for "property damage" that occurred or continued to occur during the 2020 and 2021 Primary and Umbrella Policies.

- Because the New Jersey Action alleges design and engineering issues, Harleysville reserves its right to rely upon the Professional Liability/Professional Services Exclusions contained in the Primary and Umbrella Policies.

- Harleysville reserves its right to rely upon the business risk exclusions in the Primary Policies including but not limited to: (1) Exclusion b. Contractual Liability; (2) Exclusion j.(5) and (6) Damage To Property; (3) Exclusion k. Damage To Your Product; (4) Exclusion l. Damage To Your Work; (5) Exclusion m. Damage to Impaired Property Not Physically Impaired; and (6) Exclusion n. Recall of Products, Work Or Impaired Property.

- Harleysville reserves its right to rely upon the business risk exclusions in the Umbrella Policies including but not limited to: (1) Exclusion b. Contractual Liability; (2) Exclusion m.(5) and (6) Damage To Property; (3) Exclusion n. Damage To Your Product; (4) Exclusion o. Damage To Your Work; (5) Exclusion p. Damage To Impaired Property Or Property Not Physically Injured; (6) Exclusion q. Recall Of Products, Work Or Impaired Property; and (7) the Contractor's Limitation Endorsement.

- Harleysville reserves its right to rely upon the Non-Pyramiding Of Limits Endorsement in the Primary Policies to limit coverage afforded under the Primary Policies.

- Harleysville reserves the right to deny that Premier Group qualifies as an additional insured under the Umbrella Policies because the Subcontract only required that Premier Group be "added as Additional Insured on the General Liability … policies." It did not require that they be added as additional insureds to the Umbrella Policies.

May 28, 2024
Page 8

- Harleysville reserves the right to seek an allocation between covered and uncovered damages.

In light of the foregoing, **Harleysville respectfully denies it has a duty to defend or to indemnify Premier Group as an additional insured under the Policies for the New Jersey Action.** If you believe Harleysville's denial is in error, please provide us with a written response setting forth your reasons, as well as any additional information or documentation you may have in support of your assertions. Harleysville reserves its rights to amend its declaratory judgment action concerning the Illinois Action and/or seek a declaration that it owes no duty to defend or indemnify Premier Group with respect to the New Jersey Action in another forum.

In the meantime, Harleysville hereby reserves any and all rights, claims or defenses which it may have under the Policies. Nothing said herein, or left unsaid, shall be deemed to be a waiver hereof.

Very truly yours,

Colleen M. Costello

Neal R. Novak

Enclosures
cc: Cassandra Neal