| | |
|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) No. 1:23-cv-04098 |
| Plaintiffs, | ) ) Honorable Sara L. Ellis ) ) Magistrate Judge Young B. Kim |
| vs. | ) ) ) |
| PREMIER DESIGN & BUILD GROUP, LLC; PREMIER DESIGN & BUILD NATIONAL, LLC; ALLIED WORLD NATIONAL ASSURANCE COMPANY; AMERICAN FAMILY HOME INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; AMERICAN CASUALTY CO. OF READING PA; GEMININ INSURANCE COMPANY; HARLEYSVILLE PREFERRED INSURANCE COMPANY; OLD REPUBLIC GENERAL INSURANCE COMPANY; SELECTIVE INSURANCE COMPANY OF AMERICA; AND ZURICH AMERICAN INSURANCE COMPANY | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## PREMIER'S ANSWER TO COUNTERCLAIM OF SELECTIVE INSURANCE COMPANY OF AMERICA AND SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY FOR DECLARATORY JUDGMENT

Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC (collectively, "Premier"), hereby submit their answer to the Counterclaim of Selective Insurance Company of American ("SICA") and Selective Fire and Casualty Insurance Company ("SFCIC") (collectively, "Selective") for Declaratory Judgment, and state as follows:

1.      In this action, Selective seeks a determination of its rights and obligations under insurance policies issued to GMAC Construction LLC ("GMAC") in connection with the Illinois Action  (as defined herein) filed by Duke Realty ePort Urban Renewal LLC, which asserts certain claims against Premier Design + Building National LLC ("Premier National") and Premier Design +

Build Group, LLC ("Premier Group") (collectively, "Premier Design") as well as in connection the New Jersey Action (as defined herein) wherein SESI Consulting Engineers filed a third-party complaint asserting certain claims against Premier Group.

**ANSWER:** Premier admits that this is an insurance coverage dispute and that Amerisure and Selective seek declarations as to policies issued by Amerisure and Selective in connection with an action captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Build National LLC and Premier Design + Build Group LLC*, Case No. 2023 L 004533, pending in the Circuit Court of Cook County, Illinois ("the Illinois Action") as well as in connection the New Jersey Action (as defined herein) wherein SESI Consulting Engineers filed a third-party complaint asserting certain claims against Premier Group. Premier denies that Selective does not owe any coverage to Premier under policies issued by Selective in regard to the Illinois Action and New Jersey Action.

2. The Illinois Action (defined herein) is pending in the Circuit Court of Cook County, Illinois.

**ANSWER:** Admitted.

3. The New Jersey Action (defined herein) is pending Superior Court of New Jersey, Middlesex County.

**ANSWER:** Admitted.

4. SFCIC issued commercial package policies (the "SFCIC Policies" as defined herein) to GMAC, as described more fully below.

**ANSWER:** On information and belief, admitted.

5. SICA issued a commercial package policy (the "SICA Policy" as defined herein) to GMAC, a described more fully below.

**ANSWER:** On information and belief, admitted.

6. The scope of coverage available to Premier National and Premier Group in connection with the claims asserted against them in the Illinois Action and New Jersey Action is governed by the terms, conditions, and exclusions of the SFCIC Policies and the SICA Policy.

**ANSWER:** Denied.

7. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28

U.S.C. § 1332(a)(1).

**ANSWER:**    Admitted.

8.    Counter-Plaintiff SFCIC is a corporation domiciled in the State of New Jersey with its principal place of business in Branchville, New Jersey.

**ANSWER:**    On information and belief, admitted.

9.    Counter-Plaintiff SICA is a corporation domiciled in the State of New Jersey with its principal place of business in Branchville, New Jersey.

**ANSWER:**    On information and belief, admitted.

10.    Counter-Defendant Premier National is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois.

**ANSWER:**    Admitted.

11.    Counter-Defendant Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois.

**ANSWER:**    Admitted.

12.    Counter-Defendant Amerisure Insurance Company is a corporation organized under the laws of the State of Michigan with its principal place of business in Farmington Hills, Michigan.

**ANSWER:**    Admitted.

13.    Counter-Defendant Amerisure Mutual Insurance Company is a corporation organized under the laws of the State of Michigan with its principal place of business in Farmington.

**ANSWER:**    Admitted.

14.    An actual justiciable controversy exists between Selective, on the one hand, and Amerisure and Premier Design, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

**ANSWER:**    Admitted.

15.    On May 1, 2023, Duke Realty ePort Urban Renewal LLC ("Duke") filed a complaint in the Illinois Action ("Illinois Complaint") against Premier National and Premier Group asserting causes of action for breach of contract, negligence, and professional negligence related to the design, engineering, and construction of a warehouse building and access bridges owned by Duke. Dkt. 142-1, p. 2 at ¶ 1.

**ANSWER:**     Premier admits that Duke filed the Illinois Complaint against Premier National and Premier Group on May 1, 2023. Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 15 that are not consistent with the allegations in the Illinois Complaint.

16.     In particular, it is alleged that as a result of Premier Design's breaches and negligence, at least one of the buildings and two access bridges experienced excessive and deleterious settlement. Dkt. 142-1, p. 2 at ¶ 1.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 16 that are not consistent with the allegations in the Illinois Complaint.

17.     The Illinois Complaint alleges that Duke is the current owner of 103 acres of land at 960, 980, and 1000 High Street in Perth Amboy, New Jersey ("Property") and that Duke is the successor in interest to Bridge Perth Amboy Urban Renewal, LLC, which owned the Property until it was purchased by Duke on November 22, 2017. Dkt. 142-1, p. 4 at ¶¶ 9-10.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 17 that are not consistent with the allegations in the Illinois Complaint.

18.     The Illinois Complaint Action alleges the ground underneath the Property has numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and below that, soft, organic, silty clay. Dkt. 142-1, p. 4 at ¶ 11.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 18 that are not consistent with the allegations in the Illinois Complaint.

19.     The Illinois Complaint alleges that on or about August 18, 2015, Bridge Perth Amboy entered into a contract with Premier National to build three warehouse buildings and at least two access bridges on the Property ("Project"). Dkt. 142-1, p. 4 at ¶ 12.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 19 that are not consistent with the allegations in

the Illinois Complaint.

20.    It is alleged that on August 18, 2015, Premier National assigned certain rights and obligations under the contract to Premier Group. Dkt. 142-1, p. 4 at ¶ 13.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 20 that are not consistent with the allegations in the Illinois Complaint.

21.    Premier Group is alleged to have entered into various subcontract agreements for design and construction of the Project. Dkt. 142-1, p. 4 at ¶ 13.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 21 that are not consistent with the allegations in the Illinois Complaint.

22.    The Illinois Complaint alleges that Premier Design knew that the soil stratum underlying the Property had the potential to cause damaging differential settlements under new load conditions, such as buildings and access bridges, if left untreated. Dkt. 142-1, p. 5 at ¶ 19.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 22 that are not consistent with the allegations in the Illinois Complaint.

