**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | No. 1:23-CV-04098 |
| | ) | |
| Plaintiffs, | ) | Honorable Sara L. Ellis |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| PREMIER DESIGN & BUILD GROUP, LLC, et al. | ) ) | |
| Defendants. | ) | |
| | ) | |
| PREMIER DESIGN + BUILD GROUP, LLC, and PREMIER DESIGN + BUILD NATIONAL, LLC, | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| vs. | ) | |
| | ) | |
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiffs/Counter-Defendants. | ) | |

**ZURICH AMERICAN INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT AND COMBINED COUNTERCLAIM/CROSSCLAIM FOR DECLARATORY JUDGMENT**

Defendant, Zurich American Insurance Company ("Zurich"), by its attorneys, Bodell

Bove LLC, for its Answer to the Second Amended Complaint filed by Plaintiffs, Amerisure

Insurance Company and Amerisure Mutual Insurance Company, states as follows:

**I.    NATURE OF ACTION AND RELIEF SOUGHT**

1.    This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. 2.

**Answer:    Zurich admits only that the Plaintiffs in the matter seek relief pursuant to the cited statutes.  Zurich denies that the Plaintiffs are entitled to any relief from Zurich.**

1

2.      This is a civil action brought by Amerisure seeking a declaration that:  they owe no duty to defend or indemnify Premier Design under Commercial General Liability (herein "CGL") insurance policies and Umbrella Liability (herein "Umbrella") insurance policies (collectively referred to herein as "Amerisure Policies") issued by Amerisure to Premier Design in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, Case No.: 2023L004533, filed in the Circuit Court of Cook County, Illinois, Law Division (herein "Illinois Action") and in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al*., MID-L-001767- 23, pending in the Superior Court of New Jersey Law Division, Middlesex County ("New Jersey Action").  Both the Illinois Action and New Jersey Action arise from the same construction project ("Project");[1] that the Subcontractor Insurers owe Premier Design a primary duty to defend in connection with the Illinois Action and the New Jersey Action; that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design; and that the Subcontractor Insurers are obligated to reimburse Amerisure all amounts that Amerisure has incurred in the defense of Premier Design in the Illinois Action and the New Jersey Action.

**Answer:**      **Zurich admits only that the Plaintiffs in this matter claim to seek relief as described in paragraph 2. Zurich denies that the Plaintiffs are entitled to any relief from Zurich. Further answering, Zurich denies that the Plaintiffs seek any relief from Zurich regarding the New Jersey Action.**

3.      There is an actual, present and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend or indemnify Premier Design in the Illinois Action and the New Jersey Action, whether the Subcontractor Insurers owe Premier Design a

---

[1] The Illinois Action involves two access bridges and one warehouse building while the New Jersey Action concerns three access bridges.

primary and non-contributory duty to defend, that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design and that the Subcontractor Insurers owe Amerisure reimbursement of the amounts Amerisure incurred in the defense of Premier Design in the Illinois Action and the New Jersey Action. *See* the Complaints filed in the Underlying Illinois and New Jersey Actions attached hereto at **Group Exhibit "A"**.

**Answer:** **Zurich admits that there is an actual controversy among the parties relating to the priority of coverage as to defense costs that have purportedly been incurred for "Premier Design" in the Underlying Illinois Action. Zurich further admits that included in Exhibit A is a copy of the Complaint filed in the Underlying Illinois Action, without its own exhibits. Zurich further admits that included in Exhibit A is a copy of the Complaint filed in the New Jersey Underlying Action, without its own exhibits. As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, Zurich denies that there is an actual controversy between the Plaintiffs and Zurich regarding the Underlying New Jersey Action and among the parties relating to the priority of coverage as to defense costs that have purportedly been incurred for "Premier Design" in the Underlying New Jersey Action. Zurich denies that there is presently an actual controversy as to any parties' alleged obligation to indemnify Premier Design. Answering further, Zurich denies any remaining allegations in paragraph 3.**

4.     Amerisure requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that the Subcontractor Insurers owe Premier Design a primary and non-contributory duty to defend, and that the Subcontractor Insurers owe Amerisure reimbursement of amounts that Amerisure has incurred in the defense of Premier Design in the Underlying Illinois and New Jersey Actions.[2]

**Answer:** **Zurich admits only that the Plaintiffs in the matter are seeking relief as described in paragraph 4. Zurich denies that the Plaintiffs are entitled to any relief from Zurich. Further answering, Zurich denies that the Plaintiffs seek any relief from Zurich regarding the New Jersey Action.**

---

[2] While Amerisure also seeks a declaration of the rights and obligations of Amerisure and the Subcontractor Insurers as to the duty to indemnify, that potential duty is not currently ripe and will not be until resolutions of the Underlying Illinois and New Jersey Actions.

## I.  **PARTIES**

5.      At the time of the commencement of this action, Plaintiff Amerisure Insurance

Company is an insurance company organized and existing under the laws of the State of Michigan,

with its principal place of business in Farmington Hills, Michigan.

**Answer:**      **Paragraph 5 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance.**

6.      At the time of the commencement of this action, Plaintiff Amerisure Mutual

Insurance Company is an insurance company organized and existing under the laws of the State

of Michigan.

**Answer:**      **Paragraph 6 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance.**

7.      At the time of the commencement of this action, Defendant Premier Group is an

Illinois Limited Liability Company with its principal place of business in Chicago, Illinois.  On

information and belief, Premier Group is transacting business in Illinois including the

geographical regions that encompass this United States District Court for the Northern District of

Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:**      **The first sentence of paragraph 7 is admitted based on the information in the publicly available records maintained by the Illinois Secretary of State. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 7.**

8.      At the time of the commencement of this action, Defendant Premier National is a

Delaware Limited Liability Company with its principal place of business in Chicago, Illinois.

On information and belief, Premier National is transacting business in Illinois including the

geographical regions that encompass this United States District Court for the Northern District of

Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:**      **The first sentence of paragraph 8 is admitted based on the information in the publicly available records maintained by the Illinois Secretary of State.**

4

**Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 8.**

9.      At the time of the commencement of this action, Defendant Allied World is a New Hampshire Corporation with its principal place of business in New York, New York.  On information and belief, Allied World is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:      The first sentence of paragraph 9 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance.  Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 9.**

10.      At the time of the commencement of this action, Defendant AFHIC is a Florida Corporation with its principal place of business in Jacksonville, Florida. On information and belief, AFHIC is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:      The first sentence of paragraph 10 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 10.**

11.      At the time of the commencement of this action, Defendant Continental Insurance Company is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois. On information and belief, Continental Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:      As to the first sentence of paragraph 11, based on the information in the publicly available records maintained by the Illinois Department of Insurance, Zurich**

5

**admits that Continental Insurance Company is a Pennsylvania Corporation but denies that Continental's principal place of business is in Chicago, Illinois. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 11.**

12.     At the time of the commencement of this action, Defendant Continental Casualty Company is an Illinois Corporation with its principal place of business in Chicago, Illinois. On information and belief, Continental Casualty Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:     The first sentence of paragraph 12 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 12.**

13.     At the time of the commencement of this action, Defendant American Casualty Company of Reading, Pennsylvania is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois.  On information and belief, American Casualty Company of Reading, Pennsylvania is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.**

14.     At the time of the commencement of this action, Defendant Gemini is a Delaware Corporation with its principal place of business in Greenwich, Connecticut. On information and belief, Gemini is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

6

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.**

15. At the time of the commencement of this action, Defendant Harleysville Preferred Insurance Company is an Ohio Corporation with its principal place of business in Columbus, Ohio. On information and belief, Harleysville Preferred Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:** **The first sentence of paragraph 15 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 15.**

16. At the time of the commencement of this action, Defendant Harleysville Insurance Company of New Jersey is a New Jersey Corporation with its principal place of business in Columbus, Ohio. On information and belief, Harleysville Insurance Company of New Jersey is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.**

17. At the time of the commencement of this action, Defendant Harleysville Insurance Company is an Ohio Corporation with its principal place of business in Columbus, Ohio. On information and belief, Harleysville Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:** **The first sentence of paragraph 17 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance.**

**Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 17.**

18.     At the time of the commencement of this action, Defendant Old Republic is an Illinois Corporation with its principal place of business in Chicago, Illinois.  On information and belief, Old Republic is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:     The first sentence of paragraph 16 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 16.**

19.     At the time of the commencement of this action, Defendant Selective is a New Jersey Corporation with its principal place of business in Branchville, New Jersey.  On information and belief, Selective is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:     The first sentence of paragraph 19 is admitted based on the information in the publicly available records maintained by the Illinois Department of Insurance. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 19.**

20.     At the time of the commencement of this action, Defendant Selective Fire is a New Jersey Corporation with its principal place of business in Branchville, New Jersey.  On information and belief, Selective Fire is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.**

21.     At the time of the commencement of this action, Defendant Zurich is a New York Corporation with its principal place of business in Schaumburg, Illinois. On information and belief, Zurich is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**Answer:** **Admitted.**

### III.     JURISDICTION AND VENUE

22.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**Answer:**     **On information and belief, and based on a review of the information set forth in the Status Report dated August 22, 2023 that was submitted to the Court in this matter (ECF Doc. No. 9), admitted.**

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d).

**Answer:**     **Zurich denies Venue is proper under 28 U.S.C. § 1391(b)(1), but admits it is proper under 28 U.S.C. § 1391(b)(2) or, alternatively, under 28 U.S.C. § 1391(b)(3).**

24.     Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

**Answer:**     **Zurich admits this Court has authority as set forth in the cited statute.**

### IV.     BACKGROUND

#### A.     The Project

25.     On information and belief, Duke Realty ePort Urban Renewal, LLC ("Duke") is the current owner of certain parcels constituting approximately 103 acres of real property located

at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, "the Property"). *See* Group Exhibit "A" at page 4, paragraph 9.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.**

26. On or about August 18, 2015, Bridge Perth Amboy, LLC entered into a contract with Premier National (the "Contract") to build three warehouse buildings and at least two access bridges (the "Project") on the Property. A true and correct copy of the Contract is attached hereto and incorporated herein at **Exhibit "B"**. *See* Group Exhibit "A" at page 4, paragraph 12.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.**

27. On information and belief. [sic] Duke is the successor in interest to Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC, which owned the property until on or about November 22, 2017. *See* Group Exhibit "A" at page 4, paragraph 10.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.**

28. On information and belief, on November 22, 2017, Bridge Perth Amboy Urban Renewal, LLP assigned the Contract to Duke via an Assignment and Assumption of Service Agreements and Intangibles, a copy of which is attached hereto at **Exhibit "C"**. *See* Group Exhibit "A" at pages 4-5, paragraph 14.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.**

29. On information and belief, on or about August 18, 2015, Premier National assigned certain rights and obligations under the Contract to its affiliate, Premier Group, pursuant to a Partial Assignment of Construction Agreement ("Premier Assignment"). On information and

belief, pursuant to the Premier Assignment, Premier Group entered into various subcontract agreements for design and construction of the Project. *See* Group Exhibit "A" at page 4, paragraph 13.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.**

30. Pursuant to the terms of the Contract, Premier National, then Premier Group, agreed to provide demolition, design, engineering, architectural, and construction services for the Project. *See* Exhibit "B" at §§ 2.1-2.4.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.**

### B. The Subcontractor Insurers

31. On information and belief, Allied World issued three Commercial General Liability policies ("CGL") to Premier Design subcontractor Terra Systems, Inc., with the policy number 0310-7669 and policy periods of June 10, 2017 to June 10, 2018; June 10, 2018 to June 10, 2019; and June 10, 2019 to June 10, 2020. Copies of the Allied World policies are attached hereto at **Group Exhibit "D"**.

