**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY | ) ) ) | Case No. 1:23-cv-04098 |
| | ) | |
| Plaintiffs, | ) ) | Hon. Sara L. Ellis |
| | ) | Mag. Judge Young B. Kim |
| v. | ) ) | |
| PREMIER DESIGN + BUILD GROUP, LLC, et al., | ) ) | |
| Defendants. | ) ) ) | |

**STARR INDEMNITY AND LIABILITY COMPANY's ANSWER AND AFFIRMATIVE DEFENSES TO AMERISURE INSURANCE COMPANY AND AMERISURE MUTUAL INSURANCE COMPANY'S THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Third-Party Defendant, Starr Indemnity and Liability Company ("Starr"), by and through its undersigned counsel Lindemann Miller Bowen LLP, and for its Answer and Affirmative Defenses to the Third Amended Complaint of Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively, "Amerisure"; "Plaintiffs") states as follows:

**I.      NATURE OF ACTION AND RELIEF SOUGHT**

1.      This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER: Starr admits Plaintiffs seek declaratory relief, but denies that Plaintiffs are entitled to any such relief against Starr. Paragraph 1's remaining allegations consist of legal conclusions requiring no response. To the extent that a response is required, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's allegations, and thus denies same.**

2.      This is a civil action brought by Amerisure seeking a declaration that: they owe no duty to defend or indemnify Premier Design under Commercial General Liability (herein "CGL") insurance policies and Umbrella Liability (herein "Umbrella") insurance policies (collectively referred to herein as "Amerisure Policies") issued by Amerisure to Premier Design in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Premier Design + Building National, LLC, et al.*, Case No.: 2023L004533, filed in the Circuit Court of Cook County, Illinois, Law Division (herein "Illinois Action") and in connection with the underlying action captioned *Duke Realty ePort Urban Renewal LLC v. Viridian Partners, LLC, et al.*, MID-L-001767- 23, pending in the Superior Court of New Jersey Law Division, Middlesex County ("New Jersey Action"). Both the Illinois Action and New Jersey Action arise from the same construction project ("Project");[1] that the Subcontractor Insurers owe Premier Design a primary duty to defend in connection with the Illinois Action and the New Jersey Action; that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design; and that the Subcontractor Insurers are obligated to reimburse Amerisure all amounts that Amerisure has incurred in the defense of Premier Design in the Illinois Action and the New Jersey Action.

**ANSWER: Starr admits only that Plaintiffs claim to seek the relief described in Paragraph 2, but denies that Plaintiffs seek any relief from Starr regarding the New Jersey Action. Further answering, Starr denies that Plaintiffs are entitled to any relief from Starr. Further answering, Starr denies all of the Paragraph's remaining allegations.**

3.      There is an actual, present and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend or indemnify Premier Design in the Illinois

---

[1] The Illinois Action involves two access bridges and one warehouse building while the New Jersey Action concerns three access bridges.

Action and the New Jersey Action, whether the Subcontractor Insurers owe Premier Design a primary and non-contributory duty to defend, that Amerisure's policies apply, if at all, in excess of the coverage owed by the Subcontractor Insurers to Premier Design and that the Subcontractor Insurers owe Amerisure reimbursement of the amounts Amerisure incurred in the defense of Premier Design in the Illinois Action and the New Jersey Action. *See* the Complaints filed in the Underlying Illinois and New Jersey Actions attached hereto at Group Exhibit "A".

**ANSWER: Paragraph 3 consists of legal conclusions and thus requires no response. To the extent that a response is required, Starr admits there is an actual controversy among the parties relating to whether Starr owes a duty to defend Premier Design + Build Group, LLC in the Underlying Illinois Action, only, and if so, the priority of coverage for defense costs incurred in defending Premier Design + Build Group, LLC in the Underlying Illinois Action. Further answering, Starr admits that the Complaint filed in the Underlying Illinois Action, without its exhibits, is included in Exhibit A attached to Plaintiffs' Third Amended Complaint. Further answering, Starr denies there is an actual controversy regarding the parties' alleged obligations to indemnify either of Premier Design + Build Group, LLC and/or Premier Design + Build National, LLC (together, the "Premier Entities"). Further answering, Starr denies all of Paragraph 3's remaining allegations.**

4. Amerisure requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that the Subcontractor Insurers owe Premier Design a primary and non-contributory duty to defend,

3

and that the Subcontractor Insurers owe Amerisure reimbursement of amounts that Amerisure has incurred in the defense of Premier Design in the Underlying Illinois and New Jersey Actions.[2]

**ANSWER: Starr admits that Plaintiffs seek the relief described in Paragraph 4, but denies that Plaintiffs are entitled to any such relief against Starr. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

II.     **PARTIES**

5.      At the time of the commencement of this action, Plaintiff Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations of Paragraph 5.**

6.      At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State of Michigan.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations of Paragraph 6.**

---

[2] While Amerisure also seeks a declaration of the rights and obligations of Amerisure and the Subcontractor Insurers as to the duty to indemnify, that potential duty is not currently ripe and will not be until resolutions of the Underlying Illinois and New Jersey Actions.

7. At the time of the commencement of this action, Defendant Premier Group is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois. On information and belief, Premier Group is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

8. At the time of the commencement of this action, Defendant Premier National is a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois. On information and belief, Premier National is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Secretary of State, Starr admits the allegations contained in the first sentence of Paragraph 8. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

9. At the time of the commencement of this action, Defendant Allied World is a New Hampshire Corporation with its principal place of business in New York, New York. On information and belief, Allied World is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records**

5

**maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 9. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

10.     At the time of the commencement of this action, Defendant AFHIC is a Florida Corporation with its principal place of business in Jacksonville, Florida.  On information and belief, AFHIC is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 10. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

11.     At the time of the commencement of this action, Defendant Continental Insurance Company is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois. On information and belief, Continental Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 11. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's**

**remaining allegations, and thus denies same.**

12. At the time of the commencement of this action, Defendant Continental Casualty Company is an Illinois Corporation with its principal place of business in Chicago, Illinois. On information and belief, Continental Casualty Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 12. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

13. At the time of the commencement of this action, Defendant American Casualty Company of Reading, Pennsylvania is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois. On information and belief, American Casualty Company of Reading, Pennsylvania is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 13's allegations, and thus denies same.**

14. At the time of the commencement of this action, Defendant Gemini is a Delaware Corporation with its principal place of business in Greenwich, Connecticut. On information and belief, Gemini is transacting business in Illinois including the geographical regions that encompass

7

this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 14's remaining allegations, and thus denies same.**

15.     At the time of the commencement of this action, Defendant Harleysville Preferred Insurance Company is an Ohio Corporation with its principal place of business in Columbus, Ohio. On information and belief, Harleysville Preferred Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 15. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

16.     At the time of the commencement of this action, Defendant Harleysville Insurance Company of New Jersey is a New Jersey Corporation with its principal place of business in Columbus, Ohio.  On information and belief, Harleysville Insurance Company of New Jersey is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 16's allegations, and thus denies same.**

8

17.     At the time of the commencement of this action, Defendant Harleysville Insurance Company is an Ohio Corporation with its principal place of business in Columbus, Ohio.  On information and belief, Harleysville Insurance Company is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 17. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

18.     At the time of the commencement of this action, Defendant Old Republic is an Illinois Corporation with its principal place of business in Chicago, Illinois.  On information and belief, Old Republic is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 18. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

19.     At the time of the commencement of this action, Defendant Selective is a New Jersey Corporation with its principal place of business in Branchville, New Jersey.  On information and belief, Selective is transacting business in Illinois including the geographical regions that

encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 19. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

20. At the time of the commencement of this action, Defendant Selective Fire is a New Jersey Corporation with its principal place of business in Branchville, New Jersey. On information and belief, Selective Fire is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 20's allegations, and thus denies same.**

21. At the time of the commencement of this action, Defendant Starr is an insurance company organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas, and is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

**ANSWER: Starr denies that its principal place of business is located in Dallas, Texas. Further answering, Starr admits Paragraph 21's remaining allegations.**

22. At the time of the commencement of this action, Defendant Zurich is a New York Corporation with its principal place of business in Schaumburg, Illinois. On information and

belief, Zurich is transacting business in Illinois including the geographical regions that encompass this United States District Court for the Northern District of Illinois, including the Eastern Division, at all times relevant hereto.

**ANSWER: Based on information contained in the publicly available records maintained by the Illinois Department of Insurance, Starr admits the allegations contained in the first sentence of Paragraph 22. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### III.    JURISDICTION AND VENUE

23.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**ANSWER: Paragraph 23 consists of legal conclusions and thus requires no response. To the extent a response is required, on information and belief based on review of the parties' filed pleadings and the status reports submitted in this case, Starr admits Paragraph 23's allegations.**

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d).

**ANSWER: Paragraph 23 consists of legal conclusions and thus requires no response. To the extent a response is required, on information and belief based on review of the parties' filed pleadings and the status reports submitted in this case, Starr admits Paragraph 24's allegations.**

25.     Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

**ANSWER: Paragraph 25 consists of legal conclusions and thus requires no response. To the extent a response is required, on information and belief based on review of the parties' filed pleadings and the status reports submitted in this case, Starr admits Paragraph 25's allegations.**

## IV.     BACKGROUND

### A.     The Project

26.     On information and belief, Duke Realty ePort Urban Renewal, LLC ("Duke") is the current owner of certain parcels constituting approximately 103 acres of real property located at 960, 980, and 1000 High Street in Perth Amboy, New Jersey, on Block 425, Lot 1.02, Block 426, Lot 3.04, and Block 428, Lots 1.01, 1.02, 1.03, and 1.05 (collectively, "the Property"). *See* Group Exhibit "A" at page 4, paragraph 9.

**ANSWER: Paragraph 26's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 26's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

27.     On or about August 18, 2015, Bridge Perth Amboy, LLC entered into a contract with Premier National (the "Contract") to build three warehouse buildings and at least two access bridges (the "Project") on the Property. A true and correct copy of the Contract is attached hereto and incorporated herein at **Exhibit "B"**. *See* Group Exhibit "A" at page 4, paragraph 12.

**ANSWER: Paragraph 27's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 27's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

28.     On information and belief. Duke is the successor in interest to Bridge Perth Amboy Urban Renewal, LLC, formerly known as Bridge Perth Amboy, LLC, which owned the property until on or about November 22, 2017. *See* Group Exhibit "A" at page 4, paragraph 10.

**ANSWER: Paragraph 28's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 28's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

13

29. On information and belief, on November 22, 2017, Bridge Perth Amboy Urban Renewal, LLP assigned the Contract to Duke via an Assignment and Assumption of Service Agreements and Intangibles, a copy of which is attached hereto at **Exhibit "C"**. *See* Group Exhibit "A" at pages 4-5, paragraph 14.

**ANSWER: Paragraph 29's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 29's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

30. On information and belief, on or about August 18, 2015, Premier National assigned certain rights and obligations under the Contract to its affiliate, Premier Group, pursuant to a Partial Assignment of Construction Agreement ("Premier Assignment"). On information and belief, pursuant to the Premier Assignment, Premier Group entered into various subcontract agreements for design and construction of the Project. *See* Group Exhibit "A" at page 4, paragraph 13.

**ANSWER: Paragraph 30's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 30's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

14

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

31.     Pursuant to the terms of the Contract, Premier National, then Premier Group, agreed to provide demolition, design, engineering, architectural, and construction services for the Project. *See* Exhibit "B" at §§ 2.1-2.4.

**ANSWER: Paragraph 31's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 29's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

B.     **The Subcontractor Insurers**

31.     **[Sic]**[3] On information and belief, Allied World issued three Commercial General Liability policies ("CGL") to Premier Design subcontractor Terra Systems, Inc., with the policy number 0310-7669 and policy periods of June 10, 2017 to June 10, 2018; June 10, 2018 to June 10, 2019; and June 10, 2019 to June 10, 2020.  Copies of the Allied World policies are attached hereto at **Group Exhibit "D"**.

---

[3] Plaintiffs' Third Amended Complaint contains two instances of Paragraph 31. Starr notes the scrivener's error, but does not re-number the responsive Paragraphs herein.

15

**ANSWER: On information and belief based on Allied World's pleadings filed in this case and admissions made therein, including Allied World's Answer and Affirmative Defenses (ECF No. 193), Starr admits Paragraph 31's allegations.**

32.     On information and belief, AFHIC issued a CGL policy to Premier Design subcontractor Pillari Bros. Construction Corp. with policy number 88A5GL00000467 and a policy period of November 1, 2016 to November 1, 2017.  A copy of the AFHIC policy is attached hereto at **Exhibit "E"**.

