# EXHIBIT F



Amerisure Mutual Holdings, Inc.
Amerisure Mutual Insurance Company
Amerisure Insurance Company
Amerisure Partners Insurance Company

April 21, 2023

**SENT VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Mr. Mark Melone
Premier Design & Build National, LLC
1000 W. Irving Park Road, Suite 200
Itasca, IL 60143

> **Re:** **Duke Realty ePort Urban Renewal LLC,**
> **980 High Street, Perth Amboy, New Jersey** ("the Building")

| | |
|---|---|
| Insured: | Premier Design Build National, LLC ("Premier") |
| Claimants: | Duke Realty ePort Urban Renewal LLC; Bridge Pert Amboy, LLC |
| CGL Policy No.: | CPP 2097848 |
| Umbrella Policy Nos.: | CU 2097848 and CU 20978490 |
| Policy Periods: | July 1, 2016 to July 1, 2023 |
| Date of Loss: | October 6, 2022 |
| Claim No.: | 2331260 |

**SUPPLEMENTAL RESERVATION OF RIGHTS**
**NOTICE OF CLAIM**

Dear Mr. Melone:

The purpose of this letter is to acknowledge notice of Duke Realty ePort Urban Renewal LLC's ("Duke") letter of October 6, 2022 in relation to alleged claims at the Building ("the Duke Letter"). This letter further supplements Amerisure Mutual Insurance Company's ("Amerisure") reservation of rights letter to Premier of December 19, 2019 and sets forth Amerisure's reservation of rights under the Amerisure CGL and Umbrella Policies issued to Premier in relation to the claims made in the Duke Letter, and by Bridge Perth Amboy, LLC ("BPA") as to the Building. We want to thank you for providing Duke's letter of October 6, 2022, and related material, as it was helpful in our continuing evaluation of this matter.

Based on the information provided to date, no lawsuit has been filed against Premier in relation to the Building and/or the issues outlined in Duke's letter of October 6, 2022. It is our understanding that BPA, the owner of the Project (as defined below), has

Mr. Mark Melone
Page 2

invoked a mediation provision contained in the Construction Agreement with Premier. As Premier is aware, subject to a reservation of rights, Amerisure agreed to retain the law firm of Wood Smith Henning & Berman LLP to defend Premier in relation to this matter, which Premier accepted.

Amerisure recognizes that the allegations in Duke's letter of October 6, 2022, are unsubstantiated, and nothing in this letter is intended to suggest or imply that the allegations have any legal or factual merit. If you have any other information that you believe may influence Amerisure's coverage position outlined previously or herein, we would kindly request that you send such information to our attention for consideration. Similarly, as matters proceed and if Premier is served with a complaint and/or learns of information that may, in any respect, affect Amerisure's coverage position, Amerisure requests notification of any complaint or information so that we may evaluate same.

As per our understanding, Premier entered into a Construction Agreement with BPA to perform work in relation to several buildings located at 960 – 1000 High Street, Perth Amboy, New Jersey (*i.e.,* the Building). Premier was the general contractor at the Building, and its scope of work involved mass grading, site improvements, and building construction for the development of the property located at Block 425, Lot 1.02, Block 426, Lot 3.04 and Block 428, Lots 1.01, 1.02, 1.03 & 1.05. It is also our understanding that the Building was completed in 2015 or 2016. Duke is the owner of a building located at 980 High Street, Perth Amboy, New Jersey. In its letter, Duke alleges that the Building suffered damage related to separation movement between the floor slab and exterior walls, which was apparently caused by excessive settlement in the southeast corner of the Building. It is unclear when the alleged movement in the Building started to occur. In the Duke Letter, Duke states that it may have a claim against Premier for alleged damages arising from this incident. Nothing herein should be construed as validating or accepting the claims or allegations directed against Premier.