23.    It is alleged that Premier Design's subcontractors advised Premier to treat the area beneath the proposed access bridges and buildings with surcharging (applying excessive vertical load or weight in excess of that associated with the long-term development conditions to accelerate consolidation) to prepare the soil to support the eventual development and construction of access bridges and warehouse buildings. Dkt. 142-1, p. 5 at ¶ 20.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 23 that are not consistent with the allegations in the Illinois Complaint.

24.    With respect to the Access Bridges, the Illinois Complaint alleges Premier Design was involved in the design, engineering, and construction of two bridges to enable access to and from areas on the Property, including the 1) the Eastern Access Bridge ("EAB") and 2) the Western Access Bridge ("WAB"). Dkt. 142-1, p. 6 at ¶ 17.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 24 that are not consistent with the allegations in the Illinois Complaint.

25. It is alleged that the Access Bridges and their foundational elements were poorly planned, designed, engineered, constructed and thus not sound or fit for their purposes. Dkt. 142-1, p. 6 at ¶ 27.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 25 that are not consistent with the allegations in the Illinois Complaint.

26. The Illinois Complaint alleges defects led to significant damage, including the settlement of the EAB and WAB; cracks in the frame of the EAB and WAB; and gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. Dkt. 142-1, pp. 6-7 at ¶ 28.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 26 that are not consistent with the allegations in the Illinois Complaint.

27. With respect to the 980 High Street Building ("Building"), it is alleged that Premier Design and/or its subcontractors surcharged the portion of the Property where the original footprint of the Building. Dkt. 142-1, p. 7 at ¶ 30.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 27 that are not consistent with the allegations in the Illinois Complaint.

28. The Illinois Complaint alleges Premier Design worked with Menard Group and GEI Consultants, Inc. to develop a system of rigid inclusions or controlled modulus columns (CMC) to reinforce the soil beneath the Building to support it. Dkt. 142-1, p. 7 at ¶ 32.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 28 that are not consistent with the allegations in the Illinois Complaint.

29.     On February 15, 2017, Bridge Perth Amboy entered into a lease agreement with the Target Corporation. Dkt. 142-1, p. 7 at ¶ 33.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 29 that are not consistent with the allegations in the Illinois Complaint.

30.     In 2019, Target sent a letter to Duke informing it of cracking and potential failure of the exterior wall and foundation of the Building. Dkt. 142-1, p. 7 at ¶ 34.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 30 that are not consistent with the allegations in the Illinois Complaint.

31.     The Illinois Complaint alleges that Duke's engineers determined that the Building was experiencing unusual and deleterious settlement and that it would continue if not properly abated. Dkt. 142-1, p. 8 at ¶ 36.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 31 that are not consistent with the allegations in the Illinois Complaint.

32.     As a result of the settlement, it is alleged the Building sustained extensive damage related to separation and movement between the floor slab and the exterior walls. Dkt. 142-1, p. 8 at ¶ 37.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 32 that are not consistent with the allegations in the Illinois Complaint.

33.     The Illinois Complaint alleges the damages includes, but is not limited to, separating joints; broken pipes; gaps in flooring; doors separating from walls' settling of wall footing; and visible distress on the inside of the Building. Dkt. 142-1, p. 8 at ¶ 38.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 33 that are not consistent with the allegations in the Illinois Complaint.

34.     The damage was allegedly caused by excessive settlement in the area of the Building extension where Premier Design failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of CMC's failed to support the Building and failed to prevent unusual and deleterious settlement. Dkt. 142-1, p. 8 at ¶ 39.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 34 that are not consistent with the allegations in the Illinois Complaint.

35.     The Illinois Complaint counts for breach of contract (Count I); negligence (Count II); and professional negligence (Count III) against Premier Design. Dkt. 142-1, pp. 9- 13 at ¶¶ 45-70.

**ANSWER:**     Admitted.

36.     In the New Jersey Action, Duke filed an operative amended complaint on September 26, 2023 in the New Jersey Action ("New Jersey Complaint") against several entities asserting a breach of contract, negligence, and professional negligence against the defendants for failure to properly design, engineer, and construct a series of Access Bridges. A true and correct copy of the New Jersey Complaint is attached hereto as **Exhibit A**.

**ANSWER:**     Premier admits that Duke filed an amended complaint on September 26, 2023 in the New Jersey Action (the "New Jersey Complaint") and that a copy of the New Jersey Complaint is attached to Selective' s Counterclaim as Exhibit A.  Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 36 that are not consistent with the allegations in the New Jersey Complaint.

37.     The New Jersey Complaint alleges that because of the defendants' failures, the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity. Ex. A, ¶ 2.

**ANSWER:**     Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 37 that are not consistent with the allegations in the New Jersey Complaint.

38.     The New Jersey Complaint alleges that Viridian Partners, LLC acquired the property located at 960, 80, and 1000 High Street in Perth Amboy, New Jersey (the "Property") in 2013 and undertook extensive remediation to initiate redevelopment efforts at the site. Ex. A, ¶ 21.

**ANSWER:** Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 38 that are not consistent with the allegations in the New Jersey Complaint.

39.    As part of the plan, Viridian planned the construction of three bridges to enable access to and from areas on the Property, which included a north access bridge leading 980 High Street; the eastern access bridge leading to 1000 High Street; and the western access bridge leading to 1000 High Street. Ex. A, ¶ 23.

**ANSWER:** Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 39 that are not consistent with the allegations in the New Jersey Complaint.

40.    In pertinent part, the New Jersey Complaint alleges that SESI Consulting Engineers ("SESI") acted as geotechnical engineer and participated in the design of the Access Bridges, including the soils and support of the Access Bridges. Ex. A, ¶ 32.

**ANSWER:** Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 40 that are not consistent with the allegations in the New Jersey Complaint.

41.    The New Jersey Complaint alleges that soil beneath the property comprised of numerous layers of different types of material and that the Project anticipated heavy truck and tractor-trailer traffic over the Access Bridges upon completion and occupancy of the warehouses. Ex. A, ¶ 43.

**ANSWER:** Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 41 that are not consistent with the allegations in the New Jersey Complaint.

42.    The New Jersey Complaint alleges the Access Bridges and their foundation elements were poorly planned, poorly designed, poorly constructed, and not sound or fit for their purpose. Ex. A, ¶ 44.

**ANSWER: ANSWER:** Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 42 that are not consistent with the allegations in the New Jersey Complaint.

43.     It is alleged that these defects have led the Access Bridges to suffer damages in the form of settlement; crack in their frame; and gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. Ex. A, ¶ 45.

**ANSWER:**     Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 43 that are not consistent with the allegations in the New Jersey Complaint.

44.     The New Jersey Complaint asserts counts for breach of contract; negligence;   and professional negligence against the defendants. Ex. A, ¶¶ 49-70.

**ANSWER:**     Admitted.

45.     On October 30, 2023, SESI filed a third-party complaint ("Third-Party Complaint") in the New Jersey Action against, in pertinent part, Premier Group. Dkt. 142-30.

**ANSWER:**     Admitted.

46.     The Third-Party Complaint alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Property which are experiencing construction defects. Dkt. 142-30, p. 16 at ¶ 6.