**Answer:** **On information and belief, Zurich admits only that Allied World issued Commercial General Liability policies to Terra Systems, Inc. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 28.**

32. On information and belief, AFHIC issued a CGL policy to Premier Design subcontractor Pillari Bros. Construction Corp. with policy number 88A5GL00000467 and a policy period of November 1, 2016 to November 1, 2017. A copy of the AFHIC policy is attached hereto at **Exhibit "E"**.

11

**Answer:** On information and belief, Zurich admits only AFHIC issued a Commercial General Liability policy to Pillari Bros. Construction Corp. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 32.

33.     On information and belief, Continental Insurance Company issued a CGL policy to Premier Design subcontractor SESI Consulting Engineers with the policy number 6056872807 and a policy period of December 23, 2017 to December 23, 2018, and six excess and umbrella policies to Premier Design subcontractor SESI Consulting Engineers with the policy number 6056872810 and policy periods of December 23, 2017 to December 23, 2018; December 23, 2019 to December 23, 2020; December 23, 2020 to December 23, 2021; December 23, 2021 to December 23, 2022; December 23, 2022 to December 23, 2023; and December 23, 2023 to December 23, 2024.  Copies of the Continental Insurance Company policies are attached hereto at **Group Exhibit "F"**.

**Answer:** On information and belief, Zurich admits only Continental Insurance Company issued a CGL policy to SESI Consulting Engineers and excess and umbrella policies to SESI Consulting Engineers. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 33.

34.     On information and belief, Continental Casualty Company issued five CGL policies to SESI Consulting Engineers with policy number 6056872807 and policy periods of December 23, 2018 to December 23, 2019; December 23, 2019 to December 23, 2020; December 23, 2020 to December 23, 2021; December 23, 2021 to December 23, 2022; and December 23, 2022 to December 23, 2023.  Copies of the Continental Casualty Company policies are attached hereto at **Group Exhibit "G"**.

**Answer:** **On information and belief, Zurich admits only Continental Casualty Company issued CGL policies to SESI Consulting Engineers. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 34.**

35. On information and belief, American Casualty Co. of Reading, PA issued one CGL policy to SESI Consulting Engineers with policy number 6056872807 and a policy period of December 23, 2023 to December 23, 2024. A copy of the American Casualty Co of Reading, PA policy is attached hereto at **Exhibit "H".**

**Answer:** **On information and belief, Zurich admits only American Casualty Co. of Reading, PA issued a CGL policy to SESI Consulting Engineers. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 35.**

36. On information and belief, Gemini issued two CGL policies to Premier Design subcontractor Terra Systems, Inc. with policy number VIGP016860 and a policy period of June 10, 2015 to June 10, 2016, and with policy number VIGP017598 and a policy period of June 10, 2016 to June 10, 2017. Copies of the Gemini policies are attached hereto at **Group Exhibit "I"**.

**Answer:** **On information and belief, Zurich admits only that Gemini issued Commercial General Liability policies to Terra Systems, Inc. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 36.**

37. On information and belief, Harleysville Preferred Insurance Company issued five CGL policies to Premier Design subcontractor GMAC Construction, LLC with policy number MPA00000025695Z and policy periods of: June 15, 2017 to June 15, 2018; June 15, 2018 to June

13

15, 2019; June 15, 2019 to June 15, 2020; June 15, 2020 to June 15, 2021; and June 15, 2021 to June 15, 2022. Copies of the Harleysville Preferred Insurance Company policies are attached hereto at **Group Exhibit "J"**.

**Answer:** On information and belief, Zurich admits only that Harleysville Preferred Insurance Company issued CGL policies to GMAC Construction, LLC. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 37.

38.    On information and belief, Harleysville Insurance Company of New Jersey issued two umbrella policies to Premier Design subcontractor GMAC Construction, LLC with policy number CMB00000025694Z and policy periods of June 15, 2017 to June 15, 2018; and June 15, 2018 to June 15, 2019. Copies of the Harleysville Insurance Company of New Jersey policies are attached hereto at **Group Exhibit "K"**.

**Answer:** On information and belief, Zurich admits only that Harleysville Insurance Company of New Jersey issued CGL policies to GMAC Construction, LLC. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 38.

39.    On information and belief, Harleysville Insurance Company issued three umbrella policies to Premier Design subcontractor GMAC Construction, LLC with policy number CMB00000025694Z and policy periods of June 15, 2019 to June 15, 2020; June 15, 2020 to June 15, 2021; and June 15, 2021 to June 15, 2022. Copies of the Harleysville Insurance Company policies are attached hereto at **Group Exhibit "L"**.

**Answer:** On information and belief, Zurich admits only that Harleysville Insurance Company issued umbrella policies to GMAC Construction, LLC. Zurich does

**not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 39.**

40. On information and belief, Old Republic issued a CGL policy to Premier Design subcontractor Pillari Bros. Construction Corp. with policy number A-3CG-988715-05 and a policy period of November 1, 2015 to November 1, 2016. A copy of this policy is attached hereto at **Exhibit "M"**.

**Answer:** **On information and belief, Zurich admits only that Old Republic issued a CGL policy to Pillari Bros. Construction Corp. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 40.**

41. On information and belief, Selective issued a CGL policy to Premier Design subcontractor GMAC Construction, LLC with policy number S 2528018 and a policy period of June 15, 2022 to June 15, 2023. A copy of the Selective policy is attached hereto at **Exhibit "N"**.

**Answer:** **On information and belief, Zurich admits only that Selective issued a CGL policy to GMAC Construction, LLC. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 41.**

42. On information and belief, Selective Fire issued two CGL policies to Premier Design subcontractor GMAC Construction, LLC with policy number S 2179257 and policy periods of June 15, 2015 to June 15, 2016; and June 15, 2016 to June 15, 2017. Copies of the Selective Fire policies are attached hereto at **Group Exhibit "O"**.[3]

---

[3] The Selective Fire policies also include umbrella coverage parts.

**Answer:** **On information and belief, Zurich admits only that Selective issued CGL policies to GMAC Construction, LLC. Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 42.**

43. On information and belief, Zurich issued eight CGL policies to Premier Design subcontractor DGI Menard, Inc. with the following policy numbers and policy periods:

- Policy number GLO 0184640 00; policy period: October 1, 2015 to October 1, 2016;
- Policy number GLO 0184640 01; policy period: October 1, 2016 to October 1, 2017;
- Policy number GLO 0184640 02; policy period: October 1, 2017 to October 1, 2018;
- Policy number GLO 0184640 03; policy period: October 1, 2018 to October 1, 2019;
- Policy number GLO 0184640 04; policy period: October 1, 2019 to October 1, 2020;
- Policy number GLO 0184640 05; policy period: October 1, 2020 to October 1, 2021;
- Policy number GLO 0184640 06; policy period: October 1, 2021 to October 1, 2022; and
- Policy number GLO 0184640 07; policy period: October 1, 2022 to October 1, 2023.

Copies of the Zurich policies are attached hereto at **Group Exhibit "P"**.

**Answer:** **Zurich admits that it issued the following Commercial General Liability policies to "Ashgrove Holdings LLC" in which DGI Menard, Inc. was scheduled as an additional named insured:**

**No. GLO 0184640 00 (effective 10/1/15 to 10/1/16);**
**No. GLO 0184640 01 (effective 10/1/16 to 10/1/17);**
**No. GLO 0184640 02 (effective 10/1/17 to 10/1/18);**
**No. GLO 0184640 03 (effective 10/1/18 to 10/1/19);**
**No. GLO 0184640 04 (effective 10/1/19 to 10/1/20);**
**No. GLO 0184640 05 (effective 10/1/20 to 10/1/21);**
**No. GLO 0184640 06 (effective 10/1/21 to 10/1/22); and**
**No. GLO 0184640 07 (effective 10/1/22 to 10/1/23).**

**Zurich further admits that copies of the following Commercial General Liability policies issued to "Ashgrove Holdings LLC" in which DGI Menard, Inc. was scheduled as an additional named insured with premiums redacted are attached to the Second Amended Complaint as Group Exhibit P:**

**No. GLO 0184640 00 (effective 10/1/15 to 10/1/16);**
**No. GLO 0184640 01 (effective 10/1/16 to 10/1/17);**
**No. GLO 0184640 02 (effective 10/1/17 to 10/1/18);**
**No. GLO 0184640 03 (effective 10/1/18 to 10/1/19); and**

No. GLO 0184640 04 (effective 10/1/19 to 10/1/20).

Zurich denies the remaining allegations contained in paragraph 43.

C.     Amerisure's Reservation of Rights Letter to Premier National

44.     On December 4, 2019, Amerisure issued a reservation of rights letter to Premier National which informed Premier National that Amerisure was investigating the claim as to the 980 High Street Building asserted by Duke and requested additional information in regards to the claim, subject to a reservation of rights to deny any coverage. A lawsuit had not been filed by Duke against Premier Design at that time. A copy of the December 4, 2019 reservation of rights letter is attached hereto at **Exhibit "Q"**.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.**

D.     Duke's October 6, 2022 Notice to Premier Group

45.     Via correspondence from Duke to Premier Group dated October 6, 2022, Duke notified Premier Group of alleged defective construction and resulting damages associated with the 980 High Street Building and that Duke had begun remedial work on the building. A copy of the October 6, 2022 notice is attached hereto at **Exhibit "R"**.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.**

E.     Amerisure's Supplemental Reservation of Rights Letter to Premier National

46.     In correspondence dated April 21, 2023 from Amerisure to Premier National, Amerisure acknowledged receipt of Duke's October 6, 2022 notice to Premier Group, and reserved all rights to deny coverage to Premier National in relation to Duke's claim. A copy of the April 21, 2023 reservation of rights letter is attached hereto at **Exhibit "S"**.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.**

F.        **The Underlying Illinois Action**

47.        On May 1, 2023, Duke filed its Complaint against Premier Design. Duke seeks damages for the alleged defective construction by Premier Design of the 980 High Street Building and for the construction of two access bridges for the property. *See* Group Exhibit "A".

**Answer:**        **Zurich admits the first sentence of paragraph 47. The second sentence of paragraph 39 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies the second sentence of paragraph 47 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

48.        Duke alleges that Premier was involved in the design, engineering, and construction of two bridges for access to and from areas on the Property. These bridges include the Eastern access bridge and the Western access bridge (collectively the "Access Bridges"). *See* Group Exhibit "A" at page 6, paragraph 21.

**Answer:**        **Paragraph 48 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 48 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

49.        Duke alleges that Premier purportedly reviewed the design plans for the Access Bridges and oversaw the construction of the Access Bridges to ensure that they would perform as intended and to ensure that they were built in accordance with the plans and specifications. *See* Group Exhibit "A" at page 6, paragraph 23.

**Answer:**        **Paragraph 49 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 49 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

50.        Duke alleges that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed, and thus not sound or fit for

their purposes.  *See* Group Exhibit "A" at page 6, paragraph 27.

**Answer:** **Paragraph 50 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 50 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

51.     Duke further alleges that as a result of these defects each of the Access Bridges has suffered significant damage, including but not limited to: (i) settlement of each bridge; (ii) cracks in the frame of each bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls.  *See* Group Exhibit "A" at pages 6-7, paragraph 28.