**ANSWER: On information and belief based on AFHIC's pleadings filed in this case and admissions made therein, including AFHIC's Answer and Affirmative Defenses (ECF No. 199), Starr admits Paragraph 32's allegations.**

33.     On information and belief, Continental Insurance Company issued a CGL policy to Premier Design subcontractor SESI Consulting Engineers with the policy number 6056872807 and a policy period of December 23, 2017 to December 23, 2018, and six excess and umbrella policies to Premier Design subcontractor SESI Consulting Engineers with the policy number 6056872810 and policy periods of December 23, 2017 to December 23, 2018; December 23, 2019 to December 23, 2020; December 23, 2020 to December 23, 2021; December 23, 2021 to December 23, 2022; December 23, 2022 to December 23, 2023; and December 23, 2023 to December 23, 2024.  Copies of the Continental Insurance Company policies are attached hereto at **Group Exhibit "F"**.

**ANSWER: On information and belief based on CNA's pleadings filed in this case, including in CNA's Answer and Affirmative Defenses (ECF No. 203), Starr admits that Continental Insurance Company issued a policy with general liability coverage to Soils Engineering Services, Inc. with policy number 6056872807 and a policy period of December**

16

**23, 2017 through December 23, 2018. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

34.     On information and belief, Continental Casualty Company issued five CGL policies to SESI Consulting Engineers with policy number 6056872807 and policy periods of December 23, 2018 to December 23, 2019; December 23, 2019 to December 23, 2020; December 23, 2020 to December 23, 2021; December 23, 2021 to December 23, 2022; and December 23, 2022 to December 23, 2023.  Copies of the Continental Casualty Company policies are attached hereto at **Group Exhibit "G"**.

**ANSWER: On information and belief based on CNA's pleadings filed in this case, including in CNA's Answer and Affirmative Defenses (ECF No. 203), Starr admits that Continental Casualty Company issued five primary policies to SESI Consulting Engineers with policy number 6056872807 and a policy period of December 23, 2011 through December 23, 2023, and that CNA produced the policy documentation included in Group Exhibit G. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

35.     On information and belief, American Casualty Co. of Reading, PA issued one CGL policy to SESI Consulting Engineers with policy number 6056872807 and a policy period of December 23, 2023 to December 23, 2024. A copy of the American Casualty Co of Reading, PA policy is attached hereto at **Exhibit "H".**

**ANSWER: On information and belief based on CNA's pleadings filed in this case, including in CNA's Answer and Affirmative Defenses (ECF No. 203), Starr admits that American Casualty Co. of Reading, PA issued a primary policy to SESI Consulting Engineers**

17

**with policy number 6056872807 and a policy period of December 23, 2023 through December 23, 2024. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

36.     On information and belief, Gemini issued two CGL policies to Premier Design subcontractor Terra Systems, Inc. with policy number VIGP016860 and a policy period of June 10, 2015 to June 10, 2016, and with policy number VIGP017598 and a policy period of June 10, 2016 to June 10, 2017.  Copies of the Gemini policies are attached hereto at **Group Exhibit "I"**.

**ANSWER: On information and belief based on Gemini's pleadings filed in this case, including Gemini's Answer and Affirmative Defenses (ECF No. 196), Starr admits that Group Exhibit I appears to be a true and accurate copy of the two CGL policies issued by Gemini to Terra Systems, Inc. under policy number VIGP016860 and policy number VIGP017598. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

37.     On information and belief, Harleysville Preferred Insurance Company issued five CGL policies to Premier Design subcontractor GMAC Construction, LLC with policy number MPA00000025695Z and policy periods of:  June 15, 2017 to June 15, 2018; June 15, 2018 to June 15, 2019; June 15, 2019 to June 15, 2020; June 15, 2020 to June 15, 2021; and June 15, 2021 to June 15, 2022.  Copies of the Harleysville Preferred Insurance Company policies are attached hereto at **Group Exhibit "J"**.

**ANSWER: On information and belief based on Harleysville's pleadings filed in this case, including Harleysville's Answer, Affirmative Defenses, and Counterclaim (ECF No.**

18

**201), Starr admits that for policy periods June 15, 2017 to June 15, 2018; June 15, 2018 to June 15, 2019; and June 15, 2019 to June 15, 2020, Harleysville issued insurance policies to named insureds GMAC Construction LLC and GMAC Construction Inc., and for policy periods June 15, 2020 to June 15, 2021 and June 15, 2021 to June 15, 2022, Harleysville issued insurance policies to named insureds GMAC Construction LLC and GMAC Contracting, Inc. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

38. On information and belief, Harleysville Insurance Company of New Jersey issued two umbrella policies to Premier Design subcontractor GMAC Construction, LLC with policy number CMB00000025694Z and policy periods of June 15, 2017 to June 15, 2018; and June 15, 2018 to June 15, 2019. Copies of the Harleysville Insurance Company of New Jersey policies are attached hereto at **Group Exhibit "K"**.

**ANSWER: On information and belief based on Harleysville's pleadings filed in this case, including Harleysville's Answer, Affirmative Defenses, and Counterclaim (ECF No. 201), Starr admits that for policy periods June 15, 2017 to June 15, 2018 and June 15, 2018 to June 15, 2019, Harleysville issued undefined insurance policies to GMAC Construction LLC and GMAC Construction, Inc., as set forth in Harleysville's answer to Paragraph 39 (see ECF No. 201 at p. 14). Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

39. On information and belief, Harleysville Insurance Company issued three umbrella policies to Premier Design subcontractor GMAC Construction, LLC with policy number

19

CMB00000025694Z and policy periods of June 15, 2019 to June 15, 2020; June 15, 2020 to June 15, 2021; and June 15, 2021 to June 15, 2022. Copies of the Harleysville Insurance Company policies are attached hereto at **Group Exhibit "L"**.

**ANSWER: On information and belief based on Harleysville's pleadings filed in this case, including Harleysville's Answer, Affirmative Defenses, and Counterclaim (ECF No. 201), Starr admits that for policy periods June 15, 2019 to June 15, 2020, Harleysville issued an undefined insurance policy to named insureds GMAC Construction LLC and GMAC Construction Inc., and that for policy periods June 15, 2020 to June 15, 2021 and June 15, 2021 to June 15, 2022, Harleysville issued additional undefined insurance policies to named insureds GMAC Construction LLC and GMAC Contracting, Inc., as set forth in Harleysville's answer to Paragraph 40 (see ECF No. 201 at p. 15). Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

40. On information and belief, Old Republic issued a CGL policy to Premier Design subcontractor Pillari Bros. Construction Corp. with policy number A-3CG-988715-05 and a policy period of November 1, 2015 to November 1, 2016. A copy of this policy is attached hereto at **Exhibit "M"**.

**ANSWER: On information and belief based on Old Republic's pleadings filed in this case and admissions made therein, including Old Republic's Answer and Affirmative Defenses and Counterclaim/Crossclaim (ECF No. 190), Starr admits that a copy of the Old Republic Policy referenced in Paragraph 40 is attached as Exhibit M to the Complaint, and admits that Paragraph 40's allegations accurately summarize the contents of the referenced written instrument. Further answering, Starr lacks the knowledge or information necessary**

20

**to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

41.     On information and belief, Selective issued a CGL policy to Premier Design subcontractor GMAC Construction, LLC with policy number S 2528018 and a policy period of June 15, 2022 to June 15, 2023. A copy of the Selective policy is attached hereto at **Exhibit "N"**.

**ANSWER: On information and belief based on Selective's pleadings filed in this case, Starr admits Paragraph 41's allegations.**

42.     On information and belief, Selective Fire issued two CGL policies to Premier Design subcontractor GMAC Construction, LLC with policy number S 2179257 and policy periods of June 15, 2015 to June 15, 2016; and June 15, 2016 to June 15, 2017. Copies of the Selective Fire policies are attached hereto at **Group Exhibit "O"**.[4]

**ANSWER: On information and belief based on Selective's pleadings filed in this case, including Selective' s Answer, Affirmative Defenses and Counterclaim (ECF No. 197), Starr admits Paragraph 42's allegations.**

43.     On information and belief, Starr issued at least one liability policy to Premier Design subcontractor Simpson & Brown, Inc. Amerisure is not in possession of the Starr policy or policies. A copy/copies of the Starr policy or policies will be filed upon receipt.

**ANSWER: Starr admits that it issued at least one liability policy to Simpson & Brown. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

---

[4] The Selective Fire policies also include umbrella coverage parts.

44. On information and belief, Zurich issued eight CGL policies to Premier Design subcontractor DGI Menard, Inc. with the following policy numbers and policy periods:

- Policy number GLO 0184640 00; policy period: October 1, 2015 to October 1, 2016;
- Policy number GLO 0184640 01; policy period: October 1, 2016 to October 1, 2017;
- Policy number GLO 0184640 02; policy period: October 1, 2017 to October 1, 2018;
- Policy number GLO 0184640 03; policy period: October 1, 2018 to October 1, 2019;
- Policy number GLO 0184640 04; policy period: October 1, 2019 to October 1, 2020;
- Policy number GLO 0184640 05; policy period: October 1, 2020 to October 1, 2021;
- Policy number GLO 0184640 06; policy period: October 1, 2021 to October 1, 2022; and
- Policy number GLO 0184640 07; policy period: October 1, 2022 to October 1, 2023.

Copies of the Zurich policies are attached hereto at **Group Exhibit "P"**.

**ANSWER: On information and belief based on Zurich's pleadings filed in this case, including its Answer and Affirmative Defenses and Combined Counterclaim/Crossclaim (ECF No. 191), Starr admits that Zurich issued Commercial General Liability policies to Ashgrove Holdings, LLC, on which Menard, Inc. was listed as an additional named insured. Further answering, Starr admits that what purport to be copies of the following Zurich-issued insurance policies with premiums redacted are attached to Plaintiffs' Second Amended Complaint as Group Exhibit P:**

a. **No. GLO 0184640 00 (effective 10/1/15 to 10/1/16);**
b. **No. GLO 0184640 01 (effective 10/1/16 to 10/1/17);**
c. **No. GLO 0184640 02 (effective 10/1/17 to 10/1/18);**
d. **No. GLO 0184640 03 (effective 10/1/18 to 10/1/19);**
e. **No. GLO 0184640 04 (effective 10/1/19 to 10/1/20);**
f. **No. GLO 0184640 05 (effective 10/1/20 to 10/1/21);**
g. **No. GLO 0184640 06 (effective 10/1/21 to 10/1/22); and,**
h. **No. GLO 0184640 07 (effective 10/1/22 to 10/1/23)**

**Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 44's remaining allegations, and thus denies same.**

C.     **Amerisure's Reservation of Rights Letter to Premier National**

45.     On December 4, 2019, Amerisure issued a reservation of rights letter to Premier National which informed Premier National that Amerisure was investigating the claim as to the 980 High Street Building asserted by Duke and requested additional information in regards to the claim, subject to a reservation of rights to deny any coverage.  A lawsuit had not been filed by Duke against Premier Design at that time.  A copy of the December 4, 2019 reservation of rights letter is attached hereto at **Exhibit "Q".**

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 45's allegations, and thus denies same.**

D.     **Duke's October 6, 2022 Notice to Premier Group**

46.     Via correspondence from Duke to Premier Group dated October 6, 2022, Duke notified Premier Group of alleged defective construction and resulting damages associated with the 980 High Street Building and that Duke had begun remedial work on the building.  A copy of the October 6, 2022 notice is attached hereto at **Exhibit "R"**.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 46's allegations, and thus denies same.**

E.     **Amerisure's Supplemental Reservation of Rights Letter to Premier National**

47. In correspondence dated April 21, 2023 from Amerisure to Premier National, Amerisure acknowledged receipt of Duke's October 6, 2022 notice to Premier Group, and reserved all rights to deny coverage to Premier National in relation to Duke's claim.  A copy of the April 21, 2023 reservation of rights letter is attached hereto at **Exhibit "S"**.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 47's allegations, and thus denies same.**

**F.** **The Underlying Illinois Action**

48. On May 1, 2023, Duke filed its Complaint against Premier Design. Duke seeks damages for the alleged defective construction by Premier Design of the 980 High Street Building and for the construction of two access bridges for the property. *See* Group Exhibit "A".