Amerisure issued commercial general liability ("CGL") policies and umbrella liability policies to Premier from annual policy periods from July 1, 2016 to July 1, 2020 (collectively "the Amerisure Policies").[1] In particular, Amerisure issued the following CGL policies to Premier: (a) Policy no. CPP 2097848 02, in effect from July 1, 2016 to July 1, 2017; (b) Policy no. CPP 2097848 03, in effect from July 1, 2017 to July 1, 2018; (c) Policy no. CPP 2097848 04, in effect from July 1, 2018 to July 1, 2019; (d) policy No. CPP 2097848 05, in effect from July 1, 2019 to July 1, 2020; (e) Policy No. CPP 2097848 06, in effect from July 1, 2020 to July 1, 2021; and (f) Policy No. CPP 2097848 07, in effect from July 1, 2021 to July 1, 2022 ("collectively referred herein as "the Amerisure CGL Policies"). The Amerisure CGL Policies have a $1 Million Each Occurrence Policy

---

[1] For your convenience, we have set forth in this letter certain provisions of the Amerisure Policies. Please note that those provisions only provide a partial recitation of the terms, conditions, exclusions, and definitions contained in the Amerisure policies, and it is not intended to supplement, amend, supersede or otherwise alter this policy; rather, the partial recitations herein are included to assist you in understanding the positions set forth in this letter. Amerisure does not intend to waive any provisions of the policies by virtue of its synopsis. Please consult your policies for a complete listing of all of the terms, conditions, exclusions and definitions contained therein.

Mr. Mark Melone
Page 3

Limit, a $2 Million General Aggregate Policy Limit, and a $2 Million Products-Completed Operations Aggregate Policy Limit. The Amerisure CGL Policies contain CGL Coverage Forms CG 00 01 04 13 and CG 00 01 12 07.

The Amerisure CGL Policies provides in relevant part:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section Ill – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The . . . "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage"

Mr. Mark Melone
Page 4

occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** " [P]roperty damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that . . . "property damage" after the end of the policy period.

**d.** " [P]roperty damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the . . . "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or

**(3)** Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

The Amerisure CGL Policies contain the following definitions. The term "property damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. The term "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

For coverage to exist there must be an "occurrence" that results in "property damage" during the policy periods, as those terms are defined in the Amerisure CGL Policies. The policies do not provide coverage for an insured's allegedly defective workmanship that does not result in damages to anything other than the work itself, as this does not meet the definition of "property damage" within the policies. However, consequential damage resulting from construction defects may be covered. Any such damage, however, is still subject to the terms, exclusions, conditions and definitions of the Amerisure CGL Policies. Accordingly, Amerisure reserves the right to deny coverage for any damages that are not because of "property damage" caused by an "occurrence" as those terms are defined in the Amerisure CGL Policies.

Mr. Mark Melone
Page 5

Any coverage under the Amerisure CGL Policies applies only to the extent that "property damage" occurred during the Amerisure policy periods, and was not known by any insured listed under Paragraph 1. of Section II – Who Is An Insured of the policies, or authorized "employee", to have occurred prior to the policy period. "Property damage" will be deemed to have been known to occur at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured of the policies, or authorized "employee": (1) reports all, or any part, of the "property damage" to Amerisure or any other insurer; (2) receives a written or verbal demand or claim for damages because of "property damage"; or (3) Becomes aware by any other means that "property damage" has occurred or has begun to occur. If there is a continuation, change or resumption of "property damage" after the end of a policy period into subsequent policy periods, only the policy in effect when the "property damage" first occurred will apply to all continuation, change or resumption of that "property damage", as set forth in Paragraph **1.c.** of the insuring agreement.

The following exclusions may also apply:

**1. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage",

Mr. Mark Melone
Page 6

provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*      \*      \*

**j.  Damage To Property**

"Property damage" to:

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*      \*      \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" or arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which it arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

Mr. Mark Melone
Page 7

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

We have cited to **Exclusion a. Expected Or Intended Injury** to the extent BPA and/or Duke seek to recover "property damage" expected or intended from the standpoint of the insured. Accordingly, Amerisure reserves the right to deny coverage based on the application of this exclusion.

We have cited to **Exclusion b**. **Contractual Liability** to the extent Premier is obligated to pay damages by reason of the assumption of liability in a contract or agreement that is not otherwise exempted. Accordingly, Amerisure would not owe coverage under the Amerisure CGL Policies for any damages excluded by the Contractual Liability exclusion. Amerisure reserves the right to deny coverage based on this exclusion.

We have cited to **Exclusion J.(5) and (6)** to the extent BPA and/or Duke seek "property damage" to: (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard". Accordingly, Amerisure reserves the right to deny coverage based on the application of these exclusions.

We have cited **Exclusion k. Damage to Your Product** for the following reason: To the extent Premier seeks recovery to repair or replace damage to "your product", such damages may fall under this exclusion. Accordingly, Amerisure reserves the right to deny coverage based on the application of this exclusion.