**ANSWER:**     Premier states that the allegations in the New Jersey Complaint speak for themselves and denies any allegations in paragraph 46 that are not consistent with the allegations in the New Jersey Complaint.

47.     The Third-Party Complaint asserts counts for contribution and indemnification against Premier Group. Dkt. 142-30, p. 16-17 at ¶¶ 7-11.

**ANSWER:**     Admitted.

48.     On December 8, 2015, Premier Group and GMAC entered into a subcontract ("GMAC Subcontract") where GMAC agreed to perform certain labor and furnish certain material at the project. Dkt. 142-32.

**ANSWER:**     Premier admits that on December 8, 2015, Premier Group and GMAC entered into the GMAC Subcontract where GMAC agreed to perform certain labor and furnish certain material at the Project.

49.     The Subcontract contains the following relevant provisions:

7.    Subcontractor shall defend, protect and hold Contractor harmless from and be liable to Contractor for all losses, damages and costs (including reasonable attorneys' fees) Contractor incurs as a result of Subcontractor's failure to perform in accordance with the terms of the Contract Documents. Subcontractor's failure to perform shall include, but not be limited to non-performance of any work prescribed by the Contract Documents to be performed by Subcontractor, delayed or late work performed by Subcontractor, negligent or reckless completion of any work by Subcontractor; other negligent, reckless, or wrongful act by Subcontractor arising out of or related to its work under the Contract documents and the failure of Subcontractor's sub-subcontractors to perform. Subcontractor's liability shall include but not be limited to (l) damages and other delay costs payable by Contractor to the Owner (including, but not limited to, liquidated damages set forth in the Contract Documents); (2) Contractor's increased costs of performance, such as extendedoverhead and increased performance costs resulting from Subcontractor caused delays or improper Subcontractor work (including, but not limited to, the costs incurred in accelerating other work); (3) warranty and rework costs; (4) liability to third parties; (5) excess reprocurement costs; (6) consultants' fees; and (7) attorneys' fees and related costs relating to the enforcement of the terms of the Contract Documents.

8.    Subcontractor shall obtain and maintain all insurance coverages as required herein or as set forth in the subcontract general conditions and shall name Contractor and other parties as requested by Contractor as an additional insured(s) on the Subcontractor's liability coverage by way of endorsement The insurance afforded to Contractor as an additional insured on the Subcontractor's policy(ies) is and shall be deemed and construed as primary non-contributory insurance with respect to any ions or clean. The amount of the Subcontractor's insurance company's liability shall not be reduced by the existence of any other insurance, Contractor shall have a direct right of claim, as an additional insured, on all policies obtained by subcontractor. Proof of the additional named insured endorsement shall be tendered to Contractor prior to initiating the work.

Dkt. 142-32, pp. 2-3.

**ANSWER:**    Premier admits that the GMAC Subcontract includes the provisions quoted in paragraph 49.

50.    Exhibit A to the GMAC Subcontract states that the following entities are to be added as additional insureds on the general liability policies issued to GMAC:

1.) Premier Design + Build Group, LLC
2.) Premier Design + Build National, LLC

3.) Bridge Perth Amboy, LLC
4.) Bridge Development Partners, LLC

Dkt. 142-32, p. 7.

**ANSWER:** Premier admits that the GMAC Subcontract contains an Exhibit A. Premier denies any allegations in paragraph 50 that are not consistent with Exhibit A of the GMAC Subcontract.

51.     In terms of the GMAC scope of work for the Project, Exhibit B of the GMAC Subcontract states GMAC's scope of work included footings; interior flatwork; installing a 8' unreinforced concrete dock pavement at truck dock areas; installing 8' unreinforced concrete driveways at drive-in doors; 8' unreinforced, 10' wide, dolly pads at all trailer parking positions; installing all footings for a proposed fire pump & Fire tank house; and installing interior piers at Buildings A, B, and C to accommodate a vapor mitigation passive system. Dkt. 142-32, pp. 8-10.

**ANSWER:** Premier denies the allegations in this paragraph as phrased. Further, Premier states that the GMAC Subcontract speaks for itself and denies any allegations in paragraph 51 that are not consistent with the GMAC Subcontract.

52.     Selective issued three commercial package policies (collectively Policies") to GMAC as follows: SFCIC issued commercial policies, Policy S2179257, for the June 15, 2015 to June 15, 2016 and June 15, 2016 to June 15, 2017 policy periods ("SFCIC Policies"); and SICA issued a commercial policy, Policy No. S 2528018, for the June 15, 2022 to June 15, 2023 policy period ("SICA Policy"). Dkt. 142-24; Dkt. 142-25.

**ANSWER:** On information and belief, admitted.

53.     The Policies contain substantially similar terms and provisions, except where noted otherwise, which are set forth below as contained in Policy No. S 2528018 (6/15/22 – 6/15/23). Dkt. 142-24.

**ANSWER:** On information and belief, admitted.

54.     The Policies contain a CGL coverage part, which provides liability limits of $1 million per each occurrence with a $3 million products-completed operations aggregate limit. Dkt. 142-24, p. 171.

**ANSWER:** On information and belief, admitted.

55.     The Policies also contain a commercial umbrella liability coverage part which provides limits of liability of $10 million per each occurrence with a $10 million aggregate. Dkt. 142-24, p. 386.

**ANSWER:**   On information and belief, admitted.

56.     The Policies provide the following relevant provisions under the CGL coverage part:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

 **a.**     We will pay those sums that the insured becomes legally obligated to  pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   **\* \* \***

 **b.**     This insurance applies to "bodily injury" and "property damage" only if:

  **(1)**     The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory":

  **(2)**     The . . . "property damage" occurs during the policy period; and

  **(3)**     Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **\* \* \***

2. **Exclusions**

This insurance does not apply to:

\* \* \*

b. **Contractual Liability**

. . . "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1)   That the insured would have in the absence of the contract or agreement; or

   (2)   Assumed in a contract or agreement that is an "insured contract", provided the . . . "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of . . . "property damage", provided:

       (a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

       (b)   Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

j. **Damage to Property**

"Property damage" to:

\* \* \*

   (5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if

the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

## SECTION V – DEFINITIONS

\* \* \*

**9.** "Insured contract" means:

\* \* \*

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions and includes:

**a.** "Property damage" to property that is not "your work" but is caused by "your work"; and

**b.** "Your work" if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the "property damage" to "your work" is included in the "products-completed operations hazard."

\* \* \*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     **(a)**     When all of the work called for in your contract has been completed.

     **(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     **(c)**     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

**17.** "Property damage" means:

     **a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.** "Your product":

     **a.**     Means:

     **(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     **(a)**     You;

     **(b)**     Others trading under your name; or

     **(c)**     A person or organization whose business or assets you have acquired; and

     **(2)**     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

Dkt. 142-24, pp. 212-13, 215-16, 225-27, 247.