**Answer:** **Paragraph 51 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 51 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

52.     Duke alleges that as a result of the alleged defects to the Access Bridges, Duke has been and will continue to be damaged.  *See* Group Exhibit "A" at page 7, paragraph 29.

**Answer:** **Paragraph 52 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 52 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

53.     Duke alleges that Premier worked with Menard Group ("Menard") and GEI Consultants, Inc. ("GEI") to develop a system of rigid inclusions or controlled modulus columns ("CMC") to reinforce the soil beneath what Duke terms the 980 High Street Building Extension, to support the 980 High Street Building at the subject property, and to prevent deleterious settlement of the 980 High Street Building.  *See* Group Exhibit "A" at page 7, paragraph 32.

**Answer:**  **Paragraph 53 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 53 to the extent it**

**inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

54.     Upon information and belief, on February 15, 2017, Bridge Perth Amboy, LLC entered into a lease agreement with Target Corporation ("Target") for Target to lease the 980 High Street Building. *See* Group Exhibit "A" at page 7, paragraph 33.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54.**

55.     Duke alleges that in 2019, Target sent it a letter informing Duke of cracking and potential failure of the exterior wall and foundation of the 980 High Street Building. *See* Group Exhibit "A" at page 7, paragraph 34.

**Answer:  Paragraph 55 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 55 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

56.     As a result of the alleged settlement, the 980 High Street Building sustained extensive damage related to separation and movement between the floor slab and the exterior walls. *See* Group Exhibit "A" at page 8, paragraph 37.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56.**

57.     Duke alleges that the damage to the 980 High Street Building includes, but is not limited to: separating joints; broken pipes; gaps in flooring; doors separating from walls; settling of wall footing; and visible distress on the inside of the building. *See* Group Exhibit "A" at page 8, paragraph 38.

**Answer:   Paragraph 57 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 57 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

58.    Duke further alleges that the damage was caused by "excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of CMC's failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement."  *See* Group Exhibit "A" at page 8, paragraph 39.

**Answer:    Paragraph 58 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 58 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

59.    Duke also alleges that it has taken remedial measures to abate further settlement and damage to the 980 High Street Building and to alleviate disruption to its tenant's ongoing business. *See* Group Exhibit "A" at page 8, paragraph 41.

**Answer:     Paragraph 59 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 59 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

60.    Duke alleges that it has expended substantial amounts of money and sustained substantial damages, and will continue to incur loss and damages as remediation of the building continues, as a result of the settlement at the 980 High Street Building. *See* Group Exhibit "A" at page 9, paragraphs 43 & 44.

**Answer:     Paragraph 60 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 60 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

61.    In its Complaint against Premier Design, Duke alleges Count I for Breach of

Contract for the alleged breach by Premier Design & Build of the Contract, which includes the

following alleged failures by Premier:

  a.   Prepare sufficient plans and specifications for the design, engineering, stabilization, and construction of the Access Bridges and the 980 High Street Building;

  b.   Provide materials sufficient for the proper construction of the Access Bridges and the 980 High Street Building;

  c.   Properly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that the soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;

  d.   Properly design the foundational support for the Access Bridges and the 980 High Street Building; and

  e.   Properly supervise the construction of the Access Bridges and the 980 High Street Building to ensure compliance with plans, specifications, and all applicable codes, laws, regulations, and industry standards.

*See* Group Exhibit "A" at page 10, paragraph 53.

**Answer:   Paragraph 61 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 61 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

  62.   As a result of Premier Design's alleged breach of contract, Duke alleges that the

980 High Street Building and the Access Bridges are defective.  *See* Group Exhibit "A" at page

10, paragraph 55.

**Answer:   Paragraph 62 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 62 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

  63.   Duke alleges that it retained experts and contractors to analyze, design, and repair

22

the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 11, paragraphs 56 & 57.

**Answer: Paragraph 63 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 63 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

64. For the alleged defective construction of the 980 High Street Building and Access Bridges, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Group Exhibit "A", page 11, at the Wherefore clause to Count I.

**Answer: Paragraph 64 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 64 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

65. Duke also alleges Count II for Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that Premier Design breached its duty to exercise reasonable care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 11, paragraphs 60 & 61.

**Answer: Paragraph 65 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 65 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

66. As a result of Premier Design's alleged breach of its duty to exercise reasonable care, Duke alleges that it has been damaged. *See* Group Exhibit "A" at page 12, paragraph 62.

**Answer: Paragraph 66 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is**

a lengthy written document. Zurich denies paragraph 66 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.

67.     For the alleged negligence of Premier Design, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Group Exhibit "A", page 12, at the Wherefore clause to Count II.

**Answer:     Paragraph 67 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 67 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

68.     Duke also alleges Count III for Professional Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that pursuant to the Contract, Premier Design agreed to provide design and engineering services to Duke. *See* Group Exhibit "A" at page 12, paragraph 65.

**Answer:     Paragraph 68 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 68 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

69.     Duke alleges that Premier Design breached its duty to exercise reasonable professional care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 12, paragraph 66.

**Answer:     Paragraph 69 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 69 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

70.     Duke also alleges that Premier owed a duty to exercise reasonable professional care

in hiring and supervising the contractors and subcontractors working on the design, engineering, and construction of the 980 High Street Building and Access Bridges to ensure that all work was done in accordance with approved plans, applicable specifications, reasonable commercial standards in Premier's respective professional industry for the construction of access bridges and warehouses, and all applicable state and local building codes, regulations, and ordinances. *See* Group Exhibit "A" at pages 12-13, paragraph 67.

**Answer: Paragraph 70 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 70 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

71. Duke alleges that Premier Design breached its duty of reasonable professional care which damaged Duke. *See* Group Exhibit "A" at page 13, paragraphs 68 & 69.

**Answer: Paragraph 71 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 71 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

72. For Premier Design's alleged breaches of the duty of reasonable professional care, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Group Exhibit "A", at page 13, at the Wherefore clause to Count III.

**Answer: Paragraph 72 seeks to paraphrase the contents of the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 72 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying Illinois Action included in the referenced Group Exhibit A.**

G. **The Underlying New Jersey Action**

73. Duke seeks damages against Defendants Viridian Partners, LLC, NASDI LLC,

Moretrench American Corporation, Shippee Engineering, Inc., Think Pavers, Menlo Engineering Associates, Inc., SESI Consulting Engineers, Terra Contracting Services, LLC, FRM Construction Services, Jersey Essay Labs and various unknown architects, professional corporations and contractors arising out of the Defendants' alleged failure to properly design, engineer, and construct a series of Access Bridges that included concrete forms, foundational supports, retaining walls and roadway approaches at the Project. *See* Group Exhibit "A" at page 14.

**Answer: As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 73 is required. To the extent that an answer is required, paragraph 73 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 73 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

74.     Duke alleges that it is the current owner of certain parcels constituting approximately 103 acres of real property located on the Property. (Ex. "S" at 19). Duke alleges that, due to the Defendants' failures, the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which impacts Duke's use of the Property. Duke seeks damages for the costs associated with mitigating and repairing the damage allegedly caused by Defendants' actions. *See* Group Exhibit "A" at page 15, paragraph 3.

**Answer: As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 74 is required. To the extent that an answer is required, paragraph 74 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 74 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

75.     The Amended Complaint alleges the Property was owned by Defendant Viridian, which undertook extensive remediation to initiate redevelopment efforts at the site culminating with a plan for the construction of a warehouse campus at the Property. *See* Group Exhibit "A" at

page 18, paragraph 21.

**Answer:** **As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 75 is required. To the extent that an answer is required, paragraph 75 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 75 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

76.  Viridian allegedly planned the construction of three Access Bridges to enable access to and from areas on the Project. The Access Bridges included: (i) the Northern access bridge leading to 980 High Street, Perth Amboy, New Jersey; (ii) the Eastern access bridge leading to 1000 High Street, Perth Amboy, New Jersey; and (iii) the Western access bridge leading to 1000 High Street, Perth Amboy, New Jersey. *See* Group Exhibit "A" at page 18, paragraph 23.

**Answer:** **As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 76 is required. To the extent that an answer is required, paragraph 76 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 76 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

77.  The Access Bridges were allegedly constructed prior to the construction of the warehouses on the Project. Bridge Perth allegedly purchased the Property from Viridian in or about 2015, and Duke purchased the Property from Bridge Perth in or about November 2017. *See* Group Exhibit "A" at page 18, paragraphs 25 & 26.

**Answer:** **As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 77 is required. To the extent that an answer is required, paragraph 77 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 77 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

78.    Duke alleges that the Defendants purported to review the design plans for the Access Bridges as well as oversee the construction of the Access Bridges to ensure they would perform as intended and to ensure they were built in accordance with the plans and specifications. The Northern Access Bridge is allegedly a concrete arch structure with asphalt roadway above. The Northern Access Bridge allegedly spans utility pipelines running beneath it and provides vehicle access to the warehouse located at 980 High Street, which is currently occupied by Target and used as a Distribution Center. The Eastern Access Bridge and the Western Access Bridge are allegedly concrete arch structures with asphalt roadway above. The Eastern Access Bridge and the Western Access Bridge allegedly span a drainage creek and provided vehicle access to the warehouse located at 1000 High Street. Duke alleges the Defendants entered into a contract with certain unknown design and construction contractors to work on the Access Bridges. *See* Group Exhibit "A" at page 20, paragraphs 39 & 40.

**Answer:  As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 78 is required. To the extent that an answer is required, paragraph 78 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 78 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

79.    Duke alleges the property and the soil beneath it are comprised of numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. Duke further alleges that heavy truck and tractor-trailer traffic over the Access Bridges at the Project was anticipated upon completion and occupancy of the warehouses, and that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly constructed, and thus not sound or fit for their purposes. *See* Group Exhibit "A" at page 19, paragraphs 42 – 44.

**Answer: As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 79 is required. To the extent that an answer is required, paragraph 79 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 79 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

80.     These defects have allegedly led the Northern Access Bridge to suffer significant damage, including but not limited to: (i) settlement of the bridge; (ii) fractures and depressions in the asphalt roadway; (iii) cracks in the frame of the bridge; and (iv) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls, and therefore, the Northern Access Bridge allegedly remains partially closed. The Amended Complaint alleges the Eastern Access Bridge and the Western Access Bridge have also suffered damage, including but not limited to: (i) settlement of both bridges; (ii) cracks in the frame of both of the bridges; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. *See* Group Exhibit "A" at pages 19-20, paragraphs 45 – 47.

**Answer: As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 80 is required. To the extent that an answer is required, paragraph 80 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 80 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

81.     Count I alleges a claim for Breach of Contract due to the insufficient design and construction of the Access Bridges. *See* Group Exhibit "A" at page 21, paragraph 51.

**Answer: As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 81 is required. To the extent that an answer is required, paragraph 81 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document. Zurich denies paragraph 81 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

82.     Count II alleges a claim for Negligence against certain Defendants for breach of their duty to exercise reasonable care in designing, engineering, constructing, and/or supervising the construction of the Access Bridges in accordance with all approved plans, applicable specifications, reasonable commercial standards in the industry for the construction of access bridges, and all applicable state and local building codes, regulations, and ordinances.  *See Group Exhibit "A", page 22, paragraphs 57 – 59.*

**Answer:     As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 82 is required. To the extent that an answer is required, paragraph 82 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 82 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

83.     Count III alleges a claim for Professional Negligence against certain Defendants for breaches of professional duties.  *See* Group Exhibit "A" at page 22.