**ANSWER: Starr admits Duke filed a complaint against Premier Design on or around May 1, 2023 in the Underlying Illinois Action. Further answering, Paragraph 48's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 48's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

49. Duke alleges that Premier was involved in the design, engineering, and construction of two bridges for access to and from areas on the Property. These bridges include the Eastern access bridge and the Western access bridge (collectively the "Access Bridges"). *See* Group Exhibit "A" at page 6, paragraph 21.

**ANSWER: Paragraph 49's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 49's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

24

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

50.     Duke alleges that Premier purportedly reviewed the design plans for the Access Bridges and oversaw the construction of the Access Bridges to ensure that they would perform as intended and to ensure that they were built in accordance with the plans and specifications.  *See* Group Exhibit "A" at page 6, paragraph 23.

**ANSWER: Paragraph 50's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 50's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

51.     Duke alleges that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly engineered, poorly constructed, and thus not sound or fit for their purposes.  *See* Group Exhibit "A" at page 6, paragraph 27.

**ANSWER: Paragraph 51's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 51's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

52.    Duke further alleges that as a result of these defects each of the Access Bridges has suffered significant damage, including but not limited to: (i) settlement of each bridge; (ii) cracks in the frame of each bridge; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls.  *See* Group Exhibit "A" at pages 6-7, paragraph 28.

**ANSWER: Paragraph 52's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 52's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

53.    Duke alleges that as a result of the alleged defects to the Access Bridges, Duke has been and will continue to be damaged.  *See* Group Exhibit "A" at page 7, paragraph 29.

**ANSWER: Paragraph 53's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 53's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

54. Duke alleges that Premier worked with Menard Group ("Menard") and GEI Consultants, Inc. ("GEI") to develop a system of rigid inclusions or controlled modulus columns ("CMC") to reinforce the soil beneath what Duke terms the 980 High Street Building Extension, to support the 980 High Street Building at the subject property, and to prevent deleterious settlement of the 980 High Street Building. *See* Group Exhibit "A" at page 7, paragraph 32.

**ANSWER: Paragraph 54's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 54's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

55. Upon information and belief, on February 15, 2017, Bridge Perth Amboy, LLC entered into a lease agreement with Target Corporation ("Target") for Target to lease the 980 High Street Building. *See* Group Exhibit "A" at page 7, paragraph 33.

**ANSWER: Paragraph 55's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 55's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the**

27

**referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

56.     Duke alleges that in 2019, Target sent it a letter informing Duke of cracking and potential failure of the exterior wall and foundation of the 980 High Street Building.  *See* Group Exhibit "A" at page 7, paragraph 34.

**ANSWER: Paragraph 56's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 56's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

57.     As a result of the alleged settlement, the 980 High Street Building sustained extensive damage related to separation and movement between the floor slab and the exterior walls.  *See* Group Exhibit "A" at page 8, paragraph 37.

**ANSWER: Paragraph 57's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 57's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

28

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

58.     Duke alleges that the damage to the 980 High Street Building includes, but is not limited to: separating joints; broken pipes; gaps in flooring; doors separating from walls; settling of wall footing; and visible distress on the inside of the building.  *See* Group Exhibit "A" at page 8, paragraph 38.

**ANSWER: Paragraph 58's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 58's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

59.     Duke further alleges that the damage was caused by "excessive settlement in the area of the 980 High Street Building Extension, where Premier failed to sufficiently complete surcharging prior to construction and where Premier and its subcontractors' design, engineering, construction, and installation of CMC's failed to support the 980 High Street Building Extension and failed to prevent unusual and deleterious settlement."  *See* Group Exhibit "A" at page 8, paragraph 39.

**ANSWER: Paragraph 59's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 59's allegations that are inconsistent with the document's**

29

**text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

60. Duke also alleges that it has taken remedial measures to abate further settlement and damage to the 980 High Street Building and to alleviate disruption to its tenant's ongoing business. *See* Group Exhibit "A" at page 8, paragraph 41.

**ANSWER: Paragraph 60's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 60's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

61. Duke alleges that it has expended substantial amounts of money and sustained substantial damages, and will continue to incur loss and damages as remediation of the building continues, as a result of the settlement at the 980 High Street Building. *See* Group Exhibit "A" at page 9, paragraphs 43 & 44.

**ANSWER: Paragraph 61's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 61's allegations that are inconsistent with the document's**

30

**text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

62. In its Complaint against Premier Design, Duke alleges Count I for Breach of Contract for the alleged breach by Premier Design & Build of the Contract, which includes the following alleged failures by Premier:

a. Prepare sufficient plans and specifications for the design, engineering, stabilization, and construction of the Access Bridges and the 980 High Street Building;

b. Provide materials sufficient for the proper construction of the Access Bridges and the 980 High Street Building;

c. Properly test the soil at the locations selected for the construction of the Access Bridges and the 980 High Street Building to ensure that the soil conditions were properly taken into account in designing the foundational support for the Access Bridges and the 980 High Street Building;

d. Properly design the foundational support for the Access Bridges and the 980 High Street Building; and

e. Properly supervise the construction of the Access Bridges and the 980 High Street Building to ensure compliance with plans, specifications, and all applicable codes, laws, regulations, and industry standards.

*See* Group Exhibit "A" at page 10, paragraph 53.

**ANSWER: Paragraph 62's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 62's allegations that are inconsistent with the document's**

31

**text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

63. As a result of Premier Design's alleged breach of contract, Duke alleges that the 980 High Street Building and the Access Bridges are defective. *See* Group Exhibit "A" at page 10, paragraph 55.

**ANSWER: Paragraph 63's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 63's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

64. Duke alleges that it retained experts and contractors to analyze, design, and repair the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 11, paragraphs 56 & 57.

**ANSWER: Paragraph 64's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 64's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations**

32

mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.

65. For the alleged defective construction of the 980 High Street Building and Access Bridges, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Group Exhibit "A", page 11, at the Wherefore clause to Count I.

**ANSWER: Paragraph 65's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 65's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

66. Duke also alleges Count II for Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that Premier Design breached its duty to exercise reasonable care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 11, paragraphs 60 & 61.

**ANSWER: Paragraph 66's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further**

33

**answering, Starr denies Paragraph 66's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

67. As a result of Premier Design's alleged breach of its duty to exercise reasonable care, Duke alleges that it has been damaged. *See* Group Exhibit "A" at page 12, paragraph 62.

**ANSWER: Paragraph 67's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 67's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

68. For the alleged negligence of Premier Design, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred. *See* Group Exhibit "A", page 12, at the Wherefore clause to Count II.

**ANSWER: Paragraph 68's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 68's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations**

34

**mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

69. Duke also alleges Count III for Professional Negligence, in the alternative, against Premier Design in Duke's Complaint, alleging that pursuant to the Contract, Premier Design agreed to provide design and engineering services to Duke. *See* Group Exhibit "A" at page 12, paragraph 65.

**ANSWER: Paragraph 69's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 69's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

70. Duke alleges that Premier Design breached its duty to exercise reasonable professional care owed to Duke in designing, engineering, constructing, and/or supervising the construction of the 980 High Street Building and the Access Bridges. *See* Group Exhibit "A" at page 12, paragraph 66.

**ANSWER: Paragraph 70's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 70's allegations that are inconsistent with the document's**

35

**text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

71.     Duke also alleges that Premier owed a duty to exercise reasonable professional care in hiring and supervising the contractors and subcontractors working on the design, engineering, and construction of the 980 High Street Building and Access Bridges to ensure that all work was done in accordance with approved plans, applicable specifications, reasonable commercial standards in Premier's respective professional industry for the construction of access bridges and warehouses, and all applicable state and local building codes, regulations, and ordinances.  *See* Group Exhibit "A" at pages 12-13, paragraph 67.

**ANSWER: Paragraph 71's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 71's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

72.     Duke alleges that Premier Design breached its duty of reasonable professional care which damaged Duke.  *See* Group Exhibit "A" at page 13, paragraphs 68 & 69.

36

**ANSWER: Paragraph 72's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 72's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

73.     For Premier Design's alleged breaches of the duty of reasonable professional care, Duke seeks compensatory damages, consequential and incidental damages, interest, costs, fees, and reasonable attorneys' fees incurred.  *See* Group Exhibit "A", at page 13, at the Wherefore clause to Count III.

**ANSWER: Paragraph 73's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 73's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

## G.     The Underlying New Jersey Action

74.     Duke seeks damages against Defendants Viridian Partners, LLC, NASDI LLC, Moretrench American Corporation, Shippee Engineering, Inc., Think Pavers, Menlo Engineering

37

Associates, Inc., SESI Consulting Engineers, Terra Contracting Services, LLC, FRM Construction Services, Jersey Essay Labs and various unknown architects, professional corporations and contractors arising out of the Defendants' alleged failure to properly design, engineer, and construct a series of Access Bridges that included concrete forms, foundational supports, retaining walls and roadway approaches at the Project. *See* Group Exhibit "A" at page 14.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 74 requires no answer. To the extent that an answer is required, Paragraph 74's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 74's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

75. Duke alleges that it is the current owner of certain parcels constituting approximately 103 acres of real property located on the Property. (Ex. "S" at 19). Duke alleges that, due to the Defendants' failures, the Access Bridges are settling, cracking, and in various states of disrepair and diminished integrity, which impacts Duke's use of the Property. Duke seeks damages for the costs associated with mitigating and repairing the damage allegedly caused by Defendants' actions. *See* Group Exhibit "A" at page 15, paragraph 3.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 75 requires no answer. To the extent that an**

**answer is required, Paragraph 75's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 75's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

76. The Amended Complaint alleges the Property was owned by Defendant Viridian, which undertook extensive remediation to initiate redevelopment efforts at the site culminating with a plan for the construction of a warehouse campus at the Property. *See* Group Exhibit "A" at page 18, paragraph 21.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 76 requires no answer. To the extent that an answer is required, Paragraph 76's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 76's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

39

77.    Viridian allegedly planned the construction of three Access Bridges to enable access to and from areas on the Project. The Access Bridges included: (i) the Northern access bridge leading to 980 High Street, Perth Amboy, New Jersey; (ii) the Eastern access bridge leading to 1000 High Street, Perth Amboy, New Jersey; and (iii) the Western access bridge leading to 1000 High Street, Perth Amboy, New Jersey. *See* Group Exhibit "A" at page 18, paragraph 23.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 77 requires no answer. To the extent that an answer is required, Paragraph 77's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 77's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

78.    The Access Bridges were allegedly constructed prior to the construction of the warehouses on the Project. Bridge Perth allegedly purchased the Property from Viridian in or about 2015, and Duke purchased the Property from Bridge Perth in or about November 2017. *See* Group Exhibit "A" at page 18, paragraphs 25 & 26.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 78 requires no answer. To the extent that an answer is required, Paragraph 78's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further**

40

**answering, Starr denies Paragraph 78's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

79. Duke alleges that the Defendants purported to review the design plans for the Access Bridges as well as oversee the construction of the Access Bridges to ensure they would perform as intended and to ensure they were built in accordance with the plans and specifications. The Northern Access Bridge is allegedly a concrete arch structure with asphalt roadway above. The Northern Access Bridge allegedly spans utility pipelines running beneath it and provides vehicle access to the warehouse located at 980 High Street, which is currently occupied by Target and used as a Distribution Center. The Eastern Access Bridge and the Western Access Bridge are allegedly concrete arch structures with asphalt roadway above. The Eastern Access Bridge and the Western Access Bridge allegedly span a drainage creek and provided vehicle access to the warehouse located at 1000 High Street. Duke alleges the Defendants entered into a contract with certain unknown design and construction contractors to work on the Access Bridges. *See* Group Exhibit "A" at page 20, paragraphs 39 & 40.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 79 requires no answer. To the extent that an answer is required, Paragraph 79's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 79's allegations that are inconsistent with the document's**

41

**text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

80.     Duke alleges the property and the soil beneath it are comprised of numerous layers of different types of materials, including a layer of artificial fill (gravel, rock, and man-made materials) and, below that, soft, organic, silty clay. Duke further alleges that heavy truck and tractor-trailer traffic over the Access Bridges at the Project was anticipated upon completion and occupancy of the warehouses, and that the Access Bridges and their foundational elements were poorly planned, poorly designed, poorly constructed, and thus not sound or fit for their purposes. *See* Group Exhibit "A" at page 19, paragraphs 42 – 44.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 80 requires no answer. To the extent that an answer is required, Paragraph 80's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 80's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