We have cited **Exclusion l. Damage to Your Work** for the following reason: To the extent that any damages are for the repair or replacement of any of the work that you were contracted to perform, there may be no coverage unless that work was performed by a subcontractor on your behalf, and which is not otherwise excluded. Amerisure reserves the right to deny coverage based on the application of this exclusion.

We have cited **Exclusion m. Damage to Impaired Property or Property Not Physically Injured** for the following reason: To the extent a recovery is sought for damages for repairing or replacing property that is "impaired" because it incorporates your work, or because you have failed to fulfill the terms of a contract or agreement, then, as

Mr. Mark Melone
Page 8

outlined above, such damages may fall under this exclusion.  Amerisure reserves the right to deny coverage based on the application of this exclusion.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** of the Amerisure CGL Policies state as follows:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> \*   \*   \*
>
> **2. Duties In The Event Of Occurrence, Offense, Claim or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  Knowledge of an "occurrence" or an offense by your "employee(s)" shall not, in itself, constitute knowledge to you unless one of your partners, members, "executive officers", directors, or managers has knowledge of the "occurrence" or offense.  To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense. [2]
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
>
> **c.** You and any other insured must:
>
> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> **(2)** Authorize us to obtain records and other information;
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

---

[2] Language altered by the Contractors General Liability Extension Endorsement, CG 70 49 08 05.

Mr. Mark Melone
Page 9

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

Amerisure reserves rights under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** to the extent notice of any "occurrence", claim and/or "suit" has not been provided to Amerisure in accordance with the terms of the Amerisure CGL Policies. Amerisure further states that under Paragraph (c)(3), SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Premier must cooperate with Amerisure in the investigation or settlement of the claim or defense against the "suit". Amerisure further reserves rights under **Paragraph d.**, **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** which states that no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without Amerisure's consent.

The Amerisure CGL Policies contains an endorsement entitled: **AMENDMENT OF COMMERCIAL GENERAL LIABILITY CONDITIONS NOTICE AND TENDER TO OTHER INSURERS**, form CG 71 06 10 99, which states as follows:

**AMENDMENT OF COMMERCIAL
GENERAL LIABILITY CONDITIONS
NOTICE AND TENDER TO OTHER INSURERS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY PART**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below:

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to paragraph **2.c.** of **Duties In The Event Of Occurrence, Offense, Claim Or Suit**:

(5) Promptly give notice of an "occurrence" or offense which may result in a claim, a claim which is made or "suit" to any other insurer which has available insurance for a loss we cover under **Coverages A or B** of this coverage part.

(6) Promptly tender the defense of any claim made or "suit" to any other insurer which also has available insurance for a loss which we cover under **Coverage A or B** of this coverage part.

Mr. Mark Melone
Page 10

As required by the above endorsement, Amerisure requests that Premier promptly give notice and tender of this matter to any other insurer(s) who provides available insurance coverage that may apply to this alleged loss. This includes tendering this matter to any insurer under which Premier qualifies as an additional insured. Amerisure reserves its rights to deny coverage in the event Premier does not comply with this provision.

Additionally, the Amerisure CGL Policies contain an endorsement entitled **Exclusion – Construction Management Errors and Omissions** (form CG 22 34 04 13), which states as follows:

**EXCLUSION – CONSTRUCTION MANAGEMENT
ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability….**

This insurance does not apply to . . . "property damage" . . . arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1. or 2**.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

Mr. Mark Melone
Page 11

Amerisure reserves rights under this exclusion to the extent BPA and/or Duke seek "property damage" arising out of: 1. the preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or 2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager. As such, Amerisure reserves the right to deny coverage based on the application of this exclusion.

The Amerisure CGL Policies also contain an endorsement entitled **Exclusion – Contractors – Professional Liability** (form CG 22 79 04 13), which states:

## EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

1.  This insurance does not apply to . . . "property damage" . . . arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    a.  Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    b.  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2.  Subject to Paragraph **3**. below, professional services include:

Mr. Mark Melone
Page 12

    **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

To the extent BPA and/or Duke seek "property damage" arising out of the rendering of, or the failure to render, any professional services by Premier or on Premier's behalf, the **Exclusion - Contractors - Professional Liability** may apply. As such, Amerisure reserves the right to deny coverage based on the application of this exclusion.