**ANSWER:** Denied as phrased.

57. The SFCIC Policies contain a Contractors ElitePac Extension endorsement ("ElitePac Endorsement"), which provides as follows:

**1. Blanket Additional Insureds**

**a. Ongoing Operations**

**SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to liability arising out of your ongoing operations performed under that contract,

agreement, or permit  when that con-tract, agreement, or permit requires the additional insured be added with respect to liability arising out of your ongoing operations. If the written contract, written agreement, or written permit does not require that the additional insured be added with respect to liability arising out of your ongoing operations, then **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect  to "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by your ongoing operations performed under that contract, agreement, or permit

b. **Completed Operations**

**SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect  to their liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard" when that contract, agreement, or permit requires the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement,  or permit and included in the "products-completed operations hazard". If the written contract, written agreement, or written permit does not require that the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products- completed operations hazard", then **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to liability for "bodily injury",  "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard".

c. The coverages provided in Paragraphs **a.** and **b.** do not apply unless the written contract or written agreement  has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury", "property

damage" or "personal and advertising injury".

\* \* \*

e.　**Conditions**

With respect to the insurance afforded to these additional insureds under **a. Ongoing Operations** and **b. Completed Operations** the following is added to Paragraph **4. Other Insurance, a. Primary Insurance** under **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS:** This insurance is primary and will not contribute with any other insurance available to an additional insured under this coverage part provided that:

**(1)**　The additional insured is a Named Insured under such other insurance.

**(2)**　You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or noncontributory basis.

\* \* \*

Dkt. 142-25, pp. 119-20; 415-16.

**ANSWER:**　Denied as phrased.

58.　The SFCIC Policy for the 2016-2017 policy period contains endorsements adding Premier Group and Premier National as additional insureds for ongoing operations as well as completed operations with respect to 960, 980, and 1000 High Street, Perth Amboy, New Jersey. Dkt. 142-25, pp. 566; 569.

**ANSWER:**　Denied as phrased.

59.　The additional insured endorsement with respect to ongoing operations in the 2016-2017 SFCIC policy states:

A.　**Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.　Your acts or omissions; or

  **2.**  The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional
insured(s) at the location(s) designated above.

* * *

Dkt. 142-25, p. 566.

  **ANSWER:**  Denied as phrased.

  60.  The additional insured endorsement with respect to completed operations in the 2016-2017 SFCIC policy states:

> **SECTION II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

Dkt. 142-25, p. 569.

  **ANSWER:**  Denied as phrased.

  61.  The 2022-2023 SICA Policy contains endorsements adding Premier Group (and any other person GMAC agrees to include) as an additional insured for ongoing as well as completed operations for "All Premier Design + Build Group LLC Locations As Per Written Contract Concrete Construction". Dkt. 142-25, pp. 187-88, 197-99.

  **ANSWER:**  Denied as phrased.

  62.  The additional insured endorsement with respect to ongoing operations in the 2022-2023 SICA Policy states as follows:

  **A.**  **Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  **1.**  Your acts or omissions; or

  **2.**  The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

  However:

1.	The insurance afforded to such additional insured only applies  to the extent permitted by law; and

2.	If coverage provided to the additional insured is required by a contract or  agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

* * *

Dkt. 142-25,  pp. 187-88.

**ANSWER:**	Denied as phrased.

63.	The additional insured endorsement with respect to completed operations states as follows:

A.	**Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this  endorsement performed  for that additional insured and included in  the "products-completed operations hazard".

However:

1.	The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.	If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B.	With respect to the insurance afforded to these additional insureds,  the following is added to **Section III — Limits Of Insurance**:

If coverage provided to the additional insured is required by a  contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1.	Required by the contract or agreement; or

2.	Available under the applicable limits of insurance;

whichever is less.

> This endorsement shall not increase the applicable limits of insurance

Ex. A, pp. 196-97.

**ANSWER:**    Denied as phrased.

64.    The commercial umbrella liability coverage part of the Policies lists the CGL coverage part as underlying insurance and contains the relevant provisions:

## SECTION I – COVERAGES

### A.    Insuring Agreement

1.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. . . .

\* \* \*

2.    The insurance applies to "bodily injury" or "property damage" only if:

\* \* \*

b.    The "bodily injury" or "property damage" occurs during the policy period; and

c.    Prior to the policy period, no insured listed under Paragraph A. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury"

or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**B.     Exclusions**

This insurance does not apply to:

\* \* \*

**2.     Contractual Liability**

Any obligation or liability assumed by the insured under any contract or agreement.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

**3.     Damage to Impaired Property or Property not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically destroyed or injured, arising out of;

**a.**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**4.     Damage to Property**

**a.**     "Property damage" to:

\* \* \*

**d.**     That particular part of any property that must be restored, repaired or replaced because "your work"

was incorrectly performed on it.

Paragraphs **c.** and **d.** of this exclusion do not apply to the extent that coverage is provided for the insured by "underlying insurance".

5.  **Damage To Your Product.**

    "Property damage" to "your product" arising out of it or any part of it.

6.  **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

* * *

## SECTION V – DEFINITIONS

* * *

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

* * *

12. "Occurrence" means:

    a.  An accident, including continuous or repeated exposure to substantially the same general harmful conditions and includes:

        i.  "Property damage" to property that is not "your work" but is

caused by "your work"; and

ii.     "Your work" if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the "property damage" to "your work" is included in the "products-completed operations hazard".

All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "occurrence".

\* \* \*

16.     **"**Products-completed operations hazard"

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.

b.     "Your work" will be deemed completed at the earliest of the following times:

(1)     When all the work called for in your contract has been completed;

(2)     When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

(3)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise completed, will be treated as completed.

\* \* \*

17.     "Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of

use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**23.** "Ultimate net loss" means the total of the following sums for each "occurrence" to which this policy applies:

**a.** All sums for which the insured becomes legally obligated to pay as damages, either by reason of adjudication or settlement or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent. This includes deduction for recoveries and salvages paid or to be paid.

**b.** All expenses, other than defense settlement expenses provided in **Section I — Coverages, C. Supplementary Payments** incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any "suit" seeking damages under this policy. However, the salaries of the insured's regular employees are excluded.

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the section titled Schedule of Underlying Insurance and Limits.

\* \* \*

**28.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or

equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

**29.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representation made at any time with respect to the fitness, quality, durability, performance, or use of your work; and

        **(2)**    The providing of or failure to provide warnings or instructions.

Dkt. 142-24, pp. 386, 389-91, 402-05, 420.

    **ANSWER:**    Denied as phrased.

**COUNT I**
**No Duty to Defend or Indemnify Premier under the CGL Coverage Part of the Policies**
**(Illinois Action)**

    65.    Selective incorporates by reference herein paragraphs 1 through 64, as if the same were fully set forth at length.

    **ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 64 of the Counterclaim as if set forth fully herein.

    66.    The CGL coverage part of the Policies states Selective will pay "those sums  that the

insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Dkt. 142-24, p. 212.

**ANSWER:**    Denied as phrased.

67.    The CGL coverage part of the Policies states the insurance will only apply if the "'property damage' is caused by an 'occurrence'"; the "property damage" occurs during the policy period; and, prior to the policy period, no insured or "'employee' authorized by the [the insured] to give or receive notice of any 'occurrence' or claim, knew that the . . . 'property damage' had occurred, in whole or in part. Dkt. 142-24, p. 212.