**Answer:     As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 83 is required. To the extent that an answer is required, paragraph 83 seeks to paraphrase the contents of the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A, which is a lengthy written document.  Zurich denies paragraph 83 to the extent it inaccurately or incompletely summarizes the Complaint in the Underlying New Jersey Action included in the referenced Group Exhibit A.**

### H.     Third-Party Complaint Against Premier Group in the Underlying New Jersey Action

84.     On October 30, 2023, Solis Engineering Services, Inc., d/b/a SESI Consulting Engineers ("SESI") filed a Third-Party Complaint against Premier Group in the New Jersey Action.  SESI alleges that Duke filed the Amended Complaint against various entities, including SESI, alleging defects in the three Access Bridges located at the Project.  A true and correct copy of the Third-Party Complaint in the New Jersey Action is attached hereto as **Exhibit "T"**.

**Answer:  As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 84 is required. To the extent that an answer is required, paragraph 84 seeks to paraphrase the contents of the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T, which is a lengthy written document.  Zurich denies paragraph 84 to the extent it inaccurately or incompletely summarizes the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T.**

85.     SESI alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Project which are alleged to be experiencing construction defects. Count I seeks contribution from Premier Group and the other Third-Party Defendants.  Count II seeks indemnification from Premier Group and the other Third-Party Defendants.  *See* Exhibit "T" at pages 16 – 17.

**Answer:  As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 85 is required. To the extent that an answer is required, paragraph 85 seeks to paraphrase the contents of the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T, which is a lengthy written document.  Zurich denies paragraph 85 to the extent it inaccurately or incompletely summarizes the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T.**

86.     SESI also alleges that Premier Group was a contractor with respect to certain work for the Eastern Access and Western Access Bridges identified in Duke's Amended Complaint. *See* Exhibit "T" at page 16, paragraph 6.

**Answer:  As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 86 is required. To the extent that an answer is required, paragraph 86 seeks to paraphrase the contents of the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T, which is a lengthy written document.  Zurich denies paragraph 86 to the extent it inaccurately or incompletely summarizes the Third-Party Complaint in the Underlying New Jersey Action included in the referenced Exhibit T.**

**I.      Subcontracts**

87.     Premier Group entered into subcontracts for work at the Project with the following:

a. <u>DGI Menard, Inc.</u>, dated October 28, 2015 (attached hereto at **Exhibit "U"**.)

The subcontract requires DGI-Menard to, in part:

Design, furnish and install a complete CMC [Controlled Modulus Columns] system for 300,000 SF over select areas of Building C.

(Ex. "U", p. 8.)  The subcontract requires DGI-Menard to provide Premier

Design with additional insured coverage.  The subcontract states in part:

The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

(Ex. "U", p. 2 at paragraph 1.)  Exhibit "A" of the subcontract states in

part:

It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:

1.) Premier Design + Build Group, LLC

2.) Premier Design + Build National, LLC

\*       \*       \*

The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

\*       \*       \*

*See* Exhibit "U" at page 7.

b. <u>GMAC Construction, LLC</u>; dated December 8, 2015 (attached hereto at

**Exhibit "V"**.)  The subcontract requires GMAC Construction to provide "work

and material associated with trench foundations including excavation" for

footings at the Project, and to also provide interior flatwork.  (Ex. "W" at pp.

8-9.)  The subcontract requires GMAC Construction to provide Premier Design

with additional insured coverage.  The subcontract states in part:

> The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:
>
> a. Form Insurance Certificate (Exhibit "A"). . . ."

*See* Exhibit "V" at page 2.  Exhibit "A" of the subcontract states in part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
>
> 1.) Premier Design + Build Group, LLC
>
> 2.) Premier Design + Build National, LLC
>
> 3.) Bridge Perth Amboy, LLC
>
> 4.) Bridge Development Partners, LLC
>
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.
>
> *        *        *

*See* Exhibit "V" at page 7.

    c.  <u>Pillari Bros. Construction Corp.</u>; dated October 8, 2015 (attached hereto at and November 1, 2017 (attached hereto at **Group Exhibit "W"**).  The October 8, 2015 subcontract requires that Pillari Bros. provide all labor, material and equipment to complete: Earthwork; Retaining Wall; Culvert; Paving; and Site Utilities at the Project.  (Group Ex. "W" at pp. 8-10.)  Another requirement in this subcontract is to "h) Provide for all placement and compaction of all of all required site fill."  *Id.* at p. 9.  The November 1, 2017 subcontract requires Pillari Bros. to perform: "Additional work performed and as authorized by PDBG."  (Group Ex. "W" at p. 41.)  The subcontracts require Pillari Bros. to provide Premier Design with additional insured coverage.  The subcontracts

state in part:

> The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

*See* Group Exhibit "W" at pages 2 & 35 at paragraph 1. Exhibit "A" of the subcontracts states in

part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
>
>    1.) Premier Design + Build Group, LLC
>
>    2.) Premier Design + Build National, LLC
>
>    3.) Bridge Perth Amboy, LLC
>
>    4.) Bridge Development Partners, LLC
>
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.
>
>    *        *        *

*See* Group Exhibit "W" at pages 7 & 40.

> d. <u>SESI Consulting Engineers</u>; dated February 23, 2016 (attached hereto at **Exhibit "X"**.) The subcontract requires that SESI Consulting Engineers provide site inspection services during construction to ensure that there are proper erosion and sediment controls in effective operating condition at all times. *See* Exhibit "X" at page 2. The subcontract requires SESI Consulting Engineers to provide Premier Design with additional insured coverage. The subcontract states in part:

> The ENGINEER [SESI Consulting Engineers] agrees to obtain, maintain and pay for . . . Comprehensive Liability Insurance . . . protecting the ENGINEER against claims for bodily injury or death or for damage to property occurring

34

upon, in or about the project, with limits in amounts at least equal to those specified below and as outlined in attached 'Exhibit A':

*See* Exhibit "X" at page 8. Exhibit "A" to the subcontract states, in part:

It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:

1.) Premier Design + Build Group, LLC

2.) Premier Design + Build National, LLC . . . .

\*    \*    \*

The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

\*    \*    \*

*See* Exhibit "X" at page 60.

e. <u>Terra Systems, Inc.</u>; dated February 18, 2016 (attached hereto at **Exhibit "Y"**.)

The subcontract requires that Terra Systems provide all labor, material and equipment (inclusive of the weight to be dropped) to complete Deep Dynamic Compaction. *See* Exhibit "Y" at page 8. The subcontract requires Terra Systems to provide Premier Design with additional insured coverage. The subcontract states in part:

The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

*See* Exhibit "Y", page 2 at paragraph 1. Exhibit "A" of the subcontract states in part:

It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:

1.) Premier Design + Build Group, LLC

35

2.) Premier Design + Build National, LLC . . . .

      *    *    *

The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

      *    *    *

*See* Exhibit "Y" at page 7.

**Answer:** **Zurich does not know if complete and accurate copies of the referenced alleged subcontracts have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87. Further answering Exhibits "U", "V", "W", and "X" attached to Amerisure's pleading are lengthy written documents. Zurich denies paragraph 87 to the extent it inaccurately or incompletely summarizes and/or quotes Exhibits "U", "V", "W", and "X" attached to Amerisure's pleading. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 87.**

    **J.**    **Subcontractor Insurers' Policies**

88.    The CGL Coverage Part of the Subcontractor Insurers' policies state in relevant part or similar thereto:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        **a**.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. But:

            *    *    *

        **b**.    This insurance applies to 'bodily injury' and 'property damage' only if:

            *    *    *

36

(2)    The 'bodily injury' or 'property damage' occurs during the policy period; . . .

*        *        *

*See, e.g.*, Group Exhibit "D" at page 8.

**Answer:    Paragraph 88 is unreasonably vague and is denied on that basis. Answering further, if paragraph 88 is attempting to quote each and every "Subcontractor Insurers' policy", Zurich does not know if complete and accurate copies of the "Subcontractor Insurers' policies" have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88.**

89.    The Subcontractor Insurers' policies contain the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement which states the following in pertinent part, or similar thereto:

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) | Location(s)    Of    Covered Operations |
|---|---|
| Any owners, lessee or contractors whom you have agreed to include as an additional insured under a written contract provided such was executed prior to an occurrence | All locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on you behalf;

in the performance of your ongoing operations for

37

the additional insured(s) at the location(s) designated above.

*    *    *

*See, e.g.*, Group Exhibit "D" at page 32.

**Answer:**    **Paragraph 89 is unreasonably vague and is denied on that basis. Answering further, if paragraph 89 is attempting to quote each and every "Subcontractor Insurers' policy", Zurich does not know if complete and accurate copies of the "Subcontractor Insurers' policies" have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89.**

90.    The Subcontractor Insurers' policies contain the Additional Insured – Owners, Lessees or Contractors – Completed Operations endorsement which states the following in pertinent part, or similar thereto:

<strong>SCHEDULE</strong>

| Name of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Any owners, lessees or contractors whom you have agreed to include as an additional insured under a written contract provided such was executed prior to an occurrence | All locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.**  The insurance afforded to such additional insured only applies to the extent permitted

38

by law; and

> **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

*See, e.g.*, Group Exhibit "D" at page 36.

**Answer:** **Paragraph 90 is unreasonably vague and is denied on that basis. Answering further, if paragraph 90 is attempting to quote each and every "Subcontractor Insurers' policy", Zurich does not know if complete and accurate copies of the "Subcontractor Insurers' policies" have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90.**

91.     The Subcontractor Insurers' policies contain the Additional Insured – Where Required Under Contract Or Agreement (Primary and Non-Contributory Where Required Under Contract) endorsement or similar thereto, which states the following in pertinent part, or similar thereto:

> **Section II – Who Is An Insured** is amended to include any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy. However, the insurance provided will not exceed the lesser of:
>
> > a.   The coverage and/or limits of this policy; or
> >
> > b.   The coverage and/or limits required by said contract or agreement.
>
> Coverage afforded to these additional insured parties will be primary to, and non-contributory with, any other insurance available to that person or organization where required of you by written contract or agreement.

*See, e.g.*, Group Exhibit "D" at page 55.

**Answer:** **Paragraph 91 is unreasonably vague and is denied on that basis. Answering further, if paragraph 91 is attempting to quote each and every "Subcontractor Insurers' policy", Zurich does not know if complete and accurate copies of the "Subcontractor Insurers' policies" have been attached to Amerisure's pleading**

**and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91.**

**K.     The Amerisure Policies**

92.     Amerisure issued commercial general liability ("CGL") policies and umbrella liability policies to each Premier Design entity, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively "the Amerisure Policies").

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.**

93.     The Amerisure CGL Policies have a $1 Million Each Occurrence Policy Limit, a $2 Million General Aggregate Policy Limit, and a $2 Million Products-Completed Operations Aggregate Policy Limit.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93.**

94.     The Amerisure Umbrella Liability Policies issued to Premier Design & Group, LLC have a $10 Million Each Occurrence Policy Limit, a $10 Million General Aggregate Policy Limit, and a $10 Million Products-Completed Operations Aggregate Policy Limit.

**Answer:     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94.**

**1.     Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build Group, LLC**

95.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build Group, LLC:

- Policy no. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;

40

- Policy no. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021; and

- Policy no. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022.

Copies of these policies are attached hereto as **Group Exhibit "Z"**.