81.     These defects have allegedly led the Northern Access Bridge to suffer significant damage, including but not limited to: (i) settlement of the bridge; (ii) fractures and depressions in the asphalt roadway; (iii) cracks in the frame of the bridge; and (iv) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls, and therefore, the Northern Access Bridge allegedly remains partially closed. The Amended Complaint alleges the Eastern Access Bridge and the Western Access Bridge have also suffered damage, including but not limited to: (i) settlement of both bridges; (ii) cracks in the frame of both of the bridges; and (iii) gaps, settlement, and separation in the concrete masonry unit blocks making up the retaining walls. *See* Group Exhibit "A" at pages 19-20, paragraphs 45 – 47.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 81 requires no answer. To the extent that an answer is required, Paragraph 81's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 81's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

82.     Count I alleges a claim for Breach of Contract due to the insufficient design and construction of the Access Bridges. *See* Group Exhibit "A" at page 21, paragraph 51.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 82requires no answer. To the extent that an**

**answer is required, Paragraph 82's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 82's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

83.     Count II alleges a claim for Negligence against certain Defendants for breach of their duty to exercise reasonable care in designing, engineering, constructing, and/or supervising the construction of the Access Bridges in accordance with all approved plans, applicable specifications, reasonable commercial standards in the industry for the construction of access bridges, and all applicable state and local building codes, regulations, and ordinances. *See Group* Exhibit "A", page 22, paragraphs 57 – 59.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 83 requires no answer. To the extent that an answer is required, Paragraph 83's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 83's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information**

44

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

84.     Count III alleges a claim for Professional Negligence against certain Defendants for breaches of professional duties.  *See* Group Exhibit "A" at page 22.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 84 requires no answer. To the extent that an answer is required, Paragraph 84's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 84's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### H.     Third-Party Complaint Against Premier Group in the Underlying New Jersey Action

85.     On October 30, 2023, Solis Engineering Services, Inc., d/b/a SESI Consulting Engineers ("SESI") filed a Third-Party Complaint against Premier Group in the New Jersey Action. SESI alleges that Duke filed the Amended Complaint against various entities, including SESI, alleging defects in the three Access Bridges located at the Project. A true and correct copy of the Third-Party Complaint in the New Jersey Action is attached hereto as **Exhibit "T"**.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 85 requires no answer. To the extent that an**

45

**answer is required, Paragraph 85's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 85's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

86. SESI alleges that Premier Group was the contractor with respect to some or all of the Access Bridges at the Project which are alleged to be experiencing construction defects. Count I seeks contribution from Premier Group and the other Third-Party Defendants. Count II seeks indemnification from Premier Group and the other Third-Party Defendants. *See* Exhibit "T" at pages 16 – 17.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 86 requires no answer. To the extent that an answer is required, Paragraph 86's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 86's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

87.     SESI also alleges that Premier Group was a contractor with respect to certain work for the Eastern Access and Western Access Bridges identified in Duke's Amended Complaint. *See* Exhibit "T" at page 16, paragraph 6.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 87 requires no answer. To the extent that an answer is required, Paragraph 87's allegations reference and describe the contents of a written document that is self-defining and is the best evidence of its own contents. Further answering, Starr denies Paragraph 87's allegations that are inconsistent with the document's text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced document. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

    I.      **Subcontracts**

88.     Premier Group entered into subcontracts for work at the Project with the following:

        a. <u>DGI Menard, Inc.</u>, dated October 28, 2015 (attached hereto at **Exhibit "U".**) The subcontract requires DGI-Menard to, in part:

        Design, furnish and install a complete CMC [Controlled Modulus Columns] system for 300,000 SF over select areas of Building C.

        (Ex. "U", p. 8.)   The subcontract requires DGI-Menard to provide Premier Design with additional insured coverage.  The subcontract states in part:

        The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and

47

reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

(Ex. "U", p. 2 at paragraph 1.)  Exhibit "A" of the subcontract states in

part:

It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
            1.) Premier Design + Build Group, LLC
            2.) Premier Design + Build National, LLC
    *       *       *
The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

        *       *       *

See Exhibit "U" at page 7.

b. GMAC Construction, LLC; dated December 8, 2015 (attached hereto at **Exhibit**

"V".)  The subcontract requires GMAC Construction to provide "work and

material associated with trench foundations including excavation" for footings

at the Project, and to also provide interior flatwork.  (Ex. "W" at pp.

8-9.)  The subcontract requires GMAC Construction to provide Premier Design

with additional insured coverage.  The subcontract states in part:

The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

See Exhibit "V" at page 2.  Exhibit "A" of the subcontract states in part:

48

It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
1.) Premier Design + Build Group, LLC
2.) Premier Design + Build National, LLC
3.) Bridge Perth Amboy, LLC
4.) Bridge Development Partners, LLC
The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

\*      \*      \*

*See* Exhibit "V" at page 7.

      c. <u>Pillari Bros. Construction Corp.</u>; dated October 8, 2015 (attached hereto at and

November 1, 2017 (attached hereto at **Group Exhibit "W"**).  The October 8,

2015 subcontract requires that Pillari Bros. provide all labor, material and

equipment to complete:  Earthwork; Retaining Wall; Culvert; Paving; and Site

Utilities at the Project.  (Group Ex. "W" at pp. 8-10.)  Another requirement in

this subcontract is to "h) Provide for all placement and compaction of all of all

required site fill." *Id.* at p. 9.  The November 1, 2017 subcontract requires Pillari

Bros. to perform:  "Additional work performed and as authorized by PDBG."

(Group Ex. "W" at p. 41.)   The subcontracts require Pillari Bros. to provide

Premier Design with additional insured coverage.  The subcontracts

state in part:

The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:

a. Form Insurance Certificate (Exhibit "A"). . . ."

*See* Group Exhibit "W" at pages 2 & 35 at paragraph 1.  Exhibit "A" of the subcontracts states in

part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
> 1.) Premier Design + Build Group, LLC
> 2.) Premier Design + Build National, LLC
> 3.) Bridge Perth Amboy, LLC
> 4.) Bridge Development Partners, LLC
>
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.

*  *  *

*See* Group Exhibit "W" at pages 7 & 40.

  d. <u>SESI Consulting Engineers</u>; dated February 23, 2016 (attached hereto at **Exhibit "X".**) The subcontract requires that SESI Consulting Engineers provide site inspection services during construction to ensure that there are proper erosion and sediment controls in effective operating condition at all times. *See* Exhibit "X" at page 2. The subcontract requires SESI Consulting Engineers to provide Premier Design with additional insured coverage. The subcontract states in part:

> The ENGINEER [SESI Consulting Engineers] agrees to obtain, maintain and pay for . . . Comprehensive Liability Insurance . . . protecting the ENGINEER against claims for bodily injury or death or for damage to property occurring upon, in or about the project, with limits in amounts at least equal to those specified below and as outlined in attached 'Exhibit A':

*See* Exhibit "X" at page 8. Exhibit "A" to the subcontract states, in part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
> 1.) Premier Design + Build Group, LLC
> 2.) Premier Design + Build National, LLC . . . .

50

> \*  \*  \*
>
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.
>
> \*  \*  \*

See Exhibit "X" at page 60.

e. <u>Terra Systems, Inc.</u>; dated February 18, 2016 (attached hereto at **Exhibit "Y".**)

The subcontract requires that Terra Systems provide all labor, material and equipment (inclusive of the weight to be dropped) to complete Deep Dynamic Compaction. See Exhibit "Y" at page 8. The subcontract requires Terra Systems to provide Premier Design with additional insured coverage. The subcontract states in part:

> The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:
>
> a. Form Insurance Certificate (Exhibit "A"). . . ."

See Exhibit "Y", page 2 at paragraph 1. Exhibit "A" of the subcontract states in part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
>     1.) Premier Design + Build Group, LLC
>     2.) Premier Design + Build National, LLC . . . .
> \*  \*  \*
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.
>
> \*  \*  \*

See Exhibit "Y" at page 7.

51

f. <u>Simpson & Brown.</u>; dated August 2, 2016 (attached hereto at **Exhibit "Z".**)  The

subcontract requires that Simpson & Brown provide all labor, material, design,

skill, equipment, overhead, profit and taxes necessary to coordinate and complete

Pile Driving Scope of Work.  *See* Exhibit "Z" at page 8.  The subcontract requires

Simpson & Brown to provide Premier Design with additional insured coverage.

The subcontract states in part:

> The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:
>
> a. Form Insurance Certificate (Exhibit "A"). . . ."

*See* Exhibit "Z", page 2 at paragraph 1.  Exhibit "A" of the subcontract states in part:

> It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project:
>     1.) Premier Design + Build Group, LLC
>     2.) Premier Design + Build National, LLC . . . .
>  \*       \*        \*
> The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis.
>
>  \*        \*        \*

*See* Exhibit "Z" at page 7.

**ANSWER: Starr denies the allegations of subparagraph f of Paragraph 88. Further answering, Paragraph 88's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 88's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's**

**allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

**J.     Subcontractor Insurers' Policies**

89. The CGL Coverage Part of the Subcontractor Insurers' policies state in relevant part or similar thereto:

> **SECTION I - COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.     Insuring Agreement**
>
> > **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.  But:
> >
> > *     *     *
> >
> > **b**.            This insurance applies to 'bodily injury' and 'property damage' only if:
> >
> > *     *     *
> >
> > > **(2)** The 'bodily injury' or 'property damage' occurs during the policy period; . . .
> >
> > *     *     *

*See, e.g.*, Group Exhibit "D" at page 8.

**ANSWER: Paragraph 89's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 89's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

90.     The Subcontractor Insurers' policies contain the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement which states the following in pertinent part, or similar thereto:

<strong>SCHEDULE</strong>

| Name of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Any owners, lessee or contractors whom you have agreed to include as an additional insured under a written contract provided such was executed prior to an occurrence | All locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury",

54

> "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on you behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
>
> \*       \*       \*

*See, e.g.*, Group Exhibit "D" at page 32.

**ANSWER: Paragraph 90's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 90's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

91. The Subcontractor Insurers' policies contain the Additional Insured – Owners, Lessees or Contractors – Completed Operations endorsement which states the following in pertinent part, or similar thereto:

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|

55

| Any owners, lessees or contractors whom you have agreed to include as an additional insured under a written contract provided such was executed prior to an occurrence | All locations |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. **Section II – Who Is An Insured** is amended to include as an additional the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement

performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

*See, e.g.*, Group Exhibit "D" at page 36.

**ANSWER: Paragraph 91's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 91's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's**

**allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

92. The Subcontractor Insurers' policies contain the Additional Insured – Where Required Under Contract Or Agreement (Primary and Non-Contributory Where Required Under Contract) endorsement or similar thereto, which states the following in pertinent part, or similar thereto:

> **Section II – Who Is An Insured** is amended to include any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy. However, the insurance provided will not exceed the lesser of:
>
> a. The coverage and/or limits of this policy; or
>
> b. The coverage and/or limits required by said contract or agreement.
>
> Coverage afforded to these additional insured parties will be primary to, and Non-Contributory with, any other insurance available to that person or organization where required of you by written contract or agreement.

*See, e.g.*, Group Exhibit "D" at page 55.

**ANSWER: Paragraph 92's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 92's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information**

necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.

### K. The Amerisure Policies

93. Amerisure issued commercial general liability ("CGL") policies and umbrella liability policies to each Premier Design entity, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively "the Amerisure Policies").

**ANSWER: Paragraph 93's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 93's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

94. The Amerisure CGL Policies have a $1 Million Each Occurrence Policy Limit, a $2 Million General Aggregate Policy Limit, and a $2 Million Products-Completed Operations Aggregate Policy Limit.

**ANSWER: Paragraph 94's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 94's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information**

**necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

95.     The Amerisure Umbrella Liability Policies issued to Premier Design & Group, LLC have a $10 Million Each Occurrence Policy Limit, a $10 Million General Aggregate Policy Limit, and a $10 Million Products-Completed Operations Aggregate Policy Limit.

**ANSWER: Paragraph 95's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 95's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### 1. Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build Group, LLC

96.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build Group, LLC:

- Policy no. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;
- Policy no. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;
- Policy no. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;
- Policy no. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;
- Policy no. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;
- Policy no. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CPP 2096450802, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "AA"**.