The Amerisure CGL Policies also contain an endorsement entitled **Exclusion Exterior Insulation And Finish Systems** (form CG 21 86 12 04), which states:

### EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

    **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

    **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the Definitions Section:

Mr. Mark Melone
Page 13

> "Exterior insulation and finish system" means a non-load bearing Exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:
> 1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
> 2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
> 3. A reinforced or unreinforced base coat;
> 4. A finish coat providing surface texture to which color may be added; and
> 5. Any flashing, caulking or sealant used with the system for any purpose.

Amerisure has limited information regarding the project in question and the type of building/s that were constructed. It is also not clear the type of exterior cladding system that was used on the project. If it is determined that an EIFS system was used on the Building, there would be no coverage for any "property damage" arising out of, caused by, or in any way attributable to the use of an EIFS system on the Building. Amerisure reserves its rights to deny coverage if it is determined that an ElFS system was used on the Building.

Please refer to form CG 21 67 12 04 - **Fungi or Bacteria Exclusion** Endorsement, which states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph 2. **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within

Mr. Mark Melone
Page 14

a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

\*      \*      \*

**C.** The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

To the extent that BPA and/or Duke seek "property damage" based on the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria in or at the Building, the Fungi or Bacteria exclusion may apply. Amerisure, thus, reserves the right to deny coverage under the Amerisure CGL Policies.

The Amerisure CGL Policies contain an endorsement entitled **Illinois Changes – Defense Costs** (Form IL 01 62 10 13), which sets forth as follows:

### ILLINOIS CHANGES – DEFENSE COSTS

**A.** The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section I of the Commercial General Liability, Commercial Liability Umbrella….

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our

Mr. Mark Melone
Page 15

rights to terminate the defense and seek reimbursement for defense costs.

Amerisure reserves rights under this endorsement to seek reimbursement for defense costs in the event there may not be coverage under the Amerisure CGL Policies for the claims alleged in this matter.

\* \* \*

In an abundance of caution, and without suggesting that the Amerisure Umbrella Policies have any application to this matter, Amerisure reserves the following rights under its Umbrella Policies ("the Amerisure Umbrella Policies"). Amerisure issued the following umbrella policies to Premier: (a) Policy No. CU 20978490002, with a policy period of July 1, 2015 to July 1, 2016; (b) Policy No. CU 20978490102, with a policy period of July 1, 2016 to July 1, 2017; (c) Policy No. CU 20978490202, with a policy period of July 1, 2017 to July 1, 2018; (d) Policy No. CU 20978490302, with a policy period of July 1, 2018 to July 1, 2019; (e) Policy No. CU 20978490402, with a policy period of July 1, 2019 to July 1, 2020; (f) Policy No. CU 20978490502, with a policy period of July 1, 2020 to July 1, 2021, and; (g) Policy No. CU 20978490602, with a policy period of July 1, 2021 to July 1, 2022.

The **Commercial Liability Umbrella Coverage Form** contained in the Amerisure Umbrella Policies (CU 00 01 04 13) states in part as follows:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**

\* \* \*

**SECTION I - COVERAGES**
**COVERAGE A-BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such . . . "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

Mr. Mark Melone
Page 16

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section Ill - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under the Supplementary Payments – Coverage **A** and **B.**

**b.** This insurance applies to . . . "property damage" that is subject to an applicable "retained limit" if any other limit, such as a sublimit, is specified in the "underlying insurance" this insurance does not apply to . . . "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to . . . "property damage" only if:

**(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

d. "[P]roperty damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a,** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that . . . "property damage" after the end of the policy period.

Mr. Mark Melone
Page 17

    e.    "[P]roperty damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the . . . "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or

    **(3)** Becomes aware by any other means that . . . "property damage" has occurred or has began to occur.

The Amerisure Umbrella Policies contain the following definitions. The term "retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the self-insured retention", whichever applies. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into our consent or the "underlying insurer's" consent. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance." "Underlying Insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance." The term "property damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. The term "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Subject to its terms, definitions, exclusions, and conditions, the Amerisure Umbrella Policies provide coverage for "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence", as those terms are defined in the policy, to which the insurance applies. Accordingly, under the terms of the Amerisure Umbrella Policies, Amerisure does not owe any coverage obligation to Premier until Premier becomes legally obligated to pay covered damages by reason of a settlement or judgment that exceed the underlying limits of insurance of the Amerisure CGL Policies, subject to the other terms and conditions of the policies.