**ANSWER:**    Denied as phrased.

68.    The CGL coverage part of the Policies defines "occurrence" to mean " 'property damage' to property that is not 'your work' but is caused by 'your work' and . . . 'your work if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the 'property damage' to 'your work' is included in the 'products- completed operations hazard.'" Dkt. 142-24, p. 247.

**ANSWER:**    Denied as phrased.

69.    The CGL coverage part of the Policies defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Dkt. 142-24, p. 226.

**ANSWER:**    Denied as phrased.

70.    To the extent the Illinois Complaint does not allege "property damage" caused by an "occurrence" during the policy period, coverage is not afforded under the CGL coverage part of the Policies.

**ANSWER:**    The allegations of Paragraph 70 contain legal conclusions to which no answer

is required. To the extent an answer is required, Premier denies the allegations of paragraph 70.

71.    The Illinois Complaint alleges that Target sent a letter to Duke informing it of cracking and potential failure of the exterior wall and foundation of the Building. Dkt. 142-1, p. 7 at ¶ 34.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for

themselves and denies any allegations in paragraph 71 that are not consistent with the allegations in

the Illinois Complaint.

72.    The SICA Policy was in effect between June 15, 2022 and June 15, 2023.

**ANSWER:**    On information and belief, admitted.

73.    Accordingly, coverage is not afforded under the CGL coverage part of the SICA Policy to the extent Premier Design knew of the alleged "property damage" prior to the issuance of the SICA Policy.

**ANSWER:**    The allegations of Paragraph 73 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 73.

74.    The Policies contain additional insured endorsements for ongoing and completed operations which state that Premier Group and any other person GMAC agrees to name as an additional insured are provided coverage, "but only with respect to liability for . . . 'property damage' caused, in whole or in part" by GMAC's acts or omissions or GMAC's work. Dkt. 142-24, pp. 187, 197; Dkt. 142-25, pp. 119, 415-16, 566; 569.

**ANSWER:**    Denied as phrased.

75.    The Illinois Complaint against Premier Design does not allege that GMAC's acts or omissions or work resulted in property damage.

**ANSWER:**    Denied.

76.    Accordingly, to the extent Premier Design's liability was not caused, in whole or in party, by GMAC's acts or omission or GMAC's work, Premier Design does not qualify as an additional insured under the Policies.

**ANSWER:**    Denied.

77.    Alternatively, to the extent the allegation in the Illinois Complaint could be interpreted as satisfying the requirements of the CGL coverage part of the Policies, certain provisions and exclusions contained in the CGL coverage part of the Policies preclude or otherwise limit coverage.

**ANSWER:**    Denied.

78.    Exclusion **b.** of the CGL coverage part of the Policies precludes coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Dkt. 142-24, p. 213.

**ANSWER:**    The allegations of Paragraph 78 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 78.

79.     The Illinois Complaint alleges that Premier Design breached its contract with Duke in connection with its work on the Project. Dkt. 142-1, pp. 2, 4, 9-11 at ¶¶ 1, 12, 13, 45-58.

**ANSWER:**   Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 79 that are not consistent with the allegations in the Illinois Complaint.

80.     Accordingly, exclusion **b.** applies to preclude coverage to the extent Premier Design is held liable under its contract with Duke.

**ANSWER:**   Paragraph 80 is a legal conclusion to which no answer is required.

81.     Exclusion **j.(5)** of the CGL coverage part of the Policies precludes coverage for "property damage" to "[t]hat particular part of real property on which [GMAC] . . . [is] performing operations, if the 'property damage' arises out of those operations." Dkt. 142-24, pp. 215-16.

**ANSWER:**   Denied as phrased.

82.     The Illinois Complaint alleges Premier Design's work with respect to the  Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:**     Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 82 that are not consistent with the allegations in the Illinois Complaint.

83.     Accordingly, **j.(5)** applies to preclude coverage to the extent Premier Design is held liable for damages arising out GMAC's ongoing work.

**ANSWER:**   The allegations of Paragraph 83 contain legal conclusions to which no answer is required.

84.     Exclusion **j.(6)** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was  incorrectly performed on it." Dkt. 142-24, pp. 215-216.

**ANSWER:**   Denied as phrased.

85.     The Illinois Complaint alleges Premier Design's work with respect to the  Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 85 that are not consistent with the allegations in the Illinois Complaint.

86. Accordingly, exclusion **j.(6)** applies to preclude coverage to the extent that Premier is held liable for damage to that particular part of the Access Bridges and Building that must be restored due to the incorrect work performed by GMAC during GMAC's ongoing operations.

**ANSWER:** The allegations of Paragraph 86 contain legal conclusions to which no answer is required.

87. Exclusion **k.** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'your product' arising out of it or any part of it." Dkt. 142-24, p. 216.

**ANSWER:** The allegations of Paragraph 87 contain legal conclusions to which no answer is required.

88. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 88 that are not consistent with the allegations in the Illinois Complaint.

89. Accordingly, exclusion **k.** applies to preclude coverage to the extent that Premier Design is held liable for damages caused by GMAC's products.

**ANSWER:** The allegations of Paragraph 89 contain legal conclusions to which no answer is required.

90. Exclusion **l.** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-hazard completed operations hazard'" Dkt. 142-24, p. 216.

**ANSWER:** The allegations of Paragraph 90 contain legal conclusions to which no answer is required.

91. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. 142- 1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 91 that are not consistent with the allegations in the Illinois Complaint.

92. Accordingly, exclusion **l.** applies to preclude coverage to the extent that Premier Design is being held liable for GMAC's complete work.

**ANSWER:** The allegations of Paragraph 92 contain legal conclusions to which no answer is required.

93. Exclusion **m.** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'impaired property'" or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' " Dkt. 142-24, p. 216.

**ANSWER:** The allegations of Paragraph 93 contain legal conclusions to which no answer is required.

94. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 94 that are not consistent with the allegations in the Illinois Complaint.

95. Accordingly, exclusion **m.** applies to preclude coverage to the extent that Premier Design is held liable for property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition to GMAC's work.

**ANSWER:** The allegations of Paragraph 95 contain legal conclusions to which no answer is required.

**Count II**
**No Duty to Defend or Indemnify Premier under the Umbrella Coverage Part of**
**the Policies**
**(Illinois Action)**

96.    Selective incorporates by reference herein paragraphs 1 through 64, as if the same were fully set forth at length.

**ANSWER:**    Premier sets forth its Answers to paragraphs 1 through 64 of the Counterclaim

as if set forth fully herein.

97.    The commercial umbrella liability ("Umbrella") coverage part of the Policies states Selective will pay on behalf of the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of  'property damage' . . . to which this insurance applies." Dkt. 142-24, p. 389.

**ANSWER:**    Denied as phrased.

98.    The Umbrella coverage part of the Policies states the insurance will only apply if the "'property damage' is caused by an 'occurrence'"; the "property damage" occurs during the policy period; and, prior to the policy period, no insured or "'employee' authorized by the [the insured] to give or receive notice of any 'occurrence' or claim, knew that the . . . 'property damage' had occurred, in whole or in part." Dkt. 142-24, p. 389.