**Answer:**     Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95.

      **2.  Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build National, LLC**

96.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build National, LLC:

- Policy no. CPP 20978480102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CPP 20978480302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CPP 20978480402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CPP 20978480502, with a policy period of July 1, 2019 to July 1, 2020; and

- Policy no. CPP 20978480802, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "AA"**.

**Answer:**     **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96.**

      **3.  Amerisure Insurance Company Umbrella Policies Issued to Premier Design & Build Group, LLC**

97.     The Umbrella Liability Policies issued to Premier Design & Build Group, LLC by Amerisure Insurance Company include:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "BB"**.

**Answer:**     **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97.**

### 4. Amerisure Mutual Insurance Company Umbrella Policy Issued to Premier Design & Build National, LLC

98.     The Umbrella Liability Policies issued to Premier Design & Build National, LLC by Amerisure Mutual Insurance Company is the following:

- Policy no. CU 20978490002, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20978490102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20978490202, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20978490402, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20978490502, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20978490602, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20978490702, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "CC"**.

**Answer:**     **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98.**

99.     The CGL Coverage Part of the CGL Policies states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

2. **Insuring Agreement**

    **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. But:

        \*     \*     \*

    **b**. This insurance applies to 'bodily injury' and 'property damage' only if:

        \*     \*     \*

    **(2)** The 'bodily injury' or 'property damage' occurs during the policy period; . . .

        \*     \*     \*

*See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.*, Exhibit "Z-1" at page 154.

**Answer:** **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99.**

    100. The CGL portion of the Amerisure CGL Policies include a Definitions section, which in part includes the following definitions:

    **8.** 'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because:

    **a.** It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement\'

    if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement.

        \*     \*     \*

    **13.** 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*

17.    'Property damage' means:

    **b.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\*       \*       \*

21.    'Your product'

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; or

44

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    'Your work':

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

        **(2)**    The providing of or failure to provide warnings or instructions.

*See G*roup Exhibit "Z" and Group Exhibit "AA", *e.g.* Exhibit "Z-1" at pages 166, 168-69.

**Answer:**    **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100.**

101.    The Amerisure Policies include a Condition titled "Transfer Of Rights Of Recovery

Against Others To Us" which states as follows:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them.

*See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.* Exhibit "Z-1" at page 166, and Group Exhibit

"BB" and Group Exhibit "CC", *e.g.*, Exhibit "BB-1" at page 97.

**Answer:**    **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101.**

102.    The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        **a.**    We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply….

                        *        *        *

        **c.**    This insurance applies to 'bodily injury' and 'property damage' only if:

                        *        *        *

(2)     The 'bodily injury' or 'property damage'
        occurs during the policy period…

\*        \*        \*

*See* Group Exhibit "BB" and Group Exhibit "CC", *e.g.* Exhibit "BB-1" at page 19.

**Answer:**     **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102.**

103.     The above-referenced Definitions in the CGL Policies and set forth in Paragraph

100 are included in the Umbrella Liability Policies either verbatim or in substantially similar form.

The Umbrella Liability Policies also include the following Definitions:

19.     'Retained Limit' means the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention', whichever applies.

20.     'Self-insured retention' means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to 'occurrences' or offenses not covered by the 'underlying insurance'. The 'self-insured retention' does not apply to 'occurrences' or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.

\*        \*        \*

23.     'Ultimate net loss' means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent.

24.     'Underlying insurance' means any policies of insurance listed in the Declarations under Schedule of 'underlying insurance'.

25.     'Underlying insurer' means any insurer who provides any policy of insurance listed in the Schedule of 'underlying insurance'.

*See* Group Exhibit "BB" and Group Exhibit "CC", *e.g.*, Exhibit "BB-1" at pages 35 & 36.

**Answer:**     **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks**

47

**knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 103.**

104.     The Amerisure Policies include the Damage To Impaired Property Or Property Not

Physically Injured exclusion, which excludes coverage to:

'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

*See* Group Exhibits "Z" through "CC", *e.g.*, Exhibit "Z-1" at page 158.

**Answer:**          **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104.**

105.     The Amerisure Policies include the Exclusion – Contractors – Professional

Liability endorsement[4], which states:

The following exclusion is added to Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**1.**     This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

---

[4] The Amerisure Umbrella Liability Policies include the Professional Services exclusion which is similar to the Professional Liability exclusion.  *See, e.g.*, Exhibit "BB-1" at page 23.

     **a.**     Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

     **b.**     Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

     This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.**     Subject to Paragraph **3.** below, professional services include:

     **a.**     Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

     **b.**     Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.**     Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*See* Group Exhibits "Z" through "CC", *e.g.*, Exhibit "Z-1" at page 180.

**Answer:**     **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105.**

106.     The Amerisure Policies also include the Exclusion – Construction Management

Errors and Omissions endorsement, which states:

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability....**

This insurance does not apply to . . . "property damage" . . . arising out of:

1.      The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2.      Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved that which is described in Paragraph **1. or 2**.

This exclusion does not apply to 'bodily injury' or 'property damage' due to construction or demolition work done by you, your 'employees' or your subcontractors.

*See* Group Exhibits "Z" through "CC", *e.g.*, Exhibit "Z-1" at page 179.

**Answer:**      **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106.**

**L.      Amerisure's Coverage Position Letters to Premier Design in Connection with the Underlying Illinois Action**

107.      Amerisure initially denied coverage to Premier Design, but after reconsideration agreed to defend Premier Design under a reservation of rights including to assertion of an excess position as to any coverage owed to Premier Design.

**Answer:**      **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107.**

108.      A determination of whether Amerisure owes Premier Design a duty to indemnify is premature and unripe until resolution of the Underlying Action, which is currently ongoing. Amerisure reserves a determination of the duty to indemnify until the Underlying Action is resolved.

**Answer:** **Zurich admits the first sentence of paragraph 108. Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 108.**

109. Amerisure has paid more than $75,000 to date for the defense of Premier Design in the Underlying Action, which Amerisure seeks to recover.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109.**

**M.** **Amerisure's Tenders Regarding the Underlying Illinois Action to Subcontractors and Their Insurers and Responses to the Tenders**

110. On January 16, 2024, Amerisure sent tender letters to the following subcontractors, demanding that they defend and indemnify Premier Design pursuant to their subcontracts with Premier Design and requesting that they forward copies of the letters to their insurers:

    a.    DGI-Menard, Inc.

    b.    GMAC Construction, LLC

    c.    Pillari Bros. Construction Corp.

    d.    Terra Systems, Inc.

*See* the four tender letters referenced above at **Group Exhibit "DD"**.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110.**

111. On February 1, 2024, Amerisure sent a tender letter to Premier Design subcontractor SESI Consulting Engineers, demanding that it defend and indemnify Premier Design pursuant to its subcontract with Premier Design and requesting that it forward a copy of the letter to its insurer(s). CNA, which issued policies to SESI Consulting Engineers as named insured, responded with correspondence dated February 26, 2024, denying any coverage. A copy of the February 1, 2024 tender and February 26, 2024 response are attached hereto at **Group Exhibit "EE"**.

51

**Answer:**    **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111.**

112.    On March 7, 2024, Amerisure sent the following tenders, which were follow-ups to Amerisure's January 16, 2024 tenders and to the prior responses to Premier Design's tenders from insurers that agreed to defend Premier Design as indicated below:

 a. To Harleysville, which insured GMAC Construction;

 b. To Selective, which insured GMAC Construction;

 c. To Gallagher Bassett Services, Inc. as third party administrator for Old Republic, which insured Pillari Bros. Construction Corp.;

 d. To Allied World, which insured Terra Systems;

 e. To counsel for American Family Home, which insured Pillari Bros. Construction Corp. and indicated it will provide Premier Design with a defense, requesting that American Family Home confirm that it will provide Premier Design with primary coverage;

 f. To Vela Insurance Services as third party administrator for Gemini, which insured Terra Systems and indicated it will provide Premier Design with a defense, requesting that Gemini confirm that it will provide Premier Design with primary coverage; and

 g. To Zurich, which insured DGI-Menard and indicated it will provide Premier Design with a defense, requesting that Zurich confirm that it will provide Premier Design with primary coverage.

Copies of these letters are attached hereto at **Group Exhibit "FF"**.

**Answer:      Paragraph 112 is unreasonably vague and is denied on that basis.**

113.      Amerisure received various responses to its tenders to the Premier Design subcontractors and their insurers, including:

a.      Dated April 19, 2024 from counsel for Harleysville, which insured GMAC Construction, denying coverage for Premier Design; and

b.      Dated March 21, 2024 from Gallagher Bassett Services, Inc. as third party administrator for Old Republic, which insured Pillari Bros., denying coverage for Premier Design.

c.      Dated April 15, 2024 from Gallagher Bassett Services, Inc. as third party administrator for American Family Home, which insured Pillari Bros., stating that American Family agrees to participate in the defense of Premier Design Group in the New Jersey action under a reservation of rights.

Copies of these letters are attached hereto at **Group Exhibit "GG"**.

**Answer:      Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113.**

**N.      Subcontractor Insurer Responses to Tenders Regarding the Underlying Illinois Action from Premier Design**

114.      Premier Design issued tenders for its defense and indemnity to several of its subcontractors with the following responses:

a.      Gemini, dated September 15, 2023, which issued a policy to Terra Systems, Inc. as named insured, in which Gemini agreed to provide a defense to Premier Design in the Duke Lawsuit.  A copy of the September 15, 2023 correspondence is attached hereto at **Exhibit "HH"**.

      b.      Selective, dated February 21, 2023, which issued a policy to GMAC Construction, LLC as named insured, in which Selective requested additional information to respond to the tender.  A copy of the February 21, 2023 correspondence is attached hereto at **Exhibit "II"**.

      c.      Zurich, dated September 26, 2023, which issued policies to DGI Menard, Inc. as named insured, in which Zurich agreed to provide a defense to Premier Design in the Duke Lawsuit.  A copy of the September 26, 2023 correspondence is attached hereto at **Exhibit "JJ"**.

      d.      Harleysville, dated March 28, 2023, which issued policies to GMAC Construction, LLC as named insured, in which Harleysville denied a duty to defend or indemnify Premier Design as an additional insured.  A copy of the March 28, 2023 correspondence is attached hereto at **Exhibit "KK"**.

      e.      Old Republic, dated September 1, 2023 and September 20, 2023, which issued a policy to Pillari Bros. Construction Corp. as named insured, in which Old Republic denied any additional insured coverage to Premier Design.  A copy of the September 1, 2023 and September 20, 2023 correspondence is attached hereto at **Group Exhibit "LL"**.

      f.      Allied World, dated September 25, 2023, which issued a policy to Terra Systems, Inc. as named insured, in which Allied World denied a duty to defend or indemnify Premier Design as an additional insured.  A copy of the September 25, 2023 correspondence is attached hereto at **Exhibit "MM"**.

  **Answer:**      **As to subpart c. of paragraph 114, Zurich admits that a copy of a letter that Zurich issued to Premier's defense counsel in the Underlying Action is**

attached as Exhibit "JJ" to Amerisure's Second Amended Complaint. Answering further, Zurich asserts the letter was issued as the product of Zurich's discretion and not as the product of any legal obligation. Answering further, Zurich denies that paragraph 114.c accurately and completely summarizes the contents of the referenced letter.