**ANSWER: Paragraph 96's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 96's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### 2. Amerisure Mutual Insurance Company CGL Policies Issued to Premier Design & Build National, LLC

97.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier Design & Build National, LLC:

- Policy no. CPP 20978480002, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CPP 20978480102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CPP 20978480302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CPP 20978480402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CPP 20978480502, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CPP 20978480602, with a policy period of July 1, 2020 to July 1, 2021;and

- Policy no. CPP 20978480802, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "BB".**

**ANSWER: Paragraph 97's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 97's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### 3. Amerisure Insurance Company Umbrella Policies Issued to Premier Design & Build Group, LLC

98.     The Umbrella Liability Policies issued to Premier Design & Build Group, LLC by Amerisure Insurance Company include:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "CC"**.

**ANSWER: Paragraph 98's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents.**

61

**Further answering, Starr denies Paragraph 98's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### 4. Amerisure Mutual Insurance Company Umbrella Policy Issued to Premier Design & Build National, LLC

99. The Umbrella Liability Policies issued to Premier Design & Build National, LLC by Amerisure Mutual Insurance Company is the following:

- Policy no. CU 20978490002, with a policy period of July 1, 2015 to July 1, 2016;

- Policy no. CU 20978490102, with a policy period of July 1, 2016 to July 1, 2017;

- Policy no. CU 20978490202, with a policy period of July 1, 2017 to July 1, 2018;

- Policy no. CU 20978490302, with a policy period of July 1, 2018 to July 1, 2019;

- Policy no. CU 20978490402, with a policy period of July 1, 2019 to July 1, 2020;

- Policy no. CU 20978490502, with a policy period of July 1, 2020 to July 1, 2021;

- Policy no. CU 20978490602, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy no. CU 20978490702, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "DD"**.

**ANSWER: Paragraph 99's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 99's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's**

62

**allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

100.    The CGL Coverage Part of the CGL Policies states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.      Insuring Agreement**

**a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.  But:
                *       *       *

**b**.              This insurance applies to 'bodily injury' and 'property damage' only if:

                *       *       *

**(2)** The 'bodily injury' or 'property damage' occurs during the policy period; . . .

                *       *       *

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.*, Exhibit "AA-1" at page 154.

**ANSWER: Paragraph 100's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents.**

**Further answering, Starr denies Paragraph 100's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

101. The CGL portion of the Amerisure CGL Policies include a Definitions section, which in part includes the following definitions:

> **8.** 'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because:
>
> > **a.** It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
> >
> > **b.** You have failed to fulfill the terms of a contract or agreement\'
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement.

*     *     *

> **13.** 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*     *     *

> **17.** 'Property damage' means:
>
> > **b.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> >
> > **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. 'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*     *     *

21. 'Your product'

    a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a) You;

        (b) Others trading under your name; or

        (c) A person or organization whose business or assets you have acquired; or

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. 'Your work':

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

**(2)** The providing of or failure to provide warnings or instructions.

*See G*roup Exhibit "AA" and Group Exhibit "BB", *e.g.* Exhibit "AA-1" at pages 166, 168-69.

**ANSWER: Paragraph 101's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 101's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

66

102. The Amerisure Policies include a Condition titled "Transfer Of Rights Of Recovery Against Others To Us" which states as follows:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them.

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.* Exhibit "AA-1" at page 166, and Group Exhibit "CC" and Group Exhibit "DD", *e.g.*, Exhibit "CC-1" at page 97.

**ANSWER: Paragraph 102's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 102's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

103. The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**     **Insuring Agreement**

        **a.** We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the

> right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply….

> \* \* \*

> **c.** This insurance applies to 'bodily injury' and 'property damage' only if:

> \* \* \*

> **(2)** The 'bodily injury' or 'property damage' occurs during the policy period…

> \* \* \*

*See* Group Exhibit "CC" and Group Exhibit "DD", *e.g.* Exhibit "CC-1" at page 19.

**ANSWER: Paragraph 103's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 103's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

104. The above-referenced Definitions in the CGL Policies and set forth in Paragraph 100 are included in the Umbrella Liability Policies either verbatim or in substantially similar form. The Umbrella Liability Policies also include the following Definitions:

> **19.** 'Retained Limit' means the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention', whichever applies.

20.     'Self-insured retention' means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to 'occurrences' or offenses not covered by the 'underlying insurance'. The 'self-insured retention' does not apply to 'occurrences' or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.

*        *        *

23.     'Ultimate net loss' means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent.

24.     'Underlying insurance' means any policies of insurance listed in the Declarations under Schedule of 'underlying insurance'.

25.     'Underlying insurer' means any insurer who provides any policy of insurance listed in the Schedule of 'underlying insurance'.

*See* Group Exhibit "CC" and Group Exhibit "DD", *e.g.*, Exhibit "CC-1" at pages 35 & 36.

**ANSWER: Paragraph 104's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 104's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

105.    The Amerisure Policies include the Damage To Impaired Property Or Property Not Physically Injured exclusion, which excludes coverage to:

'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

69

**(1)** A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

*See* Group Exhibits "AA" through "DD", *e.g.*, Exhibit "AA-1" at page 158.

**ANSWER: Paragraph 105's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 105's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

106. The Amerisure Policies include the Exclusion – Contractors – Professional Liability endorsement[5], which states:

The following exclusion is added to Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to 'bodily injury', 'property damage' or

---

[5] The Amerisure Umbrella Liability Policies include the Professional Services exclusion which is similar to the Professional Liability exclusion. *See, e.g.*, Exhibit "BB-1" at page 23.

'personal and advertising injury' arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*See* Group Exhibits "AA" through "DD", *e.g.*, Exhibit "AA-1" at page 180.

**ANSWER: Paragraph 106's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 106's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's**

71

**allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

107.     The Amerisure Policies also include the Exclusion – Construction Management Errors and Omissions endorsement, which states:

> The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability….**
>
> This insurance does not apply to . . . "property damage" . . . arising out of:
>
> **1.**     The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or
>
> **2.**     Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved that which is described in Paragraph **1. or 2**.
>
> This exclusion does not apply to 'bodily injury' or 'property damage' due to construction or demolition work done by you, your 'employees' or your subcontractors.

*See* Group Exhibits "AA" through "DD", *e.g.*, Exhibit "AA-1" at page 179.

**ANSWER: Paragraph 107's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents.**

**Further answering, Starr denies Paragraph 107's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

| L. | Amerisure's Coverage Position Letters to Premier Design in Connection with the Underlying Illinois Action |

108. Amerisure initially denied coverage to Premier Design, but after reconsideration agreed to defend Premier Design under a reservation of rights including to assertion of an excess position as to any coverage owed to Premier Design.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 108's allegations, and thus denies same.**

109. A determination of whether Amerisure owes Premier Design a duty to indemnify is premature and unripe until resolution of the Underlying Action, which is currently ongoing. Amerisure reserves a determination of the duty to indemnify until the Underlying Action is resolved.

**ANSWER: Paragraph 109 consists of legal conclusions and thus requires no response. To the extent that a response is required, Starr admits that there is currently no ripe dispute regarding the duty to indemnify the Premier Entities in the Underlying Illinois Action. Further answering, lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 109's remaining allegations, and thus denies same.**

110.    Amerisure has paid more than $75,000 to date for the defense of Premier Design in the Underlying Action, which Amerisure seeks to recover.

**ANSWER: Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of Paragraph 110's allegations, and thus denies same.**

### M. Amerisure's Tenders Regarding the Underlying Illinois Action to Subcontractors and Their Insurers and Responses to the Tenders

111.    On January 16, 2024, Amerisure sent tender letters to the following subcontractors, demanding that they defend and indemnify Premier Design pursuant to their subcontracts with Premier Design and requesting that they forward copies of the letters to their insurers:

    a.    DGI-Menard, Inc.

    b.    GMAC Construction, LLC

    c.    Pillari Bros. Construction Corp.

    d.    Terra Systems, Inc.

*See* the four tender letters referenced above at **Group Exhibit "EE"**.

**ANSWER: Paragraph 111's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 111's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

74

112.    On February 1, 2024, Amerisure sent a tender letter to Premier Design subcontractor SESI Consulting Engineers, demanding that it defend and indemnify Premier Design pursuant to its subcontract with Premier Design and requesting that it forward a copy of the letter to its insurer(s).  CNA, which issued policies to SESI Consulting Engineers as named insured, responded with correspondence dated February 26, 2024, denying any coverage.  A copy of the February 1, 2024 tender and February 26, 2024 response are attached hereto at **Group Exhibit "FF"**.

**ANSWER: Paragraph 112's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 112's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

113.    On March 7, 2024, Amerisure sent the following tenders, which were follow-ups to Amerisure's January 16, 2024 tenders and to the prior responses to Premier Design's tenders from insurers that agreed to defend Premier Design as indicated below:

    a.    To Harleysville, which insured GMAC Construction;

    b.    To Selective, which insured GMAC Construction;

    c.    To Gallagher Bassett Services, Inc. as third party administrator for Old  Republic, which insured Pillari Bros. Construction Corp.;

    d.    To Allied World, which insured Terra Systems;

e.       To counsel for American Family Home, which insured Pillari Bros. Construction Corp. and indicated it will provide Premier Design with a defense, requesting that American Family Home confirm that it will provide Premier Design with primary coverage;

f.       To Vela Insurance Services as third party administrator for Gemini, which insured Terra Systems and indicated it will provide Premier Design with a defense, requesting that Gemini confirm that it will provide Premier Design with primary coverage; and

g.       To Zurich, which insured DGI-Menard and indicated it will provide Premier Design with a defense, requesting that Zurich confirm that it will provide Premier Design with primary coverage.

Copies of these letters are attached hereto at **Group Exhibit "GG"**.

**ANSWER: Paragraph 113's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 113's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

114.    Amerisure received various responses to its tenders to the Premier Design subcontractors and their insurers, including:

76

a.      Dated April 19, 2024 from counsel for Harleysville, which insured GMAC Construction, denying coverage for Premier Design; and

b.      Dated March 21, 2024 from Gallagher Bassett Services, Inc. as third party  administrator  for  Old  Republic,  which  insured  Pillari Bros.,  denying coverage for Premier Design.

c.      Dated April 15, 2024 from Gallagher Bassett Services, Inc. as third party administrator for American Family Home, which insured Pillari Bros., stating that American Family agrees to participate in the defense of Premier Design Group in the New Jersey action under a reservation of rights.

Copies of these letters are attached hereto at **Group Exhibit "HH"**.

**ANSWER: Paragraph 114's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 114's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

**N.      Subcontractor Insurer Responses to Tenders Regarding the Underlying Illinois Action from Premier Design**

115. Premier Design issued tenders for its defense and indemnity to several of its subcontractors with the following responses:

a.      Gemini, dated September 15, 2023, which issued a policy to Terra

77

Systems, Inc. as named insured, in which Gemini agreed to provide a defense to Premier Design in the Duke Lawsuit. A copy of the September 15, 2023 correspondence is attached hereto at **Exhibit "II"**.

b. Selective, dated February 21, 2023, which issued a policy to GMAC Construction, LLC as named insured, in which Selective requested additional information to respond to the tender. A copy of the February 21, 2023 correspondence is attached hereto at **Exhibit "JJ"**.

c. Zurich, dated September 26, 2023, which issued policies to DGI Menard, Inc. as named insured, in which Zurich agreed to provide a defense to Premier Design in the Duke Lawsuit. A copy of the September 26, 2023 correspondence is attached hereto at **Exhibit "KK"**.

d. Harleysville, dated March 28, 2023, which issued policies to GMAC Construction, LLC as named insured, in which Harleysville denied a duty to defend or indemnify Premier Design as an additional insured. A copy of the March 28, 2023 correspondence is attached hereto at **Exhibit "LL"**.

e. Old Republic, dated September 1, 2023 and September 20, 2023, which issued a policy to Pillari Bros. Construction Corp. as named insured, in which Old Republic denied any additional insured coverage to Premier Design. A copy of the September 1, 2023 and September 20, 2023 correspondence is attached hereto as **Group Exhibit "MM".**

f. Allied World, dated September 25, 2023, which issued a policy to Terra Systems, Inc. as named insured, in which Allied World denied a duty to defend or indemnify Premier Design as an additional insured. A copy of the September 25, 2023 correspondence is attached hereto at **Exhibit "NN"**.