Moreover, the Amerisure Umbrella Policies apply only to "property damage" caused by an "occurrence" during the policy periods as those terms are defined in the Amerisure Umbrella Policies. Subject to its terms, definitions, exclusions, and conditions, the Amerisure Umbrella Policies do not provide coverage for an insured's allegedly defective workmanship that does not result in damage to other property or does not damage anything other than the insured's work itself, as this does not meet the definition of "property damage" as that term is defined in the Amerisure Umbrella Policies. Thus,

Mr. Mark Melone
Page 18

Amerisure will not pay for amounts associated with, relating to, or arising out of the repair and replacement of defective work of Premier or performed by any subcontractor on Premier's behalf. Accordingly, Amerisure reserves its rights to deny coverage under the Amerisure Umbrella Policies for damages that do not qualify as "property damage" caused by an "occurrence" during the Amerisure Umbrella policy periods.

Any coverage under the Amerisure Umbrella Policies applies only to the extent that "property damage" occurred during the Amerisure Umbrella policy periods, and was not known by any insured listed under Paragraph 1. of Section II – Who Is An Insured of the policies, or authorized "employee", to have occurred in a prior policy period. If there is a continuation, change or resumption of "property damage" after the end of a policy period into subsequent policy periods, only the policy in effect when the "property damage" first occurred will apply to all continuation, change or resumption of that "property damage", as set forth in paragraph 1.c. of the insuring agreement. Amerisure reserves its rights to deny coverage under these provisions.

The Amerisure Umbrella Policies contain the following exclusions that are substantially similar to exclusions contained in the Amerisure CGL Policies: **a. Expected Or Intended Exclusion**; **b. Contractual Liability Exclusion**; **m. Damage To Property – m(5) and m(6)**; **n. Damage To Your Product; o. Damage To Your Work**, and; **(p) Damage To Impaired Property Or Property Not Physically Injured**. Amerisure reserves its rights under the foregoing exclusion, as per their respective terms, to the extent they apply to this matter.

The Amerisure Umbrella Policies also contain **Exclusion s. Professional Services**. This exclusion states that this insurance does not apply to "property damage" due to the rendering of or failure to render any professional services. This includes, but is not limited to: **(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications; **(3)** inspection, supervision, quality control, architectural and engineering activities done by or for you on a project on which you serve as a construction manager, and; **(4)** Engineering services, including related supervisory or inspection services. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "property damage", involved the rendering or failure to render any professional service. Amerisure reserves rights under this exclusion.

Amerisure also reserves all rights under the Amerisure Umbrella Policies under **SECTION IV – CONDITIONS** as set forth therein. Amerisure reserves all rights under the conditions set forth in Section 3. **Duties In the Event Of Occurrence, Offense, Claim Or Suit,** including any provision relating to notice, cooperation and voluntary payments.

The Amerisure Umbrella Policies also contain endorsements entitled **Exclusion – Exterior Insulation and Finish System** (form CU 21 42 12 04) and **Fungi or Bacteria Exclusion** (CU 21 27 12 04. Amerisure reserves all rights under these exclusions to the extent they apply to the claims alleged in this matter. The Amerisure Umbrella Policies

Mr. Mark Melone
Page 19

also contain an endorsement entitled **Illinois Changes – Defense Costs** (form IL 01 62 09 08) under which Amerisure reserves all rights thereunder.

As Amerisure continues its investigation of this matter, it reserves its rights to amend this Reservation of Rights letter or withdraw from the defense based on newly discovered facts that would impact any coverage that might be available under the Amerisure Policies.

Any action that Amerisure may take in this investigation is not to be construed as a waiver of any of the terms and conditions of the Amerisure Policies. In fact, by sending this letter, Amerisure expressly reserves the right to rely on the terms and conditions in deciding whether coverage is afforded under the Amerisure Policies. Amerisure also reserves the right to file any actions it deems necessary to protect its position, which may include the filing of a declaratory judgment action to seek a determination by a court regarding the possible absence of insurance coverage for this claim.

If you have any questions, please let me know so that we can discuss further.

Sincerely,

*Jared Pratt*

Jared Pratt
Construction Defect Claim Specialist
860-917-5423
JPratt@amerisure.com