**ANSWER:**    Denied as phrased.

99.    The Umbrella coverage part of the Policies defines "occurrence" to mean " 'property damage' to property that is not 'your work' but is caused by 'your work' and . . . 'your work if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the 'property damage' to 'your work' is included in the 'products-completed operations hazard.'" Dkt. 142-24, p. 420.

**ANSWER:**    Denied as phrased.

100.    The Umbrella coverage part of the Policies defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Dkt. 142-24, p. 404.

**ANSWER:**    Denied as phrased.

101.    To the extent the Illinois Complaint does not allege "property damage" caused by an "occurrence" during the policy period, coverage is not afforded under the CGL coverage part of the Policy.

**ANSWER:**    The allegations in paragraph 101 contain legal conclusions to which no answer

is required.

102.     The Illinois Complaint alleges that Target sent a letter to Duke informing it of cracking and potential failure of the exterior wall and foundation of the Building. Dkt. 142-1,p. 6 at ¶ 34.

**ANSWER:**  Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 102 that are not consistent with the allegations in the Illinois Complaint.

103.     The SICA Policy was in effect between June 15, 2022 and June 15, 2023.

**ANSWER:**  On information and belief, admitted.

104.     Accordingly, coverage is not afforded under the CGL coverage part of the SICA Policy to the extent Premier Design knew of the alleged "property damage" prior to the issuance of the SICA Policy.

**ANSWER:**  The allegations in paragraph 104 contain legal conclusions to which no answer is required.

105.     To the extent Premier Design does not qualify as additional insured under the CGL coverage part, it will not qualify as an additional insured under the Umbrella coverage part.

**ANSWER:**  The allegations in paragraph 105 contain legal conclusions to which no answer is required.

106.     Accordingly, to the extent Premier Design's liability was not caused, in whole or in party, by GMAC's acts or omission or GMAC's work, Premier Design does not qualify as an additional insured under the Umbrella coverage part of the  Policies.

**ANSWER:**  The allegations in paragraph 106 contain legal conclusions to which no answer is required.

107.     Alternatively, to the extent the allegation in the Illinois Complaint could be interpreted as satisfying the requirements of the Umbrella coverage part of the Policies, certain provisions and exclusions contained in the Umbrella coverage part of the Policies preclude or otherwise limit coverage.

**ANSWER:**  The allegations in paragraph 107 contain legal conclusions to which no answer is required.

108.    Exclusion **2.** of Umbrella coverage part of the Policies precludes coverage for "any obligation or liability assumed by the insured under any contract or agreement." Ex. A, p. 389.

**ANSWER:**    Denied as phrased.

109.    The Illinois Complaint alleges that Premier Design breached its contract with Duke in connection with its work on the Project. Dkt. 142-1, pp. 2, 4, 9-11 at ¶¶ 1, 12, 13, 45-58.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 109 that are not consistent with the allegations in the Illinois Complaint.

110.    Accordingly, exclusion **2.** applies to preclude coverage to the extent Premier Design is held liable under its contract with Duke.

**ANSWER:**    The allegations in paragraph 110 contain legal conclusions to which no answer is required.

111.    Exclusion **4.c** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "[t]hat particular part of real property on which [GMAC] . . . [is] performing operations, if the 'property damage' arises out of those operations." Dkt. 142-24,p. 391.

**ANSWER:**    Denied as phrased.

112.    The Illinois Complaint alleges Premier Design's work with respect to the  Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:**    Premier states that the allegations in the Illinois Complaint speak for themselves and deny any allegations in paragraph 112 that are not consistent with the allegations in the Illinois Complaint.

113.    Accordingly, **4.c** applies to preclude coverage to the extent Premier Design is held liable for damages arising out GMAC's ongoing work.

**ANSWER:**    The allegations in paragraph 113 contain legal conclusions to which no answer is required.

114.    Exclusion **4.d** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to ""[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Ex. A, p. 391.

**ANSWER:** Denied as phrased.

115. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 115 that are not consistent with the allegations in the Illinois Complaint.

116. Accordingly, exclusion **4.d** applies to preclude coverage to the extent that Premier is held liable for damage to that particular part of the Access Bridges and Building that must be restored due to the incorrect work performed by GMAC during its ongoing operations.

**ANSWER:** The allegations in paragraph 116 contain legal conclusions to which no answer is required.

117. Exclusion **5.** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "'your product' arising out of it or any part of it." Dkt. 142-24, p. 391.

**ANSWER:** Denied as phrased.

118. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 118 that are not consistent with the allegations in the Illinois Complaint.

119. Accordingly, exclusion **5.** applies to preclude coverage to the extent that Premier Design is held liable for damages caused by GMAC's products.

**ANSWER:** The allegations in paragraph 119 contain legal conclusions to which no answer is required.

120. Exclusion **6.** of the Umbrella coverage part of the Policy precludes coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-hazard completed operations hazard'". Dkt. 142-24, p. 391.

**ANSWER:** Denied as phrased.

121. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 121 that are not consistent with the allegations in the Illinois Complaint.

122. Accordingly, exclusion **l.** applies to preclude coverage to the extent that Premier Design is being held liable for GMAC's complete work.

**ANSWER:** The allegations of Paragraph 122 contain legal conclusions to which no answer is required.

123. Exclusion **3.** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "'impaired property'" or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' " Dkt. 142-24, p. 390.

**ANSWER:** Denied.

124. The Illinois Complaint alleges Premier Design's work with respect to the Access Bridges was defective and its work with respect to the Building was insufficient. Dkt. 142-1, pp. 6-8 at ¶¶ 28-29, 39.

**ANSWER:** Premier states that the allegations in the Illinois Complaint speak for themselves and denies any allegations in paragraph 124 that are not consistent with the allegations in the Illinois Complaint.

125. Accordingly, exclusion **m.** applies to preclude coverage to the extent that Premier Design is held liable for property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition to GMAC's work.

**ANSWER:** The allegations of Paragraph 125 contain legal conclusions to which no answer is required.

.

**COUNT III**
**No Duty to Defend or Indemnify Premier under the CGL Coverage Part of the Policies**
**(New Jersey Action)**

126.     Selective incorporates by reference herein paragraphs 1 through 64, as if the same were fully set forth at length.

**ANSWER:**     Premier sets forth its Answers to paragraphs 1 through 64 of the Counterclaim

as if set forth fully herein.

127.     The CGL coverage part of the Policies states Selective will pay "those sums  that the insured becomes legally obligated to pay as damages because of  'property damage' to which this insurance applies." Dkt. 142-24, p. 212.

**ANSWER:**     Denied as phrased.

128.     The CGL coverage part of the Policies states the insurance will only apply  if  the "'property damage' is caused by an 'occurrence'"; the "property damage" occurs during the policy period; and, prior to the policy period, no insured or "'employee' authorized by the [the insured] to give or receive notice of any 'occurrence' or claim, knew that the . . . 'property damage' had occurred, in whole or in part. Dkt. 142-24, p. 212.