Answering further, as to any allegations in paragraph 114 besides those contained in subpart c., Zurich lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

**O.    Amerisure's Tenders Regarding the Underlying New Jersey Action to Subcontractors and Their Insurers and Responses to the Tenders**

115.    On May 13, 2024, Amerisure sent tender letters to the following subcontractors and their insurers, demanding that they defend and indemnify Premier Design in the Underlying New Jersey Action and reimburse Amerisure for the amounts incurred in the defense of Premier Design in the Underlying New Jersey Action, pursuant to the subcontractors' subcontracts with Premier Design and their insurers' policies:

a.    GMAC Construction, LLC; Selective; and Harleysville

b.    Pillari Bros. Construction Corp.; AFHIC; and Old Republic

*See* the two tender letters referenced above at **Group Exhibit "NN"**.

**Answer:    As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 115 is required. To the extent that an answer is required, Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115.**

116.    On April 15, 2024, Gallagher Bassett, on behalf of AFHIC responded to Premier Group's tender of the Underlying New Jersey Action, stating that AFHIC agrees to defend Premier Group in that action under AFHIC policy number 88A5GL00000467 issued to Pillari Bros. Construction Corp.  A copy of this correspondence is attached hereto at **Exhibit "OO"**.  AFHIC has not taken over the defense of Premier Design in the Underlying New Jersey Action to date.

**Answer:        As the Plaintiffs do not seek any relief against Zurich regarding the Underlying New Jersey Action, no answer to paragraph 116 is required. To**

the extent that an answer is required, Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 116.

## COUNT I
## THE SUBCONTRACTOR INSURERS OWE PREMIER DESIGN A PRIMARY AND NON-CONTRIBUTORY DEFENSE IN THE UNDERLYING ILLINOIS ACTION

117.    Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

**Answer:** **Zurich re-states and incorporates herein its answers to Paragraphs 1 through 117.**

118.    Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage.  The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:  a. Form Insurance Certificate (Exhibit "A"). . . ."  Exhibit "A" states in part:  "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

      a.      DGI-Menard, Inc.

      b.      GMAC Construction, LLC

      c.      Pillari Bros. Construction Corp.

      d.      SESI Consulting Engineers

         e.      Terra Systems, Inc.

*See* the Subcontracts attached hereto at Exhibit "U", Exhibit "V", Exhibit "W", Exhibit "X", and Exhibit "Y".

**Answer:**     **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118.**

    119.    The Additional Insured endorsements of the Subcontractor Insurers' policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

**Answer:**     **To the extent paragraph 119 is directed against Zurich, it is denied. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations contained in paragraph 119 to the extent they are directed against "Subcontractor Insurers" besides Zurich.**

    120.    The Amerisure Policies include the Other Insurance Condition which states in part:

    **(1)**  This insurance is excess over:

         \*       \*       \*

    **(b)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

 *See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.*, Exhibit "Z-1" at page 165.

**Answer:**     **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120.**

    121.    By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the Subcontractor Insurers' policies, and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Illinois Action.

**Answer:**     To the extent paragraph 121 is directed against Zurich, it is denied.  Zurich lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations contained in paragraph 121 to the extent they are directed against "Subcontractor Insurers" besides Zurich.

WHEREFORE, Defendant, Zurich American Insurance Company, respectfully requests that this Court enter judgment in favor of Zurich and against Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company, as to Count I of the Second Amended Complaint, denying, as to Zurich, all relief sought therein.

## COUNT II

## THE SUBCONTRACTOR INSURERS OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE HAS INCURRED IN THE DEFENSE OF PREMIER DESIGN IN THE UNDERLYING ILLINOIS ACTION

122.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

**Answer:**     Zurich re-states and incorporates herein its answers to paragraphs 1 through 117.

123.     Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage.  The Subcontracts state, in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:  a. Form Insurance Certificate (Exhibit "A"). . . ."  Exhibit "A" states in part:  "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier

58

Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

      a.      DGI-Menard, Inc.

      b.      GMAC Construction, LLC

      c.      Pillari Bros. Construction Corp.

      d.      SESI Consulting Engineers

      e.      Terra Systems, Inc.

*See* the Subcontracts attached hereto at Exhibit "U", Exhibit "V", Exhibit "W", Exhibit "X", and Exhibit "Y".

**Answer:**      **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123.**

124.    The Additional Insured endorsements of the Subcontractor Insurers' policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

**Answer:**      **To the extent paragraph 124 is directed against Zurich, it is denied. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations contained in paragraph 124 to the extent they are directed against "Subcontractor Insurers" besides Zurich.**

125.    The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)**  This insurance is excess over:

      *      *      *

      **(b)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.* Exhibit "A" at page 165.

**Answer:** **Zurich does not know if complete and accurate copies of the referenced policies have been attached to Amerisure's pleading and therefore lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125.**

126. By operation of the Subcontracts, the Additional Insured and Primary and Non Contributory endorsements of the Subcontractor Insurers' policies, and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Illinois Action.

**Answer:** **To the extent paragraph 126 is directed against Zurich, it is denied. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations contained in paragraph 126 to the extent they are directed against "Subcontractor Insurers" besides Zurich.**

127. Amerisure has provided a defense to Premier Design in the Underlying Illinois Action that should have been provided by the Subcontractor Insurers.

**Answer:** **Zurich lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 127.**

128. Amerisure is entitled, as subrogee of Premier Design, to reimbursement of the amounts it has incurred in the defense of Premier Design in the Underlying Illinois Action from the Subcontractor Insurers which each owes a primary duty to defend Premier Design in the Underlying Action.

**Answer:** **To the extent paragraph 128 is directed against Zurich, it is denied. Zurich lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations contained in paragraph 128 to the extent they are directed against "Subcontractor Insurers" besides Zurich.**

WHEREFORE, Defendant, Zurich American Insurance Company, respectfully requests that this Court enter judgment in favor of Zurich and against Plaintiffs, Amerisure Insurance

Company and Amerisure Mutual Insurance Company, as to Count II of the Second Amended Complaint, denying, as to Zurich, all relief sought therein.

## COUNT III

### AFHIC, CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, HARLEYSVILLE, OLD REPUBLIC, SELECTIVE, AND SELECTIVE FIRE OWE PREMIER DESIGN A PRIMARY AND NON-CONTRIBUTORY DEFENSE IN THE UNDERLYING NEW JERSEY ACTION

**As Zurich is not named as a Defendant and no relief is sought against Zurich in Count III of the Second Amended Complaint, an answer to Paragraphs 129. – 133. of the Second Amended Complaint is not required on behalf of Zurich. If any party contends that any allegations in Count III are directed against Zurich, such allegations are denied.**

129.    Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

130.    Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage.  The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:  a. Form Insurance Certificate (Exhibit "A"). . . ."  Exhibit "A" states in part:  "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

       a.      GMAC Construction, LLC

       b.      Pillari Bros. Construction Corp.

        c.     SESI Consulting Engineers, Inc.

*See* the Subcontracts attached hereto at Exhibits "V" at page 7, "W" at page 7, and "X" at page 8.

131.    The Additional Insured endorsements of the AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire policies provide additional insured coverage to Premier Design when required in a written contract, (*see, e.g.,* Exhibit "E", at page 58; Exhibit "F-1" at page 163; Exhibit "G-1" at page 164; Exhibit "J-1" at page 173; Exhibit "K-1" at page 23; Exhibit "L-1" at page 31; Exhibit "M" at page 72; Exhibit "N" at page 197; and Exhibit "O-1" at page 118), and the coverage is on a primary and noncontributory basis (*see, e.g.*, Exhibit "E" at page 56; Exhibit "F-1" at page 163; Exhibit "G-1" at page 164; Exhibt "J-1" at page 38; Exhibit "K-1" at page 64; Exhibit "L-1" at page 78; Exhibit "M" at page 63; Exhibit "N" at page 223; Exhibit "O-1" at page 119).

132.    The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)**  This insurance is excess over:

       \*      \*      \*

**(b)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.*, Exhibit "Z-1" at page 165.

133.    By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the policies of AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire, and the Other Insurance Condition of the Amerisure Policies, AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective

Fire owe Premier Design a primary and non-contributory defense in the Underlying New Jersey Action.

WHEREFORE, as Defendant, Zurich American Insurance Company, is not named as a Defendant and no relief is sought against Zurich in Count III of the Second Amended Complaint, Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company, are not entitled to any relief against Zurich sought by Plaintiffs in Count III of the Second Amended Complaint or otherwise regarding the Underlying New Jersey Action.

## COUNT IV

### AFHIC, CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, HARLEYSVILLE, OLD REPUBLIC, SELECTIVE, AND SELECTIVE FIRE OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE HAS INCURRED IN THE DEFENSE OF PREMIER DESIGN IN THE UNDERLYING NEW JERSEY ACTION

**As Zurich is not named as a Defendant and no relief is sought against Zurich in Count IV of the Second Amended Complaint, an answer to Paragraphs 134. – 140. of the Second Amended Complaint is not required on behalf of Zurich. If any party contends that any allegations in Count III are directed against Zurich, such allegations are denied.**

134. Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

135. Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage. The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed

by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

   a.  GMAC Construction, LLC

   b.  Pillari Bros. Construction Corp.

   c.  SESI Consulting Engineers, Inc.

*See* the Subcontracts attached hereto at Exhibits "V" at page 7, "W" at page 7, and "X" at page 8.

136. The Additional Insured endorsements of the AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

137. The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)** This insurance is excess over:

   *  *  *

  **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

 *See* Group Exhibit "Z" and Group Exhibit "AA", *e.g.* Exhibit "Z-1" at page 165.

138. By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the policies of AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire, and the Other Insurance Condition of the Amerisure Policies, AFHIC, Continental Insurance

Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire owe Premier Design a primary and non-contributory defense in the Underlying New Jersey Action.

139.    Amerisure has provided a defense to Premier Design in the Underlying New Jersey Action that should have been provided by AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic and Selective Fire.

140.    Amerisure is entitled, as subrogee of Premier Design, to reimbursement of the amounts it has incurred in the defense of Premier Design in the Underlying New Jersey Action from AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, and Selective Fire, each of which owes a primary duty to defend Premier Design in the Underlying New Jersey Action.

WHEREFORE, as Defendant, Zurich American Insurance Company, is not named as a Defendant and no relief is sought against Zurich in Count IV of the Second Amended Complaint, Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company, are not entitled to any relief against Zurich sought by Plaintiffs in Count IV of the Second Amended Complaint or otherwise regarding the Underlying New Jersey Action.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

To the extent any claims for "property damage" have been asserted against Premier Design & Build Group, LLC, Premier Design & Build National, LLC ("the Premier entities") in the Underlying Illinois Action, none of the Zurich policies will provide for coverage for any "property damage" that was known to the Premier entities before the effective date of that

particular Zurich policy, as any "property damage" known to an insured before the inception of a policy would constitute an uninsurable known loss under that policy.

### Second Affirmative Defense

To the extent any claims for "property damage" have been asserted against the Premier entities in the Underlying Illinois Action, none of the Zurich policies will provide coverage for any "property damage" that did not take place during the effective period of that particular Zurich policy.

### Third Affirmative Defense

Pleading in the alternative and without waiving Zurich's position that issues relating to indemnification of the Premier entities are not ripe for adjudication, if the Premier entities and/or Amerisure Insurance Company and Amerisure Mutual Insurance Company contend that more than one of the Zurich policies provides indemnity coverage, the Contractors Liability Endorsement (form no. U-GL-1060-E CW, copy attached hereto as **Exhibit 1.**) in the Zurich policies prevents more than a single policy limit from ever being available, to Zurich's Named Insured and/or to any qualifying additional insureds, for purposes of any claims asserted in the Underlying Illinois Action.