**ANSWER: Paragraph 115's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 115's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

### O. Amerisure's Tenders Regarding the Underlying New Jersey Action to Subcontractors and Their Insurers and Responses to the Tenders

116. On May 13, 2024, Amerisure sent tender letters to the following subcontractors and their insurers, demanding that they defend and indemnify Premier Design in the Underlying New Jersey Action and reimburse Amerisure for the amounts incurred in the defense of Premier Design in the Underlying New Jersey Action, pursuant to the subcontractors' subcontracts with Premier Design and their insurers' policies:

      a.      GMAC Construction, LLC; Selective; and Harleysville

      b.      Pillari Bros. Construction Corp.; AFHIC; and Old Republic

*See* the two tender letters referenced above at **Group Exhibit "OO"**.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 116 requires no answer. To the extent that an answer is required, Paragraph 116's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 116's allegations that are inconsistent with the**

79

**documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

117. On April 15, 2024, Gallagher Bassett, on behalf of AFHIC responded to Premier Group's tender of the Underlying New Jersey Action, stating that AFHIC agrees to defend Premier Group in that action under AFHIC policy number 88A5GL00000467 issued to Pillari Bros. Construction Corp. A copy of this correspondence is attached hereto at **Exhibit "PP"**. AFHIC has not taken over the defense of Premier Design in the Underlying New Jersey Action to date.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 117 requires no answer. To the extent that an answer is required, Paragraph 117's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 117's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

## COUNT I THE SUBCONTRACTOR INSURERS OWE PREMIER DESIGN A PRIMARY AND NON-CONTRIBUTORY DEFENSE IN THE UNDERLYING ILLINOIS ACTION

118. Amerisure incorporates the allegations set forth within Paragraphs 1 through 117

80

as if fully set forth herein.

**ANSWER: Starr restates and incorporates by reference its answers to Paragraphs 1 through 117, inclusive, as though fully set forth herein.**

119. Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage. The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

    a.      DGI-Menard, Inc.

    b.      GMAC Construction, LLC

    c.      Pillari Bros. Construction Corp.

    d.      SESI Consulting Engineers

    e.      Terra Systems, Inc.

    f.      Simpson & Brown, Inc.

*See* the Subcontracts attached hereto at Exhibit "U", Exhibit "V", Exhibit "W", Exhibit "X", Exhibit "Y" and Exhibit "Z".

**ANSWER: Paragraph 119 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies the allegations of subparagraph f. of Paragraph 119. Further answering, Paragraph 119's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 119's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

120. The Additional Insured endorsements of the Subcontractor Insurers' policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

**ANSWER: Paragraph 120 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies the Paragraph's allegations to the extent they allege Starr owes any defense or indemnity obligation to the Premier Entities. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

121. The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)** This insurance is excess over:

*       *       *

82

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.*, Exhibit "AA-1" at page 165.

**ANSWER: Paragraph 121's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 121's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

122. By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the Subcontractor Insurers' policies, and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Illinois Action.

**ANSWER: Paragraph 122 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies that it owes the Premier Entities any defense in the Underlying Illinois Action. Further answering, Paragraph 122's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 122's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations**

**mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

WHEREFORE, Defendant, Starr Indemnity and Liability Company, denies that it is liable to Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company in any amount and respectfully requests this Honorable Court dismiss all claims against Starr Indemnity and Liability Company and that Starr Indemnity and Liability be awarded its costs herein.

<u>**COUNT II**</u>
<u>**THE SUBCONTRACTOR INSURERS OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE HAS INCURRED IN THE DEFENSE OF PREMIER DESIGN IN THE UNDERLYING ILLINOIS ACTION**</u>

123.    Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

**ANSWER: Starr restates and incorporates by reference its answers to Paragraphs 1 through 117, inclusive, as though fully set forth herein.**

124.    Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage.  The Subcontracts state, in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements:  a. Form Insurance Certificate (Exhibit

"A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

     a.     DGI-Menard, Inc.

     b.     GMAC Construction, LLC

     c.     Pillari Bros. Construction Corp.

     d.     SESI Consulting Engineers

     e.     Terra Systems, Inc.

     f.     Simpson & Brown, Inc.

*See* the Subcontracts attached hereto at Exhibit "U", Exhibit "V", Exhibit "W", Exhibit "X", Exhibit "Y", and Exhibit "Z".

**ANSWER: Paragraph 124 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies the allegations of subparagraph f. of Paragraph 124. Further answering, Paragraph 124's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 124's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form**

85

**a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

125. The Additional Insured endorsements of the Subcontractor Insurers' policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

**ANSWER: Paragraph 125 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies that it owes defense to the Premier Entities. Further answering, Paragraph 125's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 125's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

126. The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)** This insurance is excess over:

\*        \*        \*

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and

completed operations, for which you have been added as an additional insured.

86

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.* Exhibit "AA-1" at page 165.

**ANSWER: Paragraph 126's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 126's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

127. By operation of the Subcontracts, the Additional Insured and Primary and Non Contributory endorsements of the Subcontractor Insurers' policies, and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Illinois Action.

**ANSWER: Paragraph 127 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies that it owes the Premier Entities any defense in the Underlying Illinois Action. Further answering, Paragraph 127's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 127's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information**

87

necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.

128. Amerisure has provided a defense to Premier Design in the Underlying Illinois Action that should have been provided by the Subcontractor Insurers.

**ANSWER: Paragraph 128 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies that it "should have…provided" any defense to the Premier Entities in the Underlying Illinois Action. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

129. Amerisure is entitled, as subrogee of Premier Design, to reimbursement of the amounts it has incurred in the defense of Premier Design in the Underlying Illinois Action from the Subcontractor Insurers which each owes a primary duty to defend Premier Design in the Underlying Action.

**ANSWER: Paragraph 129 contains legal conclusions to which no response is required. Further answering, to the extent that a response is required, Starr denies that Amerisure is entitled, as subrogee of the Premier Entities, to reimbursement from Starr of any amounts Amerisure has incurred or will incur in the defense of Premier Design in the Underlying Illinois Action. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

**WHEREFORE**, Defendant, Starr Indemnity and Liability Company, denies that it is liable to Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company in

any amount and respectfully requests this Honorable Court dismiss all claims against Starr Indemnity and Liability Company and that Starr Indemnity and Liability be awarded its costs herein.

**COUNT III**

**AFHIC, CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, HARLEYSVILLE, OLD REPUBLIC, SELECTIVE, SELECTIVE FIRE, AND STARR OWE PREMIER DESIGN A PRIMARY AND NON-CONTRIBUTORY DEFENSE IN THE UNDERLYING NEW JERSEY ACTION**

130. Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 130 requires no answer. To the extent that an answer is required, Starr restates and incorporates by reference its answers to Paragraphs 1 through 117, inclusive, as though fully set forth herein.**

131. Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage. The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build

Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the

Additional Insureds is on a Primary and Non-Contributory basis."

      a.      GMAC Construction, LLC

      b.      Pillari Bros. Construction Corp.

      c.      SESI Consulting Engineers, Inc.

      d.      Simpson & Brown, Inc.

*See* the Subcontracts attached hereto at Exhibits "V" at page 7, "W" at page 7, "X" at page 8, and "Z" at page 7.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 131 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies the allegations of subparagraph d. of Paragraph 131. Further answering, Paragraph 131's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 131's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

132.    The Additional Insured endorsements of the AFHIC, Continental Insurance

Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr policies provide additional insured coverage to Premier Design when required in a written contract, (*see, e.g.,* Exhibit "E", at page 58; Exhibit "F-1" at page 164; Exhibit "G-1" at page 165; Exhibit "J-2" at page 47; Exhibit "K-1" at page 24; Exhibit "L-1" at page 31; Exhibit "M" at page 72; Exhibit "N" at page 197; and Exhibit "O-1" at page 119), and the coverage is on a primary and noncontributory basis (*see, e.g.*, Exhibit "E" at page 57; Exhibit "F-1" at page 164; Exhibit "G-1" at page 165; Exhibit "J-1" at page 38; Exhibit "K-1" at page 65; Exhibit "L-1" at page 78; Exhibit "M" at page 63; Exhibit "N" at page 223; Exhibit "O-1" at page 120).

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 132 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that the Premier Entities are entitled to additional insured coverage for any of the relevant underlying actions (i.e., the Underlying Illinois Action or the Underlying New Jersey Action). Further answering, Paragraph 132's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 132's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

91

133. The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)** This insurance is excess over:

\*     \*     \*

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.*, Exhibit "AA-1" at page 165.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, no response to Paragraph 133 is required. To the extent that a response is required, Paragraph 133's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 133's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same**

134. By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the policies of AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr and the Other Insurance Condition of the Amerisure Policies,

AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr, owe Premier Design a primary and non-contributory defense in the Underlying New Jersey Action.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 134 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that it owes the Premier Entities any defense in the Underlying New Jersey Action. Further answering, Paragraph 134's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 134's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

**WHEREFORE**, Defendant, Starr Indemnity and Liability Company, denies that it is liable to Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company in any amount and respectfully requests this Honorable Court dismiss all claims against Starr Indemnity and Liability Company and that Starr Indemnity and Liability be awarded its costs herein.

<u>**COUNT IV**</u>
<u>**AFHIC, CONTINENTAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, HARLEYSVILLE, OLD REPUBLIC, SELECTIVE, SELECTIVE FIRE, AND STARR OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE**</u>

93

### <u>HAS INCURRED IN THE DEFENSE OF PREMIER DESIGN IN THE <u>UNDERLYING NEW JERSEY ACTION</u></u>

135. Amerisure incorporates the allegations set forth within Paragraphs 1 through 117 as if fully set forth herein.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, Paragraph 135 requires no answer. To the extent that an answer is required, Starr restates and incorporates by reference its answers to Paragraphs 1 through 117, inclusive, as though fully set forth herein.**

136. Each of the Subcontracts that the following Subcontractors entered into with Premier Design Group require the Subcontractors to provide Premier Design with additional insured coverage. The Subcontracts state in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." Exhibit "A" states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."

      a.     GMAC Construction, LLC

      b.     Pillari Bros. Construction Corp.

      c.     SESI Consulting Engineers, Inc.

      d.     Simpson & Brown, Inc.

*See* the Subcontracts attached hereto at Exhibits "V" at page 7, "W" at page 7, "X" at page 8, and "Z" at page 7.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 136 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies the allegations of subparagraph d. of Paragraph 136. Further answering, Paragraph 136's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 136's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

137. The Additional Insured endorsements of the AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr policies provide additional insured coverage to Premier Design on a primary and noncontributory basis.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 137 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that it owes the Premier Entities any defense in the Underlying New Jersey Action. Further answering, Paragraph 137's allegations reference and describe the contents of**

95

**written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 137's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

138. The Amerisure Policies include the Other Insurance Condition which states in part:

**(1)** This insurance is excess over:

\*　　　\*　　　\*

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*See* Group Exhibit "AA" and Group Exhibit "BB", *e.g.* Exhibit "AA-1" at page 165.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 138 contains legal conclusions, no response is required. To the extent a response is required, Paragraph 138's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 138's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further**

**answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same**

139. By operation of the Subcontracts, the Additional Insured endorsements and the Primary and Non-Contributory endorsements of the policies of AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr, and the Other Insurance Condition of the Amerisure Policies, AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and upon information and belief Starr, owe Premier Design a primary and non-contributory defense in the Underlying New Jersey Action.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 139 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that it owes the Premier Entities any defense in the Underlying New Jersey Action. Further answering, Paragraph 139's allegations reference and describe the contents of written documents that are each self-defining and are the best evidence of their own contents. Further answering, Starr denies Paragraph 139's allegations that are inconsistent with the documents' text, and denies the Paragraph's allegations to the extent any of the Paragraph's allegations mischaracterize, misstate, misquote, or otherwise conflict with the plain language of the referenced documents. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

140. Amerisure has provided a defense to Premier Design in the Underlying New Jersey

Action that should have been provided by AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and Starr.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 140 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that it "should have…provided" any defense to the Premier Entities in the Underlying New Jersey Action. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

141. Amerisure is entitled, as subrogee of Premier Design, to reimbursement of the amounts it has incurred in the defense of Premier Design in the Underlying New Jersey Action from AFHIC, Continental Insurance Company, Continental Casualty Company, Harleysville, Old Republic, Selective, Selective Fire, and Starr, each of which owes a primary duty to defend Premier Design in the Underlying New Jersey Action.

**ANSWER: Because Plaintiffs do not seek any relief against Starr arising out of the Underlying New Jersey Action, and because Paragraph 141 contains legal conclusions, no response is required. Further answering, to the extent that a response is required, Starr denies that Amerisure is entitled, as subrogee of the Premier Entities, to reimbursement from Starr of any amounts Amerisure has incurred or will incur in the defense of Premier Design in the Underlying New Jersey Action. Further answering, Starr lacks the knowledge or information necessary to form a belief as to the truth or falsity of the Paragraph's remaining allegations, and thus denies same.**

**WHEREFORE**, Defendant, Starr Indemnity and Liability Company, denies that it is liable to Plaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company in any amount and respectfully requests this Honorable Court dismiss all claims against Starr Indemnity and Liability Company and that Starr Indemnity and Liability be awarded its costs herein.