**ANSWER:**     Denied as phrased.

129.     The CGL coverage part of the Policies defines "occurrence" to mean " 'property damage' to property that is not 'your work' but is caused by 'your work' and . . . 'your work if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the 'property damage' to 'your work' is included in the 'products- completed operations hazard.'" Dkt. 142-24, p. 247.

**ANSWER:**     Denied as phrased.

130.     The CGL coverage part of the Policies defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Dkt. 142-24, p. 226.

**ANSWER:**     Denied as phrased.

131.     To the extent the New Jersey Complaint and/or the Third-Party Complaint  do not allege "property damage" caused by an "occurrence" during the policy period, coverage is not afforded under the CGL coverage part of the Policies.

**ANSWER:**     The allegations of Paragraph 131 contain legal conclusions to which no answer

is required. To the extent that an answer is required, Premier denies the allegations in paragraph 131.

132.     The New Jersey Complaint and/or the Third-Party Complaint seek damages in connection with construction work beginning in and around 2013.

**ANSWER:**     Premier states that the allegations in the New Jersey Complaint and Third-Party Complaint speak for themselves and denies any allegations in paragraph 121 that are not consistent with the allegations in the New Jersey Complaint and Third-Party Complaint.

133.     The SICA Policy was in effect between June 15, 2022 and June 15, 2023.

**ANSWER:**     On information and belief, admitted.

134.     Accordingly, coverage is not afforded under the CGL coverage part of the SICA Policy to the extent Premier Design knew of the alleged "property damage" prior to the issuance of the SICA Policy.

**ANSWER:**     The allegations of Paragraph 134 contain legal conclusions to which no answer is required.

135.     The Policies contain additional insured endorsements for ongoing and completed operations which state that Premier Group and any other person GMAC agrees to name as an additional insured are provided coverage, "but only with respect to liability for . . . 'property damage' caused, in whole or in part" by GMAC's acts or omissions or GMAC's work. Dkt. 142-24, pp. 187, 197; Dkt. 142-25, pp. 119, 415-16, 566; 569.

**ANSWER:**     Denied as phrased.

136.     The Third-Party Complaint against Premier Design does not allege that GMAC's acts or omissions or work resulted in property damage.

**ANSWER:**     Denied.

137.     Accordingly, to the extent Premier Design's liability was not caused, in whole or in party, by GMAC's acts or omission or GMAC's work, Premier Design does not qualify as an additional insured under the Policies.

**ANSWER:**     Denied.

138.     Alternatively, to the extent the allegation in the New Jersey Complaint and/or the Third-Party Complaint could be interpreted as satisfying the requirements of the CGL coverage part of the Policies, certain provisions and exclusions contained in the CGL coverage part of the Policies preclude or otherwise limit coverage.

**ANSWER:**     Denied.

139.    Exclusion **b.** of the CGL coverage part of the Policies preclude coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Dkt. 142-24, p. 213.

**ANSWER:**    The allegations of paragraph 139 contain legal conclusions to which no answer is required. To the extent an answer is required, Premier denies the allegations of paragraph 139.

140.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 140 that are not consistent with the allegations in the Third-Party Complaint.

141.    Accordingly, exclusion **b.** applies to preclude coverage to the extent Premier Design is held liable under any contract in connection with the alleged construction defects.

**ANSWER:**    Paragraph 60 is a legal conclusion to which no answer is required.

142.    Exclusion **j.(5)** of the CGL coverage part of the Policies preclude coverage for "property damage" to "[t]hat particular part of real property on which [GMAC] . . . [is] performing operations, if the 'property damage' arises out of those operations." Dkt. 142-24, pp. 215-16.

**ANSWER:**    Denied as phrased.

143.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the New Jersey Complaint and Third-Party Complaint speak for themselves and denies any allegations in paragraph 143 that are not consistent with the allegations in the New Jersey Complaint and Third-Party Complaint.

144.    Accordingly, **j.(5)** applies to preclude coverage to the extent Premier Design is held liable for damages arising out GMAC's ongoing work.

**ANSWER:**    The allegations of paragraph 144 contain legal conclusions to which no answer is required.

145.    Exclusion **j.(6)** of the CGL coverage part of the Policies preclude coverage for

"property damage" to "'[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Dkt. 142-24, pp. 215-216.

**ANSWER:** Denied as phrased.

146. The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:** Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 146 that are not consistent with the allegations in the Third-Party Complaint.

147. Accordingly, exclusion **j.(6)** applies to preclude coverage to the extent that Premier is held liable for damage to that particular part of the Access Bridges that must be restored due to the incorrect work performed by GMAC during GMAC's ongoing operations.

**ANSWER:** The allegations of Paragraph 147 contain legal conclusions to which no answer is required.

148. Exclusion **k.** of the CGL coverage part of the Policies preclude coverage for "property damage" to "'your product' arising out of it or any part of it." Dkt. 142-24, p. 216.

**ANSWER:** The allegations of Paragraph 148 contain legal conclusions to which no answer is required.

149. The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:** Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 149 that are not consistent with the allegations in the Third-Party Complaint.

150. Accordingly, exclusion **k.** applies to preclude coverage to the extent that Premier Design is held liable for damages caused by GMAC's products.

**ANSWER:** The allegations of paragraph 150 contain legal conclusions to which no answer is required.

151. Exclusion **l.** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-hazard completed operations hazard'" Dkt. 142-24, p. 216.

**ANSWER:** The allegations of paragraph 151 contain legal conclusions to which no answer is required.

152. The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:** Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 152 that are not consistent with the allegations in the Third-Party Complaint.

153. Accordingly, exclusion **l.** applies to preclude coverage to the extent that Premier Design is being held liable for GMAC's complete work.

**ANSWER:** The allegations of Paragraph 153 contain legal conclusions to which no answer is required.

154. Exclusion **m.** of the CGL coverage part of the Policies precludes coverage for "property damage" to "'impaired property'" or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'" Dkt. 142-24, p. 216.

**ANSWER:** The allegations of Paragraph 154 contain legal conclusions to which no answer is required.

155. The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:** Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 155 that are not consistent with the allegations in the Third-Party Complaint.

156. Accordingly, exclusion **m.** applies to preclude coverage to the extent that Premier Design is held liable for property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition to GMAC's work.

**ANSWER:** The allegations of Paragraph 156 contain legal conclusions to which no answer is required.

### Count IV
### No Duty to Defend or Indemnify Premier under the Umbrella Coverage Part of the Policies
### (New Jersey Action)

157. Selective incorporates by reference herein paragraphs 1 through 64, as if the same were fully set forth at length.

**ANSWER:** Premier sets forth its Answers to paragraphs 1 through 64 of the Counterclaim as if set forth fully herein.

158. The commercial umbrella liability ("Umbrella") coverage part of the Policies states Selective will pay on behalf of the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'property damage' . . . to which this insurance applies." Dkt. 142-24, p. 389.