### Fourth Affirmative Defense

The Zurich policies all include the Commercial General Liability Coverage Form (form no. CG 00 01 04 13, hereinafter referred as "the CGL coverage form"). A copy of that form is attached hereto as **Exhibit 2**. The CGL coverage form contains an "Other Insurance" provision. In all of the Zurich policies, the "Other Insurance" provision in the CGL coverage form is amended by the "Other Insurance Amendment - Primary And NonContributory" endorsement bearing form no. U-GL-1327-B CW (04/13) (referred to hereinafter as "the Other Insurance

endorsement"). A copy of the Other Insurance endorsement is attached hereto as **Exhibit 3**. The

Other Insurance endorsement contains the following language:

> **2. The following paragraph is added to Paragraph 4.b. of the Other Insurance Condition of Section IV ---- Commercial General Liability Conditions:**
>
> **This insurance is excess over:**
>
> **Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.**

As revised by the Other Insurance endorsement, the Other Insurance provision in the

CGL coverage forms in the Zurich policies provides that, with respect to any coverage the Zurich

policies provide for the Premier entities (including coverage for defense costs), the Zurich

policies are excess to other policies that also provide coverage for the Premier entities as

additional insureds. Accordingly, the Zurich policies' coverage for the Premier entities is excess

to the coverage provided to the Premier entities by other policies.

## Fifth Affirmative Defense

In the alternative, to the extent there is other insurance available to Premier for the

Underlying Illinois Action as an additional insured, but the Zurich policies are not excess to all

such insurance, the duty to defend the Premier entities as an additional insured is shared with other

applicable insurance policies, and any covered defense costs must be allocated among all

applicable policies.

## Sixth Affirmative Defense

67

Zurich reserves the right to assert any other term, condition, conclusion, or definition in the Zurich policies and any other defense based on the Zurich policies, equity or the law, that are or may be applicable.

## ZURICH'S COUNTERCLAIM AND CROSS-CLAIM

Defendant/Counter-Plaintiff/Cross-Claimant Zurich American Insurance Company, pursuant to Rule 13 of the Federal Rules of Civil Procedure, for Zurich's Counterclaim against Plaintiffs/Counter-Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company and for Zurich's Crossclaim against Defendants/Cross-Defendants, Premier Design & Build Group, LLC, Premier Design & Build National, LLC, Allied World National Assurance Company, American Family Home Insurance Company, Continental Insurance Company, Continental Casualty Company, and American Casualty Co. of Reading, PA, Gemini Insurance Company, Harleysville Preferred Insurance Company,  Old Republic General Insurance Corporation, and Selective Insurance Company of America, states as follows:

## PARTIES

1.      Zurich American Insurance Company is an insurance carrier that is organized under New York law that maintains its principal place of business in Schaumburg Illinois.

2.      On information and belief, Amerisure Insurance Company is an insurance carrier that is organized under Michigan law that maintains its principal place of business in Michigan.

3.      On information and belief, Amerisure Mutual Insurance Company is an insurance carrier that is organized under Michigan law that maintains its principal place of business in Michigan.  Unless otherwise specified, Amerisure Insurance Company and Amerisure Mutual Insurance Company will be referred to collectively as "the Amerisure entities."

4. On information and belief, Premier Design & Build Group, LLC ("Premier Group") is a limited liability company that is organized under Illinois law that maintains its principal place of business in Chicago, Illinois.

5. On information and belief, Premier Design & Build National, LLC, ("Premier National") is a limited liability company that is organized under Delaware law that maintains its principal place of business in Chicago, Illinois. Unless otherwise specified, Premier Group and Premier National will be referred to collectively as "the Premier entities."

6. On information and belief, Allied World National Assurance Company ("Allied World"), is an insurance carrier that is organized under New Hampshire law that maintains its principal place of business in New York.

7. On information and belief, American Family Home Insurance Company ("AFHIC"), is an insurance carrier that is organized under Florida law that maintains its principal place of business in Florida.

8. On information and belief, The Continental Insurance Company ("Continental"), is an insurance carrier that is organized under Pennsylvania law that maintains its principal place of business in Pennsylvania.

9. On information and belief, Continental Casualty Company ("CCC"), is an insurance carrier that is organized under Illinois law that maintains its principal place of business in Illinois.

10. On information and belief, American Casualty Co. of Reading, PA ("American Casualty"), is an insurance carrier that is subject to jurisdiction in this District.

11. On information and belief, Gemini Insurance Company ("Gemini"), is an insurance carrier that is subject to jurisdiction in this District.

69

12. On information and belief, Harleysville Preferred Insurance Company ("Harleysville"), is an insurance carrier that is organized under Ohio law that maintains its principal place of business in Ohio.

13. On information and belief, Old Republic General Insurance Corporation ("Old Republic") is an insurance carrier that is organized under Illinois law that maintains its principal place of business in Illinois.

14. On information and belief, Selective Insurance Company of America ("Selective"), is an insurance carrier that is organized under New Jersey law that maintains its principal place of business in New Jersey.

## JURISDICTION AND VENUE

15. This Court had jurisdiction over this case at the time it was filed pursuant to 28 U.S.C. §1332(a). The Court has jurisdiction over this Counterclaim/Cross-Claim pursuant to 28 U.S.C. §1367(a).

16. Venue is proper under 28 U.S.C. §1391(b)(2) or, alternatively, under 28 U.S.C. §1391(b)(3).

## General Allegations

17. The Premier entities have been named as defendants in an underlying lawsuit captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, that is pending in the Law Division of the Circuit Court of Cook County, Illinois, under case no.: 2023L004533. The lawsuit identified the preceding sentence will be referred to herein as the "Underlying Action." A copy of the Complaint filed in the Underlying Action (without its exhibits) has been filed in this matter as Exhibit A to the Amerisure entities' First Amended Complaint.

18.     In this Declaratory Action, the Amerisure entities contend that they issued certain Commercial General Liability policies and Commercial Umbrella policies to the Premier entities.

19.     In this Declaratory Action, the Amerisure entities allege that, pursuant to the terms of their CGL policies, they have been defending the Premier entities in the Underlying Action.

20.     In this Declaratory action, the Amerisure entities allege that Zurich issued certain Commercial General Liability ("CGL") policies that provide coverage to the Premier entities, as additional insureds, for purposes of the Underlying Action.

21.     In this Declaratory action, the Amerisure entities allege that Allied World, AFHIC, CCC, American Casualty, Gemini, Harleysville, Old Republic and Selective issued certain CGL policies that provide coverage to the Premier entities, as additional insureds, for purposes of the Underlying Action.

22.     In this Declaratory action, the Amerisure entities seek a declaration that, for purposes of any coverage that is owed to the Premier entities in the Underlying Action, the policies that the Amerisure entities issued to the Premier entities are excess to any CGL policies that extend coverage to the Premier entities as additional insureds.

### Count I – The Zurich Policies Are Excess to Other Policies that Provide Coverage to the Premier Entities as Additional Insureds

23.     Zurich issued the following Commercial General Liability policies (which, unless otherwise specified, will be referred to collectively as "the Zurich policies"):

No. GLO 0184640 00 (effective 10/1/15 to 10/1/16);
No. GLO 0184640 01 (effective 10/1/16 to 10/1/17);
No. GLO 0184640 02 (effective 10/1/17 to 10/1/18);
No. GLO 0184640 03 (effective 10/1/18 to 10/1/19);
No. GLO 0184640 04 (effective 10/1/19 to 10/1/20);
No. GLO 0184640 05 (effective 10/1/20 to 10/1/21); and
No. GLO 0184640 06 (effective 10/1/21 to 10/1/22)

24.    The first Named Insured on the Zurich policies is "Ashgrove Holdings LLC." However, a company identified as "DGI-Menard, Inc." (hereinafter "DGIM") is also scheduled on the Zurich policies as a Named Insured.

25.    In the Underlying Action, the Premier entities have been sued in connection with allegedly faulty work they allegedly performed on a construction project where the Premier entities were allegedly retained as the General Contractor and Construction Manager.  The construction project that is described in the Complaint filed against the Premier entities in the Underlying Action will be referred to herein as "the underlying construction project."

26.    The Premier entities contend that Premier Group and DGIM entered into a Subcontract in connection with the underlying construction project.

27.    The Premier entities allege that, pursuant to the terms of the alleged Subcontract between Premier Group and DGIM, DGIM agreed to designate the Premier entities as additional insureds on DGIM's CGL insurance for purposes of claims related to DGIM's performance of its work on the underlying construction project.

28.    The Premier entities have sought coverage from Zurich for purposes of the Underlying Action based on the contention that they are additional insureds on the Zurich policies for purposes of the Underlying Action.

29.    Zurich does not dispute that the Premier entities qualify, subject to all the terms, limitations and exclusions in the applicable additional insured endorsements and coverage forms in the Zurich policies, as additional insureds on the Zurich policies for purposes of the Underlying Action.

30.    Zurich denies the Amerisure entities' contention that the Zurich policies provide primary coverage for the Premier entities in the Underlying Action.

72

31. The Zurich policies all include the Commercial General Liability Coverage Form (form no. CG 00 01 04 13, hereinafter referred as "the CGL coverage form"). A copy of that form is attached hereto as **Exhibit 2**.

32. The CGL coverage form contains an "Other Insurance" provision. In all of the Zurich policies, the "Other Insurance" provision in the CGL coverage form is amended by the "Other Insurance Amendment - Primary And NonContributory" endorsement bearing form no. U-GL-1327-B CW (04/13) (referred to hereinafter as "the Other Insurance endorsement"). A copy of the Other Insurance endorsement is attached hereto as **Exhibit 3**.

33. The Other Insurance endorsement contains the following language:

**2. The following paragraph is added to Paragraph 4.b. of the Other Insurance Condition of Section IV ---- Commercial General Liability Conditions:**

**This insurance is excess over:**

**Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.**

34. As revised by the Other Insurance endorsement, the Other Insurance provision in the CGL coverage forms in the Zurich policies provides that, with respect to any coverage the Zurich policies provide for the Premier entities (including coverage for defense costs), the Zurich policies are excess to other policies that also provide coverage for the Premier entities as additional insureds.

35.     Accordingly, to the extent that any policies issued by Allied World, AFHIC, CCC, American Casualty, Gemini, Harleysville, Old Republic and/or Selective provide coverage to the Premier entities in the Underlying Action, the Zurich policies' coverage for the Premier entities is excess to the coverage provided to the Premier entities by those other policies.

36.     An actual controversy exists between the parties hereto regarding the priority of coverage among the CGL policies that potentially provide coverage to the Premier entities as additional insureds for purposes of the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C. §2201

WHEREFORE, Defendant/Counter-Plaintiff/Cross-Plaintiff Zurich American Insurance Company prays that this Court enter a declaratory judgment in its favor and against Plaintiff/Counter-Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company, and against Defendants/Cross-Defendants, Premier Design & Build Group, LLC, Premier Design & Build National, LLC, Allied World National Assurance Company, American Family Home Insurance Company, Continental Insurance Company, Continental Casualty Company, and American Casualty Co. of Reading, PA, Gemini Insurance Company, Harleysville Preferred Insurance Company, Old Republic General Insurance Corporation, and Selective Insurance Company of America, declaring, adjudging and decreeing as follows:

(a)   That, for purposes of any coverage that the Premier entities can obtain for the Underlying Action, the Zurich policies are excess to any policies issued by Allied World AFHIC, Continental, CCC, American Casualty, Gemini, Harleysville, Old Republic, and/or Selective;

(b)   That, if the Premier entities qualify as additional insureds for purposes of the Underlying Action on a CGL policy issued by another insurance carrier, Zurich has no duty to defend the Premier entities in the Underlying Action; and

(c)   That Zurich is entitled to such other and further relief as the Court deems appropriate.