## STARR INDEMNITY AND LIABILITY COMPANY'S AFFIRMATIVE DEFENSES

NOW COMES Defendant, Starr Indemnity & Liability Company ("Starr"), by and through its counsel, Lindemann Miller Bowen, LLP, and for its affirmative defenses to Plaintiffs' Third Amended Complaint, states as follows:

## PRELIMINARY STATEMENT

Starr asserts the following affirmative defenses to notify Plaintiffs and Co-Defendants of Starr's potential defenses to Plaintiffs' claims and other bases which may preclude all or some of the recovery sought by Plaintiffs. By asserting the following defenses and bases, Starr does not voluntarily assume any burdens of proof on any issue upon which Plaintiffs and/or Co-Defendants bear the burden of proof under applicable law. Starr reserves the right to amend, delete, and/or add to the following defenses and bases.

## ALLEGATIONS COMMON TO ALL AFFIRMATIVE DEFENSES

1. Starr realleges, reaffirms, and incorporates by reference its answers and responses to Plaintiffs' Third Amended Complaint ("Complaint") as though set forth herein in full.

2. Starr issued certain potentially relevant primary insurance policies to its Named Insured, Simpson & Brown, Inc. under Policy No. MASILBN00018416, effective March 1, 2016 to March 1, 2017 and renewed via certificates and modified via endorsements in subsequent years

through the policy period of March 1, 2021 through March 1, 2022 under policy numbers MASILBN00018417, MASILBN00018418, MASILBN00018419, MASILBN00018420, and MASILBN00018421 (collectively, the "Starr Primary Policies"). Attached hereto as Group Exhibit 1 are true and correct copies of the Starr Primary Policies as they are kept in Starr's files. [6, 7]

3. Starr issued certain potentially relevant bumbershoot insurance policies to its Named Insured, Simpson & Brown, Inc. under Policy No. MASILBN00018516, effective March 1, 2016 to March 1, 2017, renewed via certificates and modified via endorsements through the policy period of March 1, 2020 through March 1, 2021 under policy numbers MASILBN00018517, MASILBN00018518, MASILBN00018519, and MASILBN00018520 (collectively, the "Starr Bumbershoot Policies"). Attached hereto as Group Exhibit 2 are true and correct copies of the Starr Bumbershoot Policies as they are kept in Starr's files. [8]

---

[6] The Starr Primary Policies and Starr Bumbershoot Policies are, together, collectively referred to herein as the "Starr Policies."

[7] Starr did not always re-issue coverage forms in certain policy years, instead issuing renewal certificates and endorsements as needed. And, note that certain of the endorsements to the Starr Primary Policies were not issued with sequential endorsement numbers. For example, Endorsement 24 to the 2016-17 Starr Primary Policy is an annual earned premium endorsement that is, by its nature, issued *after* the policy period (*see* Grp. Ex. 1 at STARR00052). Thus, Endorsement 24 to the 2016-17 Starr Primary Policy is effective on March 1, 2016 and endorses the 2016-17 Starr Primary Policy, even though the 2017-18 Starr Primary Policy contains Endorsements 21 through 23. In the following policy year, Starr altered its practice, and thus Endorsement 24 to the 2017-18 Starr Primary Policy is effective on March 1, 2017, endorses the 2017-18 Starr Primary Policy, and addresses earned premium calculations for the 2017-18 Starr Primary Policy (*see* Grp. Ex. 1 at STARR00059). And, please note that due to scrivener's error, Starr issued duplicate endorsements in certain years. This includes issuing two Endorsement 18s to the 2016-17 Starr Primary Policy. Both are in effect and form part of the relevant Starr Policy, as they insure different risks—one involving a project at a Costco (Grp. Ex. 1 at STARR00049) the other involving a dunes project involving the State of New Jersey (Grp. Ex. 1 at STARR00050). Similarly, Starr inadvertently issued two Endorsement 19s to the 2019-20 Starr Primary Policy, both of which are in effect and form part of the relevant Starr Policy, as they address different terms and risk—one alters the Starr Primary Policy's premium and reporting provisions (Grp. Ex. 1 at STARR00109), while the other specifically addresses Simpson & Brown's MMP White Plains Project (Grp. Ex. 1 at STARR00166).

[8] For the 2019-20 Starr Policies, after Starr issued renewal certificates and endorsements, Simpson & Brown requested issuance of a full policy at the request of a project owner. Thus, in the 2019-20 policy years, there are both renewal certificates and full coverage forms for the Starr Policies.

4. For purposes of these Affirmative Defenses, Starr assumes *arguendo* that the document attached to Plaintiffs' Third Amended Complaint as Exhibit Z is in fact a true and correct copy of the subcontract between Premier Design + Build Group, LLC and Simpson & Brown, Inc., ("Subcontract"). *See* Plaintiffs' Third Amended Complaint at Ex. Z, ECF. No. 181-36.

### First Affirmative Defense: Failure to State a Claim

5. Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense: Not a Named Insured

6. The Starr Policies do not afford coverage to Premier Design + Build, LLC or Premier Design + Build National, LLC (collectively, the "Premier Entities") as a Named Insured, and thus Starr has no liability to Plaintiffs.

### Third Affirmative Defense: Not an Additional Insured

7. The Starr Policies do not afford coverage to the Premier Entities as additional insureds, and thus Starr has no liability to Plaintiffs.

### Fourth Affirmative Defense: Insuring Agreements

8. Per the Insuring Agreements of the Starr Primary Policies' Commercial Marine Liability Coverage Form at §1.1.b, the Starr Primary Policies do not afford coverage to the extent there is not an "occurrence" which takes place during the relevant policy period of any of the Starr Primary Policies' policy periods that causes "property damage" as those terms are defined by the Starr Primary Policies.

9. Moreover, per the Starr Bumbershoot Policies' Insuring Agreements at §I(c) as modified by the Starr Bumbershoot Policies' Amendments to Standard Bumbershoot Wording at paragraph 1, the Starr Bumbershoot Policies similarly afford no coverage to the extent there is not

an "occurrence" that takes place during the relevant policy period of any of the Starr Bumbershoot policies that causes "property damage" as those terms are defined by the Starr Bumbershoot Policies.

## Fifth Affirmative Defense: Occurrence Definition and Continuing or Progressively Deteriorating Damage

10.    The Starr Primary Policies define "occurrence" at §8.14 as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commences.

*See* Starr Primary Policies at §8.14.

11.    To the extent that there exists a relevant "occurrence" that caused "property damage" during the policy period of any of the Starr Primary Policies, and which involved or involves continuing or progressively deteriorating damage over any length of time—such as, e.g., the damage alleged in the Underlying Actions—all such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commenced.

## Sixth Affirmative Defense Premier Design + Build National is Not Party to Alleged Subcontract's Indemnity Provisions

12.    Plaintiffs' Complaint alleges that the Subcontract requires Simpson & Brown—and thus Starr— to defend, indemnify, and insure the Premier Entities for the Underlying Lawsuits.

13.    Plaintiffs assert no extracontractual claims against Starr.

14.    All of Plaintiffs' claims thus require a valid and enforceable contract between and/or among the Premier Entities and Simpson & Brown.

102

15.     Plaintiffs allege the Subcontract is such a valid and enforceable contract.

16.     The Subcontract's Clauses 6, 7, 8, and 9 address potential insurance and indemnity obligations. *See* Subcontract, ECF. No. 181-36, at pp. 2-3.

17.     But, Subcontract Clauses 6, 7, 8, and 9 only reference potential insurance and indemnity obligations flowing from Simpson & Brown  (defined as the "Subcontractor" on page 1 of the Subcontract) to Premier Design + Build Group, LLC (defined as the "Construction Manager" on page 1 of the Subcontract). *See* Subcontract, ECF. No. 181-36, at pp. 2-3.

18.     The Subcontract's plain text does not contemplate any insurance or indemnity obligation flowing from Simpson & Brown to Premier Design + Build National, LLC (defined as the "Contractor" on page 1 of the Subcontract). *See id.*

19.     Because all of Simpson & Brown's relevant alleged Subcontract obligations regarding indemnity and insurance allegedly inure only to Premier Design + Build <u>Group</u>, LLC's benefit, there can be no coverage under any of the Starr Policies for Premier Design + Build <u>National</u>, LLC.

<u>**Seventh Affirmative Defense: Known Loss**</u>

20.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Policies will not provide coverage for any "property damage" that was known to the Premier Entities prior to the effective date of each specific Starr Policy because any "property damage" known to an insured prior to the inception of a Starr Policy would constitute an uninsurable known loss under that Starr Policy.

<u>**Eighth Affirmative Defense: Loss in Progress**</u>

21.     To the extent any claims for "property damage" (as that term is defined by the

103

relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Policies will not provide coverage for any such "property damage" that began prior to the inception of any specific Starr Policy because coverage for any "property damage" that was already ongoing at the inception of any such Starr Policy is barred by the loss in progress doctrine.

### Ninth Affirmative Defense: No Defense Obligation in Subcontract's Clause 9

22.     To the extent that Plaintiffs' claims rely on the Subcontract's Clause 9 to claim that Starr owes a defense obligation to Plaintiffs' insureds, Clause 9 contains no such obligation.

### Tenth Affirmative Defense: Expected or Intended Injury

23.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Policies will not provide coverage for any "property damage" that was expected or intended from the standpoint of any relevant assured. *See, e.g.,* Starr Primary Policies at §1.2.a.

### Eleventh Affirmative Defense: Contractual Liability Exclusions

24.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Policies will not provide coverage for any such "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, subject to the exceptions set forth in the Contractual Liability Exclusions found at §1.2.b of the Starr Primary Policies and at §I.(d) of the Starr Bumbershoot Policies' Supplementary Clauses.

25.     Similarly, to the extent the Court finds any relevant contractual liability coverage under the Starr Bumbershoot Policies, which there is not, said coverage would only ever attach

upon exhaustion of the relevant underlying insurance, which has not occurred. *See* Starr Bumbershoot Policies at Endt. 1, Bumbershoot Follow Form Provisions, Paragraph 2, titled "Contractual Liability."

### Twelfth Affirmative Defense: Damage to Property (Primary)

26.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies will not provide coverage for any such "property damage" to:

a.  [t]hat particular part of real property on which the Assured or any contractors or subcontractors working directly or indirectly on the Assured's behalf are performing operations, if the "property damage" arises out of those operations [Starr Primary Policies at §1.2.i.(5)];

or,

b.  [t]hat particular part of any property that must be restored, repaired or replaced because the Assured's work'," [as that term is defined by the Starr Primary Policies] was incorrectly performed on it, [unless] the "property damage" [is] included in the products-completed operations hazard [as that those terms are defined by the Starr Primary Policies]. *See* Starr Primary Policies at §1.2.i.(6).

### Thirteenth Affirmative Defense: Assured's Products and Property (Bumbershoot)

27.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Bumbershoot Policies will not provide coverage for any such "property damage" or expense arising from "the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Assured except with respect to. . . property damage as a result of said failure provided such property damage . . .is insured in an underlying

policy scheduled hereon." *See* Bumbershoot Policies' Supplementary Clauses at §II.(f).

28. Because such property damage is not insured by the Starr Primary Policies, the Starr Bumbershoot Policies likewise provide no coverage for the failure of the Assured's products or work.

**Fourteenth Affirmative Defense: Damage to Assured's Product (Primary)**

29. To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies will not provide coverage for any such "property damage" to "the Assured's product" (as that term is defined by the Starr Primary Policies) arising out "the Assured's product" of it or any part of it. *See* Star Primary Policies at §1.2.j.

**Fifteenth Affirmative Defense: Damage to Assured's Work (Primary)**

30. To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies will not provide coverage for any such "property damage" to "the Assured's work" (as that term is defined by the Starr Primary Policies) arising out of it or any part of it and included in the products-completed operations hazard (as that term is defined by the Starr Primary Policies), unless the damaged work or the work out of which the damage arises was performed on the Assured's behalf by a subcontractor. *See* Star Primary Policies at §1.2.k.