**ANSWER:** Denied as phrased.

159. The Umbrella coverage part of the Policies states the insurance will only apply if the "'property damage' is caused by an 'occurrence'"; the "property damage" occurs during the policy period; and, prior to the policy period, no insured or "'employee' authorized by the [the insured] to give or receive notice of any 'occurrence' or claim, knew that the . . . 'property damage' had occurred, in whole or in part." Dkt. 142-24, p. 389.

**ANSWER:** Denied as phrased.

160. The Umbrella coverage part of the Policies defines "occurrence" to mean "'property damage' to property that is not 'your work' but is caused by 'your work' and . . . 'your work if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the 'property damage' to 'your work' is included in the 'products-completed operations hazard.'" Dkt. 142-24, p. 420.

**ANSWER:** Denied as phrased.

161. The Umbrella coverage part of the Policies defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Dkt. 142-24, p. 404.

**ANSWER:** Denied as phrased.

162. To the extent the New Jersey Complaint and/or the Third-Party Complaint does not

allege "property damage" caused by an "occurrence" during the policy period, coverage is not afforded under the Umbrella coverage part of the Policies.

**ANSWER:** The allegations in paragraph 162 contain legal conclusions to which no answer is required.

163. The New Jersey Complaint and/or the Third-Party Complaint seek damages in connection with construction work beginning in and around 2013.

**ANSWER:** Premier states that the allegations in the New Jersey Complaint and Third-Party Complaint speak for themselves and denies any allegations in paragraph 163 that are not consistent with the allegations in the New Jersey Complaint and Third-Party Complaint.

164. The SICA Policy was in effect between June 15, 2022 and June 15, 2023.

**ANSWER:** On information and belief, admitted.

165. Accordingly, coverage is not afforded under the CGL coverage part of the SICA Policy to the extent Premier Design knew of the alleged "property damage" prior to the issuance of the SICA Policy.

**ANSWER:** The allegations of Paragraph 165 contain legal conclusions to which no answer is required.

166. To the extent Premier Design does not qualify as additional insured under the CGL coverage part, it will not qualify as an additional insured under the Umbrella coverage part.

**ANSWER:** The allegations in paragraph 166 contain legal conclusions to which no answer is required.

167. Accordingly, to the extent Premier Design's liability was not caused, in whole or in party, by GMAC's acts or omission or GMAC's work, Premier Design does not qualify as an additional insured under the Umbrella coverage part of the Policies.

**ANSWER:** The allegations in paragraph 167 contain legal conclusions to which no answer is required.

168. Alternatively, to the extent the allegation in the New Jersey Complaint and/or the Third-Party Complaint could be interpreted as satisfying the requirements of the Umbrella coverage part of the Policies, certain provisions and exclusions contained in the Umbrella coverage part of the Policies preclude or otherwise limit coverage.

**ANSWER:** The allegations in paragraph 168 contain legal conclusions to which no answer is required.

169.     Exclusion **2.** of the Umbrella coverage part of the Policies precludes coverage for "any obligation or liability assumed by the insured under any contract or agreement." Ex. A, p. 389.

**ANSWER:**   Denied as phrased.

170.     The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 170 that are not consistent with the allegations in the Third-Party Complaint.

171.     Accordingly, exclusion **2.** applies to preclude coverage to the extent Premier Design is held liable under any contract in connection with the alleged construction defects.

**ANSWER:**    The allegations in paragraph 171 contain legal conclusions to which no answer is required.

172.     Exclusion **4.c** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "[t]hat particular part of real property on which [GMAC] . . . [is] performing operations, if the 'property damage' arises out of those operations." Dkt. 142-24, p. 391.

**ANSWER:**    Denied as phrased.

173.     The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 173 that are not consistent with the allegations in the Third-Party Complaint.

174.     Accordingly, **4.c** applies to preclude coverage to the extent Premier Design is held liable for damages arising out GMAC's ongoing work.

**ANSWER:**    The allegations in paragraph 174 contain legal conclusions to which no answer

is required.

175.    Exclusion **4.d** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "'[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Ex. A, p. 391.

**ANSWER:**    Denied as phrased.

176.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 176 that are not consistent with the allegations in the Third-Party Complaint.

177.    Accordingly, exclusion **4.d** applies to preclude coverage to the extent that Premier is held liable for damage to that particular part of the Access Bridges that must be restored due to the incorrect work performed by GMAC during its ongoing operations.

**ANSWER:**    The allegations in paragraph 177 contain legal conclusions to which no answer is required.

178.    Exclusion **5.** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "'your product' arising out of it or any part of it." Dkt. 142-24, p.  391.

**ANSWER:**    Denied as phrased.

179.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 179 that are not consistent with the allegations in the Third-Party Complaint.

180.    Accordingly, exclusion **5.** applies to preclude coverage to the extent that  Premier Design is held liable for damages caused by GMAC's products.

**ANSWER:**    The allegations in paragraph 180 contain legal conclusions to which no answer is required.

181.    Exclusion **6.** of the Umbrella coverage part of the Policy precludes coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-hazard completed operations hazard'". Dkt. 142-24, p. 391.

**ANSWER:**    Denied as phrased.

182.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 152 that are not consistent with the allegations in the Third-Party Complaint.

183.    Accordingly, exclusion **l.** applies to preclude coverage to the extent that Premier Design is being held liable for GMAC's complete work.

**ANSWER:**    The allegations of Paragraph 183 contain legal conclusions to which no answer is required.

184.    Exclusion **3.** of the Umbrella coverage part of the Policies precludes coverage for "property damage" to "'impaired property'" or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'" Dkt. 142-24, p. 390.

**ANSWER:**    Denied.

185.    The Third-Party Complaint alleges that Premier Design was a contractor with respect to some or all of the Access Bridges at the Property which are alleged to be experiencing construction defects. Dkt. 142-30, p. 15, ¶ 7.

**ANSWER:**    Premier states that the allegations in the Third-Party Complaint speak for themselves and denies any allegations in paragraph 185 that are not consistent with the allegations in the Third-Party Complaint.

186.    Accordingly, exclusion **m.** applies to preclude coverage to the extent that Premier Design is held liable for property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition to GMAC's work.

**ANSWER:**    The allegations of Paragraph 186 contain legal conclusions to which no answer is required.

WHEREFORE, Counter-Defendants, Premier Design + Build Group, LLC and Premier Design + Build National, LLC, pray that this Court deny all relief sought by Defendant/Counter-Plaintiffs Selective Insurance Company of American and Selective Fire and Casualty Insurance Company, dismiss the Counterclaim with prejudice and deny the relief requested therein, enter final judgment in favor of Premier, award Premier its costs associated with this action, and for such other relief as the Court deems fair and just.

Dated: March 18, 2025

Respectfully submitted,

PREMIER DESIGN + BUILD GROUP, LLC
PREMIER DESIGN + BUILD NATIONAL, LLC

/s/ *Erik R. Nelson*
One of its Attorneys

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 18, 2025, a true and correct copy of the foregoing document has been furnished electronically to all counsel of record via the Court's CM/ECF system.

/s/ *Erik R. Nelson*

Daniel A. Dorfman
Erik R. Nelson
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
ddorfman@foxswibel.com
enelson@foxswibel.com