74

**Alternative Count II – Zurich has no Obligation as to Claims That Do Not Seek to Recover For "Property Damage" that Arises Out Of, or was Caused in Whole or Part by, the Ongoing Operations or Completed Operations of Zurich's Named Insured.**

1-36.    As paragraphs 1-36 of Alternative Count II, Zurich restates and re-alleges paragraphs 1-36 of Count I.

37.    On information and belief, the Premier entities contend that claims for "property damage" as that term is defined the Zurich policies have been asserted against the Premier entities in the Underlying Action.

38.    The applicable additional insured endorsements in the Zurich policies restrict coverage for an additional insured such that an additional insured can only obtain coverage for "property damage" that "arises out of" the ongoing operations or completed operations of the Named Insured, or is "caused in whole or in part" by the ongoing operations or completed operations of the Named Insured.

39.    Accordingly, the Premier entities cannot obtain coverage for any "property damage" that did not "arise out of," or was not "caused in whole or in part" by, the ongoing operations or completed operations of DGIM.

40.    In the Underlying Action, the Premier entities are being sued in connection with the alleged settlement of certain structures referred to as "Access Bridges" which were allegedly built as part of the underlying construction project.

41.    DGIM did not perform any work on the underlying construction project related to the Access Bridges.

42.    Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent any claims for "property damage" related to the Access Bridges have been asserted

against the Premier entities in the Underlying Action, the Premier entities cannot obtain coverage for such claims under the Zurich policies.

43.     Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent any claims for "property damage" have been asserted against the Premier entities in the Underlying Action, the Premier entities cannot obtain coverage for such claims under the Zurich policies unless the alleged "property damage" "arose out of" the ongoing operations or completed operations of DGIM,  or was "caused in whole or in part" by the ongoing operations or completed operations of DGIM.

44.     An actual controversy exists between the parties hereto regarding the limited scope of the coverage potentially provided by the Zurich policies to the Premier entities for any "property damage" at issue in the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C. §2201

WHEREFORE, Defendant/Counter-Plaintiff/Cross-Plaintiff Zurich American Insurance Company prays that this Court enter a declaratory judgment in its favor and against Plaintiff/Counter-Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company, and against Defendants/Cross-Defendants, Premier Design & Build Group, LLC, Premier Design & Build National, LLC, Allied World National Assurance Company, American Family Home Insurance Company, Continental Insurance Company, Continental Casualty Company, and American Casualty Co. of Reading, PA, Gemini Insurance Company, Harleysville Preferred Insurance Company, Old Republic General Insurance Corporation, and Selective Insurance Company of America, declaring, adjudging and decreeing as follows:

(a)    That, to the extent any claims for "property damage" have been asserted against the Premier entities in the Underlying Action, the Premier entities cannot obtain

76

coverage for such claims under the Zurich policies unless the alleged "property damage" "arose out of" the ongoing operations or completed operations of DGIM, or was "caused in whole or in part" by the ongoing operations or completed operations of DGIM;

(b)  That, to the extent any claims for "property damage" related to the Access Bridges have been asserted in the Underlying Action, any such alleged "property damage" did not "arise out of" the ongoing operations or completed operations of DGIM, and was not "caused in whole or in part" by the ongoing operations or completed operations of DGIM, and, as result, the Premier entities cannot obtain coverage for such claims under the Zurich policies; and

(c)  That Zurich is entitled to such other and further relief as the Court deems appropriate.

**Alternative Count III – The Terms and Conditions of the CGL Coverage Form and Professional Services Exclusions in the Zurich Policies Limit or Negate Coverage for Any "Property Damage" Claims That May Be Asserted In The Underlying Action**

1-44.   As paragraphs 1-44 of Alternative Count III, Zurich restates and re-alleges paragraphs 1-44 of Count II

45.   On information and belief, the Premier entities contend that claims for "property damage" as that term is defined the Zurich policies have been asserted against the Premier entities in the Underlying Action.

46.   The CGL coverage form defines the term "property damage" as follows:

**"Property damage" means:**
**a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
**b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**

**For the purposes of this insurance, electronic data is not tangible property.**

**As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.**

47.     Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable in the Underlying Action for amounts that were not paid for "property damage", the Premier entities cannot obtain coverage for such amounts under the Zurich policies.

48.     Even if claims for "property damage" are alleged Underlying Action, the Insuring Agreement in the Coverage A section of the CGL coverage form states that "property damage" must be caused by an "occurrence" in order for coverage to exist under the Zurich policies.

49.     The CGL coverage form defines "occurrence" as follows:

**"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions**.

50.     Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable in the Underlying Action for damages that were not caused by an "occurrence," the Premier entities cannot obtain coverage for such damages under the Zurich policies.

51.     The CGL coverage form contains certain exclusions that negate coverage for "property damage" in certain circumstances.  The Damage to Your Product exclusion, the Damage to Your Work exclusion, the Damage To Impaired Property Or Property Not Physically Injured exclusion and the Recall Of Products, Work Or Impaired Property exclusions in the CGL coverage form contain the following language:

**This insurance does not apply to: \*\*\***

**k.  Damage To Your Product**

**"Property damage" to "your product" arising out of it or any part of it.**

**l. Damage To Your Work**

**"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.**

**m. Damage To Impaired Property Or Property Not Physically Injured**

**"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
**(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**
**(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**

**This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

**n. Recall Of Products, Work Or Impaired Property**

**Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:**
**(1) "Your product";**
**(2) "Your work"; or**
**(3) "Impaired property";**
**if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.**

52.     The CGL coverage form states that, when the terms "you" and "your" are used in the Zurich policy, those terms refer to the Named Insured, which, as applicable here, is DGIM.

53.     The CGL coverage form defines the term "your product" as follows:

**"Your product":**

**a. Means:**

**(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:**

79

**(a) You [DGIM];**

**(b) Others trading under your name; or**

**(c) A person or organization whose business or assets you have acquired; and**

**(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.**

**b. Includes:**

**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and**

**(2) The providing of or failure to provide warnings or instructions.**

**c. Does not include vending machines or other property rented to or located for the use of others but not sold.**

54. In the Zurich policies, the definition of the term "your work" that is contained in the CGL coverage form is revised by the "Contractors Liability Supplemental Coverages And Conditions" endorsement (form no. U-GL-1060-E CW (04/13)), a copy of which is attached hereto as **Exhibit 4**. As revised by the "Contractors Liability Supplemental Coverages And Conditions" endorsement, the CGL coverage form defines the term "your work" as follows:

**"Your work":**

**a. Means:**

**(1) Work or operations performed by you [DGIM] or on your behalf, but does not include work or operations performed by another entity who joined with you to form a partnership or joint venture not shown as a named insured in the Declarations, which terminated or ended prior to the effective date of this policy; and**

**(2) Materials, parts or equipment furnished in connection with such work or operations.**

**b. Includes:**

**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and**

**(2) The providing of or failure to provide warnings or instructions.**

55. The CGL coverage form defines the term "impaired property" as follows:

**"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:**

**a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**

**b. You [DGIM] have failed to fulfill the terms of a contract or agreement;**

**if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.**

56.     Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Damage to Your Product, Damage to Your Work, Damage To Impaired Property Or Property Not Physically Injured and Recall Of Products, Work Or Impaired Property exclusions, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

57.     The CGL coverage form contains a Contractual Liability exclusion that includes the following language:

**This insurance does not apply to: \*\*\***

**b. Contractual Liability**

**"[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. \*\*\***

58.     Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Contractual Liability exclusion, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

59.     The Zurich policies include the endorsement entitled "EXCLUSION ---

ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" (form no. CG

22 43 04 13, copy attached hereto as **Exhibit 4**), which contains the following language:

> **This insurance does not apply to *** "property damage" *** arising out of the rendering of or failure to render any professional services by you [DGIM] or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity. Professional services include:**
>
> **1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and**
>
> **2. Supervisory, inspection, architectural or engineering activities.**
>
> **This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the *** "property damage" *** involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.**

60.     The Zurich policies also include the endorsement entitled "EXCLUSION --

CONTRACTORS --- PROFESSIONAL LIABILITY" (form no. CG 22 79 04 13, copy attached

hereto as **Exhibit 5**), which contains the following language:

> **1.  This insurance does not apply to *** "property damage" *** arising out of the rendering of or failure to render any professional services by you [Menard] or on your behalf, but only with respect to either or both of the following operations:**
>
> **a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and**
>
> **b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.**
>
> **This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the *** "property damage" *** involved the rendering of**

or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. **Subject to Paragraph 3. below, professional services include:**

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. **Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.**

61. The endorsement entitled "EXCLUSION --- ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" and the endorsement entitle "EXCLUSION -- CONTRACTORS --- PROFESSIONAL LIABILITY" will be referred to collectively as "the Professional Liability exclusion endorsements". Pleading in the alternative and without prejudice to Zurich's position that the Zurich policies only provide excess coverage to the Premier entities in the Underlying Action, to the extent the Premier entities are actually or allegedly liable for damages that come with the scope of the Professional Liability exclusion endorsements, the Premier entities cannot obtain coverage for such damages under the Zurich policies.

62. An actual controversy exists between the parties hereto regarding the extent to which certain provisions in the Zurich policies, including but not limited to the provisions identified in this Alternative Count III, limit or negate coverage for any amounts that are sought from the Premier entities in the Underlying Action, making this case appropriate for disposition pursuant to 28 U.S.C. §2201

WHEREFORE, Defendant/Counter-Plaintiff/Cross-Plaintiff Zurich American Insurance Company prays that this Court enter a declaratory judgment in its favor and against

Plaintiff/Counter-Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company, and against Defendants/Cross-Defendants, Premier Design & Build Group, LLC, Premier Design & Build National, LLC, Allied World National Assurance Company, American Family Home Insurance Company, Continental Insurance Company, Continental Casualty Company, and American Casualty Co. of Reading, PA, Gemini Insurance Company, Harleysville Preferred Insurance Company, Old Republic General Insurance Corporation, and Selective Insurance Company of America, declaring, adjudging and decreeing as follows:

(a)   That the Premier entities cannot obtain coverage under the Zurich policies for any damages that were not sustained for "property damage" caused by an "occurrence";

(b)   That the Premier entities cannot obtain coverage under the Zurich policies for any damages that are within the scope of the Damage to Your Product exclusion, the Damage to Your Work exclusion, the Damage To Impaired Property Or Property Not Physically Injured exclusion, the Recall Of Products, Work Or Impaired Property exclusion, the Contractual Liability exclusion and/or the Professional Liability exclusion endorsements; and

(c)   That Zurich is entitled to such other and further relief as the Court deems appropriate.

Respectfully Submitted,
BODELL BOVE LLC

/s/ Brian O'Gallagher
Brian O'Gallagher, Bar # 6211445
Bodell Bove LLC
915 Harger Road, Ste. 240
Oak Brook, IL 60523
Phone: (630) 382-4800
Facsimile: (630) 468-2158
BOGallagher@bodellbove.com