**Sixteenth Affirmative Defense: Liability Arising from Assured's Operations (Bumbershoot)**

28. To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Bumbershoot Policies will not provide coverage for any such "property damage"

106

or expense arising out of:

> …operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Assured; provided that operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement…

unless "coverage is provided in an underlying policy scheduled hereon." *See* Starr Bumbershoot Policies' Supplementary Clauses at §I.(f).

29.    Even if the Court holds that coverage is provided by the Starr Primary Policies, which it is not, coverage under the Starr Bumbershoot Policies "shall only operate as excess of such" underlying coverage scheduled on the Starr Bumbershoot Policies (i.e., the Starr Primary Policies). *See* Starr Bumbershoot Policies' Supplementary Clauses at §I.(f).

**Seventeenth Affirmative Defense: Damage to Impaired Property (Primary)**

31.    To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies will not provide coverage for any such "property damage" to "impaired property" or property that has not been physically injured arising out of  a defect, deficiency, inadequacy or dangerous condition in "the Assured's product" or "the Assured's work" (as the Primary Policies define those terms), or a delay or failure by the Assured or anyone acting on its behalf to perform a contract or agreement  in accordance with its terms, unless the loss of use of other property arising out of sudden and accidental physical injury to "the Assured's product" or "the Assured's work" after it has ben put to its intended use. *See* Star Primary Policies at §1.2.l.

30.    Here, the Underlying Illinois Action contains no relevant allegation of sudden and accidental physical injury to "the Assured's product" or "the Assured's work" after it has been put

107

to its intended use.

**Eighteenth Affirmative Defense: Recall of Products, Work, or Impaired Property (Primary)**

32. To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies provide no coverage for loss, cost or expense incurred by the Assured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "the Assured's product"; "the Assured's work"; or "impaired property" (as those terms are defined by the Starr Primary Policies) if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it. *See* Star Primary Policies at §1.2.m.

**Nineteenth Affirmative Defense: Other Insurance (Primary)**

31. To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, and to the extent that there were any coverage under the Starr Primary Policies for such claims—which there is not—any such coverage would be excess to all other insurance covering said claims, pursuant to the following language found at §7.5 of the Starr Primary Policies, under the heading "Other Insurance":

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this policy subject to the terms and conditions and limitations of other insurance

**Twentieth Affirmative Defense: Punitive Damages Exclusions**

32.     To the extent that the Underlying Illinois Action seeks punitive damages, there would be no coverage for such damages under any of the Starr Policies pursuant to the Starr Policies' punitive damages exclusions. *See* Starr Primary Policies at §VII.h; *see* Starr Bumbershoot Policies' Supplementary Clauses at §II, "Punitive Damage Exclusion."

**Twenty-First Affirmative Defense: Professional Liability/Errors or Omissions Exclusions**

33.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Policies' Professional Liability/Errors or Omissions Exclusions  provide no coverage for any claim or claims arising out of a breach of professional duty by reason of any negligent act, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the Assured in the conduct of any of the Assured's business activities. *See* Starr Primary Policies at §VII.g; *see also* Starr Bumbershoot Supplementary Clauses at §II, "Professional Liability/Errors or Omissions Exclusion".

34.     For purposes of the Starr Policies' Professional Liability/Errors or Omissions Exclusions, the phrase "professional services" includes but is not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering, or data processing services. *See id.*

**Twenty-Second Affirmative Defense: Air, Auto, Watercraft Exclusion (Primary)**

35.     To the extent any claims for "property damage" (as that term is defined by the relevant Starr Policies) have been asserted against the Premier Entities in the Underlying Illinois Action, the Starr Primary Policies provide no coverage for any such property damage arising out of the ownership, maintenance, use, loading or unloading, operation, or entrustment to others of

any aircraft or watercraft owned or operated by or rented or loaned or chartered to any Assured, subject to the exceptions set forth at §1.2.f. *See* Starr Primary Policies at §1.2.f.

### Twenty-Third Affirmative Defense: Inclusion of Additional Assureds

36.     To the extent that the Starr Policies provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, said coverage would be subject to the Starr Policies' "Inclusion of Additional Assureds or Loss Payees" provisions, which provide in pertinent part:

> Wherever additional assureds or loss payees are added to this policy it is specifically agreed:
>
> a)  Such additional assureds or loss payees are included only with respect to such activities insured by this policy as would exist in the absence of the naming of additional assureds or loss payees and coverage hereunder shall in no way be considered extended by the inclusion of additional assureds or loss payees.
>
> b)  The inclusion of additional assureds or loss payees in no way increases the limit of liability hereunder….

*See* Starr Primary Policies at §7.9; *see* Starr Bumbershoot Policies at Endt. 5, "Inclusion of Additional Insureds or Loss Payees."

### Twenty-Fourth Affirmative Defense: Additional Assured (Bumbershoot)

37.     To the extent that the Starr Bumbershoot Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Action, which they do not, said coverage would further be subject to subpart (D) of Endorsement 5 to the Starr Bumbershoot Policies, titled "Inclusion of Additional Insureds or Loss Payees" which provides in pertinent part:

> Wherever additional assureds or loss payees are added to this policy it is specifically agreed:
>
> ***
>
> D) Any person or organization, other than the Named Assured, included as an Additional Assured under the scheduled underlying insurance, but not for broader

110

coverage than would be afforded by such scheduled underlying insurance, and only when requested by contract.

*See* Starr Bumbershoot Policies at Endt. 5, "Inclusion of Additional Insureds or Loss Payees."

### Twenty-Fifth Affirmative Defense: Starr Primary Policies' Additional Assured Endorsement (2016-17, 2017-18, 2018-19)

38.     To the extent that the Starr Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, said coverage would be subject to the Starr Primary Policies' Endorsement No. 2, which provides in pertinent part in certain years through the 2018-19 policy period:

I)      It is hereby understood and agreed that this Policy shall include as Additional Assureds or Loss Payees, any person or organization to whom the Named Assured has agreed, by written contract, to provide coverage, but only with respect to operations performed by or on behalf of the Named Assured and only with respect to occurrences subsequent to the making of such written contract.

Notwithstanding the above, it is further understood and agreed that wherever Additional Assureds or Loss Payees are added to this policy it is specifically agreed:

A)      Such Additional Assureds or Loss Payees are included only with respect to such activities insured by this policy as would exist in the absence of the naming of Additional Assureds or Loss Payees and coverage hereunder shall in no way be considered extended by the inclusion of Additional Assureds or Loss Payees.

B)      The inclusion of Additional Assureds or Loss Payees in no way increase the limit of liability hereunder…

*See* Starr Primary Policies at Endorsement No. 2, titled "Additional Assured/Loss Payee/Waiver of Subrogation Clauses" for 2016-17 through 2018-19 Starr Primary Policies.

### Twenty-Sixth Affirmative Defense: Starr Primary Policies' Additional Assured Endorsement (2019-20, 2020-21, and 2021-22)

39.     To the extent that the Starr Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, said

111

coverage would be subject to the Starr Primary Policies' Endorsement No. 2, which provides in pertinent part in 2019-20, 2020-21, and 2021-22 policy periods:

A. **Section 5 – WHO IS AN ASSURED** is amended to include as an additional assured the person(s) or organization(s) whom the Named Assured has agreed to include as an Additional Assured hereunder, but only with respect to liability for. . ."property damage" . . .caused in whole or in part by the Named Assured's acts or omissions or the acts or omissions of those acting on behalf of the Named Assured:

   1. In the performance of the Named Assured's operations; or
   2. In connection with premises owned by or rented to the Named Assured.

   However:

   1. The insurance afforded to such additional assured only applies to the extent permitted by law; and
   2. The coverage provided to the additional assured must be required by a written contract or agreement and the insurance afforded to such additional assured will not be broader than that which the Named Assured is required by the contract or agreement to provide for such additional assured; and
   3. Unless specifically required by written contract or agreement executed prior to any occurrence, coverage afforded under this clause shall exclude coverage for any claims alleging negligence or any other fault on the part of the additional assured.

B. With respect to the insurance afforded to these additional assureds, the following is added to **Section 6 – LIMITS OF INSURANCE:**

   If coverage provided to the additional assured is required by a contract or agreement, the most the Company will pay on behalf of the additional assured is the amount of insurance:

   1. required by the contract or agreement; or
   2. available under the applicable Limit of Liability shown in the Declarations;

   whichever is less.

C. Where required by written contract, the Company waives its rights of subrogation against the person(s) or organization(s) included as additional assureds, but such waiver shall only apply with respect to the operations of the Named Assured and shall be no broader than the extent of such obligation, nor beyond the extent permitted by law.

112

**D.** Notwithstanding Section 7, Clause #5 - OTHER INSURANCE, coverage under this policy afforded to the Additional Assured shown above will apply as primary insurance where required by written contract, and any other insurance issued to such Additional Assured shall apply as excess and noncontributory insurance.

**E.** Any request for a certificate involving non-marine contracts whose total contract value exceeds 5% of the Named Assured's Projected Gross Receipts as advised to Underwriters at inception, must be referred to Underwriters for approval, prior to issuance of such certificate.

This endorsement shall not increase the applicable Limit of Liability shown in the Declarations.

**Twenty- Seventh Affirmative Defense: No Coverage for Pre-Tender Defense Costs**

40. To the extent that the Starr Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, Starr has no obligation to reimburse any pre-tender defense costs.

**Twenty-Eighth Affirmative Defense: Reasonable and Necessary Defense Costs**

41. To the extent that the Starr Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, the Starr Policies would only afford coverage for reasonable and necessary defense costs and fees incurred in defense of the claims.

**Twenty-Ninth Affirmative Defense: Ripeness**

42. To the extent that Starr is found to have a duty to defend the Premier Entities under any of the Starr Policies, any determination of the duty to indemnify the Premier Entities is premature because there has been no final adjudication of the Underlying Illinois Action, meaning the indemnity issue is not ripe for determination, and thus Amerisure is not entitled to a declaration on any indemnity claim arising out of the Underlying Illinois Action.

113

### Thirtieth Affirmative Defense: Contribution and Reimbursement from Subcontractors, Insurers (Illinois Action)

43.     To the extent that the Starr Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, Starr is entitled to contribution and reimbursement from any other subcontractors and/or their insurers that are also obligated to provide coverage for Premier Entities for the Underlying Illinois Action.

### Thirty-First Affirmative Defense: Prior Insurance/Non-Cumulation (Bumbershoot)

44.     To the extent that the Starr Bumbershoot Policies are found to provide coverage for the claims asserted against the Premier Entities in the Underlying Illinois Action, which they do not, the provisions of the Starr Bumbershoot Policies' "Prior Insurance and Non-Cumulation of Liability" Condition, which provides in pertinent part as follows, shall operate to reduce the Starr Bumbershoot Policies' liability:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Item II. of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

*See* Starr Bumbershoot Policies' Supplementary Clauses at §III.(b).

### Thirty-Second Affirmative Defense: Contribution (Reservations; Both Underlying Actions)

45.     To the extent that Starr is otherwise found to have a duty to defend or indemnify either of the Premier Entities in either of the Underlying Actions, Starr reserves the right to seek contribution from Plaintiffs, Co-Defendants, and any of the subcontractors that are obligated to provide coverage for the Underlying Actions.

### Thirty-Third Affirmative Defense: Reservations

114

46.     Starr reserves the right to assert any other term, condition, exclusion, definition, or other provision(s) of the Starr Policies, any defense asserted by any other party to this action, and any other defense based on the Starr Policies, in equity, or at law.

**Thirty-Fourth Affirmative Defense: Allocation of Defense Costs Between Premier Design + Build Group, LLC and Premier Design + Build National, LLC**

47.     To the extent that Starr is found to have a duty to defend Premier Design + Build Group, LLC in the Underlying Illinois Action and is found to have no duty to defend Premier Design + Build National, LLC, Starr would be responsible only for its share a of the defense costs attributable to the defense of claims against Premier Design + Build Group, LLC, only, in the Underlying Illinois Action and would have no duty to reimburse or pay any defense costs arising out of the Underlying Illinois Action unless those defense costs are specifically allocated to, and attributable only to, the defense of Premier Design + Build Group, LLC.

Date: October 20, 2025

**LINDEMANN MILLER BOWEN LLP**

By:     /s/ Michael A. Kuiken

Michael A. Kuiken
LINDEMANN MILLER BOWEN LLP
125 South Wacker Drive
Suite 300
Chicago, IL 60606
T: (312) 300-4504
Michael@LM-Law.com

*Counsel for Starr Indemnity and Liability Company*

115

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended in 2018, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.